# Exhibit 23

At an IAS Part 12G of the
Supreme Court of the State of
New York, held in and for
Richmond County at 26 Central
Avenue, Staten Island, New York
on the 7 day of June, 2016.

**PRESENT:**

      **THOMAS P. ALIOTTA,**
      **J.S.C.**

---

In the Matter of the Application of
**Bernard Black,** Petitioner and
**Cherie Wrigley** Cross-Petitioner,
For the Appointment of a Guardian of
the Person and Property of

**JOANNE BLACK,**
an Alleged Incapacitated Person.

      **AMENDED
DECISION AND ORDER**

Index No. 80253/14

      The Petitioner, brother of Joanne Black, an alleged incapacitated person

[hereinafter "AIP"] commenced this proceeding pursuant to Mental Hygiene Law Article

81, to appoint a guardian of her person and property. The petition alleged that the AIP

was incapacitated due to a long history of chronic schizophrenia, and that a guardian

was needed to provide for the management of her financial affairs and personal needs.

At the time of the filing, the AIP was a resident of South Beach Psychiatric Center in

Richmond County. Petitioner, Bernard Black had already been appointed as

Conservator for the AIP by the Denver, Colorado Probate Court under case

#12PR1722. He was also Executor of the Estate of their late mother, Renata Black,

appointed by the Surrogates Court of Westchester County, New York on May 1, 2012,

under File #2012/1209. Petitioner claimed to be best suited to serve as guardian of the

AIP by virtue of his being an attorney, her brother, her Conservator and the Executor of

their mother's estate. This Petition was subsequently amended to request that an

Page 1 of 10

independent guardian be appointed, but was later withdrawn.

On or about November 25, 2014, this Court issued an Order vacating the appointment of Mental Hygiene Legal Services as Counsel for the AIP upon consent of Nora Renzulli, Esq., of MHLS, at which point private Counsel, Ira Salzman, Esq., was substituted as her attorney. By that point in time, Joanne Black, the AIP, had been discharged from South Beach Psychiatric Center and placed in Transitional Housing in Brooklyn, New York.

On or about October 31, 2014, a Cross-Petition was filed by Cherie Wrigley, a resident of the State of California and cousin of the AIP, claiming that she was best suited to serve as guardian based on her long standing, close and loving relationship with the AIP. In addition, she claimed that she had been supporting the AIP since the death of her mother, Renata Black in 2012, both emotionally and financially. In addition, she claimed to have arranged for a team of people to assist the AIP and provide day-to-day support, which enabled Joanne Black to live independently in an apartment.

A hearing for the appointment of a Guardian for the AIP was held on October 1, 2015, at which Cherie Wrigley, the Cross-Petitioner moved to be appointed as Guardian of the person and property of Joanne Black. Based on the hearing testimony given by Ms. Wrigley, Esaun Pinto, Lois Orlin, CSW and a statement made on the record by Anthony J. Dain, Esq., an attorney admitted to practice in California and the brother of Cherie Wrigley, and no one having appeared in opposition thereto, and Joanne Black having nominated Cherie Wrigley to be her Guardian, a decision was rendered from the bench by this Court on October 1, 2015, granting the Cross-Petition.

While the AIP has apparently suffered from a mental illness for what appears to be most of her adult life, when she appeared before this Court to give testimony on October 1, 2015, she presented as intelligent, articulate and composed.  She professed to be determined to maintain her health, both mental and physical; has adopted a healthy lifestyle; and is working towards being as independent as possible.  In addition, she freely nominated her cousin, Cherie Wrigley, the cross-petitioner, to be her Guardian pursuant to MHL §81.17, and consented that the guardianship be for a period of two (2) years.

The case at bar is clearly the product of a conflict between the AIP, the nominated Guardian, Cherie Wrigley, Anthony Dain and the family of Joanne Black (in the person of her brother Bernard Black), due to an uncontroverted, long standing intra-familial animosity that exists among them.  It is also clear that this animosity pre-dates the death of Renata Black, the appointment of a Conservator in Colorado and/or the commencement of the within Guardianship proceeding.

This Court is not concerned with the warring factions of this family; rather its sole concern is the well being, care, and maintenance of Joanne Black, the AIP, and that her assets receive the appropriate protection.  It is her best interests that are the subject of these proceedings, as opposed to those of any sibling or other family member.

In so far as it appears, a proposed Order and Judgment resolving this matter was filed with the Court, but was not properly settled on notice as directed.  Thus, interested parties and presumptive distributees were never placed on notice of its terms.  This fact was brought to the Court's attention by Bernard Black's former attorney in a letter dated November 12, 2015.  Rather than properly re-settling the Order, the

Page 3 of  10

parties embarked upon a letter writing campaign that merely served to delay the appointment of a guardian, and to further fuel the fires of discontent among and between the warring factions.

As a result, this Court issued an Order dated December 23, 2015, directing that an Order and Judgment be re-settled on notice to all interested parties. However, it appears that service was untimely and that one of the Trustees was never served. To the extent relevant, all of the parties and their attorneys have been informed that this Court has communicated privately with Judge Elizabeth D. Leith, who presided over the Conservatorship proceeding in Denver, Colorado. In addition, this Court is in receipt of a letter from Marcia Issacson, the Chief Compliance Officer of Northwestern University Law School, (the employer of both Bernard Black and his wife, Katherine Litvak who are Law Professors at that institution). The letter has been placed in the record herein.

In the opinion of this Court, the events which followed the hearing held on October 1, 2015, are disturbing at best. Ms. Wrigley by her own admission contacted Northwestern University School of Law on January 8, 2016, to file a complaint against Katherine Litvak, on a University hotline. She forwarded therewith copy of the transcript of the Court's hearing held on October 1, 2015, a sealed document. Apparently, she had filed a similar complaint some nine months earlier against Ms. Litvak's husband, Bernard Black.

In Richmond County, guardianship files and proceedings are sealed in order to ensure that the alleged incapacitated persons who appear before the court are afforded maximum confidentiality. Here however, Ms. Wrigley's actions tend to show that she would not adequately protect the confidentiality of her Ward, if appointed. Her

judgment clouded by acrimony, Ms. Wrigley allowed her feud with Bernard Black to take precedence over the best interests of Joanne Black. Accordingly, pursuant to MHL §81.19 (b) this Court finds Cherie Wrigley unfit to be appointed Guardian for Joanne Black.

Moreover, while the proceedings for the appointment of a guardian were still pending, the Petitioner, Bernard Black moved to renew his petition claiming that the appointment of a guardian for his sister was necessary, but that the court should appoint an independent guardian, ie: someone not related to the Black family. That motion was granted, and a new hearing was held on March 21 and March 22, 2016. The Petitioner, Bernard Black appeared and testified at said hearing, as did Joanne Black, the AIP and Bartholomew T. Russo, the court evaluator. Katherine Litvak, Esq. (the sister-in-law of the AIP) appeared pro se, as did Anthony Dain, Esq. (a cousin of the AIP).

During this hearing, the AIP, Joanne Black presented once again as poised, intelligent, articulate and determined. In addition, according to the testimony of the court evaluator, she was doing even better than she had been five (5) months earlier, in October, 2015.

In exercising its authority to appoint a personal needs guardian or a property management guardian, the Court must make a two-pronged determination (see Mental Hygiene Law §81.02[a]; see also Matter of Samuel S. [Helen S.], 96 AD3d 954, 957; Matter of Daniel TT., 39 AD3d 94, 96-97; Matter of Maher, 207 AD2d 133, 139-140). Thus before appointing a personal needs guardian, the court must first determine that "the appointment is necessary to provide for the personal needs of that person,

including food, clothing, shelter, health care, or safety" (Mental Hygiene Law

§81.02[a][1]).  Similarly, prior to the appointment of a property management guardian,

the court must first determine that "the appointment is necessary...to manage the

property and financial affairs of that person"(id).  In either case, before appointing a

personal needs or property management guardian, the court must determine "that the

person agrees to the appointment, or that the person is incapacitated" (Mental Hygiene

Law §81.02[a][2]).  For the reasons previously stated this Court rejects the nomination

of Cherie Wrigley, the Cross-Petitioner.

  With respect to the second prong regarding the appointment of a guardian of the

person, "the determination of incapacity shall consist of a determination that a person is

likely to suffer harm because" (1) "the person is unable to provide for [his or her]

personal needs," and (2) "the person cannot adequately understand and appreciate the

nature and consequences of such inability" (Mental Hygiene Law §81.02[b][1], [2]).

  Similarly, a determination of incapacity in a proceeding for the appointment of a

guardian of the property, must be based upon evidence that the person in question is

"likely to suffer harm" because (1) he or she is "unable to provide for ... property

management," and (2) "the person cannot adequately understand and appreciate the

nature and consequences of such inability" (Mental Hygiene Law §81.02[b]).  Moreover,

in reaching this determination, the court is required to give primary consideration to the

person's "functional level and functional limitations" (Mental Hygiene Law §81.02[c]),

including an assessment of the person's ability to manage the activities of daily living

related to property management, such as money management and banking, his or her

understanding and appreciation of the nature and consequences of any inability to

manage these activities; his or her preferences, wishes, and values regarding the management of these affairs; and the nature and extent of the person's property and finances in the context of his or her ability to manage them (*see Matter of Maher*, 207 AD2d at 140: Mental Hygiene Law §§81.02[c], 81.03[h]). The court must also assess, in pertinent part, "the extent of the demands placed on the person.... by nature and the extent of that person's property and financial affairs"; any mental disability and the prognosis regarding same; "any medications with which the person is being treated and their effect on the person's behavior, cognition and judgment"; and "other relevant facts and circumstances" that may be present in a particular case (Mental Hygiene Law §81.02[c][4][d]).

Finally, the determination that a person is incapacitated for the purposes of appointing any guardian must be based on clear and convincing evidence (*see* Mental Hygiene Law §§81.02[b], 81.12[a]). "The burden of proof shall be on the petitioner" (Mental Hygiene Law §81.12[a]; see *Matter of Samuel S. [Helen S.]*, 96 AD3d at 957; *Matter of Maher*, 207 AD2d at 140).

Here, Petitioner has failed to demonstrate by clear and convincing evidence that Joanne Black is incapacitated within the meaning of the foregoing statutes (*see* Mental Hygiene Law §81.02[b]; *see Matter of Edward G.N.*, 17 AD3d 600, 601; *Matter of David C.*, 294 AD2d 433, 434), since the testimony adduced at the hearing failed to show that she was unable to provide for her personal or financial needs and that she was unable to adequately understand and appreciate the nature and consequences of any such inability (*see* Matter of Ardelia R., 28 AD3d 485, 486; *cf. Matter of Joseph S.*, 23 AD3d 804, 805-806; *Matter of Joseph V.*, 307 AD2d 469, 470-471). In any event, for the

reasons stated herein above, this Court also rejects the nomination of cross-petitioner, Cherie Wrigley to serve as guardian of the AIP.

## Decision

Accordingly, the motion (Mot #008) and cross motion (Mot #005) to appoint a Guardian of the person and property of Joanne Black is denied in its entirety. What remains before this Court are a series of open motions which upon consultation with the Westchester County Surrogate Court and upon further consideration and deliberation this Court's Decision and Order dated May 19, 2016, is vacated and amended as follows. It is therefore

**ORDERED,** that Mot #002, to temporarily restrain Bernard Black from selling the real property known as and by street number 26 McKeel Avenue, Tarrytown, NY 10591, is denied without prejudice and the moving party is directed to seek the same or similar relief in a Court of appropriate jurisdiction; and it is further

**ORDERED,** that Mot #003 to direct Bernard Black to return funds and turn over all documentation in connection with the payable-on-death accounts and all bank statements and documents filed in the Colorado Court proceeding is denied without prejudice and the moving party is directed to seek the same or similar relief in a Court of appropriate jurisdiction; and it is further

**ORDERED,** that Mot #006 to freeze the estate and Trust assets of Renata Black, and to restrain Bernard Black from accessing same is denied without prejudice and the moving party is directed to seek the same or similar relief in a Court of appropriate jurisdiction; and it is further

**ORDERED,** that Mot #007 to temporarily restrain and enjoin Cherie Wrigley, her

Page 8 of 10

attorney and the parties referred to as the "Wrigley group" from contacting the family of Bernard Black and Katherine Litvak and Northwestern University Law School (their employer), is denied and the temporary restraining order is discontinued based upon the assurance of all parties and their attorneys, on the record, that they would cease and desist any further contact with Northwestern University Law School, except as it relates to the collection on any judgment emanating from the State of Colorado; and it is further

**ORDERED,** that Mot #010 to freeze all estate and Trust assets of Renata Black, and to restrain Bernard Black from accessing same is denied without prejudice and the moving party is directed to seek the same or similar relief in a Court of appropriate jurisdiction; and it is further

**ORDERED,** that Mot #011 to enjoin and restrain Anthony Dain, Esq., from acting as Trustee and handling the assets of the Trust(s) established for the benefit of Joanne Black is denied without prejudice and the moving party is directed to seek the same or similar relief in a Court of appropriate jurisdiction; and it is further

**ORDERED,** that Mot #013 to remove Bernard Black and Samuel Black as Trustees of the Trusts established for the benefit of Joanne Black is likewise denied without prejudice and the moving party is directed to seek the same or similar relief in a Court of appropriate jurisdiction; and it is further

**ORDERED,** that any open issue(s) regarding the disclaimer or renunciation of Joanne Black's interests in the payable-on-death accounts left to her by her late mother, Renata Black, are denied without prejudice and the moving party is directed to seek the same or similar relief in a Court of appropriate jurisdiction; and it is further

Page 9 of 10

**ORDERED,** that the Trustee of the Joanne Black Supplemental Needs Trust, shall pay to Bartholomew T. Russo, Esq., the sum of $ 25,000.00  as and for the services rendered as Court Evaluator in this proceeding and in accordance with the affirmation of services filed herein; and it is further

**ORDERED,** that such payment be made from the assets of Joanne Black and said fee shall be subject to recovery of sixty (60%) per cent of said fee from Bernard Black; and it is further

**ORDERED,** that any appointee herein shall comply with Judiciary Law §35-a and Part 36 of the Rules of the Chief Judge of the State of New York and that no fee shall be paid to such appointee until such appointee has filed O.C.A. form UCS 875 and UCS 872 with the court; and it is further

**ORDERED,** that a copy of this Amended Order with Notice of Entry shall be served upon all interested parties, including the Clerk of the Surrogates Court, Westchester County File #2012/1209 and Howard Dubs, Esq., the guardian ad litem, within twenty (20) days of entry of this Order.

This constitutes the amended decision and order of this Court.

**ENTER:**

_____

**HON. THOMAS P. ALIOTTA, J.S.C.**