UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------x

SARAH H. BLACK, DANIEL L. BLACK, and
JACOB L. BLACK,

                     Plaintiffs,

    -against-

ANTHONY DAIN, CHERIE WRIGLEY, IRA
SALZMAN, MELISSA COEHNSON, BRIAN
A. RAPHAN, P.C., PAMELA KERR, ESAUN
G. PINTO, and CPI INVESTIGATIONS,

                  Defendants.

----------------------------------------------------------x

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ AUG 16 2017 ★

BROOKLYN OFFICE

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
16-CV-1238 (CBA) (ST)

**AMON, United States District Judge:**

    This case arises out of a dispute concerning the management and distribution of assets belonging to the estate of Renata Black, which were transferred into trusts. The plaintiffs—Sarah H. Black, Daniel L. Black, and Jacob L. Black—are grandchildren of Renata Black. They allege that defendant Anthony Dain, Renata Black's nephew, breached his fiduciary duties as a co-trustee of the trusts to which the estate funds were transferred. They also bring claims against the following defendants for aiding and abetting the breach of fiduciary duties: Cherie Wrigley, Ira Salzman, Melissa Cohenson, Brian A. Raphan, P.C., Pamela Kerr, Esaun G. Pinto, and CPI Investigations. Presently before the Court are four motions to dismiss filed by the defendants. For the reasons stated below, defendants' motions are granted in part and denied in part.

## BACKGROUND

### I.    The Parties

    The plaintiffs are the children of Bernard Black and grandchildren of the late Renata Black ("Renata"). (D.E. # 53 ("Am. Compl.") ¶ 1.) Renata Black had two children, Bernard Black ("Bernard") and Joanne Black ("Joanne"). (Id. ¶ 2.) Defendants Anthony Dain ("Dain") and Cherie Wrigley ("Wrigley") are siblings and Bernard's and Joanne's first cousins. (Id. ¶ 5.) The

1

other defendants are: (1) Melissa Cohenson, an attorney hired by Wrigley, and Brian A. Raphan, P.C., Cohenson's employer (collectively, the "Raphan defendants"); (2) Ira Salzman, who was hired by Dain and Wrigley to serve as Joanne's counsel in judicial proceedings in New York; (3) Pamela Kerr, a forensic accountant retained by Joanne Black's guardian <u>ad litem</u> in litigation in Denver Probate Court; (4) Esaun G. Pinto, Wrigley's associate; and (5) CPI Investigations ("CPI"), which is Pinto's employer.

## II.    Renata Black's Will and Estate

Renata established two trusts in 1997: (1) a Special Needs Trust ("SNT") for the benefit of her daughter Joanne Black, and (2) a trust for the benefit of Bernard and his children (the "Issue Trust"). (Am. Compl. ¶ 43.) During her lifetime, Renata funded the trusts only minimally, and deposited $500 in each trust. (<u>Id.</u>) In 1997, Renata executed a will, which stated that upon her death, two-thirds of her residual estate should go to the SNT and one-third should go to the Issue Trust. (<u>Id.</u> ¶ 45.) The will named Bernard as the executor of her estate. (<u>Id.</u> ¶ 46.) The SNT trust instrument named Renata and Dain as co-trustees, with Bernard to serve as a successor co-trustee in the event that Renata was unable to serve. (<u>Id.</u>) The co-trustees for the Issue Trust were Renata, Bernard, and Dain. (<u>Id.</u> ¶ 49.) Joanne is the beneficiary of the SNT, and plaintiffs are beneficiaries of the Issue Trust. (<u>Id.</u> ¶ 44.) The Issue Trust is the remainder beneficiary of the SNT. (<u>Id.</u> ¶ 48.)

Renata died in May 2012, (<u>id.</u> ¶ 53), and her will was admitted to probate in the New York Surrogate Court for Westchester County, (<u>id.</u> ¶ 98). At the time of her death, the bulk of her assets were several investment accounts with Vanguard with a value of approximately $3 million. (<u>Id.</u> ¶ 12). Shortly after Renata's death, it came to light that five weeks before she died, Renata had changed the beneficiary designation on her Vanguard account to make Joanne Black a 95% payable-on-death ("POD") beneficiary and to leave the remaining 5% to Bernard's five children

2

from his first marriage, with each getting 1%.  (Id. ¶ 53.)  According to plaintiffs, "[t]his designation removed the Vanguard assets from Renata's estate and meant that Joanne would get several million dollars directly, not in trust."  (Id.)

### III.   Bernard Black's Appointment as Conservator for Joanne Black and the Disclaimer

Throughout her life, Joanne has suffered from severe mental illness, sometimes involving periods of profound delusion and paranoia, and has previously been deemed dangerous to herself and/or others and incapable of caring for herself.  (Id. ¶ 3.)  At the time Renata changed the beneficiary designation of her Vanguard account, Joanne was "off [of her] medication, highly paranoid and delusional, had run away from home, and was living, effectively homeless, on the streets of Denver, Colorado."  (Id. ¶ 54.)

According to plaintiffs, upon Renata's death and the discovery of the POD designation, members of the Black Family agreed that the new POD designation was either a mistake by an elderly woman or outright fraud performed by someone else, perhaps by Joanne herself. (Id. ¶ 62.) Several members of the Black family announced an intention to sue to invalidate the POD designation, (id. ¶ 63), but such litigation would raise negative consequences for Joanne, (id. ¶¶ 64–71).  In order to avoid such results, Bernard convinced other members of the Black family to defer litigation so that he could apply to the Colorado courts to become Joanne's conservator, and then disclaim Joanne's direct receipt of the Vanguard funds.  (Id. ¶ 71.)

In the fall of 2012, Bernard sought the authority to become Joanne's conservator and permission to disclaim, on her behalf, the Vanguard funds in the Colorado courts.  (Id. ¶ 97.)  In December 2012, the Colorado court gave Bernard general conservatorship powers.  (Id. ¶ 102.) On March 3, 2013, the Denver Probate Court authorized Bernard to disclaim Joanne's interest as beneficiary under all of Renata's POD accounts.  (Id. ¶ 104.)  Bernard subsequently disclaimed

3

Joanne's interest as a beneficiary of Renata's POD Vanguard account (the "Disclaimer"), and pursuant to the terms of Renata's will, one-third of the disclaimed assets were allocated to the Issue Trust and the remaining two-thirds were allocated to the SNT. (Id. ¶ 117.) Bernard also established a third trust (the "2013 Trust") to hold workers compensation payments and other assets for Joanne Black. (Id. ¶¶ 8, 99.) Dain was a co-trustee of the 2013 Trust until he resigned in December 2015. (Id. ¶ 10.) For purposes of this Memorandum and Order, the Court will refer to the SNT, Issue Trust, and 2013 Trust collectively as the "Black Family Trusts."

## IV.    Subsequent Proceedings in State Courts

Plaintiffs' claims are both intertwined with, and arise from, litigation proceeding in the Denver Probate Court, the New York Supreme Court for Richmond County, and the New York Surrogate Court for Westchester County. The Court has taken judicial notice of public records filed in connection with these proceedings. See Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991).

### A. Denver Probate Court

In May 2014, Bernard submitted an application in the Denver Probate Court to serve as Joanne's guardian. (See D.E. # 66-4.) The Denver Probate Court appointed Gayle Young guardian ad litem for Joanne, and on October 8, 2014, Young filed a "Supplemental Guardian Ad Litem Report." (See D.E. # 66-6.) The report recommended that Bernard's petition for guardianship be dismissed for lack of jurisdiction. (Id. at 4.) Young also recommended that Bernard's conservatorship be terminated because the concerns that made the conservatorship necessary no longer existed and Joanne's needs were provided for by the SNT. (Id.) Young further indicated she was concerned about Bernard's management of Joanne's financial affairs. (Id. at 3–4.)

On October 27, 2014, the Denver Probate Court issued an order dismissing Bernard's guardianship petition for lack of jurisdiction and directing that Bernard show cause why his

conservatorship should not be terminated and an accounting be ordered. (See D.E. # 66-7.) The Denver Probate Court held a status conference on April 2, 2015, in which the parties stipulated to have a forensic accounting of Joanne Black's conservatorship estate performed. (D.E. # 63-6.) The Court suspended Bernard's authority to act as conservator and appointed a Special Conservator to act in the interim until a permanent conservator or guardian was appointed by a New York court. (Id. at 2.) The Denver Probate Court entered an order freezing Joanne's assets and all accounts in the conservatorship, pending final resolution of the proceedings. (Id. at 2–3.)

On June 2, 2015, forensic accountant Pamela Kerr submitted a report to Young and the Denver Probate Court, finding that Bernard had used his dual roles as Joanne's conservator and the executor of Renata's estate to transfer funds that were POD to Joanne outright; funds due to the SNT for Joanne's benefit were not deposited therein; there were insufficient funds remaining in Renata's estate to pay Joanne the two-thirds of the net estate due to the SNT; and Bernard's filings with the Denver Probate Court did not include details or accurate information that would have disclosed the foregoing to the court and to Joanne. (D.E. # 66-13 at 1.) Based upon this report and other information, on June 15, 2015, Joanne's court-appointed counsel, Lisa Diponio, filed a motion requesting that the Denver Probate Court consider entry of civil theft findings against Bernard. (See D.E. # 66-14.)

The Denver Probate Court held evidentiary hearings on June 16 and 17, August 5, and September 8, 2015, and the court considered live testimony, statements and argument of counsel, exhibits entered into evidence, the record, and relevant authority. (See D.E. # 66-15.) On September 28, 2015, the Denver Probate Court entered an order finding that Bernard breached his fiduciary duties and removing him as conservator. (Id. at 1, 8–9.) The court also found that Bernard "defended his actions in bad faith" and ordered that "all costs, fees and attorney fees

5

incurred to prosecute this matter shall be paid by and chargeable to Bernard Black, including [guardian ad litem] fees and fees for Pamela Kerr's accounting and services.  Any such fees and costs, including attorney fees paid by Joanne or her estate shall be reimbursed by Bernard Black with interest."  (Id. at 13.)  The Court revoked Bernard's letters and recommended that he not be appointed as a fiduciary in any capacity as to Joanne and that he be removed as executor of Renata's estate.  (Id. at 1.)

Following the September 28, 2015 order, Dain filed a motion in the Denver Probate Court seeking specific authority to use SNT funds to pay for attorneys and court-appointed professionals to represent Joanne in litigation initiated by Bernard and Samuel Black in the United States District Court for the Northern District of Illinois.[1]  (See D.E. # 68, Ex. D.)  On February 25, 2016, the Denver Probate Court authorized Dain to unilaterally withdraw funds from the SNT in an amount sufficient to retain counsel to represent Joanne and to pay for fees and costs related to the recovery of judgments, fees, and costs that Bernard has been ordered to repay to Joanne through surcharge or other court orders.  (D.E. # 66-16 at 6.)  Finally, by order dated March 17, 2016, the Denver Probate Court rendered an order addressing motions related to expert fees, attorneys' fees and costs related to Wrigley, and the calculation of the judgment amount related to the surcharge entered against Bernard.[2]  (See D.E. # 66-17.)  The court again found that Bernard "improperly exercised his power as a fiduciary/conservator as to Joanne Black" and improperly used funds to which Joanne was entitled.  (Id. at 3.)  The court entered judgment against Bernard for damages relating to surcharge, civil theft, and treble damages, and denied Bernard's requests for attorney

---

[1] On January 29, 2016, Bernard and Samuel Black filed a lawsuit against Joanne in the United States District Court for the Northern District of Illinois. See Black et al. v. Black, 16-CV-1763 (N.D. Ill. Jan. 29, 2016), D.E. # 1.  Bernard and Samuel alleged that they were under "judicial restraints" to distribute funds through the Issue Trust based on orders issued by New York and Colorado state courts, and requested that the court issue a declaratory judgment that they are free from restraint to administer the Issue Trust. Id.  By memorandum and order dated July 13, 2016, the court granted Joanne's motion to dismiss with prejudice due to lack of personal jurisdiction. See id., D.E. # 27.

[2] The Denver Probate Court heard oral argument on these motions on February 18, 2016.  (See D.E. # 66-15 at 1.)

fees and costs. (Id. at 9–10.) Bernard appealed the Denver Probate Court's September 28, 2015 hearing order, the March 17, 2016 order, and other related orders. (See D.E. # 98-1 (Bernard's opening appellate brief).)

## B. New York Supreme Court for Richmond County

On October 9, 2014, Bernard filed a petition with the New York Supreme Court for Richmond County alleging that Joanne was an incapacitated person and in need of a guardian. (D.E. # 84-18 at 1.) On October 16, the court issued an order directing that the alleged incapacitated person, Joanne, show cause why a guardian should not be appointed and that notice be given to interested persons, including Dain. (Id. at 1–2.) Wrigley filed a cross-petition on October 31, 2014, requesting her appointment as Joanne's guardian. (Id. at 2.) Bernard subsequently withdrew his petition on September 29, 2015. (Id.) The court held a hearing concerning Wrigley's petition on October 1, 2015. (Id.) Wrigley was represented by Melissa Cohenson, who is employed by the law firm Brian A. Raphan, P.C., and Joanne was represented by Ira Salzman. (Id.) Dain appeared pro se in support of Wrigley, but Bernard and Samuel Black were not present. (Id.) The court issued a decision from the bench granting Wrigley's cross-petition. (Id.)

Sometime in October 2015, Cohenson filed a proposed order and judgment appointing Wrigley as guardian and a corresponding notice of settlement, but did not provide notice to Bernard, Samuel, and other members of the Black Family. (Id. at 2–3.) Bernard filed an objection to the lack of proper notice, and the court subsequently ordered Cohenson to serve Bernard with the order and judgment and corresponding notice of settlement. (Id. at 3.)

On January 7, 2016, Katherine Litvak, Bernard's wife and Joanne's sister-in-law, submitted a letter to the court requesting a new hearing on the question of appointing a guardian

for Joanne. (Id. at 3–4.) Wrigley admitted that on January 8, 2016, she filed a complaint against Litvak, a law professor at Northwestern University, on a university hotline, and forwarded a copy of the sealed transcript of the court's October 1, 2015 hearing. (D.E. # 84-23 at 4.) The court found that Wrigley had apparently filed a similar complaint against Bernard nine months earlier. (Id.) On January 27, 2016, the court issued a temporary restraining order that barred Kerr, Cohenson, Dain, Pinto, Raphan, Salzman, and their agents from having any contact with the Black family, their employers, and other relevant parties. (D.E. # 84-18 at 4–5.)

On June 7, 2016, the court issued an amended decision and order denying the motion and cross-motion to appoint a guardian for Joanne. (D.E. # 84-23.)

### C. New York Surrogate Court

On August 8, 2016, Joanne filed a petition in the New York Surrogate Court for Westchester County seeking to reverse the Disclaimer and have the POD funds returned from the estate to her. (D.E. # 84-24.) Two days later, on August 10, 2016, the court issued an order to show cause why the court should not issue a decree ordering the following: (1) the suspension and revocation of Bernard's letters testamentary; (2) the appointment of Dain, the named successor executor, as temporary executor during the suspension of Bernard's letters; and (3) granting letters testamentary to Dain upon Bernard's removal. (Id.)

### V.   Plaintiffs' Claims

Plaintiffs filed the complaint in this action on March 11, 2016, (see D.E. # 1), and filed an amended complaint on June 27, 2016, (see Am. Compl.) Plaintiffs' amended complaint raises two categories of claims: (1) claims that Dain, as trustee, breached an array of fundamental fiduciary duties that he owed to the Black Family Trusts (the "breach of fiduciary duty claims"); and (2)

8

claims that defendants aided and abetted Dain and Joanne[3] in breaching their fiduciary duties to the three Black Family Trusts (the "aiding and abetting claims").   Plaintiffs request actual damages, punitive damages, injunctive relief, and declaratory relief.

### A. Breach of Fiduciary Duty Claims

In the breach of fiduciary duty claims, plaintiffs allege that for each of the Black Family Trusts, Dain violated the: (1) duty of loyalty; (2) duty to defend the trust; (3) duties of disclosure and confidentiality; (4) duty to obey the trust instrument; and (5) duty of impartiality among beneficiaries. (See generally id. ¶¶ 465–1306.) According to plaintiffs, "[f]or each trust and each duty, there are also distinct classes of victims to whom Dain breached his duties—primary beneficiaries, remainder beneficiaries, and the trust itself as a legal entity." (Id. ¶ 468.)

Plaintiffs first allege that Dain neglected his fiduciary duties to all three trusts by: (1) failing to timely sign documents to open bank accounts for the trusts, (id. ¶¶ 117–21); and (2) refusing to be involved in the operation of the trusts, which delayed the movement of funds from Renata Black's estate into the SNT, (id. ¶ 126), and effectively froze all operations of the trusts," (id. ¶ 124). Plaintiffs further allege that Dain and Wrigley pursued a scheme to divert and strip assets from the Black Family Trusts to their own control and for their own benefit. (Id. ¶ 19.) Plaintiffs claim that Wrigley made a number of unreasonable financial demands that served to strip assets from the Black Family Trusts for her own benefit, including: the transfer of significant assets from Renata Black's estate to Wrigley, including valuable jewelry, (id. ¶¶ 141–43); $7,000 to reimburse for a four-day trip to visit Joanne Black in New York, (id. ¶ 144); and reimbursement for false and inflated bills for Joanne Black's dental care and cell phone bill, (id. ¶¶ 148–151.) According to

---

[3] Plaintiffs do not bring claims against Joanne for breach of fiduciary duty.

plaintiffs, Dain approved all of Wrigley's spending demands and the payment of similar expenses for Wrigley in the future. (Id.)

Plaintiffs also claim that Dain used his position as a trustee to initiate lawsuits in multiple jurisdictions seeking to remove assets from the trusts. (Id. ¶ 20.) In these lawsuits, Dain sought to reverse the Disclaimer, which would defund the SNT and the Issue Trust and divert their assets to Joanne. (Id. ¶ 23.) Plaintiffs further allege that Dain improperly used his position as a trustee to block the use of trust assets to defend against his litigation. (Id. ¶ 24.) In particular, they claim that Dain sought to freeze all three trusts in two courts and openly stated that his goal was to exhaust the financial ability of the beneficiaries and other trustees to hire legal counsel to defend against his asset-stripping efforts. (Id.)

To secure control over the assets from the trusts, plaintiffs allege, Wrigley "applied to be Joanne's property guardian. That is, while Dain was using his trustee status to remove the assets from the Black Family Trusts, ostensibly for the benefit of the mentally ill Joanne, Dain's sister Wrigley was standing on the receiving end, seeking control of those assets." (Id. ¶¶ 21–22.) Wrigley filed a petition in the New York Supreme Court for Richmond County for guardianship of the person and property of Joanne. (Id. ¶¶ 200, 358.) Wrigley stated that as Joanne's guardian, she expected to maintain the same level of spending, detailed above in the discussion of her financial demands, which plaintiffs calculate to exceed $100,000 per year. (Id. ¶¶ 154–55.) According to plaintiffs, "[g]iven Joanne Black's expected lifetime of at least 25 years . . . the total value of Joanne Black's money that Wrigley demanded to be transferred to Wrigley and Pinto would, by itself, consume the entire principal of the SNT." (Id. ¶ 156.) To force Bernard Black to transfer significant assets to Wrigley outright and to agree to Wrigley's plan for guardianship, Wrigley repeatedly threatened and harassed Bernard and his family. (Id. ¶¶ 168, 170, 172.)

According to plaintiffs, "Dain's multi-year, multi-jurisdiction effort to divert assets from the Black Family Trusts to his own and Wrigley's control was frivolous and malicious. It has already cost the trusts, their other trustees, and the beneficiaries more than $1,000,000 in legal costs. . . . These losses continue to increase, as Dain and his accomplices continue to pursue their asset-stripping scheme in multiple courts simultaneously." (Id. ¶ 32.)

### B.  Aiding and Abetting Claims

The second category of claims are the aiding and abetting claims. Plaintiffs first allege that Dain and Wrigley induced Joanne to breach her fiduciary duties to the SNT and to the Issue Trust by manipulating her into suing to defund the SNT and the Issue Trust and providing her substantial assistance. (Id. ¶¶ 1307–32; 1352–73.) Plaintiffs also claim that the following defendants aided and abetted both of Dain's breaches of fiduciary duties: Wrigley, (id. ¶¶ 1333–80); Salzman, (id. ¶¶ 1381–1433); Pinto and CPI, (id. ¶¶ 1434–49); Cohenson and Brian A. Raphan P.C., (id. ¶¶ 1450–72); and Kerr, (id. ¶¶ 1473–95).

### VI.  Procedural Posture

The following sets of defendants have filed motions to dismiss: (1) Anthony Dain; (2) Brian A. Raphan, P.C. and Melissa Cohenson (the "Raphan Defendants"); (3) Cherie Wrigley, Esaun G. Pinto, and CPI (the "Wrigley-Pinto-CPI Defendants"); (4) Ira Salzman; and (5) Pamela Kerr.  The Wrigley-Pinto-CPI Defendants have also moved, in the alternative, for summary judgment. (D.E. # 77 ("Wrigley-Pinto-CPI Defs. Mem.") at 22–24.) By Memorandum and Order dated December 29, 2016, the Court granted Kerr's motion to dismiss.  Because there is substantial overlap in the arguments in support of and in opposition to the remaining four motions to dismiss, the Court will address them together in this omnibus opinion.  In their four motions, defendants raised the following grounds for dismissal: (1) lack of subject-matter jurisdiction under the probate exception and the Rooker-Feldman doctrine; (2) lack of standing; (3) abstention; (4) lack of

11

personal jurisdiction; (5) collateral estoppel; (6) <u>res judicata</u>; (7) failure to state a claim of aiding and abetting; (8) failure to include necessary parties; and (9) plaintiffs' status as minors.

## DISCUSSION

### I.   Motions To Dismiss For Lack Of Subject Matter Jurisdiction

In reviewing a motion to dismiss, the Court should first address grounds that challenge its subject matter jurisdiction because absent authority to adjudicate, the Court lacks a legal basis to grant any relief, or even consider the action further. <u>See</u> <u>Arar v. Ashcroft</u>, 532 F.3d 157, 168 (2d Cir. 2008). Here, federal jurisdiction is premised on 28 U.S.C. § 1332, the statute vesting in federal district courts diversity jurisdiction. (<u>See</u> Am. Compl. ¶ 34.) Because the amount-in-controversy exceeds $75,000, (<u>see</u> <u>id.</u> ¶ 40), and there is complete diversity among the parties,[4] the requirements for diversity jurisdiction are met. The defendants have raised three challenges to this Court's subject matter jurisdiction over the instant action: (1) the <u>Rooker-Feldman</u> doctrine, (2) the probate exception, and (3) abstention.

### A.  Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000). The party "asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." <u>Id.</u> In determining whether subject matter jurisdiction exists, the Court "must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." <u>Jaghory v. N.Y. State Dep't of Educ.</u>, 131 F.3d 326, 329 (2d Cir. 1997). When subject

---

[4] Plaintiffs Sarah H. Black, Daniel L. Black, and Jacob L. Black are residents and citizens of Illinois, (Am. Compl. ¶ 35); Dain and Wrigley are residents and citizens of California, (<u>id.</u> ¶ 36); Salzman, the Raphan Defendants, and Pinto are residents and citizens of New York, (<u>id.</u> ¶ 37); CPI is registered as a private investigation firm in New York, (<u>id.</u> ¶ 38); and Kerr is a resident and citizen of Colorado, (<u>id.</u> ¶ 39).

matter jurisdiction is challenged, the Court may also consider evidence "presented by affidavit or otherwise." Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986).

## B. Rooker-Feldman Doctrine

Dain, Salzman, and the Wrigley-Pinto-CPI Defendants argue plaintiffs' claims are barred by the Rooker-Feldman doctrine. (D.E. # 89 ("Dain Mem.") at 19–20; D.E. # 72 ("Salzman Mem.") at 27–28; Wrigley-Pinto-CPI Defs. Mem. at 12–13.) The Rooker-Feldman doctrine "bars the federal courts from exercising jurisdiction over claims 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments.'" Sykes v. Mel S. Harris & Assocs. L.L.C., 780 F.3d 70, 94 (2d Cir. 2015) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). For the Rooker-Feldman doctrine to apply, (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005) (alterations omitted).

The Rooker-Feldman doctrine does not apply here because the plaintiffs in this action were not parties to any previous state court proceeding. See Lance v. Dennis, 546 U.S. 459, 466 (2006) (holding that Rooker-Feldman does not bar actions by nonparties to prior state court judgments); see also Bd. of Managers of 195 Hudson Street Condominium v. Jeffrey M. Brown Assocs., Inc., 652 F. Supp. 2d 463, 469 (E.D.N.Y. 2009 (explaining that the Rooker-Feldman doctrine requires that "the party defeated in state court must share a common identity with the federal plaintiff"). Moreover, even if plaintiffs were in privity with Bernard Black, a party to relevant prior state court

13

judgments, this would not be sufficient to divest this Court of jurisdiction.  As the Supreme Court explained, "Rooker-Feldman is simply not preclusion by another name. The doctrine applies only in 'limited circumstances' where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court. The Rooker-Feldman doctrine does not bar actions by nonparties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment." Lance, 546 U.S. at 466 (quoting Saudi Basic Indus. Corp., 544 U.S. at 291 (2005).

### C. Probate Exception

Dain and Salzman move to dismiss this action for lack of subject matter jurisdiction pursuant to the probate exception to federal jurisdiction.  (Dain Mem. at 8–18; Salzman Mem. at 27–28.)  "The 'probate exception' is an historical aspect of federal jurisdiction that holds 'probate matters' are excepted from the scope of federal diversity jurisdiction." Lefkowitz v. Bank of N.Y., 528 F.3d 102, 105 (2d Cir. 2007).  The probate exception serves two discrete purposes: (1) it "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; and (2) it "precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." Marshall v. Marshall, 547 U.S. 293, 311–12 (2006). However, the probate exception does not divest federal courts of jurisdiction over cases that would "interfere" in some vague way with probate proceedings. Lefkowitz, 528 F.3d at 105–06.

The prohibition against "endeavoring to dispose of property that is in the custody of a state probate court" is, the Supreme Court has explained, "essentially a reiteration of the general principle that, when one court is exercising in rem jurisdiction over a res, a second court will not assume in rem jurisdiction over the same res." Marshall, 547 U.S. at 311 (internal citations omitted).  "This general principle applies equally when, as in this case, the res in question is not

14

property of an estate but property of a trust." Mercer v. Bank of N.Y. Mellon, N.A., 609 F. App'x 677, 678–79 (2d Cir. 2015); see also Princess Lida of Thurn & Taxis v. Thompson, 305 U.S. 456, 466 (1939); Beach v. Rome Trust Co., 269 F.2d 367, 371 (2d Cir. 1959). Moreover, it applies also to jurisdiction that is quasi in rem: it "is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted, but applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property." Princess Lida, 305 U.S. at 466–67.

When analyzing the applicability of the probate exception, the Court must "must examine the substance of the relief that Plaintiffs are seeking, and not the labels that they have used." Mercer, 609 F. App'x at 679–80. In analyzing the substance of the relief that plaintiffs request, the Court concludes that some of the claims are barred by the probate exception and others are not.

### 1. Claims Outside The Probate Exception

Plaintiffs' claims for damages and some of plaintiffs' claims for injunctive relief are not barred by the probate exception. Plaintiffs claim that Dain pursued a scheme to divert and strip assets from the Black Family Trusts in violation of his fiduciary duties and that the other defendants aided-and-abetted this breach. As a result of this scheme, they claim the Black Family Trusts incurred litigation expenses and other costs, money which they assert otherwise would have been distributed to the trusts and seek in personam damages from defendants. (Am. Compl. ¶¶ 1496–97.) Plaintiffs also bring claims for injunctive relief that arise from and are related to these damages claims. In particular, plaintiffs ask this Court to issue an injunction to stop Wrigley from assisting Dain in his breach of fiduciary duties, (id. ¶ 1507), and a preliminary injunction against Dain and Wrigley barring them from engaging in transactions with the purpose or effect

of shielding their assets from creditors, (id. ¶ 1508). It is undisputed that these claims do not require this Court to probate a will. The Court must therefore determine whether the resolution of plaintiffs' claims for damages would require it to "dispose of property that is in the custody of a state probate court." Marshall, 547 U.S. at 312.

It is well-settled that "claims seeking, in essence, disgorgement of funds that remain under the control of the [p]robate [c]ourt," fall outside federal jurisdiction, but those "seeking personal damages from the defendants" do not. Marcus v. Quattrocchi, 715 F. Supp. 2d 524, 532 (S.D.N.Y. 2010) (quoting Lefkowitz, 528 F.3d at 107–08) (internal quotation marks omitted). Here, the relief plaintiffs seek is an in personam judgment against defendants. (Am. Compl. ¶ 1496.) In the wake of Marshall, such claims are precisely the type of claim that courts have found to be outside the bounds of the probate exception. See, e.g., Lefkowitz, 528 F.3d at 107–08 (finding that tort claims of breach of fiduciary duty and fraudulent misrepresentation, which sought "damages from [d]efendants personally," did not ask the court to exercise control over a res under a probate court's jurisdiction); Lifschultz v. Lifschultz, No. 12-CV-1881 (ER), 2012 WL 2359888, at *5–6 (S.D.N.Y. June 20, 2012) (stating that claims seeking personal damages, unlike claims seeking distributions from estate funds under the control of a probate court, are not subject to the probate exception); Marcus, 715 F. Supp. 2d at 532 (same); see also Marshall, 547 U.S. at 312 (explaining that the probate exception can no longer be used to dismiss "widely recognized tort[s]" such as breach of fiduciary duty or fraudulent misrepresentation merely because the issues intertwine with claims proceeding in state court). Dain counters that plaintiffs "are asking this Court to wrest jurisdictional control over funds which are part of Joanne Black's conservatorship estate, and which are the subject of direct Orders and Judgments of the Denver Probate Court." (Dain. Mem. at 11.) However, plaintiffs have requested an in personam judgment from defendants, so this Court

16

would not have to disgorge funds that remain under the control of any state court to grant plaintiffs the relief they seek. Accordingly, plaintiffs' claims do not require this Court to exercise control of the <u>res</u> under the jurisdiction of the Denver Probate Court.[5]

For these reasons, the Court concludes that plaintiffs' claims for damages and for injunctive relief related to those claims are not subject to the probate exception.

### 2. Claims Barred By The Probate Exception

A number of plaintiffs' claims for injunctive and declaratory relief are barred by the probate exception. Here, the Denver Probate Court is administering Joanne's conservatorship estate, and Renata's estate was admitted to probate in the New York Surrogate Court. Furthermore, in its administration of Joanne's conservatorship estate, the Denver Probate Court issued orders concerning the SNT, including an order requiring an accounting of all funds and assets related to Joanne Black, (<u>see</u> D.E. # 63-6), authorized Dain to withdraw funds from the SNT, (<u>see</u> D.E. # 66-16), and ordered that Wrigley be paid $18,893.14 from the conservatorship estate or the SNT, (<u>see</u> D.E. # 66-17). Accordingly, the Denver Probate Court has exercised supervisory control over the conservatorship estate, including the funds transferred to the SNT. <u>See, e.g.</u>, <u>Mercer</u>, 609 F. App'x at 679 (finding New York Surrogate Court exercised supervisory control over a trust where the court issued letters testamentary and letters of trusteeship, issued a temporary restraining order barring a trustee from making distributions from the trust, and denied summary judgment on plaintiffs' petition for removal).

In their Amended Complaint, plaintiffs ask this Court to: (1) remove Dain as a trustee of the SNT, (Am. Compl. ¶ 1502); (2) issue a declaratory judgment that the "Colorado Court has no

---

[5] Dain also argues that the probate exception applies because plaintiffs "claim virtually the same damages, none of which redound to the Plaintiffs themselves, but rather to Bernard Black." (Dain. Mem. at 14.) However, this argument goes to standing and whether the plaintiffs are asserting their own legal rights, rather than the applicability of the probate exception.

jurisdiction over the Estate of Renata Black, the Issue Trust, or the SNT," (id. ¶ 1503(a)); (3) issue

a declaratory judgment that "the Colorado court's orders directing or permitting any actions by

Dain or any other person with regard to the Estate, the Issue Trust, or the SNT, or making any

other decisions with regard to the Estate, the Issue Trust, and the SNT, have no legal effect," (id.

¶ 1503(b)); (4) issue preliminary and permanent injunctions to bar Dain from "appearing in court

or otherwise participating in any proceedings involving the Black Family Trusts, their beneficiaries

or trustees, or the Estate of Renata Black, in any capacity other than as a factual witness," (id.

¶¶ 1504–05); (5) issue a preliminary injunction "allowing the SNT and the Issue Trust to

compensate their trustees for legal and accounting expenses reasonably incurred in: (a) this action;

(b) their defense of the SNT and the Issue Trust against the Dain and Wrigley defunding effort and

the other components of the Dain-Wrigley litigation war against the SNT and the Issue Trust," (id.

¶ 1509); and (6) issue a declaratory judgment "finding [Dain] liable for all future litigation costs,

in both Colorado and New York, and other losses to the Black Family Trusts caused by Dain's

past breaches of fiduciary duty and by Dain's and Wrigley's past or future efforts to defund the

trusts, manipulate co-trustees, initiate litigation against the trustees or the trusts, and so on," (id.

¶ 1512).

These claims explicitly request that this Court involve itself in the administration of

Joanne's conservatorship estate, Renata's estate, and the SNT—both by making decisions

regarding access to funds in the estate and payment of fees and expenses, and by issuing orders

concerning the jurisdiction of state probate courts over the estates. As a result, granting plaintiffs'

claims for injunctive relief would require this Court to intervene in the administration of these

estates by the state courts, which is prohibited by the probate exception. See Capponi v. Murphy,

772 F. Supp. 2d 457, 467 (S.D.N.Y. 2009) (holding that the probate exception bars jurisdiction

18

over plaintiffs' claim for an injunction barring a Virginia probate court from continuing to exercise jurisdiction over decedent's estate).

Plaintiffs counter that the probate exception does not apply to the Denver Probate Court because that court only handled Bernard Black's conservatorship over Joanne Black, rather than probate matters. (D.E. # 79 ("Pls. Mem. Opp. Dain") at 18.) However, a probate court administering the estate of a conservatee or a guardian is within the boundaries of the probate exception. See Struck v. Cook Cty. Pub. Guardian, 508 F.3d 858, 860 (7th Cir. 2007). The key issue in the jurisdictional analysis is whether plaintiffs' claims concern the res that another state controls—this criteria is satisfied here, notwithstanding the fact that the res at issue concerns funds drawn from a conservatorship estate rather than a decedent's estate. See Marshall, 547 U.S. at 311–12. Here, plaintiffs are trying to remove into the federal court a res over which a state court is exercising control, which is what "the probate/domestic-relations exception is intended to prevent." Struck, 508 F.3d at 860.

### D. Abstention

The Wrigley-Pinto-CPI defendants argue the Court should abstain from exercising jurisdiction over the instant action.[6] (Wrigley-Pinto-CPI Defs. Mem. at 14–16.) Salzman argues that the Court should stay this action pending the outcome of Bernard's appeal of the Denver Probate Court orders, (Salzman Mem. at 32), which the Court construes as a request to stay this action based on the existence of related ongoing state proceedings under the abstention doctrine.

---

[6] A motion to dismiss based on the abstention doctrine is also considered as a motion made pursuant to Rule 12(b)(1). See Republic of Colombia v. Diageo North Am. Inc., 531 F. Supp. 2d 365, 381 (E.D.N.Y. 2007) ("Courts have recognized a variety of other defenses that one normally would not think of as raising subject matter jurisdiction questions when considering a Rule 12(b)(1) motion, including claims that . . . the subject matter is one over which the federal court should abstain from exercising jurisdiction.")).

Abstention is a judicially created doctrine born out of the notion that even where "a federal equity court does have jurisdiction of a particular proceeding," it may abstain from exercising that jurisdiction out of "proper regard for the rightful independence of state governments in carrying out their domestic policy." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 724 (1996) (internal quotation marks omitted). Principals set forth by the Supreme Court in Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), allow a federal court to abstain from exercising jurisdiction over a case where there is pending a parallel state court proceeding and certain other factors weigh in favor of abstention. Abstention from the exercise of federal jurisdiction is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." Colo. River, 424 U.S. at 813. Indeed, in deciding whether to abstain, federal courts must remember their "virtually unflagging obligation . . . to exercise the jurisdiction given them." Id. at 817. A federal district court should abstain from deciding a case correctly before it, therefore, only when doing so would "clearly serve an important countervailing interest." Id. at 813 (quoting Cty. of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188–89 (1959)).

The principles of Colorado River are to be applied only in situations "involving the contemporaneous exercise of concurrent jurisdictions." Dittmer v. Cty. of Suffolk, 146 F.3d 113, 117–18 (2d Cir. 1998). Put differently, "a finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under Colorado River." Id. at 118. "Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." Nat'l Union Fire Ins. Co. of Pittsburgh v. Karp, 108 F.3d 17, 22 (2d Cir. 1997); see also Great S. Bay Med. Care, P.C. v. Allstate Ins. Co., 204 F. Supp. 2d 492, 496 (E.D.N.Y. 2002)

20

("Lawsuits are considered 'parallel' if 'substantially the same parties are contemporaneously litigating substantially the same issues in different forums.'" (quoting Dittmer, 146 F.3d at 118)).

The Court concludes that the instant action is not parallel to any ongoing state proceeding. As an initial matter, the plaintiffs in this case are not participants in any litigation pending in state court. This fact is not dispositive, however, since "[c]omplete identity of parties and claims is not required." GBA Contracting Corp. v. Fid. & Deposit Co., No. 00-CV-1333 (SHS), 2001 WL 11060, at *1 (S.D.N.Y. Jan. 3, 2001). Rather, "the parallel litigation requirement is satisfied when the main issue in the case is the subject of already pending litigation." Id. Indeed, there must be "a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." Stone v. Patchett, No. 08-CV-5171 (RPP), 2009 WL 1108596, at *14 (S.D.N.Y. Apr. 23, 2009) (quoting In re Comverse, No. 06-CV-1849 (NGG) (RER), 2006 WL 3193709, at *2 (E.D.N.Y. Nov. 3, 2006)). Here, the pending proceedings in state court involve different subject matters and different forms of relief than the instant action. Plaintiffs in this action seek in personam damages from Dain for breach of fiduciary duty and those who allegedly aided-and-abetted his breach. As discussed above, these claims are not pending in state court and do not implicate a res in the custody of a state court. Although there is some overlap in the subject matter of the issues in the instant action and pending state court proceedings, this is insufficient to render the proceedings parallel. See Alliance of Am. Insurers v. Cuomo, 854 F.2d 591, 603 (2d Cir. 1988) (explaining that some overlap of subject matter is not enough to make state and federal actions concurrent). Colorado River abstention is therefore not warranted in this case. See, e.g., Sheerbonnet, Ltd. v. Am. Exp. Bank Ltd., 17 F.3d 46, 50 (2d Cir. 1994) (holding that proceedings where parties were not identical and that involve "different subject matters and different forms of relief" were not parallel).

The Court further concludes that a stay is not warranted pending the outcome of Bernard's appeal of the Denver Probate Court's orders. "In the context of abstention in deference to parallel state-court litigation, the Supreme Court has cautioned that 'a stay is as much a refusal to exercise federal jurisdiction as a dismissal,' because the decision to grant a stay 'necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case.'" Royal and Sun Alliance Ins. Co. of Canada v. Cent. Intern. Arms, Inc., 466 F.3d 88, 96 (2d Cir. 2006) (quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 28 (1983)). As discussed above, because the instant action is not parallel to the proceedings in the Denver Probate Court, a stay is not warranted under Colorado River. See In re Comverse Tech., Inc. Derivative Litig., No. 06-CV-1849 (NGG) (RER), 2007 WL 2743635, at *1–3 (E.D.N.Y. Sept. 18, 2007) (holding that the court could not stay the action because it was not parallel to a pending state action).

***

The Court grants defendants' motion to dismiss with respect to plaintiffs' claims for injunctive relief to the extent that they request this Court administer Joanne's conservatorship estate, Renata's estate, and the SNT; these claims are discussed in more detail *infra* at pages 17 to 18. (See Am. Compl. ¶¶ 1502, 1503(a), 1503(b), 1504–05, 1509, 1512.) The Court has subject matter jurisdiction over plaintiffs' claims for damages and denies defendants' motion to dismiss these claims under Rule 12(b)(1). The Court further finds that abstention from the exercise of jurisdiction over these claims is not warranted. The Court considers defendants' remaining arguments with respect to these claims only.

## II.    Motions To Dismiss For Lack Of Personal Jurisdiction

Before ruling on the merits, the Court must also determine that it has personal jurisdiction over the parties.  Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007).  Here, Dain moves to dismiss for lack of personal jurisdiction.  (Dain Mem. at 22–24.)

### A.  Standard of Review

Federal Rule of Civil Procedure 12(b)(2) "permits a defendant to challenge a court's personal jurisdiction over it prior to the filing of an answer or the commencement of discovery." A.W.L.I. Group, Inc. v. Amber Freight Shipping Lines, 828 F.Supp.2d 557, 562 (E.D.N.Y. 2011). In considering a motion to dismiss for lack of personal jurisdiction, a court may rely on affidavits and other supporting materials beyond the pleadings.  Phillips v. Reed Group, Ltd., 955 F.Supp.2d 201, 225 (S.D.N.Y. 2013).  "When responding to a Rule 12(b)(2) motion to dismiss . . . the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant."  Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999).  Where, as here, a court opts to determine the jurisdictional issue without an evidentiary hearing or discovery, a plaintiff need "make only a prima facie showing of jurisdiction through its own affidavits and supporting materials."  Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981).

To determine personal jurisdiction over individual defendants, a court first looks to the law of the state in which the district court sits.  Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007).  If a court determines that it has personal jurisdiction under state law, it must then consider "whether asserting jurisdiction under that provision would be compatible with requirements of due process established under the Fourteenth Amendment to the United States Constitution."  Id.  Here, it is undisputed that this Court lacks general personal jurisdiction over

Dain. Rather, plaintiffs assert that they have sufficiently plead facts sufficient for this Court to exercise specific personal jurisdiction over Dain. (Pls. Mem. Opp. Dain at 24–28.)

### B.  This Court Has Personal Jurisdiction Over Dain

Under New York law, there are two bases for personal jurisdiction over out-of-state defendants: (1) general jurisdiction pursuant to N.Y. C.P.L.R. § 301, and (2) long-arm jurisdiction pursuant to N.Y. C.P.L.R. § 302.   Here, plaintiffs rely on N.Y. C.P.L.R. § 302(a)(2), which empowers courts to exercise jurisdiction over non-domiciliaries when the cause of action arises from the commission of a tortious act within the state, except as to a cause of action for defamation. Plaintiffs contend that Dain has engaged in purposeful and tortious acts in New York as part of his scheme to defund the Black Family Trusts. (Pls. Mem. Opp. Dain. at 24–27.)  In particular, they allege that in furtherance of his breach of fiduciary duties, Dain: made personal appearances in New York courts, (Am. Compl. ¶¶ 448, 1320, 1468); filed multiple documents in New York courts, (id. ¶¶ 1320, 1387); participated in telephone calls with the New York Supreme Court for Richmond County and the Court Evaluator in the guardianship case, (id. ¶ 454); and sent letters to Bernard's counsel in the New York proceedings, (id. ¶ 351).  According to plaintiffs, all of these "personal appearances, filings, and telephone calls were in pursuit of [Dain's] overall effort to defund the Black Family Trusts." (Pls. Mem. Opp. Dain at 25.)

As a preliminary matter, the Second Circuit has interpreted specific personal jurisdiction under section 302(a)(2) narrowly and has held that to qualify for jurisdiction under this subsection, a defendant's act or omission must have occurred within the State.[7] See Bank Brussels Lambert,

---

[7] Prior to its amendment in 1966, the New York long-arm statute was consistently read to "cover[ ] only a tortious act committed (by a nondomiciliary) in this State." Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 464 (1965).  Since then, a small number of lower state courts have, on narrow grounds, expanded the rule to recognize that "not all tortious acts that occur within the State of New York need be committed while the defendant is physically present within New York boundaries for purposes of CPLR § 302(a)(2)." Davidoff v. Davidoff, 819 N.Y.S.2d 209 (Sup. Ct. 2006).  Nonetheless, the Second Circuit continues to adhere to the traditional, stricter rule.

171 F.3d at 790 (reaffirming that a "defendant's physical presence in New York is a prerequisite to jurisdiction under § 302(a)(2)")); see also DirecTV Latin Am., LLC v. Park 610, LLC, 691 F. Supp. 2d 405, 418 (S.D.N.Y. 2010) (collecting district court cases holding the same). Accordingly, plaintiffs' allegations of phone calls made and documents and letters prepared out-of-state, but transmitted to New York, are insufficient to establish specific personal jurisdiction under section 302(a)(2). However, plaintiffs have alleged that Dain was physically present in New York for court proceedings and that his involvement in those proceedings constituted tortious conduct. (See Am. Compl. ¶¶ 448, 1320, 1468.) Moreover, under New York law, just one act in New York is sufficient to establish specific jurisdiction provided that the defendant's acts were "purposeful and there is a substantial relationship between the transaction and the claim asserted." Deutsche Bank Sec., Inc. v. Mont. Bd. of Inv., 7 N.Y.3d 65, 71 (2006). As a result, plaintiffs have pleaded sufficient facts to satisfy section 302(a)(2).

Having concluded there is an adequate basis for the exercise of specific jurisdiction over Dain, the Court must next determine whether the exercise of jurisdiction over him comports with due process, which requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger-King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). There are two aspects of the due process analysis: (1) the minimum contacts inquiry, and (2) the reasonableness inquiry. Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 171 (2d Cir. 2010).

Although the constitutional due process issue is a separate question, "[o]rdinarily . . . if jurisdiction is proper under the CPLR, due process will be satisfied because § 302 does not reach as far as the [C]onstitution permits." Tianbo Huang v. iTV Media, Inc., 13 F. Supp. 3d 246, 256

---

See Bank Brussels Lambert, 171 F.3d at 790. In light of controlling Second Circuit precedent, the Court is required to apply the majority rule requiring the defendant to physically commit the tortious act within New York.

(E.D.N.Y. 2014) (quoting Topps Co. v. Gerrit J. Verburg Co., 961 F. Supp. 88, 90 (S.D.N.Y. 1997) (alterations in original).   Here, Dain had sufficient minimum contacts with New York that the exercise of personal jurisdiction over him satisfied due process for the same reasons discussed above.   By virtue of his active participation in litigation in New York courts, Dain has availed himself of the privilege of conducting activities within the forum state by utilizing its courts, and directly invoked the benefits and protections of the forum state's laws.   Moreover, plaintiffs' claims arise directly out of these forum-related activities because plaintiffs allege that Dain's improper conduct in litigation in New York courts constitutes a breach of fiduciary duties.

With respect to the reasonableness inquiry, even where an out-of-state defendant is deemed to have purposefully availed itself of the forum state, a plaintiff "must still demonstrate that the exercise of jurisdiction does not 'offend traditional notions of fair play and substantial justice' and is thus reasonable under the Due Process Clause." Id. at 173 (quoting Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty., 480 U.S. 102, 113 (1987)).   In determining the reasonableness of exercising jurisdiction, courts must consider the following factors: (1) "the burden on the defendant," (2) "the interests of the forum State," (3) "the plaintiff's interest in obtaining relief," (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and (5) "the shared interest of the several States in furthering fundamental substantive social policies." Asahi, 480 U.S. at 113 (internal quotation marks omitted).   "Where the other elements for jurisdiction have been met, dismissals on reasonableness grounds should be 'few and far between.'" Gucci Am., Inc. v. Frontline Processing Corp., 721 F. Supp. 2d 228, 246 (S.D.N.Y. 2010) (quoting Metro. Life Ins. Co. v. Robertson–Ceco Corp., 84 F.3d 560, 575 (2d Cir. 1996)).

None of these factors caution against exercising jurisdiction over Dain.  First, although Dain would have to travel to New York to defend this suit, this burden alone does not render the exercise of personal jurisdiction unreasonable.  See Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 244 (2d Cir. 1999) (holding that burden on Japanese defendant was insufficient to overcome its minimum contacts, particularly because "the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago").  Although defending against a lawsuit in an out-of-state courtroom potentially can be burdensome, Dain has not identified any salient reason why New York is particularly problematic.  Indeed, Dain himself has recently appeared in proceedings in New York courts—apparently without a court order to do so.  (See Am. Compl. ¶ 448.)  Second, the forum state has an interest in adjudicating the case.  Plaintiffs allege that Dain used the New York courts for improper purposes, and in the course of doing so, made false statements to the state's courts, (see, e.g., id. ¶ 446), and the forum state has an interest in the efficient and appropriate use of its court system.  Third, plaintiffs' interest in obtaining convenient and effective relief is furthered by maintaining their choice of forum.  With regards to the fourth factor, the interstate judicial system's interest in obtaining the most efficient resolution of the controversy, a number of plaintiffs' claims arise from Dain's activities in New York, so there would likely be witnesses and other evidence in New York relevant to their claims.  The fifth factor concerning the shared interest of the states in furthering substantive social policies does not come into play in this case.  The Court therefore finds that application of New York's long-arm statute comports with Dain's due process rights, and consequently denies Dain's motion to dismiss for lack of personal jurisdiction.

### III.   Motion To Dismiss For Lack Of Standing

Dain also moves to dismiss the amended complaint due to lack of standing.  (Dain Mem.

at 20–22.)  Courts have historically distinguished between Article III and prudential standing, see,

e.g., Am. Psychiatric Ass'n v. Anthem Health Plans, Inc., 821 F.3d 352, 358 (2d Cir. 2016).  To

satisfy the "'irreducible constitutional minimum' of standing," a plaintiff must demonstrate (1) a

personal injury-in-fact (2) caused by the challenged conduct of the defendant and (3) which a

favorable decision will likely redress.  Alliance for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l

Dev., 651 F.3d 218, 228 (2d Cir. 2011) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555,

560–61 (1992)).  Unlike the "immutable requirements of Article III," the "prudential principles

that bear on the question of standing" are "judicially self-imposed limits on the exercise of federal

jurisdiction," and may be altered.  Bennett v. Spear, 520 U.S. 154, 162 (1997) (internal quotation

marks omitted).  One prudential limit on standing is the principle that a plaintiff may ordinarily

assert only his own legal rights, not those of third parties.  Warth v. Seldin, 422 U.S. 490, 499

(1975).  "The burden of establishing standing falls on the plaintiff, as it 'functions to ensure, among

other things, that the scarce resources of the federal courts are devoted to those disputes in which

the parties have a concrete stake.'"  Mhany Mgmt., Inc. v. Cty. of Nassau, 819 F.3d 581, 603 (2d

Cir. 2016) (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167,

191 (2000)).

Although Dain makes a number of arguments concerning whether plaintiffs have

"standing," Dain's arguments principally implicate the prudential limits on standing.  He argues

plaintiffs lack standing because "the only damages they seek are for purported expenses incurred

by the Estate of Renata Black, Bernard Black as Executor of the Estate, Bernard Black personally

and Bernard and Samuel Black as trustees of the Supplemental Needs and Issue Trust" and

plaintiffs are "not the proper party to assert these damages." (Dain Mem. at 21.) The prudential standing issue thus turns on whether plaintiffs' claims for relief arise from their own legal rights and interests or those of non-parties.

### A.   Claims Asserting Plaintiffs' Own Legal Rights

Plaintiffs claim that Dain breached his fiduciary duties to both the SNT and the Issue Trust by taking actions which depleted the assets of those trusts. (Am. Compl. ¶¶ 32, 1496.) Under New York law, only the intended beneficiary of a trust may sue to challenge the actions of its trustees. See, e.g., Matter of the Estate of McManus, 47 N.Y.2d 717, 719 (1979) (persons who "were not beneficially interested in the trust . . . lack[ed] standing to challenge the actions of its trustee"); see also Restatement (Third) of Trusts § 94(1) (2012) ("A suit to enforce a private trust ordinarily . . . may be maintained by any beneficiary whose rights are or may be adversely affected by the matter(s) at issue. The beneficiaries of a trust include any person who holds a beneficial interest, present or future, vested or contingent."). As direct beneficiaries of the Issue Trust, plaintiffs have standing to sue for breach of fiduciary duty with respect to the Issue Trust. See Zeff v. Weissman, 619 N.Y.S.2d 113, 114 (2d Dep't 1994) (beneficiaries of trust had standing to bring claims of undue influence and breach of fiduciary duty). With respect to the SNT, plaintiffs are not direct beneficiaries, but because the Issue Trust is the remainder beneficiary of the SNT, plaintiffs are remainder beneficiaries of the SNT. (Am. Compl. ¶ 48.) Plaintiffs consequently have standing to bring their breach of fiduciary claims against the SNT trustees. See Matter of Will of Wadsworth, 551 N.Y.S.2d 84, 85 (4th Dep't 1990) (remainder beneficiary had standing to bring action for breach of fiduciary duty by trustee).

## B. Claims on Behalf of Third Parties

Typically, a plaintiff who asserts the claims of a third party can obtain standing by establishing: "(1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests." Keepers, Inc. v. City of Milford, 807 F.3d 24, 38 (2d Cir. 2015) (quoting Smith v. Hogan, 794 F.3d 249, 255 (2d Cir. 2015)). The first element involves the relationship between the plaintiff and the person whose right he seeks to assert. If that person's enjoyment of the right in question is "inextricably bound up with the activity the litigant wishes to pursue," and if the plaintiff "is fully, or very nearly, as effective a proponent of the right" as the person who possesses it, one factual element exists. Singleton v. Wulff, 428 U.S. 106, 116 (1976). The second element involves the ability of the third party to assert his own right. If there is "some genuine obstacle to such assertion," the plaintiff becomes by default the right's best available proponent. Id. Failure to establish either of these elements is fatal. See, e.g., Fenstermaker v. Obama, 354 F. App'x 452, 454–55 (2d Cir. 2009).

Although the Supreme Court has "recognize[ed] that there may be circumstances where it is necessary to grant a third party standing to assert the rights of another," it has "not looked favorably upon third-party standing."[8] Kowalski v. Tesmer, 543 U.S. 125, 129 (2004). The plaintiffs bear the burden of demonstrating third party standing. Mid-Hudson Catskill Rural Migrant Ministry v. Fine Host Corp., 418 F.3d 168 (2d Cir. 2005) (noting that plaintiff seeking

---

[8] In Kowalski v. Tesmer, the Supreme Court noted that it had been "quite forgiving" of the requirements of third-party standing in two circumstances: first, "[w]ithin the context of the First Amendment . . . the Court has enunciated other concerns that justify a lessening of prudential limitations on standing," 543 U.S. 125, 130 (2004) (quoting Sec. of State of Md. v. Joseph H. Munson Co., 467 U.S. 947, 956 (1984)) (internal quotation marks omitted); and second, "in several cases, this Court has allowed standing to litigate the rights of third parties when enforcement of the challenged restriction against the litigant would result indirectly in the violation of third parties' rights," id. (quoting Warth, 422 U.S. at 510 (alterations and internal quotation marks omitted) (emphasis in original)). Neither of these exceptions is implicated here.

third party standing in federal court must satisfy the prudential prerequisites of third party standing).

Here, several of plaintiffs' claims plainly assert the rights of non-parties. First, plaintiffs bring claims of breach of fiduciary duty with respect to the 2013 Trust, but the Amended Complaint does not allege that plaintiffs are beneficiaries of the 2013 Trust; rather, the 2013 Trust was established to hold workers' compensation payments and other assets for Joanne. (Am. Compl. ¶ 100.) Because plaintiffs lack an interest in the 2013 Trust, their claims related to that trust necessarily assert the claims of a third party. Plaintiffs have neither asserted nor shown a close relationship to the sole beneficiary of the 2013 Trust, Joanne Black, or a barrier to her ability to assert her own interests.[9] Accordingly, all claims concerning breach of fiduciary duty with respect to the 2013 Trust, particularly Counts 37 to 51 of the Amended Complaint, are dismissed for lack of standing.

Second, plaintiffs seek to recover damages on behalf of Bernard and Samuel Black, including: litigation and accounting expenses incurred by Bernard to defend against Dain's actions; litigation expenses incurred by Bernard and Samuel Black as trustees of the Issue Trust and SNT to defend against Dain's actions; interest on student loans to Samuel Black, for which Dain prevented payment of interest and principal; and transaction costs and interest expense incurred by Bernard on loans used to pay litigation and accounting expenses. (See, e.g., id. ¶ 1497.)

As a threshold matter, plaintiffs have not given the Court any indication that they intend to allege claims on behalf of third parties. See Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr., No. 12-CV-974 (KMK), 2015 WL 5729969, at *48 n.45 (S.D.N.Y. Sept. 30, 2015)

---

[9] To the extent that Bernard Black could bring claims on behalf of the 2013 Trust as its trustee, plaintiffs have neither asserted nor shown a barrier to his ability to assert his own interests.

(plaintiff has not met burden to establish third party standing where he does not "even suggest that he intends to allege claims on his mother's behalf in the first place."). In any event, plaintiffs have not satisfied the requirements of third party standing with respect to any of their claims asserted on behalf of Joanne, Bernard, and Samuel Black. Some courts have considered familial relationships sufficiently close for third party standing. See Lewis v. Thompson, 252 F.3d 567, 584–85 (2d Cir. 2001) (parent-child relationship is sufficiently close for purposes of third party standing). Assuming arguendo that the family ties between plaintiffs and Joanne, Bernard, and Samuel Black are sufficiently close for purposes of third-party standing, plaintiffs cannot demonstrate hindrance. To show hindrance, the litigant "would need to establish that 'some barrier or practical obstacle . . . prevents or deters the third party from asserting his or her own interest.'" Congregation Rabbincal Coll. of Tartikov, Inc. v. Vill. of Pomona, 915 F. Supp. 2d 574, 594 (S.D.N.Y. 2013) (citing Benjhamin v. Aroostook Med. Ctr., Inc., 57 F.3d 101, 106 (1st Cir. 1995)). Plaintiffs have made no such showing here. Courts have found barriers or practical obstacles to exist where the "third party is unidentifiable, lacks sufficient interest, or will suffer some sanction," id., but none of these circumstances exist here. To the contrary, Bernard and Samuel Black have initiated litigation in other courts asserting their interests. See Black et al. v. Black et al., 16-cv-1763 (N.D. Ill. Jan 29, 2016). Joanne has also recently initiated litigation in the New York Surrogate Court to assert her interests in the funds from Renata's estate, (see D.E. # 84-24), and the Court finds that there would be no obstacle or barrier to prevent her from asserting her interests in the 2013 Trust as well.[10] Plaintiffs have thus failed to meet the requirements of third-party standing to assert claims on behalf of Joanne, Bernard, and Samuel Black.

---

[10] The amended complaint includes a number of allegations concerning Joanne's history of mental illness. (Am. Compl. ¶¶ 3, 55–58.) However, a New York court recently found that Joanne is not incapacitated. (See D.E. # 84-23.)

***

For these reasons, the Court dismisses for lack of standing plaintiffs' claims pertaining to the 2013 Trust and those claims that seek damages on behalf of Bernard and Samuel Black. The plaintiffs have standing to sue for breach of fiduciary duty with respect to the SNT and Issue Trust.

## C. Motions To Dismiss For Failure To State A Claim

### A. Standard of Review

Rule 12(b)(6) allows the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal, a plaintiff must state a claim that is "plausible on its face" by alleging sufficient facts to enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court must accept all factual allegations in the complaint as true, but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." Id. In considering a motion to dismiss for failure to state a claim, the Court may take judicial notice of public records filed in connection with litigation in state courts, not for the truth of the matter asserted in the other litigation, but rather to establish the fact of such litigation and related filings. See Kramer, 937 F.2d at 774.

### B. Collateral Estoppel

The Raphan Defendants, Wrigley-Pinto-CPI Defendants, and Salzman move to dismiss the amended complaint under collateral estoppel, or issue preclusion. (See D.E. # 66-1 ("Raphan Defs. Mem.") at 22–24; D.E. # 72 ("Salzman Mem.") at 24–27; Wrigley-Pinto-CPI Defs. Mem. at 9–11.) Collateral estoppel does not go to the Court's jurisdiction, but rather whether the complaint states a claim upon which relief may be granted pursuant to Rule 12(b)(6). See Conopco, Inc. v.

33

Roll Int'l, 231 F.3d 82, 86–87 (2d Cir. 2000).  Under the doctrine of collateral estoppel, "once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue on a different cause of action between the same parties." Kremer v. Chem. Const. Corp., 456 U.S. 461, 466 n.6 (1982).  Here, defendants assert the Denver Probate Court has already decided the issues relevant to the instant action.  Because "a federal court must apply the rules of collateral estoppel of the State in which the prior judgment was rendered," Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000), the Court will consider Colorado law concerning collateral estoppel.  Collateral estoppel bars re-litigation of an issue if: "(1) the issue is identical to that actually adjudicated in a prior proceeding; (2) the party against whom estoppel is asserted is a party or in privity with a party in the prior proceeding; (3) there was a final judgment on the merits; and (4) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issues in the prior proceeding." S.O.V. v. People in Interest of M.C., 914 P.2d 355, 359 (Colo. 1996) (en banc).

Defendants' collateral estoppel argument fails because there was not a final judgment on the merits.  "[F]or the purposes of issue preclusion, a judgment that is still pending on appeal is not final, and [we] take this opportunity to expressly overrule the line of court of appeals cases to the extent they hold to the contrary." Rantz v. Kaufman, 109 P.3d 132, 141 (Colo. 2005) (en banc); see also Carpenter v. Young, 773 P.2d 561, 568 (Colo. 1989).  Here, Bernard appealed the Denver Probate Court's September 28, 2015 order, the March 17, 2016 order, and other related orders, and this appeal is still pending.  For this reason, there was not a final judgment on the merits, so collateral estoppel does not bar plaintiffs' claims in this action.

## C. Res Judicata

The Wrigley-Pinto-CPI defendants also move to dismiss the amended complaint under the doctrine of res judicata.[11] (Wrigley-Pinto-CPI Defs. Mem. at 4–9.)  Res judicata challenges "may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)." Thompson v. Cty. of Franklin, 15 F.3d 245, 253 (2d Cir. 1994).  When a defendant raises res judicata as a defense and "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law," dismissal under Rule 12(b)(6) is appropriate.  Roll, 231 F.3d at 86.  "A federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the [s]tate in which the judgment was rendered."  O'Connor v. Pierson, 568 F.3d 64, 69 (2d Cir. 2009). Accordingly, "[f]ederal courts must use the res judicata doctrine of the state in which the state court judgment was granted."  Fequiere v. Tribeca Lending, No. 14-CV-812, 2016 WL 1057000, at *5 (E.D.N.Y. Mar. 11, 2016).  The Wrigley-Pinto-CPI defendants argue that the Denver Probate Court's judgments preclude this action, so Colorado law applies.[12]

Under Colorado law, res judicata "operates as a bar to a second action on the same claim as one litigated in a prior proceeding when there is a final judgment, identity of subject matter, claims for relief, and parties to the action."  City & Cty. of Denver v. Block, 814 P.2d 824, 830 (Colo. 1991).  For a claim in a second judicial proceeding to be precluded by a previous judgment, there must exist: "(1) finality of the first judgment, (2) identity of subject matter, (3) identity of

---

[11] The Wrigley-Pinto-CPI defendants assert this Court lacks jurisdiction over the instant action under the doctrine of res judicata. (Wrigley-Pinto-CPI Defs. Mem. at 4.) However, "the doctrine of res judicata or issue preclusion in no way implicates jurisdiction." Thompson v. Cty. of Franklin, 15 F.3d 245, 253 (2d Cir. 1994). The Court accordingly construes the defendants' res judicata arguments as grounds to dismiss the amended complaint under Rule 12(b)(6). See id.

[12] In their memorandum of law, the Wrigley-Pinto-CPI defendants cite to New York law, but in light of the fact that the relevant prior proceedings occurred in a Colorado court, these citations are inapposite. The Court will instead analyze the applicability of the res judicata doctrine under Colorado law.

claims for relief, and (4) identity or privity between parties to the actions." <u>Argus Real Estate, Inc.</u> <u>v. E-470 Pub. Highway Auth.</u>, 109 P.3d 604, 608 (Colo. 2005).

As with the defendants' collateral estoppel argument, the Wrigley-Pinto-CPI Defendants' <u>res judicata</u> argument fails under the finality of judgment prong.  Here, Bernard appealed the Denver Probate Court's September 28, 2015 order, the March 17, 2016 order, and other related orders, and it appears from the court documents that the appeal is still pending.  As a result, the present action cannot be dismissed under <u>res judicata</u>.  See <u>Wyles v. Sussman,</u> 661 F. App'x 548 (10th Cir. 2016) ("Under Colorado law, a pending appeal prevents preclusive effect of a prior judgment.").

### D.  Sufficiency of the Pleadings

The Raphan Defendants, the Wrigley-Pinto-CPI Defendants, and Salzman argue that plaintiffs have failed to state a claim of aiding and abetting breach of fiduciary duties.  (Raphan Defs. Mem. at 21–29; Wrigley-Pinto-CPI Defs. Mem. at 17–22; Salzman Mem. at 18–22.) Plaintiffs claim that the Raphan Defendants and the Wrigley-Pinto-CPI Defendants aided and abetted Dain's breach of fiduciary duty, (Am. Compl. ¶¶ 1434–72), and that Salzman aided and abetted Dain's and Joanne's breaches of fiduciary duty, (<u>id.</u> ¶¶ 1381–1433).

To recover damages for aiding and abetting a breach of fiduciary duty under New York law,[13] a plaintiff must plead and prove "that a fiduciary duty owed to the plaintiff was breached, that the defendant knowingly induced or participated in the breach, and that the plaintiff was damaged as a result of the breach."  <u>Smallberg v. Raich Ende Malter & Co., LLP</u>, 35 N.Y.S.3d

---

[13] Under Federal Rule of Civil Procedure 44.1, parties must give written notice, in the pleadings or otherwise, of their intention to assert foreign law.  Here, in their memoranda of law, each of the parties seems to have assumed that New York law governs, and none of the parties claimed the applicability of a foreign law or asserted that a relevant foreign law differs from that of New York.  As a result, the Court may properly apply the law of the forum state.  See <u>Johnson v. Priceline.com, Inc.,</u> 711 F.3d 271 n.2 (2d Cir. 2013) ([C]ourts sitting in diversity may properly rely on the forum state's law where neither party asserts that another jurisdiction's law meaningfully differs . . . .").

134, 137 (2d Dep't 2016). This section will parse out these three requirements as they relate to the specific actors alleged to have breached fiduciary duties, and as to the specific defendants alleged to have aided and abetted them.

### 1. Allegations of Underlying Breach of Fiduciary Duty

Salzman and the Raphan Defendants argue that plaintiffs have failed to plead that a fiduciary duty owed to the plaintiffs was breached. (Raphan Defs. Mem. at 21–24; Salzman Mem. at 19, 22.) Under New York law, a breach of fiduciary duty requires: (1) the existence of a fiduciary duty owed by the defendant; (2) a breach of that duty; and (3) resulting damages. Jones v. Voskresenskaya, 5 N.Y.S.3d 16, 17 (1st Dep't 2016).

### a. Dain's Breach of Fiduciary Duties

Salzman and the Raphan Defendants first argue that plaintiffs cannot establish that Dain breached his fiduciary duties because the Denver Probate Court has already determined that Dain did not breach his fiduciary obligations. (Raphan Defs. at 21–24; Salzman Defs. at 18–19.) This argument is based in principles of collateral estoppel, and as discussed above, collateral estoppel does not apply here because there is not a final judgment on the merits. Salzman also argues that because plaintiffs are only contingent remainderman of the SNT, Dain, as a trustee of the SNT, owed no fiduciary duty to reserve any portion of the SNT funds for the plaintiffs. (D.E. # 73 ("Salzman Reply Mem.") at 6.) However, under New York law, trustees owe fiduciary duties to remainder beneficiaries. See, e.g., In re Heller, 6 N.Y.3d 649 (2006) (trustees owed fiduciary obligations not only to the income beneficiary, but also to the other remainder beneficiaries); see also Weingarten v. Warren, 753 F. Supp. 491, 495–96 (S.D.N.Y. 1990) (holding that under New York law, remainder beneficiary of trust stated a cause of action against trustee for breach of

37

fiduciary duty). The Court thus finds that plaintiffs have sufficiently plead an underlying breach of fiduciary duties by Dain.

### b. Joanne's Breach of Fiduciary Duties

Salzman also argues that plaintiffs have failed to state a claim that Joanne breached any fiduciary duty. (Salzman Mem. at 22.) Plaintiffs claim that "[a]s a beneficiary of the SNT, Joanne Black is a fiduciary for the remainder beneficiaries of the SNT, the Issue Trust, and thus for the beneficiaries of the Issue Trust." (Am. Compl. ¶ 1398.) There is some case law indicating that a beneficiary of a trust owes to his co-beneficiaries the duty of refraining from instigating a breach of the trust, persuading the trustee to violate his trust, or taking part with the trustee in a breach. See Piff v. Berresheim, 405 Ill. 617 (1950) (holding that beneficiaries are liable for damages caused by a breach of trust that they instructed the trustee to commit). Here, however, plaintiffs are remainder beneficiaries of the SNT, and plaintiffs do not cite—and the Court has not found—case law holding that a beneficiary of a trust owes fiduciary obligations to remainder beneficiaries.

Moreover, even if Joanne, as the beneficiary of the SNT, did owe fiduciary duties to the SNT's remainder beneficiaries, plaintiffs have failed to allege that Joanne breached any fiduciary duties. A beneficiary's mere knowledge of and consent to a trustee's breach of fiduciary duties, "in the absence of fraud or collusion or the receipt of any of the money, is not sufficient to create a liability against him . . . ." Blair v. Hampton, 98 N.Y.S. 109, 112 (1st Dep't 1906). Here, plaintiffs allege that Dain and Wrigley manipulated Joanne into participating in Dain and Wrigley's scheme to defund the SNT, (Am. Compl. ¶ 1403), but have not alleged collusion or receipt of money. To the contrary, plaintiffs allege that Dain and Wrigley sought to take Joanne's money for their own use. (See, e.g., id. ¶ 22.) As a result, plaintiffs have failed to allege a breach

of Joanne's fiduciary duties, so their claims for aiding and abetting Joanne's breach (Counts 52, 54, and 56) are dismissed for failure to state a claim.[14]

### 2. Knowledge and Substantial Assistance

To recover damages for aiding and abetting a breach of fiduciary duty, a plaintiff must also plead that the defendant knowingly induced or participated in the breach. Actual knowledge of the breach of fiduciary duty is required, and constructive knowledge will not suffice. Kaufman v. Cohen, 760 N.Y.S.2d 157, 169 (1st Dep't 2003); see also Ferring B.V. v. Allergan, Inc., 4 F. Supp. 3d 612, 623–24 (S.D.N.Y. 2013) ("The tort of aiding and abetting breaches of a common law duty does not encompass a 'should have known' standard; actual knowledge of 'the primary violator's status as a fiduciary and actual knowledge that the primary violator's conduct contravened a fiduciary duty' is required." (quoting Mazzaro de Abreu v. Bank of Am. Corp., 525 F. Supp. 2d 381, 393 (S.D.N.Y. 2007) (citation omitted))). Furthermore, it is well-established under New York law that a plaintiff "may not merely rely on conclusory and sparse allegations that the aider or abettor knew or should have known about the primary breach of fiduciary duty." Global Minerals & Metals Corp. v. Holem, 824 N.Y.S.2d 210, 217 (1st Dep't 2006).

Knowing participation in a breach of fiduciary duty occurs "when the defendant provides substantial assistance to the primary violator." Smallberg, 35 N.Y.S.3d at 944. "Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." Monaghan v. Ford Motor Co., 897 N.Y.S.2d 482, 485 (2d Dep't 2010) (quoting Kaufman v. Cohen, 760 N.Y.S.2d at 170). The Court will consider

---

[14] Plaintiffs also claim that Dain aided and abetted Joanne's breach of fiduciary duty. (Am. Compl. ¶¶ 1307–32.) Because Dain's memorandum of law indicates that he adopts the issues and arguments raised by his co-defendants, (Dain Mem. at 24), the Court finds that plaintiffs have failed to state a claim that he aided and abetted Joanne's breach for the same reasons.

plaintiffs' allegations concerning the knowledge and substantial assistance of Salzman, the Raphan Defendants, and the Wrigley-Pinto-CPI Defendants separately.

### a. Wrigley

Plaintiffs' allegations with respect to Wrigley are sufficient to plead actual knowledge and substantial assistance. Plaintiffs claim that Wrigley knew Dain was a trustee of the Black Family Trusts and consequently had fiduciary obligations, (Am. Compl. ¶¶ 1347–48); and that Dain sought to reverse the Disclaimer and remove assets from the trusts for the benefit of himself and Wrigley, (see, e.g., id. ¶¶ 19–22). According to these allegations, Wrigley would have had actual knowledge that Dain's efforts to reverse the Disclaimer and defund the trusts were for an improper purpose in breach of his fiduciary duties.

Plaintiffs have also sufficiently alleged that Wrigley provided substantial assistance to Dain's breach of fiduciary duties. Based on the allegations in the amended complaint, Wrigley was actively involved in Dain's efforts to defund the trusts in violation of his fiduciary obligations. According to the amended complaint, Wrigley helped Dain to defund the trusts, and consequently breach his fiduciary duties, by: petitioning to become Joanne's guardian in New York, (Am. Compl. ¶ 21); threatening to disclose sensitive information about Bernard if he opposed her guardianship petition, (id. ¶¶ 158, 168–69); harassing and attempting to manipulate Bernard's children in an effort to force Bernard to agree to Wrigley and Black's scheme, (id. ¶ 172); and committing perjury in court proceedings in Colorado and New York in an effort to advance Dain's scheme to defund the trusts, (id. ¶¶ 202, 905–08).

The Court accordingly concludes that plaintiffs have sufficiently plead Wrigley had actual knowledge of, and provided substantial assistance to, Dain's breach of fiduciary duty.

### b. Pinto and CPI Investigations

Plaintiffs allege that Pinto knew Dain was a trustee of the Black Family Trusts, (Am. Compl. ¶ 1442); Dain was seeking to reverse the Disclaimer, (id. ¶ 1441); such a reversal would defund the trusts, (id.); and that Wrigley was using funds from the trusts to pay Pinto about $400,000 for his services, (id. ¶¶ 1435–36). These allegations are sufficient to plead actual knowledge that Dain had fiduciary obligations to the SNT and Issue Trust but was nevertheless taking actions contrary to the interests of the trusts and their beneficiaries that would constitute a breach of fiduciary duty. Plaintiffs claim that Pinto supported Dain and Wrigley's scheme to defund the trusts by manipulating Joanne into believing that Bernard had no interest in her welfare, convincing her to support Dain and Wrigley's asset-stripping scheme, and supporting Wrigley in her attempt to become Joanne's guardian. (Id. ¶¶ 1437, 1439, 1444.) From the face of the amended complaint, Pinto affirmatively supported Dain and Wrigley's efforts to have Wrigley appointed as Joanne's guardian, which, according to plaintiffs, was a key component of Dain's breach of fiduciary duties. (Id. ¶¶ 21–23.)

Plaintiffs argue that CPI is liable under a theory of respondeat superior because they have alleged that Pinto's actions in assisting Dain's breach of fiduciary duty occurred during the ordinary course of his duties as an employee of CPI, (id. ¶¶ 1446–47). (Pls. Mem. Opp. Wrigley-Pinto-CPI at 12–13.) The Wrigley-Pinto-CPI Defendants do not challenge this contention or otherwise argue that plaintiffs have failed to state a claim against CPI.

### c. Salzman

Plaintiffs allege that Salzman knew Dain was a trustee of the Black Family Trusts, (Am. Compl. ¶ 1390); Dain was seeking to reverse the Disclaimer, (id. ¶ 1391); such a reversal would defund the SNT and Issue Trust, which "would have significant negative consequences to at least

41

eight out of nine beneficiaries of the Black Family Trusts, and to the trusts themselves as legal entities," (id.). These allegations are sufficient to plead actual knowledge that Dain had fiduciary obligations to the SNT and Issue Trust but was nevertheless taking actions contrary to the interests of the trusts' beneficiaries that would constitute a breach of fiduciary duty. Salzman argues that plaintiffs have failed to plead actual knowledge because the Denver Probate Court found that Salzman's participation was "absolutely necessary to stop the depradations of Bernard Black." (Salzman Mem. at 19.) This argument is based on principles of collateral estoppel and issue preclusion, but as discussed above, that doctrine is inapplicable in this case due to the absence of a final judgment.

Plaintiffs have also sufficiently alleged that Salzman was substantially involved in Dain's breach of fiduciary duties by coordinating litigation efforts to reverse the Disclaimer and defund the trusts, lying to the New York Supreme Court, and suborning perjury from Pinto during guardianship proceedings. (Am. Compl. ¶ 1387.) The Court accordingly finds that plaintiffs have alleged that Salzman affirmatively assisted Dain's breach, which is sufficient to satisfy the substantial assistance element.

### d. The Raphan Defendants

Plaintiffs allege the Raphan Defendants knew Dain was a trustee of the Black Family Trusts, (Am. Compl. ¶ 1460); Dain was seeking to reverse the Disclaimer, (id. ¶ 1461); and that such a reversal would remove assets from and defund the SNT and Issue Trust, (id.). These allegations are sufficient to plead actual knowledge that Dain had fiduciary obligations to the SNT and Issue Trust, but was nevertheless taking actions contrary to the interests of the trusts and their beneficiaries that would constitute a breach of fiduciary duty. The Raphan Defendants argue that "[t]here is no basis to infer that because the Raphan Defendants were aware that Dain was seeking

42

to void the Disclaimer and that Wrigley sought appointment as Joanne's guardian, that there was anything wrongful at all regarding the same." (Raphan Defs. Mem. at 26.)  However, because the Disclaimer would remove assets from the Black Family Trusts, for which Dain was a co-trustee, it is at the very least plausible that the Raphan Defendants knew Dain's conduct was against the interest of the trusts and their beneficiaries.  The Raphan Defendants also contend that all of Dain's efforts were subject to the approval of courts in Colorado and New York, so the Raphan Defendants would not have known Dain was acting improperly.  (Raphan Defs. Mem. at 26.) However, this argument goes to the merits of plaintiffs' claims rather than the legal sufficiency of their pleadings.  Moreover, plaintiffs allege that Dain and the Raphan Defendants tampered with witnesses in these court proceedings, (see Am. Compl. ¶ 1452), which undermines the force of the Raphan Defendants' scienter argument.  The Court accordingly concludes that plaintiffs have met the knowledge requirement to state a claim of aiding and abetting breach of fiduciary duty.

Plaintiffs have also sufficiently alleged that the Raphan Defendants were substantially involved in Dain's breach of fiduciary duties.  According to the amended complaint, Cohenson "actively participated in a concerted effort, involving multiple parties, to tamper with witnesses, coerce the Black family members not to testify against Cohenson's client, Wrigley, and extort assets from the Black family." (Id.) Plaintiffs also allege that Cohenson provided material support for Dain's asset-stripping scheme by assisting Dain and Wrigley in freezing the trusts, submitting a proposed order to the New York guardianship court to transfer assets to Wrigley's control, and threatening members of the Black family with sanctions if they appeared at a New York guardianship hearing to oppose Wrigley's petition for guardianship. (Id. ¶ 1459.) The Court finds these allegations sufficient to state a claim that the Raphan Defendants "affirmatively assist[ed]"

43

and "help[ed] conceal" Dain's breach, which satisfies the substantial assistance prong.  See In re

Sharp Inter. Corp., 403 F.3d 43, 50 (2d Cir. 2005) (quoting Kaufman, 760 N.Y.S.2d at 170).

The Raphan Defendants raise three arguments concerning the substantial assistance prong.

First, they contend that Cohenson's submissions to the Court were routine, and "the propriety of

any and all actions taken by the Raphan Defendants to facilitate Wrigley's appointment [as

guardian] would necessarily have been reviewed by the Court in the New York Guardianship

Proceeding . . . ." (Raphan Defs. Mem. at 27.) This argument focuses on the sufficiency of the

evidence to prove plaintiffs' claims against Cohenson rather than whether plaintiffs have stated a

claim. Moreover, the Raphan Defendants' emphasis on the fact that a court reviewed the propriety

of Cohenson's conduct is at odds with plaintiffs' allegation that Cohenson assisted Dain in

manipulating that court's proceedings through witness tampering. Second, the Raphan Defendants

argue that the amended complaint does not identify that any witnesses testified differently as a

result of Cohenson's witness tampering. However, one provides substantial assistance if he

"affirmatively assists" or "helps conceal," thereby enabling the breach to proceed. Catskill Dev.,

L.L.C. v. Park Place Ent. Corp., 547 F.3d 115, 134 (2d Cir. 2008). The Raphan Defendants'

argument goes to the sufficiency of the evidence and whether plaintiffs suffered damages, rather

than whether plaintiffs have alleged that Cohenson affirmatively assisted Dain.   Finally, the

Raphan Defendants contend that plaintiffs' allegation that the Raphan Defendants wrongfully

remained silent is legally insufficient. (Raphan Defs. Mem. at 28.) Inaction of an alleged aider

and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty to the

plaintiff, Kaufman, 760 N.Y.S.2d at 170, and here, the Raphan Defendants did not owe any such

duty to plaintiffs. This allegation alone is thus insufficient to plead substantial assistance, but in

44

light of plaintiffs' numerous allegations that the Raphan Defendants affirmatively assisted Dain, the Court concludes that plaintiffs have met the substantial assistance prong.

Plaintiffs argue that Brian A. Raphan, P.C. is liable under a theory of respondeat superior because they have alleged that Cohenson's actions in assisting Dain's breach of fiduciary duty occurred during the ordinary course of his duties as an employee of Brian A. Raphan, P.C. (Id. ¶¶ 1465–67.) The Raphan Defendants do not challenge this contention or otherwise argue that plaintiffs have failed to state a claim against Brian A. Raphan, P.C.

### 3. Damages

Finally, to state a claim for aiding and abetting the breach of fiduciary duty, plaintiff must allege damages resulting from the breach. According to plaintiffs, Dain's breach caused the Black Family Trusts to incur legal fees and other expenses, which are cognizable damages. (Pls. Mem. Opp. Dain at 22–23.) Defendants raise a number of counter-arguments. Salzman argues that plaintiffs' damages claims fail because plaintiffs have no right to any funds from the SNT during the lifetime of Joanne Black. (Salzman Mem. at 11.) However, this issue goes to the merits of plaintiffs' claims rather than their legal sufficiency and is not properly considered at the motion to dismiss stage. In any event, under New York law, a remainder beneficiary of a trust can bring a claim against a trustee for breach of fiduciary duty. Weingarten, 753 F. Supp. at 495–96.

The Raphan Defendants also argue that plaintiffs failed to allege damages because the Denver Probate Court found that Dain's efforts resulted in a compensable benefit to the conservatorship estate. (Raphan Defs. Mem. at 29.) This argument is based on principles of collateral estoppel and issue preclusion, but as discussed above, that doctrine is inapplicable in this case due to the absence of a final judgment. Salzman contends that many of plaintiffs' damages

were incurred by Bernard, who is not a party to this action.[15]  (Salzman Mem. at 10.)  This argument is moot because the Court dismissed plaintiffs' claims asserting Bernard's interests for lack of standing.  Plaintiffs have thus met their burden in alleging damages.

### E.  Capacity

The Raphan Defendants and Salzman argue that because plaintiffs are minors, Federal Rule of Civil Procedure 17 bars the present action.  (Raphan Defs. Mem. at 29; Salzman Mem. at 24.) Rule 17(b) provides, in relevant part, that the capacity to sue for "an individual who is not acting in a representative capacity" is determined by the law of the individual's domicile.  Fed. R. Civ. P. 17(b).  Here, plaintiffs are residents of Illinois.  (Am. Compl. ¶ 35.)  Under Illinois law, a minor lacks the legal capacity to initiate proceedings in his own name, but instead, must appear by guardian, guardian ad litem, or next friend.  See Klak v. Skellion, 317 Ill. App. 3d 1092, 1095 (1st Dist. 2000).  Here, plaintiffs Daniel and Jacob Black are minors.  (See D.E. # 1 ¶ 80.)  The Court accordingly grants plaintiffs leave to amend to substitute proper parties for these plaintiffs.  See Smith v. City of Chicago, 143 F. Supp. 3d 741, 747 (N.D. Ill. 2015).

***

For the reasons stated above, the Court dismisses plaintiffs' claims for aiding and abetting Joanne's breach of fiduciary duty.  The Court denies defendants' motions to dismiss plaintiffs' remaining claims.

---

[15] Salzman makes a related argument that plaintiffs' damages are speculative because the expenses incurred by Bernard as executor for Renata's estate are under review in the New York Surrogate Court.  (Salzman Mem. at 10.)  Because the Court dismissed plaintiffs' claims seeking to recover Bernard's expenses for lack of standing, this argument is moot.

### D. Motion To Dismiss For Failure To Join Necessary Parties

#### A. Standard of Review

Salzman has also moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(7). (Salzman Mem. at 23–24.) Before dismissing a complaint under Rule 12(b)(7), a district court must determine whether a missing party is necessary within the meaning of Federal Rule of Civil Procedure 19. Johnson v. Smithsonian Inst., 189 F.3d 180, 188 (2d Cir. 1999). Pursuant to Federal Rule of Civil Procedure 19, a court must conduct a two-step inquiry to determine whether an action must be dismissed for failure to join a necessary and indispensable party. See Fed. R. Civ. P. 12(b)(7); Assoc. Dry Goods Corp. v. Towers Fin. Corp., 920 F.2d 1121, 1123–24 (2d Cir. 1990). The first prong of the test focuses on whether the party should be joined if feasible. Rule 19(a) provides in pertinent part:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence the court cannot accord complete relief among existing parties, or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect the interest or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). Unless Rule 19(a)'s threshold standard is met, the court need not reach the second step of the inquiry and consider whether dismissal is warranted under Rule 19(b).

#### B. Rule 19 Analysis

Salzman argues that Bernard and all of the beneficiaries of the Black Family Trusts are necessary parties in this action. (Salzman Mem. at 24.) Salzman does not indicate whether these parties are necessary pursuant to Rule 19(a)(1)(A) or Rule 19(a)(1)(B), and provides only a threadbare argument in support of his Rule 12(b)(7) motion. However, the Court concludes that these parties are not necessary under either under Rule 19(a)(1)(A) or Rule 19(a)(1)(B).

47

Rule 19(a)(1)(A) requires a court to join a party if "in that person's absence, the court cannot accord complete relief among existing parties." In other words, if some current party could not therefore obtain complete relief from its opponent without the participation of the absent party, Rule 19(a)(1)(A) requires joinder of that absent party. Mastercard Int'l. Inc. v. Visa Int'l. Serv. Assn., Inc., 471 F.3d 377, 385 (2d Cir. 2006). Here, the absence of the purportedly necessary parties would not prevent the Court from granting complete relief among those already parties; plaintiffs could still recover the requested damages from defendants personally. Bernard and the remaining beneficiaries of the Black Family Trusts are thus not necessary parties under Rule 19(a)(1)(A).

With regard to Rule 19(a)(1)(B), a party cannot qualify as "required" if it does not "claim[] an interest relating to the subject of the action." As the Second Circuit and the district courts in this Circuit have made clear, it is the absent party who must claim an interest. Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41, 49 (2d Cir. 1996) (defendant's Rule 19 argument failed because third-party had not claimed interest relating to subject of action, and defendant's "attempt to assert on behalf of the [third-party] its supposed concern about the dilution of its interest . . . falls outside the language of the rule. It is the absent party that must 'claim an interest.'"); see also ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc., 102 F.3d 677, 683 (2d Cir. 1996) ("[Defendants'] self-serving attempts to assert interests on behalf of [the non-party] fall outside the language" of Rule 19(a)(1)(B) and thus "cannot be the basis for [defendants'] necessary party argument."); City of New York v. Mihelm Attea & Bros., Inc., 550 F. Supp. 2d 332, 353 (E.D.N.Y. 2008) (finding that "because no [non-party] has claimed an interest relating to the subject of the action, they are not required to be joined under either prong" of Rule 19(a)(1)(B)).

Here, Salzman cannot claim an interest for Bernard and the trust beneficiaries when they have not themselves claimed an interest relating to the subject of this action. Furthermore, Salzman argues that Bernard has an interest in this action because the damages sought by plaintiff relate to expenses Bernard incurred. (Salzman Reply Mem. at 11.) However, as discussed above, the Court dismissed all of plaintiffs' claims arising from Bernard's legal rights and obligations due to lack of standing, so this argument is moot. The Court therefore finds that Bernard and the trust beneficiaries are not necessary parties under Rule 19(a)(1)(B).

For these reasons, the Court denies Salzman's motion to dismiss pursuant to Rule 12(b)(7).

### E. Motion For Summary Judgment

The Wrigley-Pinto-CPI Defendants move, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. The Court denies this alternative Rule 56 motion as premature. Although the parties have submitted some materials outside of the pleadings, no discovery has taken place. "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." Hellstrom v. U.S. Dep't of Veterans Affairs, 201 F.3d 94, 97 (2d Cir. 2000); see also Trebor Sportswear Co. v. The Limited Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989). Here, many of the material facts related to the Wrigley-Pinto-CPI Defendants' knowledge and intent remain unknown. The Court accordingly concludes that summary judgment would be inappropriate at this stage in the litigation. See Baldessarre v. Monroe-Woodbury Cent. Sch. Dist., 820 F. Supp. 2d 490, 494 n.2 (S.D.N.Y. 2011) ("Summary judgment is inappropriate because the [p]arties have not conducted any discovery.").

**CONCLUSION**

For these reasons, the Court grants defendants' motions to dismiss the following claims: (1) claims for injunctive and declaratory relief that request that this Court administer Joanne's conservatorship estate, Renata's estate, and the SNT, (see Am. Compl. ¶¶ 1502, 1503(a), 1503(b), 1504–05, 1509, 1512); (2) claims relating to the 2013 Trust, particularly Counts 37 to 51 of the Amended Complaint; (3) claims seeking to recover expenses incurred by Bernard and Samuel Black, (see, e.g., id. ¶ 1497); and (4) claims for aiding and abetting Joanne's breach of fiduciary duty, particularly Counts 52, 54, and 56 of the Amended Complaint. The Court denies the motions to dismiss with respect to plaintiffs' remaining claims.

SO ORDERED.

Dated: August  16  , 2017
      Brooklyn, New York

                                  s/Carol Bagley Amon
                                    Carol Bagley Amon
                                    United States District Judge