# EXHIBIT "A"

# EXHIBIT "A"

Case 1:16-cv-01238-CBA-ST Document 133-1 Filed 10/30/17 Page 2 of 52 PageID #: 3921

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X
                                    :
SARAH H. BLACK, DANIEL L.          :16-CV-1238 (CBA)
BLACK, and JACOB L. BLACK,         :
                                    :
        Plaintiffs,                :
                                    :United States Courthouse
                                    :Brooklyn, New York
    -against-                      :
                                    :
                                    :Monday, December 19, 2016
                                    :
ANTHONY DAIN, CHERIE WRIGLEY,      :
IRA SALZMAN, MELISSA               :
COHENSON, BRIAN A. RAPHAN,         :
P.C., ESAUN G. PINTO, PAMELA       :
KERR and CPI INVESTIGATIONS
                                    
        Defendants.


- - - - - - - - - - - - - - X

TRANSCRIPT OF CIVIL CAUSE FOR ORAL ARGUMENT
BEFORE THE HONORABLE CAROL B. AMON
UNITED STATES DISTRICT COURT JUDGE


A P P E A R A N C E S:

For the Plaintiffs:   MICHAEL H. SCHAALMAN, esq.
                      SHARAN R. ABRAHAM, ESQ.
                        37 South Street
                        Roslyn, New York  11577

For the Defendant     MILBER, MAKRIS, PLOUSADIS & SEIDEN, LLP
Kerr:                   1000 Woodbury Road - 402
                        Woodbury, New York  11797
                      BY:SAMANTHA B. LANSKY, ESQ.


For the Defendant     ANTHONY J. DAIN, ESQ.,PRO SE
Dain:

2

```
For the Defendant      WINGET, SPADAFORA & SCHWARTZBERG, LLP
Salzman:                   45 Broadway - 19th Fl
                           New York, New York  10006
                       BY:HARRIS B. KATZ, ESQ.


For the Defendant      D'AMATO & LYNCH, LLP
Cohenson:                  Two World Financial Center
                           New York, New York  10281
                       BY:DAVID BOYAR, ESQ.

Court Reporter:  Richard W. Barry, RPR
                 Official Court Reporter
                 E-mail: rwbarrycourtreporter@gmail.com

          Proceedings recorded by computerized stenography.
          Transcript produced by Computer-aided Transcription.
```

1        COURTROOM DEPUTY:  Black versus Dain, on for oral

2    argument.

3        THE COURT:  The parties want to state appearances,

4    please, first for the plaintiff?

5        MR. SCHAALMAN:  Michael Schaalman, and share ran

6    Abraham for the plaintiffs.

7        THE COURT:  Good afternoon.

8        MS. LANSKY:  Samantha Lansky for Pamela Kerr.

9        MR. DAIN:  Anthony Dain appearing pro se.

10       MR. BOYAR:  David Boyar, D'Amato & Lynch for the

11   defendant Cohenson and Brian Raphan.

12       MR. KATZ:  Harris Katz for the defendant Ira

13   Salzman.

14       THE COURT:  Afternoon everyone.

15       Let me-- obviously, I have read through all the

16   papers and the tortured history of this case and these

17   estates.

18       Has there ever been any effort made by the parties

19   to have any settlement or mediation in this case since the

20   case was brought here?

21       MR. SCHAALMAN:  The answer is, yes, there has been a

22   formal settlement offer made.

23       THE COURT:  You all can be seated.

24       The plaintiffs have--

25       MR. SCHAALMAN:  Yes, plaintiffs have made a formal

- Proceedings -                                    4

1   settlement offer and it has been rejected.

2         THE COURT:  Have you discussed this with the

3   Magistrate Judge who has this case?  Have you had any

4   settlement discussions there?

5         MR. SCHAALMAN:  Your Honor, those settlement

6   requirements, we are going to have a settlement hearing in a

7   conference, those all have been keyed off to this date.

8         The defendants were not anxious as one would

9   understand, to participate in settlement discussions until

10  they knew whether the case was going to move forward or not.

11  That was my understanding and I accepted that.

12        THE COURT:  All right.

13        MR. DAIN:  Your Honor, Anthony Dain, if I can speak

14  to that.

15        THE COURT:  Yes.

16        MR. DAIN:  I want to make sure we separate.  I

17  believe what Mr. Schaalman is referring to as some kind of

18  settlement in the-- underlining cases.

19        I mean there are probably six cases now dealing with

20  the finding of civil theft, and the surcharges in the Denver

21  Probate Court.  No formal settlement demand has been made to

22  me as a defendant in this case, nor at this point, have we

23  been willing to discuss a settlement offer in this case.

24        Because I think everything is--

25        THE COURT:  How many cases are pending at the

RW Barry    OCR

1   moment?  The Denver probate matter is on appeal; is that

2   right?

3              MR. SCHAALMAN:  That's correct.

4              THE COURT:  That is where that stands.

5              MR. SCHAALMAN:  That is where that stands.

6              THE COURT:  The New York Probate case, what is the

7   status of that?

8              My understanding of that is that there was a no

9   guardian appointed for Joanne Black, but the only other action

10  they took was some order precluding contact.

11             MR. SCHAALMAN:  Yes, that's correct Your Honor.

12  There was some-- there is a stipulation as I understand it

13  that is in the works in the Surrogate Court.  That is another

14  action where that is taking place between the parties.

15             I'm not the attorney involved in that matter, but

16  there is a stipulation to sort of resolve the executor issue

17  in the Surrogate's Court in New York, in Westchester.

18             There is an interpleader action that has been filed

19  by Chase, JP Morgan Chase Securities and JP Morgan Bank and

20  that has had motions, now are pending in that case--

21             THE COURT:  Where is that case?

22             MR. SCHAALMAN:  In New York as well.

23             THE COURT:  Is JP Morgan Chase where the trust

24  assets are?

25             MR. SCHAALMAN:  The trust assets are in Illinois, JP

- Proceedings -                                          6

1    Morgan Chase Securities accounts.  Securities accounts.

2          MR. DAIN:  I need to speak to that too.  The

3    interpleader deals with issue trust assets.  That is in New

4    York, I believe called the Supreme Court or-- here in New

5    York.

6          There is a supplemental needs trust which is being

7    administered in San Diego, California, that is not part of the

8    interpleader.

9          The Probate Court case you were talking about Judge

10   Aliotta denied all motions and applications including this non

11   contact motion.  Referring the matter to a court that he said

12   of competent jurisdiction, which would be the Surrogate Court

13   in New York, where there are issues relating to the estate of

14   Renata Black pending, and which extend beyond that into the

15   removal of Bernard Black as executor.

16         There are two cases pending here though.  This case

17   and then Bernard Black and Samuel Black also brought a

18   separate lawsuit against two of the defendants in this case,

19   Esaun Pinto and Ms. Wrigley.  That is still outstanding.

20         In addition the Illinois case in which Mr. Black

21   sued Joanne Black, his disabled sister that is dismissed with

22   prejudice.

23         So, but the global settlement offer apparently made

24   was by the attorney in Illinois, prior to that action being

25   dismissed.  Again never conveyed to me, but if it was conveyed

1  it was conveyed to the other parties.

2          So I have never had any discussions about settlement

3  in this case or any others.

4          THE COURT:  Do you represent parties in the second

5  case before this Court?

6          MR. SCHAALMAN:  I do, Your Honor.  That is case 430,

7  16-CV-430.

8          THE COURT:  That is Bernard Black is bringing that

9  case.

10          MR. SCHAALMAN:  It is, Your Honor.

11          THE COURT:  It just seems like to me that the

12  parties are going to an extraordinary amount of time and

13  effort to spend any money that this-- these trusts may have

14  ever had on litigation.  It seems to me it is really not

15  serving anyone well.  That is why I wondered if there was some

16  possibility you could put an end to this madness by having

17  some global settlement discussion that would deal with all of

18  these cases.

19          Is that a possibility or not?

20          MR. SCHAALMAN:  The plaintiffs would welcome that,

21  Your Honor.

22          THE COURT:  What about the defendants?

23          MR. DAIN:  The defendants, at least speaking for me

24  as an interested party in Colorado, obviously a defendant

25  here, has to involve the return of all stolen funds.  We are

1   not even close to a discussion on that.

2               Is it possible, absolutely.  Would we like it, yes.

3   We have to start somewhere and that is the return of all of

4   the conservatee, the protected person's assets.

5               There is a surcharge, I think Your Honor is aware

6   of, three times the amount of that was stolen.  We believe and

7   again this is me personally that Mr. Black is accessing some

8   of the money stolen and not put in a trust to pay for these--

9   for this litigation.  We can stop that.  Maybe we can have

10  some of that returned.  It has to start with that.

11              If that is the starting point then we can have a

12  discussion.  If the starting point is we are not returning all

13  of the assets we stole, we really can't do that in fact.

14              MR. SCHAALMAN:  Your Honor, you can--

15              THE COURT:  Let him finish.

16              MR. SCHAALMAN:  Sure.

17              MR. DAIN:  I am here pro se as defendant.  As a

18  supplemental needs trust where this money should have gone, I

19  have an obligation to Ms. Black who is in court, sitting next

20  to my wife -- if you would wave.

21              And, I have obligations to her that all that money

22  be returned.  I can't say I'm going to settle with allowing

23  someone who is found to have stolen assets to keep some of

24  those.  And have caused her to spend so much of the rest of

25  her assets.

Case 1:16-cv-01238-CBA-ST   Document 131   Filed 12/20/17   Page 9 of 51 PageID #: 3022

- Proceedings -                                    9

1        MR. SCHAALMAN:  If I may, Your Honor, Mr. Dain shows

2   the difficulty of even beginning the negotiations.  Most don't

3   start with preconditions.  People sit down, and try to work

4   out a solution.  The plaintiffs are more than willing to do

5   that.

6        We have made a formal offer, previously.  I don't

7   know whether it was communicated to Mr. Dain or not.  I take

8   his word that he says he didn't know.

9        THE COURT:  I am guessing your formal offer does not

10  entail paying money back to the trust that Mr. Dain is talking

11  about.

12       MR. SCHAALMAN:  I don't want to intrude into the

13  conversations.  But I would just tell the Court that is not

14  correct.  And, there were offers made and I think the notion

15  that Mr. Dain is already developing these pre-conditions to

16  make it even impossible to sit down is not the way you do a

17  settlement.

18       THE COURT:  But as part of a settlement that you

19  would be discussing would be money being paid-- you represent

20  not in this case, but in the other case, you represent Mr.

21  Black.  Would that entail a discussion about monies going back

22  in that are allegedly have been taken by your client?

23       MR. SCHAALMAN:  I don't think there are any issues

24  that are off the table Your Honor.  I think that the offer by

25  Mr. Black and even the beneficiaries of the issue trust who

RW Barry    OCR

- Proceedings -                                    10

1   are the plaintiffs in this case, I think all issues are on the

2   table and negotiation and a settlement is what it normally is.

3   People come to the table, attempting to resolve the disputes

4   we would not start with any pre-conditions.  We don't start as

5   Mr. Dain says, with the assumption that everything that

6   happened in the Colorado Court is accurate or fair.  That

7   matter is on appeal.

8           But, we are more than willing to sit down and have

9   tried on a number of occasions to encourage a settlement.  It

10  has not been forthcoming.

11          THE COURT:  Well, it seems like-- so who did you put

12  your proposal too?  Who did you discuss settlement with then

13  if not Mr. Dain?  I take it Mr. Dain is-- we are talking about

14  the defendants is the principal defendant in the case.  So if

15  you are not talking to him, who are you talking to?

16          MR. SCHAALMAN:  I want to be clear, Your Honor, so

17  that the record is straight on this.  The offer was not made

18  by me personally, but conveyed either by Mr. Black or through

19  other attorneys, and I believe it was to Mr. Salzman.  I think

20  that is indicated in our papers that there was a settlement

21  offer made to Mr. Salzman which we did not believe was even

22  conveyed to Ms. Black, Ms. Joanne Black.

23          MR. DAIN:  Your Honor, if that is what he is

24  referring to, that was not in this action.

25          Apparently an offer was made by other counsel to Mr.

Case 1:16-cv-01238-CBA-ST Document 133-1 Filed 12/30/17 Page 12 of 52 PageID #: 3031
Case 1:16-cv-01238-CBA-ST Document 132-1 Filed 12/13/17 Page 12 of 52 PageID #: 3004

1   Salzman in which the consideration was a portion -- what might

2   be on the table is return of a portion of the interest, issue

3   trust assets.  A portion.

4           Understand, their finding by the Colorado Court, a

5   million dollars of assets were laundered into the issue trust.

6   Five hundred thousand in assets were just taken and

7   distributed pro rata, however-- I think it is pro rata is the

8   probate term used as well to each of his seven children.

9           So, again that was not conveyed to me, that was

10  apparently conveyed as a consideration and as I said, that has

11  to be a non starting because we can't start with less than the

12  amounts paid on death assets that were stolen.

13          Again just my obligation is to have those returned,

14  right now they are not alleged.  There is a judgement of

15  civil-- it is on appeal, but there is a judgement that goes

16  beyond just mere allegations.

17          So, it was not conveyed to me.  Again it was

18  apparently conveyed to Mr. Salzman that that might be the

19  discussion.  Very morphous.  We were all aware of that.  It

20  wasn't here is an offer.

21          It was, let's have a discussion and these are the

22  things we might consider.

23          So I guess you could call that a precondition as

24  well.

25          I understand Your Honor's concern because I'm doing

- Proceedings -                                  12

1   this and have been doing it throughout the four years not just

2   in pro se, but I'm not being paid.  I am having to access

3   funds that the Court in Colorado is authorizing to pay Mr.

4   Salzman to pay Ms. Kerr the forensic accountant, a court

5   appointed--

6           THE COURT:  All of this is money coming out of the

7   trust.

8           MR. DAIN:  Out of the supplemental needs trust

9   because Mr. Black continues to file litigation and Ms. Black

10  needs to be defended.  The Illinois case was solely against

11  her to access the stolen funds.  It was doing-- it was saying

12  there was no jurisdiction in any of the Courts but there, let

13  us access the stolen funds so we can continue the litigation.

14  She had to be defended.

15          If there is an offer, you know at any time to return

16  all the stolen money, and then start discussing who is going

17  to pay as the Colorado Court has surcharged Mr. Black for all

18  of the litigation costs he has incurred, we can talk.

19          But I'm sorry to precondition but until we get the

20  return of the stolen assets.

21          THE COURT:  What is the amount of monies you claim

22  were stolen?

23          MR. DAIN:  Not claim, the amount the Court found.

24          THE COURT:  I know what you mean.  Go ahead.

25          MR. DAIN:  Approximately $1.5 million.

Case 1:16-cv-01238-CBA-ST Document 133-1 Filed 12/30/17 Page 14 of 52 PageID #: 3033
Case 1:16-cv-01238-CBA-ST Document 132-1 Filed 12/18/17 Page 14 of 52 PageID #: 3006

1          THE COURT:  That went where?

2          MR. DAIN:  That went-- it was laundered through the

3    estate, one million approximately into an issue trust, five

4    million never got there.  It was given 70 some thousand to

5    each of Mr. Black's seven children, directly.

6          We have no knowledge of where that is, we have no

7    knowledge if he is spending that.  Because the Court could

8    only freeze assets she was aware where they were, which was in

9    Chase and that is why Chase was interpleading.

10         The Court trebled-- actually, I can give you an

11   accurate number.  Ms. Lansky pointed it out, $1,511,356.

12         The Court trebled that under Colorado civil threat

13   damages, but there has been approximately $500,000 in fees

14   that I have had to pay, Ms. Wrigley has paid some of it out of

15   her pocket.  I paid some out of my pocket. Other attorneys are

16   waiting to be paid.

17         There are 500,000 and it is rising.  I have not

18   gotten the latest bills for attorneys.  The attorney in

19   Illinois had to be paid to get the case dismissed that Mr.

20   Black brought.  The Court appointed counsel, the guardian ad

21   litem, the forensic accountant, Mr. Salzman.  A trust expert

22   had to be paid.

23         So, yes, you are right, Your Honor by the time this

24   is done there maybe another million.  That is what we should

25   be discussing, the harm beyond that that Mr. Black has caused

1    Ms. Black to have to pay out of her remaining assets.

2         I'm with you 100 percent, we need to put an end to

3    this.  Hopefully this will be the first start.  These motions.

4         But we have to start with the return of the assets

5    I'm sorry we can't start with less than that.  It just defies

6    logic that the defendants in the other case-- let me backup.

7         That Mr. Black would want to start with keeping some

8    of the assets.

9         THE COURT:  When you say, keep some of the assets.

10   You mean by putting those-- what you said those half million

11   that you claim he distributed.  You are arguing, distributed

12   to other people.

13        Are you talking about transferring them from the

14   issue trust to the special needs trust?  You said a million

15   dollars.

16        MR. DAIN:  The million plus in the issue trust needs

17   to be transferred back.  We can resolve Mr. Salzman has issues

18   whether that should have been as-- their mother said, paid on

19   death.

20        So we can resolve between-- I can with other

21   assistance and Mr. Salzman how to get it to Joanne in the best

22   way possible.

23        But that million needs to be transferred back and

24   the five hundred some thousand and that went directly to his

25   children needs to be transferred back.  Then the issues that

- Proceedings -                                    15

1   should be remaining is, does Mr. Black want to run the risk of

2   having that judgment which I believe it will be affirmed on

3   appeal and he has got another three and a half million or-- it

4   will be by then or whether we can just talk about attorney's

5   fees, costs, other kinds over injunctive issues so he won't

6   keep continue suing.

7           I mean I see there are two here one in Illinois,

8   three lawsuits he has brought.  And any other issues.

9           But we have to start with the return of the

10  1.5 million, it has to start there.  It is doable but it has

11  to start there.

12          MR. SCHAALMAN:  The Court asked a pretty straight

13  forward and simple question to which I will repeat my simple

14  answer.

15          The plaintiffs have made an offer of settlement.

16  The plaintiffs stand ready to discuss settlement, go into

17  negotiations as the Court actually has set in the calendar for

18  us to do.

19          THE COURT:  The Magistrate Judge has set down a date

20  for--

21          MR. SCHAALMAN:  Yes, what happened Your Honor.  I

22  know this goes back away.

23          Initially we were here for pre-hearing motions and

24  the Court then established a calendar which has been bumped a

25  number of times.

- Proceedings -                                    16

1          THE COURT:  I'm sorry for that.

2          MR. SCHAALMAN:  That is not a problem.

3          But what the Magistrate Judge set a calendar keyed

4     off to this date.

5          THE COURT:  Right.

6          MR. SCHAALMAN:  So we have a hearing in front of the

7     Magistrate Judge on January 18th, to set a new calendar for at

8     least part of the scheduling order.

9          Part of that includes, a settlement conference and

10    settlement positions.

11         So whether Mr. Dain wants to enter into a

12    negotiation with us or not.  He will be required to by this

13    order.  He may as his position in the settlement repeat every

14    word he has said here today and that maybe his position.

15         The plaintiffs are willing and will go to this

16    settlement conference with no pre-conditions.  They would like

17    to resolve all of this litigation.

18         THE COURT:  All right.  I think that is a very wise

19    thing to do, on the 18th is to have a formal settlement

20    conference with all parties deciding what their positions are,

21    before you come to that conference.

22         MS. LANSKY:  For clarification, I don't believe that

23    conference is settlement.  I believe that conference was set

24    down to establish a new schedule based on Your Honor's

25    decision on these motions with the remaining defendants.

Case 1:16-cv-01238-CBA-ST Document 132-1 Filed 12/13/17 Page 18 of 52 PageID #: 3837
Case 1:16-cv-01238-CBA-ST Document 132-1 Filed 12/13/17 Page 18 of 52 PageID #: 3810

1  Because at this point no risk-- has been exchanged.

2  Everything is awaiting.

3          THE COURT:  I want you to have a settlement

4  discussion with the Magistrate Judge on January 18th.  I don't

5  care what everybody else calls its.  Got it.

6          MR. SCHAALMAN:  That is fine.

7          THE COURT:  Let me ask a few questions.

8          Mr. Dain, I guess this is principally your motion.

9          MR. DAIN:  I guess you could say that.  All of the

10 defendants have their own individual basis.  I am the primary

11 defendant so.

12         THE COURT:  One of the issues I think that you raise

13 and I think others raised as well is collateral estoppel, res

14 judicata.

15         MR. DAIN:  One of the issues, actually the others

16 framed it in that sense as res judicata and collateral

17 estoppel.  I framed it in probate exception to jurisdiction

18 and the Rooker Feldman doctrine.

19         THE COURT:  For Rooker Feldman to apply it has to be

20 the same parties.

21         MR. DAIN:  No, I'm sorry, Your Honor, again no it

22 doesn't.  It has to be parties--

23         THE COURT:  What is your theory if not the same

24 parties?

25         MR. DAIN:  I can give you the authority for that.

1      THE COURT:  I mean, why doesn't Lance, the Supreme

2   Court decision indicate that it has to be the same parties.

3      MR. DAIN:  What the cases say, is that the parties

4   have to have an identity in interest, essentially they do not

5   have to be the same parties.

6      And, if you look through the complaint, every aspect

7   and I focused on damages, every aspect of damages with damages

8   to Bernard Black in his various--

9      THE COURT:  Well, that is a standing issue though.

10      Counsel let me ask plaintiff counsel.

11      You are seeking damages due Bernard Black.

12      MR. SCHAALMAN:  No.

13      THE COURT:  How do your clients have standing to ask

14   for damages due to Bernard Black.

15      MR. SCHAALMAN:  No, we are not.  We are the

16   beneficiaries of the issue trust and remainder beneficiaries

17   of the supplemental needs trust.

18      THE COURT:  Your multi-- let's see, I think it is up

19   to now 1,513 paragraph complaint, in some of those

20   allegations, you are asking directly for damages due Black,

21   Bernard Black.

22      MR. SCHAALMAN:  I think what the Court is referring

23   to, is Mr. Black has incurred litigation expenses.

24      THE COURT:  So why-- why did your client ask for

25   those back.

- Proceedings -                               19

1        MR. SCHAALMAN:  If in fact as we believe the trusts

2   are obligated to repay those expenses that he has incurred, my

3   clients, as the beneficiaries, will be the one, particularly

4   directly in the issue trust, who then have to compensate Mr.

5   Black for those expenses.  Those are not the only expenses

6   that they are going to lose as the beneficiaries of the issue

7   trust. But Mr. Black is a trustee of the issue trust.

8        THE COURT:  I still don't understand how they have

9   standing to raise claims that he is due monies.  You are

10  saying it is because they have to pay him the monies.

11       MR. SCHAALMAN:  Because the trust will have to pay

12  Mr. Black, yes.  And other litigation expenses have been taken

13  out of the supplemental --

14       THE COURT:  But, they want him paid.

15       MR. SCHAALMAN:  What?

16       THE COURT:  According to your complaint they are the

17  ones who want him paid.

18       MR. SCHAALMAN: I think--

19       THE COURT:  How do they have standing to do that?  I

20  still don't get what your point is.

21       MR. SCHAALMAN:  The way they have standing, they are

22  the beneficiaries who will lose if the issue trust is

23  depleted, either de-funded as Mr. Dain--

24       THE COURT:  I understand how they have-- how they

25  may have standing to deal with requests that would damage the

Case 1:16-cv-01238-CBA-ST Document 133-1 Filed 10/30/17 Page 21 of 52 PageID #: 3940
Case 1:16-cv-01238-CBA-ST Document 132-1 Filed 02/13/17 Page 20 of 51 PageID #: 3813

1   trust itself.  But they are seeking to get monies from Mr.

2   Black, personal monies paid to him.

3          MR. SCHAALMAN:  No. Mr. Black-- what Mr. Black has

4   obligations from the trust to compensate him for individual

5   expenses incurred in his defending the trust.  His protecting

6   the trust, in his trying to keep the trust from--

7          THE COURT:  Why is that in their interest to have

8   him paid, that just takes money out of the trust.

9          MR. SCHAALMAN:  It is not in their interest.  It is

10  because it is an obligation the trust has to him.  If in fact

11  the trust fulfills that obligation to Mr. Black, then the

12  beneficiaries are deprived of assets in their trust.  In the

13  issue trust.

14          And the only reason Mr. Black has these obligations

15  and had to defend the trust, is because the defendants tried

16  to de-fund the trust.  Tried to interfere with the trust.

17  Tried to injure the trust and have been doing that for years

18  now.

19          MR. DAIN:  If I can answer your Rooker Feldman

20  question.

21          THE COURT:  Yes.

22          MR. DAIN:  I cited Board of Managers of 195 Hudson

23  Street Condo versus Jeffery Brown Associates.  It is a

24  supplemental case, Southern District of New York, 2009.  I

25  will quote from it.

- Proceedings -                                   21

1        It was explained that Rooker Feldman requires that

2   quote, the party defeated in the State Court must share a

3   common identity with the federal plaintiff.

4        I also cited Hoblock versus Albany County Board of

5   Elections 422 F.3d 77 at 89, a Second Circuit case in 2005.

6   Both cases were saying they don't have to be the same--

7        THE COURT:  But Lance is after Hoblock.  Lance is a

8   subsequent decision.

9        MR. DAIN:  Lance was not-- if you look at the facts

10  of that case, was not limiting it to saying it must be the--

11  it must be identical parties.  That is why I'm saying, they're

12  proxies for Mr. Black.  That is all they did to get around it

13  is say, I will let them sue for my damages.

14       By the way, Your Honor, it would not then be right--

15  going to the standing issue, if what Mr. Schaalman is saying,

16  the trust would have an obligation of Mr. Black and if the

17  trust honors that obligation, then the children may have an

18  action.  The trust may or may not honor it and by the way

19  those same fees he is talking about are what the fees before

20  the New York Probate Court or Surrogate Court, and/or the

21  fees, the attorneys fees were before the Denver Court.  They

22  are identical.  Until the Surrogate Court says Mr. Black can

23  get any fees for all this litigation he started and is

24  incurring, they have to approve those fees.

25       There is no obligation to-- for the trust to pay him

Case 1:16-cv-01238-CBA-ST Document 132-1 Filed 12/30/17 Page 23 of 52 PageID #: 3842

- Proceedings -                                    22

1    unless his fees are approved.  Right now the Probate Court in

2    Denver has said Mr. Black himself personally is obligated for

3    all these fees.

4         THE COURT:  So you are-- your principal reliance is

5    on Rooker Feldman.

6         MR. DAIN:  Mine is on Rooker Feldman--

7         THE COURT:  Or the probate exception.

8         MR. DAIN:  The probate exception because every one

9    of the fees, go through the damages and I did in my reply

10   brief.  Every item of damage, Mr. Black is-- the plaintiffs

11   I'm sorry, are admitting our damages that the Probate Court

12   has before it, whether it is the Surrogate Court in New York,

13   or the Denver Probate Court.  It is before them to approve.

14        The Denver Probate Court has made clear none of

15   those damages, should be paid to Mr. Black, he should be

16   paying for all the costs to all the other parties including

17   Joanne Black.

18        But in his own papers he admits that the executor

19   fee and cost of litigation, in that regard, are fees that the

20   New York Surrogate Court has yet to approve.  If you remember

21   in his pleading, he said--

22        THE COURT:  It is pending before the New York State.

23        MR. DAIN:  He said pending and expects them to be

24   approved.

25        Well, whether his expectation is born out.  They are

- Proceedings -                    23

1  pending before that Court and for this Court to have a case

2  where it would say, I will award you these damages,

3  plaintiffs, you maybe in conflict with the Surrogate Court who

4  says Mr. Black should not get a dime. In fact, as we believe

5  he ultimately will be removed.

6            THE COURT:  But aren't to some extent the damages

7  sought not from the trust but from individuals?

8            MR. DAIN:  There--

9            THE COURT:  There are some of the damages that are

10  sought, are sought from the individual defendants, not from

11  the trust.

12            MR. DAIN:  No, the damages are sought from the

13  individual defendants for fees that Mr. Black has to get

14  approved by a Probate Court.

15            So until this Court can say, I award those damages,

16  the Court has to defer to the Probate Court, Surrogate Court

17  to say they are allowable damages.

18            As you said, it is not in the trust's interest for

19  Mr. Black to be spending monies and having to pay to him, and

20  if the Probate Court, the Surrogate Court says, Mr. Black you

21  are not owed any money, you should not be paid, the trust is

22  not out any money.  They should not have to pay Mr. Black.

23            So to that issue, the standing issue is not even

24  ripe.  That goes to every single one of the damages claims.

25  There is not one damage claim other than this, you know moral

- Proceedings -                              24

1   harm, they claim that this Court could award without first the

2   Probate Court, whether the Surrogate Court or Denver Probate

3   Court agreeing they should be awarded to Mr. Black.

4                MR. SCHAALMAN:  Your Honor--

5                THE COURT:  I'm sorry.  You indicated Mr. Dain you

6   were not relying on res judicata or collateral estoppel for

7   any arguments; is that correct?

8                MR. DAIN:  No, I am in the sense I am joining in

9   defendants' arguments, the other ones.  I let them raise

10  those--

11               THE COURT:  The question that I have about that is,

12  doesn't-- both of those doctrines require final judgment.

13  There is no final judgment here, correct?

14               MR. DAIN:  Your Honor, initially that was my

15  understanding, that it would require to go through appeal.  I

16  think one of the other counsel has stated under-- as I

17  understand it, New York law, it would not require that.  I

18  will allow that counsel to speak to that.

19               THE COURT:  Who-- which counsel takes that position?

20               MR. KATZ:  Your Honor, in fact, this Court in the

21  case Caldwell versus Gutman, 701 F Supp 2d 340, 2010 opinion,

22  indicated that the Rooker Feldman doctrine should be applied

23  as long as the federal actions, this is in quotes, "as long as

24  federal action seeks review of the previous State Court

25  judgment, regardless of whether that judgment is being

- Proceedings -                25

1   appealed in the State Court when the Federal case begins."

2              THE COURT:  That is Rooker Feldman.  I was asking --

3              MR. KATZ:  You are asking about the Probate

4   exception.

5              THE COURT:  I thought that some of the parties have

6   raised res judicata and collateral estoppel.  I want a

7   concession, that there is no final judgment and those

8   doctrines don't apply.

9              MR. BOYAR:  If I could.

10             THE COURT:  Your name.

11             MR. BOYAR:  David Boyar for the defendant Cohenson.

12             I believe Colorado State law applies with respect to

13  whether or not collateral estoppel rules are applicable to

14  this case.  In effect we are looking to Colorado common law as

15  to whether or not the Colorado rulings are now collateral

16  estoppel as to Bernard Black and these plaintiffs.

17             We cite a case, actually several cases, in my

18  client's brief, that stand for the proposition, that

19  notwithstanding the fact an order or judgment is on appeal,

20  under Colorado law, that determination is collateral estoppel

21  and final, unless and until that determination has been

22  reversed.

23             That is in effect the foundation.

24             THE COURT:  That is based on, that is not New York

25  law.

- Proceedings -                          26

1          MR. BOYAR:  In effect, we argue that Colorado law

2    applies with respect to the collateral estoppel at issue

3    before this Court, not New York law.

4          MR. DAIN:  My apologies, Your Honor.

5          MR. WATERSON: Ambrose Waterson, representing the

6    Wrigley and CPI defendants.

7          I will join in that application.  We did cite the

8    case in our submission and I will read a quote.  It says, but

9    this is-- it says, in addition to Second Circuit says, a lower

10   court judgment quote final for purpose of collateral appeal

11   even while an appeal of that judgment is pending.  We cited

12   United States versus International Brotherhood of Teamsters,

13   905 F.2d 610.  That is a Second Circuit case, 1990, Your

14   Honor.

15         THE COURT:  So you are saying that that-- your

16   position is that that is New York law as well.

17         MR. WATERSON:  When Your Honor looks at the case

18   analyzing New York law.  But it is a Federal case.

19         We cite-- that is page 11 of our brief.

20         THE COURT:  Let me just ask you, counsel with

21   respect to the probate exception, I understand that your

22   argument that based on some of the forms of relief you are

23   seeking, that the probate exception doesn't apply.  But there

24   are specific paragraphs in your complaint that it clearly

25   would apply to, where you're asking to declare they don't have

- Proceedings -                              27

1   jurisdiction, when you are in a sense asking to have their

2   opinions in essence reversed.  Why isn't that clearly the

3   probate exception?

4           MR. SCHAALMAN:  It is not, Your Honor, because

5   neither of the issue trust nor the supplemental needs trust

6   was within the jurisdiction of the Probate Court in Colorado.

7           So we are asking--

8           THE COURT:  The Probate Court in Colorado thought

9   so.

10          MR. SCHAALMAN:  Well, she made a lot of advisory

11  comments and so on.  But her case was very narrow.  The

12  question in her case was really twofold.

13          Was the disclaimer appropriate as brought by Mr.

14  Black, as conservator.  That is what he was.  The financial

15  conservator for his sister.

16          That was one issue before her and then, was raised

17  during the trial, not before the trial, by motion, that there

18  would be a-- there was allegation of civil theft and she ruled

19  on it.

20          Those are the only two items that she actually ruled

21  on.  That is what the case was about.  It was not about

22  probate of the issue relating to the issue trust or to the

23  supplemental needs trust.

24          Mr. Dain has gone back to the Judge, and asked for

25  monies to be taken out of the supplemental needs trust to pay

- Proceedings -                    28

1   litigation expenses.  Another injury to my clients who are

2   beneficiaries, remainder beneficiaries of the supplemental

3   needs trust.

4          So, it is very clear, that -- probate exception

5   would not apply.  The trust was not--

6          THE COURT:  Why?  The probate does not apply what,

7   are you saying she wasn't acting as a probate Judge?

8          MR. SCHAALMAN:  She was acting on a very narrow

9   basis as a Judge who was issued an order that Mr. Black could

10  be the conservator and could disclaim the payment on death

11  benefits in the Vanguard accounts.  That is what she was

12  doing, not probating the estate.  The estate was not in front

13  of her.

14         What was simply in front of her were these two

15  motions that he brought, and the papers that he filed with her

16  including the will, which made it very clear that there was

17  this distribution between two thirds and one thirds, two

18  thirds going to the special-- supplemental needs trust and one

19  third going to the issue trust.  And that if you in fact

20  disclaim the payment on death provisions, the will was going

21  to be enforced and those trusts set up by the will, by Renata

22  Black as a desire for the way this estate would be handled,

23  was clearly in front of the Judge.

24         She knew it and it was in the will and she had those

25  documents in front of her.

Case 1:16-cv-01238-CBA-ST Document 133-1 Filed 12/30/17 Page 30 of 52 PageID #: 3049
Case 1:16-cv-01238-CBA-ST Document 132-1 Filed 12/13/17 Page 30 of 52 PageID #: 3022

1          The only things she was deciding then, was the

2    question of whether that disclaimer could be reversed.

3    Because there was a motion made, an action taken to take the

4    disclaimer and reverse it.  If the disclaimer had been

5    reversed, then the payment on death for the assets principally

6    in the Vanguard account would have taken hold.

7          But the Judge concluded that she could not reverse

8    the disclaimer and she did not reverse the disclaimer so the

9    trusts remain intact.

10         Mr. Black remained as the trustee of both trusts and

11   my clients remained of course as the beneficiaries of the

12   issue trust.  My clients weren't in front of her, could not

13   have been in front of her, would have had no standing to make

14   these allegations in front of her.

15         And their claims are really quite simple.  As

16   beneficiaries of the issue trust and remainder beneficiaries

17   of the supplemental needs trust, they are asking that the

18   Court give them their day in Court to protect the issue trust,

19   and to recover those assets which have been taken out of both

20   the supplemental needs trust which have been hundreds of

21   thousands of dollars, and to make sure that the obligations of

22   the trustee which can be exercised against the trust, are not

23   in fact used to take monies out of the issue trust, but rather

24   recouped from the defendants who we believe were involved in a

25   very very serious scheme to breach the fiduciary duties that

- Proceedings -                              30

1    they had.

2            THE COURT:  I'm looking at paragraph 1503.  You are

3    asking for declaratory judgment of the Colorado Court has no

4    jurisdiction over the estate of Renata Black.  That the

5    Colorado Court orders directing or permitting any actions by

6    or any other person with regard to the estate the issue trust

7    or the SNT or making any other decisions with regard to the

8    estate have no legal effect.

9            That in response to ongoing harm, the Court should

10   permanently enjoin Dain from appearing in Court or otherwise

11   participating in any proceeding involving the Black family

12   trust or estate of Renata Black.

13           MR. SCHAALMAN:  Yes, Your Honor.

14           THE COURT:  I mean you are asking this Court to-- I

15   mean it is clearly-- that part of your complaint is clearly

16   subject to the probate exception.  You are asking me for

17   declaratory judgment with the Colorado Court has no

18   jurisdiction over the estate of Renata Black.  How do you

19   think you can get that relief here?

20           MR. SCHAALMAN:  We get that here because we have a

21   defendant Mr. Dain properly here.  And we ask the Court to

22   give us that relief as I think they did in the Lefkowitz case.

23           THE COURT:  Why isn't this the complaint.  I know

24   that there maybe legal grounds to suggest that the entire

25   complaint cannot be dismissed.  But why isn't this complaint

- Proceedings -                    31

1    simply your appeal of the Colorado Probate Court decision?

2            MR. SCHAALMAN:  It is not, Your Honor, because the

3    parties are very different.  The relief is very different.  We

4    are not asking this Court for-- for example, we are not asking

5    the Court to be involved in the question of whether the

6    disclaimer was appropriate or not.  That is something that was

7    before the Probate Court in Colorado, because it was raised by

8    Mr. Black in his efforts to be the financial conservator.  We

9    are not asking the Court to deal with that.

10           We are not asking you to deal with questions of--

11   about the executor of the estate.  We are not asking the Court

12   to deal with any of the rest of the estate at all.

13           What we are saying is in this particular paragraph,

14   in 1503, that we need a declaration from this Court that is

15   clear, that says, in fact, that the Colorado Court did not

16   have the jurisdiction to conduct a probate of the estate.

17           The estate and the trust--

18           THE COURT:  Which is what you say they did.

19           MR. SCHAALMAN:  Well, Your Honor, as I read what

20   Judge Leif wrote, there is a lot of comments and lot of dicta

21   in there.

22           THE COURT:  You think this Court has the authority

23   to issue a declaratory judgment telling the Colorado State

24   Court they are all wet, they got it wrong and they shouldn't

25   have done this.  That is what I can do here in this case, that

- Proceedings -                    32

1    is what you are asking for.

2                MR. SCHAALMAN:  No.

3                THE COURT:  What does telling the Colorado Court

4    that they have no jurisdiction mean?

5                MR. SCHAALMAN:  We are not asking you to go to the

6    merits of the case.  We are not asking you to go to the

7    question of whether the disclaimer was appropriate or not or

8    could be revoked.  We are not asking you to go into the

9    question of the civil theft that Mr. Black was accused of and

10   a judgement was entered.  We are not asking any of that.

11               We want it made clear because we think this Court is

12   fair and impartial to look at the-- what in fact is in front

13   of that court.  And to declare what is in front of that Court,

14   that the Court did not have jurisdiction over that-- over the

15   estate or any of the trusts.  And the trusts are very very

16   important because the trusts are being invaded by--

17               THE COURT:  You don't think that becomes a problem

18   with probate exception.

19               MR. SCHAALMAN:  I don't think so, Your Honor.

20               Obviously if the Court does, not all the relief in

21   this complaint needs to be in fact granted by the Court.  But

22   I don't think that that language itself, and the request of

23   this Court, is different than in other aiding and abetting

24   cases like the Lefkowitz case, which deals with this whole

25   notion of the probate exception.  That is the latest opinion

- Proceedings -                          33

1    out of the Second Circuit.

2              Which greatly changes the whole notion after the

3    Sullivan case of what that probate exception really means.

4              THE COURT:  What do you think the Lefkowitz case

5    stands for?

6              MR. SCHAALMAN:  I think the Lefkowitz case stands

7    for the proposition, even if you have intertwined claims, as

8    long as you are not asking the Federal Court to deal with the

9    probate of the estate, to deal with issues in the will, to

10   deal with the res of the estate, the actual corpus of the

11   estate.  The claims of aiding and abetting which are the

12   claims the Second Circuit had in front of it in Lefkowitz and

13   are exactly the claims the Second Circuit said shouldn't

14   survive.  That is what we are asking this Court for.  That is

15   what this action is all about.  That is what we want to

16   accomplish here.  To move forward on those claims of aiding

17   and abetting against my clients, the beneficiaries of the

18   issue trust.  They have no other place to go.

19             THE COURT:  You have to amend the Complaint.  Have

20   you done that yet?

21             MR. SCHAALMAN:  We have done it once.

22             THE COURT:  I mean, two of these people are

23   children, correct?

24             MR. SCHAALMAN:  Yes, they need a guardian, we will

25   add that.

1          MR. DAIN:  Can I speak directly to that though.

2          This is a fundamental disconnect.  The Colorado

3  Probate Court had in rem jurisdiction over the conservatorship

4  estate of Joanne Black.

5          That was the entire assets of Joanne Black on the

6  date she under operation of law, received those monies, that

7  was the date her mother died.

8          So we start with the Colorado Probate Court having

9  in rem jurisdiction over all of those assets and that Court

10  never relinquished that jurisdiction.

11          What plaintiffs concede in their complaint, is that

12  these trusts were funded after Mr. Black engaged in as the

13  Colorado Probate Court found, theft.

14          So he stole the assets from the conservatorship

15  estate, laundered them through the estate of Renata Black into

16  the various trusts, a million and a half dollars of which was

17  never reported to the Colorado Court.  Never reported in the

18  accounting.

19          And when it was discovered the Court said that that

20  is a theft.  The Court has jurisdiction over those assets and

21  has said so in multiple orders.  It doesn't matter whether

22  they were laundered into an issue trust and now Mr. Black is

23  saying, well, my children have rights to this stolen money and

24  you breached your fiduciary duty by not protecting those

25  rights.

1    They still are the in rem jurisdiction assets of the

2 Colorado court.  Everything in this complaint that plaintiffs

3 are asking, is saying, the Colorado Court does not have

4 jurisdiction, can't address--

5    THE COURT:  So your position is that the Colorado

6 Court has jurisdiction over both the trusts?

7    MR. DAIN:  Absolutely, has jurisdiction over

8 everything.  The Colorado Probate Court preferred that the

9 actions initially be brought-- removing Mr. Black in New York,

10 because she said, well, that is where the trusts were created.

11 Mr. Black says, well, I'm in Illinois, so you can't get

12 jurisdiction over me in Illinois. That is why the children are

13 the proxies here, he doesn't want jurisdiction over them here.

14    But, she has said until -- and this is her

15 statement, until another conservatorship or guardianship is in

16 place, I have control.

17    By the way, this was just litigated in a motion that

18 Mr. Black brought to the Colorado Appellate Court to stay her

19 rulings regarding the supplemental needs trust, to freeze on

20 the issue trust and the other 2013 trusts which the plaintiffs

21 called the Black family trusts and the Court of Appeals denied

22 their request to stay.  The Colorado Court still has

23 jurisdiction.

24    If Mr. Black disagrees that is what the appeal is

25 for.  That is why it is not a matter of amending to state,

- Proceedings -                                     36

1   well, you can go after this but not that.

2         The Colorado Court has jurisdiction over all of Ms.

3   Black's assets.  That included everything that was stolen from

4   her from the day one.

5         So, it absolutely applies to everything and it

6   absolutely -- they are asking this Court to overrule the

7   Colorado Probate Court, ask the Appellate Court, to make

8   findings contrary to the Colorado Probate Court, saying, no,

9   he can have access to the issue trust, the trust assets were

10  stolen.

11        And furthermore, saying that he can recover assets,

12  attorney's fees that that Court had said he is obligated to

13  pay, not the defendants.

14        So, everything they are asking for, that is why I

15  focused on damages, it was so easy to see.  You can tie that

16  in.

17        But, I don't think this Court can parse and say, you

18  can go after this, you can go after that.  Whatever damages

19  they are trying to seek from all of the defendants personally,

20  the Court in Colorado has already ruled, all of those parties

21  acted appropriately and in fact she has ruled that most of

22  them, can get their fees from Mr. Black.  Just the other way

23  around.

24        So the probate exception, is absolutely applicable

25  to everything but at worst, I think one of the other defense

1  counsel raised it.  At worst this Court should stay any action

2  until the Colorado Appellate Court rules on this.

3         They have appealed everything.  They have appealed

4  my access to the supplemental needs trust, the Court's freeze

5  on the issue trust, even you know again they tried in

6  Illinois, that Court dismissed.  They are still seeking that

7  they have appealed everything.  Let that Court decide whether

8  the Colorado Probate Court had jurisdiction or not.

9         THE COURT:  Was that an alternative request that you

10  made?

11         MR. SCHAALMAN:  It was not Your Honor.  There is no

12  language anywhere in any of the briefs about a stay.

13         MR. KATZ:  Your Honor, that is not true.  In my

14  motion, I represent Ira Salzman.  In our moving memorandum of

15  law, we did request in the alternative that relief.  If you

16  bear with me a second, I will find it.

17         MR. WATERSON:  Your Honor, the Wrigley and CPI

18  defendants also moved, but specifically saying, we don't think

19  the Court should do that.  But, we did raise that as a

20  possibility.

21         THE COURT:  That is right, page 27 of your brief,

22  you say it.  Absolute minimum.  This is the brief from Mr.

23  Salzman.

24         MR. KATZ:  Yes.

25         THE COURT:  The Court should stay action pending the

- Proceedings -                    38

1   outcome of the Colorado appeals.

2           MR. SCHAALMAN:  May I address why that would not be

3   a good idea.

4           THE COURT:  But you now admit they made the

5   argument.

6           MR. SCHAALMAN:  They threw it in as a final salvo,

7   yes, Your Honor.  But there was no argument, there was no

8   citation of authority.  This was simply a sort of last rope

9   thrown around the dock of the bridge.

10          And, I would like to say that the stay is

11  inappropriate at this point because again--

12          THE COURT:  Why?

13          MR. SCHAALMAN:  -- my clients.

14          THE COURT:  Would not a lot of the issues be

15  resolved by the appeal that you are asking me to get in the

16  middle of.

17          MR. SCHAALMAN:  I would not think so, Your Honor.

18          The issues on appeal, the central issues on appeal

19  are whether in fact the conservator, whether Mr. Black as

20  conservator, proper--

21          THE COURT:  That is all appealed.  Where are the--

22  have you-- Mr. Black appealed.  Has anyone submitted his

23  appeal papers?  What did he argue on appeal?  Do you know?

24  You represent him in another case.  What issues did he raise

25  on appeal?

- Proceedings -                          39

1          MR. SCHAALMAN:  The principal issues raised on

2     appeal, I don't have the briefs in front of me now, I'm sorry.

3          But principally are the question of whether in fact,

4     the appropriate order was signed by-- motion by him to

5     disclaim the P.O.D, the payment on death.

6          THE COURT:  That came out in his favor, the

7     disclaimer.  He wanted it disclaimed, correct?

8          MR. SCHAALMAN:  Yes.

9          THE COURT:  That was his position and the Court went

10     along with that, right?  He is not appealing that.

11          MR. SCHAALMAN:  Well, that is not correct, Your

12     Honor.  Because the Court said this he had lacked candor in

13     that-- as the financial conservator, in attempting to get the

14     disclaimer.

15          And clearly is in front of the Court in Colorado,

16     the Court of Appeals, that in fact he exhibited candor.  That

17     he attached the will, that there were all kinds of

18     conversations about the fact that this was a two thirds, one

19     third division. I mean even the order in front of Judge Leif,

20     only covered two thirds.

21          THE COURT:  Can you provide the Court with a copy of

22     his appeal to the Colorado State Court.

23          MR. SCHAALMAN:  Of course I will do that.

24          But I want to just address for the moment, Mr.

25     Dain's repeated notion of theft and all of the things that

- Proceedings -                    40

1    Judge Leif decided.

2         In terms of a real judgment, she did not decide

3    anything other than in fact, Mr. Black as conservator, did not

4    give the Court sufficient candor or information or disclosure,

5    about the disclaimer and that that --

6         THE COURT:  Didn't she order he pay certain monies?

7         MR. SCHAALMAN:  Yes, that is the second thing on

8    appeal.  She found on a motion during the trial, for civil

9    theft, that he in fact would have to pay a million and a

10   half--

11        THE COURT:  She found he unlawfully took it.

12        MR. SCHAALMAN:  Civil theft is an unlawful taking

13   absolutely.

14        THE COURT:  So what is your point.  She made those

15   findings.

16        MR. SCHAALMAN:  The question is whether she made

17   other findings that were related to the probate.  I am trying

18   to let the Court know that, no, she did not take on this-- as

19   a probate matter.  She didn't deal with the will.  She didn't

20   deal with the estate.  She doesn't have jurisdiction over the

21   trust.  Didn't even mention in terms of her jurisdiction over

22   the issue trust, didn't have anything to do with the

23   beneficiaries of the issue trust.

24        So the Probate exception is-- again, Lefkowitz, I

25   call it to the Court's attention, had the same issues raised.

1  And the Second Circuit said, no, when it comes to allegations

2  of breach of fiduciary duty, those were not in front of the

3  Probate Court.  They were not in front of Judge Leif,

4  different parties, different allegations.  They have a right

5  to have those allegations heard in this Court.

6          MR. DAIN:  Your Honor, with respect to appeals.  Mr.

7  Black has appealed every order that Judge has made. I cited

8  that in my reply brief.

9          In one of the-- his motions to stay, a January 29th,

10  2016, order, he said execution of the order is not stayed in

11  the assets are transferred, to the Joanne Black conservator.

12  Mr. Black's interest as cotrustee of the trusts, notice,

13  trusts, all three.  As well as the interest of the

14  beneficiaries will be irreparably harmed.

15          He has appealed and in the most recent appeal, he

16  cited to the Colorado-- I mean to the Colorado Appellate

17  Court, that it was the supplemental needs trust that was

18  appealing.  He suddenly changed from Bernard Black when he was

19  called on the carpet in that, that you don't-- you don't have

20  a right to appeal this issue, involving the trust.  He said,

21  no, no, it is the supplemental needs trust that he's appealing

22  and I am doing it on the behalf of that trust.

23          He has raised his interest as a trustee in all three

24  trusts before that Court.  The Colorado Court of Appeals'

25  determination will fundamentally resolve every one of these

- Proceedings -                                    42

1    issues.

2            In addition, the Surrogate Court in New York's

3    decision whether Mr. Black is entitled to any payment, or as

4    we believe rather is obligated to pay back hundreds of

5    thousands, will be decided by that Court.

6            Just look at the damages.

7            THE COURT:  What is currently pending before the New

8    York Surrogate Court?

9            MR. DAIN:  Is pending a final accounting that Mr.

10   Black filed and whether as our-- as the accountant in

11   Colorado--

12           THE COURT:  This is on the estates.

13           MR. DAIN:  On the estate has found that almost

14   $200,000 was shorted Ms. Black through this laundering.  That

15   is one issue that is going to be decided.  Whether he has to

16   pay that back.

17           Two, whether he ultimately will be removed as

18   executor, that is before the Court in a Petition by Mr.

19   Salzman's firm, still before the Court.  Whether he will be

20   further surcharged for that.

21           And then there are the interpleader actions pending

22   in New York, I think it is called Supreme Court.  In our --

23   California, it is called Superior Court.

24           The interpleader specifically on the interest trust,

25   as to whether the Court should just take control of that and

- Proceedings -                              43

1   tell the parties, to reach final determination.

2          All those of, this Court-- should at a minimum I'm

3   not asking you to stay.  I believe it should be dismissed as a

4   minimum should stay until all of those are resolved.

5          THE COURT:  All right.  You didn't request a stay in

6   your papers though.

7          MR. DAIN:  I joined, so I did.  I joined in all the

8   other.

9          MR. WOTORSON:  Your Honor, respectfully, in our

10  papers, it is true, we attempted to join everyone's arguments.

11  In our brief in chief from pages 14--

12         THE COURT:  Sorry which brief is this?

13         MR. WOTORSON:  This is the brief in support of the

14  motion to dismiss, filed by defendants Wrigley, Pinto and CPI.

15         We have a whole point on this and defendants

16  responded.  So pages 14, 15, and 16.  This is not relegated to

17  a footnote.  This is a whole point.

18         So this argument was absolutely raised.

19         THE COURT:  That is abstention, that is different

20  from a stay.

21         MR. WOTORSON:  Your Honor in the sense that we

22  argued in our papers, that yes, we thought there-- this Court

23  shouldn't be getting involved in this.

24         THE COURT:  That is not getting involved at all.

25  That is different from staying.  This is-- Mr. Salzman raised

- Proceedings -                                    44

1    the issue of the stay.

2              Extension argument is different from stay.

3              MR. WOTORSON:  Only to the extent we argued that the

4    Court shouldn't exercise any jurisdiction here.  That was--

5              THE COURT:  That is a much broader request than a

6    stay.

7              MR. DAIN:  We all joined Your Honor.  I want to be

8    sure on behalf of myself, I joined in this.  I joined in Mr.

9    Katz' argument.

10             THE COURT:  Okay.

11             MS. LANSKY:  We did as well.  My client isn't a

12   party in any action, she is a forensic accountant.  We have a

13   different position, she shouldn't be in this case in any

14   event.

15             THE COURT:  Well, principally you have a question

16   about whether there is even jurisdiction over you.

17             MS. LANSKY:  As a starting point.  I want to be

18   clear, I am also submitting a separate affirmation in support

19   of all of the points raised by the codefendants.

20             THE COURT:  Are you also supporting a stay?

21             MS. LANSKY:  I think the case should be dismissed.

22   I think at minimum a stay is required.  I don't think the

23   defendant should be forced to sit in limbo in this case while

24   all these appeals in other courts are making decisions.  I

25   believe this case should be dismissed, and if any of those

- Proceedings -                          45

1   appeals are otherwise successful, then potentially, this Court

2   can consider hearing this case at a later date.

3           Again not particularly against my client, but as a

4   whole, I don't think the defendant should be caused to sit.

5           THE COURT:  Does anyone know what the status of the

6   appeal to the Colorado Court is?

7           MR. SCHAALMAN:  I'm aware of that.  Briefing is

8   almost complete.  Not complete yet.  It is almost complete.

9           There maybe a cross appeal by some of the defendants

10  and the best intelligence that I have been told is in late--

11  early fall that they think there will be a decision.

12          THE COURT:  It hasn't been finished briefing.

13          MR. SCHAALMAN:  The briefing is not finished.

14          THE COURT:  Oral argument.

15          MR. SCHAALMAN:  I do not believe that has been

16  scheduled.  I think the Appellate Court in Colorado is a

17  pretty efficient court, moves quickly.

18          MR. DAIN:  I'm not sure what other defendant in that

19  case.  It is a Probate Court case.  Technically, Mr. Black

20  would be the only appellant and Ms. Black is the respondent.

21          So the briefing is not complete.  Counsel is

22  correct, I don't think there is any other-- there maybe other

23  orders.  There are other orders coming up that Mr. Black may

24  appeal as well that is true.

25          But I do also want to say, I have a jurisdiction

- Proceedings -                    46

1    argument.  You know the only appearances that I understand

2    that plaintiffs arguing is, in the Probate Court case for

3    Joanne Black here, I filed pleadings again as an interested

4    party.  I thought-- I think I have an obligation to do.  I

5    didn't file any action.  Didn't defend personally as a party

6    any action.

7            I don't have any business interest here.  I don't

8    have any other interests here other than family.  But that is

9    not a connection.

10           And so, I also have a jurisdictional argument that I

11   should not be before the Court.

12           MR. SCHAALMAN:  Just I briefly sort of give the

13   Court one way to capsulize the jurisdictional arguments.  I

14   realize there are a lot of arguments flowing back and forth

15   and we have not sort of addressed them very systematically.

16           All of these defendants were subject to a temporary

17   restraining order by Justice Aliotta.  And all of them were

18   sufficiently in the State of New York, for the Judge, for the

19   Justice to issue this restraining order.  That they stay away

20   from the Black family.  They no longer contact Northwestern

21   University Law School and no longer attempt to impact their

22   employment at the law school.  That restraining order was in

23   effect until a final order issued.

24           THE COURT:  Why does the fact one Court concluded

25   that-- you are saying that Court must have concluded it had

- Proceedings -                    47

1   jurisdiction over them so I should conclude the same thing.

2          MR. SCHAALMAN:  There was no objection that they

3   were there and that activity in that Court, is part of the

4   claims that the beneficiaries are raising, about aiding and

5   abetting, in the fiduciary duties.

6          So the fact-- the fact that they were in front of

7   Justice Aliotta, and that they concluded that they were

8   sufficiently there in New York for him to order them to cease

9   and desist.

10         THE COURT:  Was that something that was litigated

11  there?

12         MR. SCHAALMAN:  Certainly was.

13         THE COURT:  Did anybody raise whether he had

14  jurisdiction to issue the order?

15         MR. SCHAALMAN:  The order was provided to the

16  Justice, and he signed it and then there was a final order

17  which came out.  No one raised the question of jurisdiction.

18  He didn't raise the question of jurisdiction.

19         THE COURT:  Are you arguing that they somehow waived

20  it here?

21         MR. SCHAALMAN:  What I am saying is the activity

22  that took place in that Court was part of the scheme to

23  de-fund the trusts.

24         THE COURT:  Okay.

25         MR. DAIN:  Your Honor, I --

- Proceedings -                                         48

1    THE COURT:  I have to go gentleman and ladies.

2    MR. DAIN:  Just a minute to respond to that.  There

3  is an inaccuracy, I need to correct that.

4    The Judge was-- they submitted a temporary

5  restraining order.  I was not named-- I had no action in that.

6  But they submitted a temporary restraining order.  That order

7  was signed, after hearing it was denied.  So that needs to be

8  made clear.  Judge Aliotta denied that restraining order upon

9  hearing.

10    So the question--

11    THE COURT:  Is that correct?

12    MR. SCHAALMAN:  No.

13    THE COURT:  You guys can't even agree on whether a

14  restraining was signed or not?

15    MR. SCHAALMAN:  If I may explain.

16    THE COURT:  Honestly.

17    MR. SCHAALMAN:  The restraining order was signed and

18  the final order Justice Aliotta said, I'm not continuing the

19  restraining order because the defendants had agreed.  They

20  stipulated they would stay away from the Blacks, that they

21  would have no further contact with the Black family.  That

22  they would make no attempts in fact to injure the Black

23  family's reputation or employment at Northwestern University

24  Law School.  That is why Justice Aliotta signed that and did

25  not continue the temporary restraining order.

- Proceedings -                                    49

1          So there was a piece left out of what Mr. Dain just

2     said.  He specifically said in there, I am not addressing

3     this, I'm not enforcing this further because the parties have

4     agreed that they are not going to do this.

5          MR. DAIN:  It was denied.  I can submit the order.

6          THE COURT:  Was it denied because there was an

7     effective settlement of the issue?

8          MR. DAIN:  Judge Aliotta came out and said are you--

9     it wasn't me by the way.  Other people had filed a complaint

10    against Northwestern.  He said, are you going to contact

11    Northwestern any more.  The parties it was addressed to, said,

12    no.  He said I will deny it.

13         Everything was denied.  That Judge Aliotta denied

14    every application and said send it.  Take it up in Surrogate

15    Court.

16         So it was denied.

17         THE COURT:  All right.  I am reserving decision on

18    this.  I want you to all meet with the Magistrate Judge on the

19    date set January 18th and be prepared to discuss resolution of

20    the case.

21         MR. KATZ:  If I may one comment, I apologize, I

22    didn't have an opportunity to speak.  I want to note there are

23    additional arguments just.

24         THE COURT:  I realize that.  I have read the papers.

25         MR. WOTORSON:  I have one minor point, Your Honor

1   raised the possibility of an amended complaint.  We think an

2   amended complaint would be futile.  I also want to emphasize

3   what counsel--

4            THE COURT:  Amended complaint with respect to naming

5   the guardians for the children.

6            MR. SCHAALMAN:  Exactly.

7            MR. WOTORSON:  We don't believe there is a

8   settlement conference for the 18th that is not what is on the

9   docket.

10           THE COURT:  I said it is, did you understand what I

11  said.  I know you didn't think that the Magistrate Judge

12  ordered that.  The Magistrate Judge may well not have ordered

13  it.  I ordered it.

14           MR. WOTORSON:  I understood that.

15           MS. LANSKY:  I have not had any opportunity with all

16  due respect to discuss my client's jurisdictional issues which

17  are separate.

18           THE COURT:  I understand it.  I have read your

19  papers on that.  It is impossible to discuss every single

20  point at this proceeding.

21           MS. LANSKY:  My only issue, I am trying to minimize

22  my client fees in this case.  And in order to have settlement

23  discussions, I believe the Magistrate Judge's rules require us

24  to submit settlement motions.

25           THE COURT:  If you want to issue a settlement

Case 1:16-cv-01238-CBA-ST Document 132-1 Filed 12/30/17 Page 52 of 52 PageID #: 3071
Case 1:16-cv-01238-CBA-ST Document 132 Filed 12/18/17 Page 51 of 51 PageID #: 3044

1  position to say you have don't have any because you have a--

2  not because of a motion pending, you don't believe your client

3  has jurisdiction.  I am asking everyone to go to that

4  settlement conference in good faith.

5          MR. SCHAALMAN:  Thank you Your Honor.

6          MS. LANSKY:  Yes.

7

8          - - o o 0 o o - -

9

10  I CERTIFY that the foregoing
    is a correct transcript from
11  the record of proceedings
    in the above entitled matter.
12
    s/Richard W. Barry
13  _____
    Richard W. Barry, RPR
14

15

16

17

18

19

20

21

22

23

24

25