# EXHIBIT "B"

# EXHIBIT "B"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
SARAH H. BLACK, DANIEL L. BLACK, and
JACOB L. BLACK,

      Plaintiffs,

  -against-

ANTHONY DAIN, CHERIE WRIGLEY, IRA
SALZMAN, MELISSA COHENSON, BRIAN
A. RAPHAN, P.C., PAMELA KERR, ESAUN
G. PINTO, and CPI INVESTIGATIONS,

      Defendants.

-----------------------------------------------------------x

**AMON, United States District Judge:**

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ DEC 29 2016 ★

**BROOKLYN OFFICE**

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
16-CV-1238 (CBA) (ST)

This case arises out of a dispute concerning the management and distribution of assets

belonging to the estate of Renata Black, which were transferred into three trusts (the "Black Family

Trusts"). The plaintiffs—Sarah H. Black, Daniel L. Black, and Jacob L. Black—are grandchildren

of Renata Black. They allege that defendant Anthony Dain, Renata Black's nephew, breached his

fiduciary duties as co-trustee of the Black Family Trusts. They also bring claims against the

following defendants for aiding and abetting the breach of fiduciary duties: Cherie Wrigley, Ira

Salzman, Melissa Cohenson, Brian A. Raphan, P.C., Pamela Kerr, Esaun G. Pinto, and CPI

Investigations.

Presently before the Court is Pamela Kerr's motion to dismiss. For the reasons stated

below, Kerr's motion is granted.

## BACKGROUND

The Court assumes familiarity with the facts and background of this case, and only recounts

those facts relevant to Kerr's motion to dismiss. Plaintiffs allege that Anthony Dain and Cherie

Wrigley pursued a scheme to divert and strip assets from the Black Family Trusts to their own

control and for their own benefit. (D.E. # 53 ("Am. Compl.") ¶ 19.) Plaintiffs claim that Wrigley

made a number of unreasonable financial demands that served to strip assets from the Black Family Trusts for her own benefit, (id. ¶¶ 141–44, 148–51), and that Dain approved all of Wrigley's spending demands, (id. ¶¶ 148–51). Plaintiffs further allege that Dain used his position as a trustee to initiate lawsuits in multiple jurisdictions seeking to remove assets from the trusts. (Id. ¶ 20.)

Dain and Wrigley allegedly conspired with a number of other individuals to further this asset-stripping scheme. As relevant for purposes of the instant motion, plaintiffs claim that Kerr, a forensic accountant retained by Joanne Black's guardian ad litem in the Denver Probate Court, (id. ¶ 1474), aided and abetted Dain and Wrigley's scheme. Kerr "actively participated in a concerted effort, involving multiple parties, to tamper with witnesses and coerce the Black family members not to testify against Kerr's accomplice Wrigley, and to extort assets from the Black family." (Id. ¶ 1475.) In particular, Kerr violated her "professional, ethical, and legally-mandated obligation to act as a neutral court-appointed expert," and "effectively acted as a member of Dain's team" in proceedings before the Denver Probate Court. (Id. ¶¶ 1481–85.) Kerr also purportedly contacted Northwestern University, where Bernard Black and his wife work as law professors, and accused them of illegal conduct in an effort to coerce them not to testify in Joanne Black's guardianship proceedings in New York. (Id. ¶¶ 1476–79.) In addition, Kerr wrote a "false and misleading letter to the New York guardianship court," falsely claiming that Bernard Black's wife lied to that court. (Id. ¶ 1486.)

According to plaintiffs, Dain's conduct constitutes a breach of his fiduciary duties as trustee of the Black Family Trusts, and the other defendants—including Kerr—aided and abetted Dain's breach. Kerr filed the instant motion to dismiss, arguing that the Court lacks personal jurisdiction over her and that venue is improper in the Eastern District of New York. (See D.E. # 63-8 ("Kerr Mem.").)

Case 1:16-cv-01238-CBA-ST Document 130 Filed 12/29/16 Page 3 of 9 PageID #: 2946

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(2) permits a defendant to challenge a court's personal jurisdiction over it prior to the filing of an answer or the commencement of discovery. Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 196–97 (2d Cir. 1990). In considering a motion to dismiss for lack of personal jurisdiction, a court may rely on affidavits and other supporting materials beyond the pleadings. Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981). "When responding to a Rule 12(b)(2) motion to dismiss . . . the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999). Where, as here, a court opts to determine the jurisdictional issue without an evidentiary hearing or discovery, a plaintiff need "make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." Marine Midland Bank, N.A., 664 F.2d at 904.

To determine personal jurisdiction over individual defendants, a court first looks to the law of the state in which the district court sits. Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007). If a court determines that it has personal jurisdiction under state law, it must then consider "whether asserting jurisdiction under that provision would be compatible with requirements of due process established under the Fourteenth Amendment to the United States Constitution." Id.; see Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). There are "two categories of personal jurisdiction: general and specific personal jurisdiction. General, all-purpose jurisdiction permits a court to hear 'any and all claims' against an entity. . . . Specific jurisdiction, on the other hand, permits adjudicatory authority only over issues that aris[e] out of or relat[e] to the [entity's] contacts with the forum." Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 134 (2d Cir. 2014) (internal citations and quotations omitted).

Case 1:16-cv-01238-CBA-ST Document 130 Filed 12/20/17 Page 5 of 10 PageID #:3876

## DISCUSSION

Here, it is undisputed that this Court lacks general personal jurisdiction over Kerr. Rather, plaintiffs assert that they have sufficiently plead facts sufficient for this Court to exercise specific personal jurisdiction over Kerr. (D.E. # 83 ("Pls. Mem. Opp. Kerr") at 8–19.)

Kerr argues this Court lacks personal jurisdiction over her pursuant to New York's long-arm statute. (Kerr Mem. at 6–11.) The New York long-arm statute empowers New York courts to exercise jurisdiction over non-domiciliaries when the causes of action in the case "aris[e] from" one of four specific kinds of contact with New York, including: (1) the transaction of any business within the state or contracts anywhere to supply goods or services in New York; (2) the commission of a tortious act within this state; (3) the commission of a tortious act without the state causing injury within the state so long as the tortfeasor either (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in New York or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or (4) the ownership, use, or possession of any real property within New York. N.Y. C.P.L.R. § 302(a)(1)–(4).

Plaintiffs argue that the first three of these subsections provide a basis for personal jurisdiction over Kerr. (Pls. Mem. Opp. at 8–15.) The Court analyzes each in turn.

## I. Transacted or Contracted Business in New York

Plaintiffs first contend that Kerr transacted business in New York within the meaning of section 302(a)(1) by providing accounting services and testifying as an expert witness in New York. (Id. at 8–11.) However, the amended complaint does not allege that Kerr transacted business or contracted to provide services in New York; rather, the majority of plaintiffs'

allegations concerning Kerr pertain to her conduct in Colorado. (See Am. Compl. ¶¶ 1473–95.) In their memorandum of law, plaintiffs emphasize that Kerr was hired to appear as an expert witness in the New York Supreme Court on March 21, 2016 and March 22, 2016, and that beginning in April 2016, Dain hired Kerr to support his challenge to the Disclaimer in the New York Surrogate Court. (Pls. Mem. Opp. at 9–11.) However, the amended complaint does not include allegations related to these events. Moreover, these events occurred after plaintiffs initiated this action on March 11, 2016. (See D.E. # 1.) Accordingly, the Court cannot exercise personal jurisdiction over Kerr on the basis of these events. See Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Ammistrazione Straordinaria, 937 F.2d 44, 52 (2d Cir. 1991) (explaining that "because personal jurisdiction depends on the defendant's contacts with the forum state at the time the lawsuit was filed," personal jurisdiction cannot be based on events that occurred after the filing of the complaint); see also ISI Brands, INC. v. KCC Int'l, Inc., 458 F. Supp. 2d 81, 88 (E.D.N.Y. 2006) (declining to find personal jurisdiction based on events that occurred between the filing of the original and amended complaints). The Court therefore concludes that the requirements of section 302(a)(1) have not been satisfied.

## II.    Tortious Act Committed in New York

Plaintiffs next argue that Kerr is subject to jurisdiction pursuant to N.Y. C.P.R.L. section 302(a)(2) by committing a tortious act within New York. (Pls. Mem. Opp. Kerr at 12–13.) As a preliminary matter, the Second Circuit has interpreted specific personal jurisdiction under section 302(a)(2) narrowly and has held that to qualify for jurisdiction under this subsection, a defendant's act or omission must have occurred within the State.[1] See Bank Brussels Lambert,

---

[1] Prior to its amendment in 1966, the New York long-arm statute was consistently read to "cover[ ] only a tortious act committed (by a nondomiciliary) in this State." Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 464 (1965). Since then, a small number of lower state courts have, on narrow grounds, expanded the rule to recognize that "not all tortious acts that occur within the State of New York need be committed while the defendant

171 F.3d at 790 (reaffirming that a "defendant's physical presence in New York is a prerequisite to jurisdiction under § 302(a)(2)"); see also DirecTV Latin Am., LLC v. Park 610, LLC, 691 F. Supp. 2d 405, 418 (S.D.N.Y. 2010) (collecting district court cases holding the same). As a result, plaintiffs' allegations that Kerr sent letters from Colorado to New York, (see Am. Compl. ¶ 1486), are insufficient to satisfy section 302(a)(2). Plaintiffs' only allegations regarding Kerr's physical presence in New York pertain to her court appearances in New York after this action was initiated, so these events cannot form the basis of this Court's exercise of jurisdiction under section 302(a)(2), see Klinghoffer, 937 F.2d at 52.

Plaintiffs also contend that "Kerr is subject to this Court's jurisdiction under [section 302(a)(2)] on the basis of actions [in New York] by her co-tortfeasors." (Pls. Mem. Opp. at 12.) Plaintiffs rely on cases holding that under New York law, the acts of a co-conspirator within the state may be attributed to an out-of-state defendant for the purposes of obtaining personal jurisdiction under section 302(a)(2). (Id. at 12–13 (quoting Lawati v. Montague Morgan Slade Ltd., 961 N.Y.S.2d 5 (2013).) To allege jurisdiction under a theory of conspiracy, plaintiffs must first "make a prima facie showing of a conspiracy . . . ."[2] LaChapelle v. Torres, 1 F. Supp. 3d 163, 170 (S.D.N.Y. 2014). Courts then consider whether "a defendant's membership in the conspiracy" should confer jurisdiction based on whether: "(1) the out-of-state co-conspirator had an awareness of the effects of the activity in New York, (2) the New York co-conspirators' activity was for the benefit of the out-of-state conspirators, and (3) that the co-conspirators in New York acted at the

is physically present within New York boundaries for purposes of CPLR § 302(a)(2)." Davidoff v. Davidoff, 819 N.Y.S.2d 209 (Sup. Ct. 2006). Nonetheless, the Second Circuit continues to adhere to the traditional, stricter rule. See Bank Brussels Lambert, 171 F.3d at 790. In light of controlling Second Circuit precedent, the Court is required to apply the majority rule requiring the defendant to physically commit the tortious act within New York.
[2] The four elements of conspiracy are: (1) "a corrupt agreement between two or more parties," (2) "an overt act in furtherance of the agreement," (3) "the parties['] intentional participation in the furtherance of the plan or purpose," and (4) "the resulting damage or injury." LaChapelle v. Torres, 1 F. Supp. 3d 163, 170 (S.D.N.Y. 2014).

6

behest of or on behalf of, or under the control of the out-of-state conspirators." Id. (internal citations omitted).

Here, plaintiffs have not alleged that Kerr was involved in a conspiracy. Instead, plaintiffs have only alleged that Kerr aided and abetted Dain's breach of fiduciary duty. Plaintiffs assert that the case law concerning jurisdiction under a theory of conspiracy extends to allegations of breaches of fiduciary duties, but have offered no case law to support this conclusion. Because plaintiffs have not made a prima facie showing of conspiracy, the Court finds that plaintiffs have failed to allege jurisdiction under a theory of conspiracy. The Court concludes that Kerr has not committed a tortious act within New York under the meaning of section 302(a)(2).

### III.    Tortious Act Causing Injury in New York

Finally, plaintiffs contend Kerr is subject to personal jurisdiction under section 302(a)(3) by committing a tortious act without the state which caused injury to person or property within the state. (Pls. Mem. Opp. at 14–15.) Jurisdiction under section 302(a)(3) rests on five elements: (1) "defendant committed a tortious act outside the state," (2) "the cause of action arises from that act," (3) "the act caused injury to a person or property within the State," (4) "defendant expected or should reasonably have expected the act to have consequences in the State," and (5) "defendant derived substantial revenue from interstate or international commerce." LaMarca v. Pak-Mor Mfg. Co., 95 N.Y.2d 210, 214 (2000). In connection with her motion, Kerr does not dispute that plaintiffs have sufficiently alleged tortious conduct outside of New York and that plaintiffs' claims are rooted in those allegations. Kerr argues, however, that the allegedly tortious conduct did not cause injury to a person or property within New York. (Kerr. Mem. at 9–10.)

In determining whether there is injury in New York sufficient to warrant section 302(a)(3) jurisdiction, courts must generally apply a situs-of-injury test, which asks them to locate the

7

"original event which caused the injury . . . ." See Hermann v. Sharon Hosp., Inc., 522 N.Y.S.2d 581, 583 (2d Dep't 1987). This "original event" is, however, generally distinguished not only from the initial tort but from the final economic injury and the location where the resultant damages are felt by the plaintiff. See, e.g., id.; see also Bank Brussels Lambert, 171 F.3d at 791. In the case of fraud or breach of fiduciary duty committed in another state, the critical question is thus where the first effect of the tort was located that ultimately produced the final economic injury. Bank Brussels Lambert, 171 F.3d at 792.

Here, plaintiffs allege that Kerr abused her court-appointed duties in Colorado in an effort to aid and abet Dain's breach of fiduciary duties. Kerr first became involved in the ongoing disputes over the Black Family Trusts following the Denver Probate Court's April 2, 2015 status conference, in which the parties stipulated to have a forensic accounting of Joanne Black's conservatorship estate performed. (See D.E. # 63-6.) Accordingly, the initial effect of her alleged abuse of her court-appointed duties was felt in Colorado, rather than New York.[3] Indeed, the amended complaint alleges that Kerr only became involved in aiding-and-abetting Dain's breach of fiduciary duties later on in 2016, so her purported tort would only then have effect in New York. (See Am. Compl. ¶¶ 1473–95.) Because the situs-of-injury test locates the injury of Kerr's allegedly tortious conduct in Colorado rather than New York, plaintiffs have failed to establish a prima facie case of jurisdiction under section 302(a)(3).

---

[3] Plaintiffs appear to concede that Kerr's alleged tort had its initial effect in Colorado, explaining that Kerr's work in Colorado aided the "first leg" of Dain and Wrigley's scheme to defund the Black Family Trusts. (Pls. Mem. Opp. at 15.)

8

For these reasons, the Court concludes that plaintiffs have not satisfied the requirements of New York's long-arm statute with respect to Kerr. The Court accordingly grants Kerr's motion to dismiss and dismisses all claims against her.[4]

## CONCLUSION

For these reasons, the Court grants Kerr's motion to dismiss due to lack of personal jurisdiction.

SO ORDERED.

Dated: December 2𝟾, 2016           s/Carol Bagley Amon
       Brooklyn, New York

                                     Carol Bagley Amon
                                     United States District Judge

---

[4] Kerr also moves to dismiss the amended complaint for improper venue under Rule 12(b)(7). (Kerr Mem. at 15–20.) Because the Court finds it cannot exercise personal jurisdiction over her, it need not reach this issue.

9