## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| Jeanette Goodwin, as Conservator for Joanne Black, | ) ) ) | 2018CH00563 CALENDAR/ROOM 05 TIME 00:00 |
| Plaintiff, | ) ) | Case No.   Injunction |
| v. | ) ) | Jury Demanded |
| Bernard Steven Black, individually and in his capacity as Trustee of the Supplemental Needs Trust for the Benefit of Joanne Black under agreement dated December 19, 1997, and Trustee of the Joanne Black 2013 Trust Agreement executed on March 22, 2013; Samuel Hoy Black, individually and in his capacity as Trustee of the Supplemental Needs Trust for the Benefit of Joanne Black under agreement dated December 19, 1997, and Trustee of the Joanne Black 2013 Trust Agreement executed on March 22, 2013; Katherine Litvak Black, individually; and Olga Dal, individually, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | RECEIVED - C.D.C. 2018 JAN 16 PM 2: 12 CLERK OF THE CIRCUIT OF COOK COUNTY, IL |
| Defendants. | ) | |

## COMPLAINT FOR MONETARY AND INJUNCTIVE RELIEF

Plaintiff Jeanette Goodwin, as Conservator ("Conservator") for Joanne Black ("Joanne"), by her counsel Gould & Ratner LLP, for her Complaint against Bernard Steven Black ("Bernard"); Samuel Hoy Black ("Sam"); Katherine Litvak Black ("Kate"); and Olga Dal ("Olga") states as follows:

### PRELIMINARY STATEMENT

1.     This is an action to remove Bernard and Sam as trustees of Joanne's trusts and for monetary damages arising from breaches of fiduciary duty owed to Joanne as beneficiary of the trusts described herein, such breaches committed by her trustee brother (Bernard), trustee

nephew (Sam), her sister-in-law (Kate) and a cousin of her sister-in-law (Olga), through a scheme of theft, self-dealing, fraud, conflicts of interest, collusion, civil conspiracy, and other misconduct between and among Defendants.

2.      Following the death of Joanne and Bernard's mother Renata Black's, Bernard engaged in fraud and stole from Joanne, his disabled and only sibling, approximately $1.5 million, which Renata had bequeathed to Joanne.  Bernard convinced the Denver Colorado Probate Court to appoint him as conservator over Joanne's property; disclaimed accounts containing $3.5 million Renata left directly to Joanne; utilized his position as trustee over trusts established by Renata and another trust he himself established as part of the scheme; and funneled the $3.5 million through Renata's probate estate in New York, using his position as executor to wrongfully disburse into a trust for his and his children's benefit $1.5 million of Joanne's money.  As part of the scheme, Bernard and his son, Sam, purported to maneuver Sam into a position as co-trustee over trusts established for Joanne's benefit and used Joanne's assets for their own benefit.

3.      As detailed herein, the Denver Colorado Probate Court had entered a $4.5 million judgment against Bernard for breach of fiduciary duty and civil theft as Joanne's conservator. Colorado and New York courts had enjoined Bernard from accessing Joanne's assets held in her and other trusts and the Colorado court had specifically enjoined Bernard from using Joanne's assets to pay his attorneys' fees, and the financial institutions holding Joanne's assets had refused to allow Bernard and Sam access to trust assets.  Thereafter, Bernard, his son Sam, his wife Kate, and her cousin Olga, surreptitiously entered into purported loans to the trusts and to Bernard, personally, to pay their legal fees in litigating against Joanne's interest – including the legal fees Bernard and Sam incurred in a lawsuit they filed against Joanne, personally – knowing Bernard

2

was enjoined from using Joanne's assets to pay the legal fees; Bernard and Sam caused the trusts to default on the purported "loans"; Kate and Olga filed multiple lawsuits in Illinois against Bernard, personally, and against Bernard and Sam as trustees of the Trusts based on the fraudulent loans; Bernard and Sam executed agreed judgments against the trusts in favor of Kate and Olga; and they caused Illinois courts to enter agreed judgments against the trusts in the amount of approximately $900,000 to pay their legal fees and costs; and caused citations to be issued to get the financial institutions to turn over to Kate and Olga the $900,000 that Bernard is enjoined from accessing.

## JURISDICTION AND VENUE

4.     This Court has personal jurisdiction over Defendants pursuant to 735 ILCS 5/2-209(a)(1), (2), (7), (10), (11) and (13) and 735 ILCS 5/2-209(b)(1), (2), and (4).

5.     Venue is proper in this Court pursuant to 735 ILCS 5/2-101 because a some parts of the transaction out of which the causes of action arose occurred in Cook County, Illinois, and some of the defendants reside in Cook County, Illinois.

## PARTIES AND RELATED PERSONS/ENTITIES

6.     Plaintiff Jeannette Goodwin is the successor conservator for Joanne Black ("Conservator"), as appointed by the Denver Probate Court, Denver County, Colorado ("DPC"), *In the matter of Joanne Black,* Case No. D201PR001772 (Hon. Elizabeth D. Leith).  Conservator is an individual citizen of Colorado.  A true and correct copy of her July 17, 2017 Letters of Conservatorship are attached as **Exhibit 1**.

7.     Joanne Black ("Joanne") is an individual citizen of the State of New York.  Joanne is Bernard's sister, Sam's aunt, and Kate's sister-in-law.

8.      Defendant, Bernard Steven Black ("Bernard"), is an individual citizen of Illinois, residing in Cook County.  Bernard is Joanne's sister, Renata's son, Kate's husband, and Sam's father.

9.      Defendant, Katherine Litvak Black, also known as Katherine Valerie Litwak, Katherine Valerie Litvak, and Yekaterina Valerie Litvak, ("Kate") is an individual citizen of Illinois, residing in Cook County.  Kate is the current wife of Bernard and stepmother of Sam.

10.     Kate and Bernard are both licensed (non-Illinois) attorneys and are professors at Northwestern University Pritzker School of Law ("Northwestern").

11.     Upon information and belief, Defendant, Olga Dal ("Olga") Olga is an individual citizen of the State of Washington.  Upon information and belief, Olga is Kate's cousin.

12.     Upon information and belief, Defendant, Samuel H. Black ("Sam") is an individual citizen of Maryland.  Sam is Bernard's son, Kate's stepson, and Joanne's nephew.

13.     Renata Black ("Renata") now deceased, was Bernard's and Joanne's mother, Sam's grandmother, and Kate's mother-in-law.  Renata passed away on May 1, 2012.

14.     Anthony Dain ("Anthony") is Renata's nephew and Bernard's and Joanne's cousin.  Anthony was an original trustee (co-trustee with Renata) of the Supplemental Needs Trust for the Benefit of Joanne Black under agreement dated December 19, 1997 ("SNT"), the Joanne Black 2013 Trust Agreement executed on March 22, 2013 ("2013 Trust"), and the Trust for the Benefit of the Issue of Renata Black ("Issue Trust").  (Collectively, the foregoing trusts are referred to herein as the "Trusts.")

### FACTS COMMON TO ALL COUNTS

#### SNT Trust and Issue Trust

15.     On December 19, 1997, Renata as Settlor established the SNT for Joanne's benefit.  A true and correct copy of the SNT is attached as **Exhibit 2**.

16.     Pursuant to the SNT, there were two Trustees of the SNT: Renata and Anthony.

17.     After Renata's death, Bernard became the successor trustee to Renata for the SNT.

18.     Anthony is and always has been a Trustee of the SNT.

19.     During Joanne's lifetime, she is the sole beneficiary of the SNT.

20.     On December 19, 1997, Renata as Settlor established the Issue Trust for the benefit of the Bernard and his descendants.  A true and correct copy of The Issue Trust is attached as **Exhibit 3**.

#### Disclaimer of POD Assets

21.     Before her death, Renata established Roth IRA and other accounts at Vanguard and Fidelity, which accounts by the time of Renata's death had a combined value exceeding $3.5 million.

22.     Renata designated Joanne as the direct recipient of 95% of those accounts to be payable or transferable on death to Joanne (the "POD assets"), such assets valued at approximately $3.5 million in marketable securities.

23.     The POD assets were held by JPMorgan Chase Bank, N.A. ("Chase Bank"), J.P. Morgan Securities LLC ("JPMorgan"), and/or their affiliates (collectively, "Chase").

24.     Following her death, Bernard initiated the probate process for Renata's estate by filing a petition in the Surrogate's Court of the State of New York, County of Westchester ("NY

Probate Court"), *Probate Proceeding, Will of Renata Black*, Case No. 2012-1209.  Pursuant to will Bernard submitted, Bernard was appointed Executor.

25.    Because they were payable on death to Joanne, the POD assets were not part of Renata's Estate, but instead were the property of Joanne, individually, upon Renata's death.

26.    Pursuant to the terms of the will Bernard submitted to NY Probate Court, assets in Renata's estate would pass one-third to the Issue Trust for the benefit of Bernard and his descendants and two-thirds to the SNT for Joanne's benefit.

27.    Bernard knew the POD assets had transferred to Joanne directly upon Renata's death and belonged to Joanne.

28.    Bernard knew that, if he was able to obtain control of Joanne's POD assets, he would funnel Joanne's POD assets through Renata's estate of which he was the Executor and direct one-third of Joanne's POD assets into the Issue Trust for his and his children's benefit.

29.    On October 16, 2012, Bernard initiated a suit in Denver, Colorado, where Joanne then resided, petitioning for appointment as Joanne's conservator, the equivalent to a guardian of Joanne's property, *In re Application of Bernie Black*, Case No. 2012 PR 1772 ("Colorado Case").

30.    Bernard represented to the DPC that he needed to safeguard Joanne's assets, including the $3.5 million POD assets which passed directly to Joanne, for Joanne's benefit.

31.    In pursuit of his appointment as conservator, Bernard represented that Joanne was schizophrenic and homeless in Denver; that Joanne had directly inherited the POD assets from Renata; and the POD assets would pass outright to Joanne, and not into the SNT.

32.    As part his petition for appointment as conservator of Joanne's property he stated to the DPC his intention transfer all of Joanne's POD assets into the SNT for her benefit.

33.     Understanding that Bernard would disclaim on behalf of Joanne the entirety of the POD assets and that Bernard would move all of the POD assets into the SNT for Joanne's sole benefit, the DPC granted Bernard's petition and appointed him conservator.

34.     In or about early 2013, while Bernard was continuing to portray himself as complying with his fiduciary duties and protecting his sister Joanne's best interests, Bernard prepared and requested Anthony sign an amendment to the SNT adding Sam as a "backup trustee" in the event of an urgency in the future where either Bernard or Anthony was unavailable to act.

35.     In or about early 2013, upon obtaining control of Joanne's property from the DPC and contrary to his representations to the DPC, Bernard disclaimed Joanne's rights to the POD assets; transferred Joanne's POD assets to Renata's NY Probate Court estate; caused one-third of Joanne's POD assets (approximately $1.5 million) to be conveyed to the Issue Trust for himself and his descendants; placed just two-thirds of Joanne's POD assets into the SNT and 2013 Trust; and directed other assets belonging to Joanne into the SNT and 2013 Trust over which he exerted control.

### The 2013 Trust

36.     In February 2013, as part of his scheme to steal from Joanne and control her assets, Bernard created the Joanne Black 2013 Trust Agreement (2013 Trust). A true and correct copy of the SNT is attached as **Exhibit 4**.

37.     During Joanne's lifetime, she is the sole beneficiary of the 2013 Trust.

38.     Bernard and Sam appointed themselves, together with Anthony, as co-trustees.

39.     Bernard convinced Anthony it was beneficial to include Sam as a third trustee "just for backup for the future," in the event Anthony was traveling overseas for work or unavailable at a time when Joanne may have an immediate need for care.

40.     Contrary to the representation to Anthony, by establishing themselves as co-trustees, Bernard and Sam sought to assure their ability to act as the majority without Anthony's agreement or knowledge, in order to access and convert Joanne's assets to their own use.

41.     Among others of Joanne's assets, Bernard transferred into the 2013 Trust the Fidelity funds accounts Joanne obtained before Bernard persuaded the DPC to appoint him as Joanne's conservator.

**Defendants' Theft and Self-Dealing**

42.     At a time when he was required by DPC order to place assets belonging to Joanne into the SNT for Joanne's benefit as beneficiary of the SNT and while he was trustee of the SNT, Bernard converted to his own use and benefit $1.5 million of the assets which should have gone to the SNT.

43.     Acting as a fiduciary relative to Joanne, Bernard disclaimed her $3.5 million POD inheritance from their mother; funneled Joanne's assets through accounts Bernard created in Renata's probate estate where he also owed fiduciary duties to Joanne; through this mechanism, converted one-third of Joanne's assets; and removed such assets to the Issue Trust for his and his children's benefit.

44.     Bernard created a new trust purportedly for Joanne's benefit, the 2013 Trust, appointing himself, Sam, and Anthony as co-trustees such that Bernard and Sam could control the 2013 Trust.

8

45.     Bernard and Sam used the 2013 Trust to manipulate funds to Joanne's detriment and to engage in transactions with Joanne's 2013 Trust to cause Joanne and the 2013 Trust to bear the brunt of the tax burdens incurred relating to Renata's probate estate, transferring the tax benefits to himself and his children.

46.     Bernard charged to Joanne the significant attorneys' fees and costs of creating the 2013 Trust.

47.     Certain of Bernard's self-dealing was discovered and presented to the DPC, and on April 2, 2015, the DPC suspended Bernard's authority as conservator over Joanne's property.

48.     The DPC held 4 days of evidentiary hearings and (1) concluded Bernard had stolen approximately $1.5 million from Joanne; (2) found Bernard had breached his fiduciary duties as Joanne's conservator; (3) entered a judgment against Bernard in favor of Joanne; (4) appointed a new conservator for Joanne; and (5) enjoined Bernard from using Joanne's funds to pay his attorney or other fees.

**Bernard's and Sam's Self-Dealing and Litigation Against Joanne's Interests**

49.     Bernard and Sam instituted multiple suits and repeatedly litigated against Joanne's interest.

50.     In their positions as trustees of the SNT and 2013 Trust, Bernard and Sam, in combination with Kate and Olga, used and attempted to use Joanne's assets held in SNT and 2013 Trust to pay the attorneys' fees incurred while litigating against Joanne's interests.

51.     Bernard, Sam, Kate, and Olga did not make any effort to mitigate the amounts incurred in the litigation relating to Joanne, the SNT, the 2013 Trust, or Joanne's other interests, but instead significantly increased the cost to Joanne.

52.     Significant expenses were incurred at Joanne's expense during the litigation before the DPC as a result of Bernard's misconduct.

53.     The DPC found:

… Mr. Black transferred funds into an excessive number of different accounts, which can only be likened to a shell game. It took an extraordinary effort by Ms. Kerr [the forensic accountant] to trace where funds were placed and the expenses paid by the funds… 25 different accounts were created to hold funds related to this case, encompassing Renata Black's original accounts at Vanguard and Fidelity and accounts opened by Mr. Black as Executor, Trustee and conservator. The Court finds 15 of these accounts appear to be completely unnecessary.

… The Court finds Bernie Black has breached his fiduciary duties and has defended this action in bad faith for the reasons discussed above. The Court finds Bernie Black should personally bear the cost for these proceedings …

All costs, fees and attorney fees incurred to prosecute this matter shall be paid by and chargeable to Bernie Black, including GAL fees and fees for Pamela Kerr's accounting and services. Any such fees and costs, including attorney fees paid by Joanne Black or her estate shall be reimbursed by Bernie Black with interest.

54.     The DPC recommended Bernard not be appointed as a fiduciary for Joanne in any capacity – especially not in any capacity involving Joanne's assets.

55.     The DPC entered judgment for treble the amount Bernard had stolen, awarding a total in excess of $4.5 million in favor of Joanne and against Bernard, personally.

56.     The DPC summarized its September 28, 2015 findings:

Bernie Black transferred funds from his deceased mother's accounts designated payable on death ("POD") to Joanne Black and his five eldest children to fund the Issue Trust… Mr. Black perpetrated a scheme whereby he obtained an order from this Court to disclaim those POD funds and rather than place the funds into the SNT as he represented his intentions to be, he placed two-thirds of the disclaimed funds into the SNT and one-third into the Issue Trust, all without fully disclosing his intentions to this court. Mr. Black therefore has no rights to any of the funds contained within the Issue Trust that were transferred or derived from Renata Black's POD accounts and the amount surcharged to him speaks to this.

57.     With respect to Bernard and Kate, the DPC also found:

Bernie Black and his current wife [Kate Litvak] both testified before this Court that they are law professors at Northwestern University in Chicago, Illinois. As such, each of these individuals has an enhanced duty for full and complete candor to the Court and to conduct themselves and this matter with dignity becoming judicial officers and professors. The taking of his sister's funds, the multiple suits initiated by Mr. Black against his family members, the inaccuracies in his pleadings before this Court and his apparent refusal to accept the changes his mother made to her estate plan are absolutely appalling and are not in keeping with his status as a law professor.

58.     In its September 28, 2015 Order, the DPC held:

This Court remains extremely concerned that its orders and intentions will be misrepresented by Bernie Black and Counsel appearing on his behalf to New York Courts as has apparently been done previously. This Court hopes that any questions which may arise as a result of this Order or any clarifications deemed necessary will be quickly brought to this Court's attention for resolution.

59.     Kate conspired with Bernard to ensure her two children with Bernard obtained a share of Renata's assets.

60.     By March 2016, Bernard had used his fiduciary authority to spend at least $115,000 of Joanne's money to pay the lawyers he engaged to further his efforts to steal from Joanne and defend his actions in doing so.

61.     Bernard told the DPC, Joanne, and Anthony that he had repaid Joanne the $115,700 using his own, personal funds, which was false.

62.     In fact, Bernard caused the $115,000 spent on the lawyers he used to defend his theft from Joanne before the DPC to be deducted from assets belonging to Joanne.

63.     When Bernard's misconduct was discovered, Bernard told the DPC he had taken funds belonging to Joanne from the 2013 Trust and SNT (via Renata's probate estate) to pay the $115,000 to his lawyers.

64.      On March 17 2016, the DPC entered its final order following its September 28, 2015 Hearing Order rendering its final judgment for Joanne against Bernard for over $4.5 million (the "Colorado Judgment").

### November 2017 Colorado Injunction

65.      On November 3, 2017, the DPC ordered another injunction against Bernard, enjoining Bernard "from removing or moving any monies or other assets in which Joanne Black has any interest from their present locations"; ordering Bernard to "return all monies which were in the Supplemental Needs Trust on September 28, 2015"; and "specifically enjoin[ing Bernard] from transferring any funds he controls which were in the Supplemental Needs Trust on September 28, 2015, except to return them to the Supplemental Needs Trust."

66.      On November 3, 2017, the DPC found:

[A]n emergency exists because there is imminent risk of substantial harm to the financial interests of this estate … based on the allegations that Bernie Black has removed funds from the 1997 Supplemental Needs Trust without Court authorization; funds that were removed from the conservatorship and placed into the Supplemental Needs Trust; … appropriate action is necessary in the form of the following ORDERS pending hearing, as the actions described in this Motion and Bernie Black's prior actions as adduced after hearing and described in this Court's previous Findings and Orders all shock the conscience of the Court.

67.      On January 4, 2018, the DPC held a hearing at which Bernard, through counsel, agreed to abide by the injunctions entered by the DPC on November 3, 2017.

### January 2018 Colorado Injunction

68.      At the January 4, 2018 hearing, with respect to Bernard, Kate, Olga, and Sam, the DPC found their actions "reprehensible" and:

The Court finds the actions of Bernard Black are shocking to the conscience of the Court, especially given Mr. Black's position as a professor of law at a respected law school in this country. Similarly, the Court finds the actions of Mr. Black's wife, also a law professor, are shocking as together their actions only

serve to dramatically increase attorney fees and costs and otherwise reduce or eliminate the funds that are due to Joanne Black apparently for no reason…

The Court finds it is unable to adequately express how shocking these actions taken by Joanne Black's brother and his family are to the conscience of the Court. The Court finds Bernard Black's apparent agreement to the entry of significant money judgments in favor of his wife and her family against the SNT is, if true, a flagrant breach of his fiduciary duties and his duty of loyalty to the beneficiary. Bernard Black has disregarded the Orders of this Court in both fact and in spirit.

69.     The DPC ordered another injunction against Bernard and an injunction against Sam:

1.     Bernard Black and Samuel Black are hereby SUSPENDED as co-trustees of the SNT and any other trusts which benefit Joanne Black, pending the removal proceedings referenced in the State of Illinois.

2.     Neither Bernard Black nor Samuel Black shall have any authority or take any actions with respect to trust funds or funds that are ultimately meant for or to benefit Joanne Black. Similarly, neither Bernard Black nor Samuel Black shall make any decisions regarding the use or placement of trust funds or property. Both Bernard Black and Samuel Black are ordered to identify any and all trust documents, funds, or accounts to which they have access and which are meant to benefit Joanne Black, and to provide that information directly to Anthony Dain and to Joanne Black's attorney Lisa DiPonio.

### Defendants' "Loans" and Self-Dealing

70.     By January 2016, Bernard was enjoined by two separate courts from accessing any of Joanne's assets, regardless of where her assets were located, including that Bernard was specifically enjoined from using those assets to pay attorneys' fees.

71.     Further, the DPC had specifically ordered Bernard, personally and solely, to repay the attorneys' fees he had caused to be paid by the SNT and other trusts or entities over which Bernard had control in a fiduciary capacity relating to Joanne.

72.     Chase was aware of the orders enjoining Bernard and litigation involving Bernard, Joanne, and the Trusts, and implemented measures to prevent release of Trust assets to Bernard.

73.     In or about March 2016, pursuant to an order of the DPC, more than $250,000 was made available to  agents and representatives at the time in an account Chase held on behalf of the SNT for the specific purpose of paying Joanne's legal expenses.

74.     Bernard discovered the money was in Joanne's SNT account at Chase, and transferred that money out of Joanne's SNT account for the benefit of him and Kate.

75.     Bernard transferred approximately $9,000 of Joanne's money to one or more of the attorneys representing him in litigating against Joanne's interests.

76.     Bernard transferred the remainder of Joanne's money to pay down a home equity line of credit ("HELOC") held jointly by Bernard and Kate.

77.     Kate was aware of and intended for Bernard to make the foregoing transfers.

### Defendants' Use of the Courts to Facilitate Theft, Fraudulent Transfers and Other Self-Dealing

78.     Bernard, Sam, Kate, and Olga conspired to convert Joanne's assets to their own use, and to prevent Joanne from collecting the Colorado Judgment against Bernard.

79.     In furtherance of their scheme, Bernard, Sam, Kate, and Olga conspired to and did file at least eight (8) lawsuits against Joanne's interest and sought to have Joanne foot the bill via the SNT and other vehicles.

**Bernard's Northern District of Illinois Lawsuit Against Joanne**

80.     On January 29, 2016, Bernard and Sam filed suit against Joanne in the Northern District of Illinois, *Black v. Black*, Case No. 1:16-cv-01763 (Hon. Virginia M. Kendall),("NDIL Lawsuit").

81.     In the NDIL Lawsuit, Bernard and Sam sought a declaration from the Northern District of Illinois Court that the orders imposed by the Colorado and New York courts did not restrain them from using Joanne's assets to pay, among other things, their attorneys' fees.

82.     Joanne had to hire attorneys to defend herself against Bernard's and Sam's NDIL lawsuit against her.

83.     On July 13, 2016, the NDIL Court dismissed with prejudice Bernard and Sam's NDIL Lawsuit against Joanne, because the Court did not have personal jurisdiction over Joanne.

**Cook County Suits to Collect Collusive "Loans"**

84.     Following the Colorado Judgment, Bernard, Sam, Kate, and Olga knew Joanne would seek to collect her Colorado Judgment from Bernard.

85.     Bernard, Sam, Kate, and Olga concocted a scheme whereby they created alleged "loans" to Bernard, Sam, the SNT, 2013 Trust, and Issue Trust; caused Bernard, Sam, the SNT, 2013 Trust, and Issue Trust to default on every loan; filed complaints to collect on the "loans"; entered into agreed judgments against Bernard, the SNT, 2013 Trust, and Issue Trust; issued citations against Bernard, Chase Bank, and JP Morgan to collect; and instituted garnishments of Bernard's wages to collect the money for their own benefit before Joanne could reach Bernard's wages to collect her judgment for Bernard's theft.

86.     Although they knew Anthony was a trustee of the SNT, none of Bernard, Sam, Kate, and Olga notified Joanne, her conservator, or co-trustee Anthony of any alleged "loan" between or among Bernard, Sam, Kate, Olga, the SNT, 2013 Trust, or Issue Trust.

87.     None of Bernard, Sam, Kate, and Olga named Joanne, her conservator, or co-trustee Anthony of any of their lawsuits based on alleged "loans" between or among Bernard, Sam, Kate, Olga, the SNT, 2013 Trust, or Issue Trust, nor even notified Joanne, her conservator, or co-trustee Anthony of the lawsuits.

## Olga's First Lawsuit

88.     On May 5, 2016, to obstruct Joanne's ability to collect her judgment against Bernard, Olga (Kate's cousin) filed a lawsuit against Bernard, personally, based on an alleged "loan" alleged to be secured by Bernard's wages, *Dal v. Black*, Cook County Case No. 2016-L-004367 (Hon. Patrick J. Sherlock), ("Olga's First Lawsuit").

89.     In Olga's First Lawsuit, filed in May 2016, Olga alleged that she and her father Eugene Mark Dal executed a "Secured Loan Agreement" purporting to be "Dated as of 15 May 2002."

90.     Olga alleged that pursuant to the "Secured Loan Agreement," she and her father were "willing to lend [$150,000 to Bernard], provided she receives a security interest in [Bernard's] income and financial assets."

91.     Olga does not allege when she and Bernard executed this alleged "Secured Loan Agreement."

92.     In Olga's First Lawsuit, Olga alleged: "As of April 30, 2016, there was principal of $150,000 and interest of $274,694.02 due and owing under the Note," for a total balance due

from Bernard to Olga of $424,694.02, plus $91.33 per diem after April 30, 2016 – not including expenses, costs, charges and fees.

93.     On May 2, 2016, the same day Olga filed Olga's First Lawsuit, Bernard agreed to a judgment against himself in the amount of $425,150.68, including payment of Olga's legal fees and costs.

94.     On May 3, 2016, Olga filed a Verified Emergency Motion for Entry of Agreed Judgment, in which she stated that other judgment creditors may initiate post-judgment proceedings against Bernard that may impair Olga's ability to collect the judgment Bernard had agreed to in favor of Olga.

95.     Neither Olga nor Bernard notified Joanne, her conservator, or Anthony of Olga's First Lawsuit, Bernard's consent to a judgment in favor of Olga, or Olga's efforts to collect from Bernard.

96.     Three days after filing Olga's First Lawsuit, Bernard had agreed to and the court had entered judgment in the amount of $425,150.68, issued a citation to discover assets, and filed an affidavit for wage deduction against Bernard on May 5, 2016.

97.     By June 7, 2016, Olga had obtained a judgment against garnishee, Bernard, and his employer, Northwestern University.

**Bernard's and Sam's Issue Trust FINRA Proceeding**

98.     On September 23, 2016, to drain the Issue Trust of the money Bernard stole from Joanne, to pay their legal fees in litigating against Joanne's interests, and otherwise use the funds for their benefit, Bernard and Sam initiated a claim with the Financial Industry Regulatory

Authority ("FINRA") against Chase Bank and JP Morgan to gain access to Joanne's assets in the Issue Trust, *Black v. JPMorgan Chase Bank, N.A., et al.* ("Issue Trust FINRA Proceeding").

99.     In the Issue Trust FINRA Proceeding, Bernard and Sam alleged Chase was liable for conversion, breach of contract, and breach of fiduciary duties owed to Bernard and Sam because Chase would not permit them access to the money held in the Issue Trust and sought to force Chase to allow them unfettered access to the Issue Trust accounts.

100.    In sum, Bernard and Sam alleged that Chase could not consider the Colorado and New York orders enjoining Bernard from accessing the trusts' accounts or the Colorado judgment finding Bernard breached his conservatorship fiduciary duties to Joanne and stole $1.5 million from Joanne.

101.    Neither Bernard nor Sam notified Joanne, her conservator, or Anthony of their Issue Trust FINRA Proceeding or their efforts to access Joanne's assets.

102.    Bernard and Sam actually complain in the Issue Trust FINRA Proceeding that Chase violated fiduciary duties because Chase notified co-trustee Anthony of Bernard's and Sam's efforts to obtain the money, which, per the Colorado court, belonged to Joanne.

### Bernard's SNT FINRA Proceeding

103.    On October 26, 2016, to access to Joanne's funds to pay their legal fees in litigating against her interests, Bernard and Sam, in their capacity as trustees of the SNT, filed another claim and initiated a proceeding with the FINRA against Chase Bank and JP Morgan to gain access to Joanne's assets in the SNT to pay Bernard's attorneys' fees, *Black v. JPMorgan Chase Bank, N.A., et al.* ("SNT FINRA Proceeding").

104.   In Bernard's and Sam's SNT FINRA Proceeding, they alleged Chase was liable for conversion, breach of contract, and breach of fiduciary duties owed to Bernard and Sam because Chase would not give them access to use the money held in accounts of the SNT.

105.   In Bernard's and Sam's SNT FINRA Proceeding, Bernard and Sam seek to force Chase to unfreeze the SNT accounts to allow them access to Joanne assets to pay their attorneys' fees and otherwise for their own benefit.

106.   In sum, Bernard and Sam alleged that Chase could not consider the Colorado and New York orders enjoining Bernard from accessing the trusts' accounts or the Colorado judgment finding Bernard breached his conservatorship fiduciary duties to Joanne and stole $1.5 million from Joanne.

107.   Neither Bernard nor Sam notified Joanne, her conservator, or Anthony of their SNT FINRA Proceeding or their efforts to access Joanne's assets.

### Olga's Second Lawsuit

108.   On December 7, 2016, Olga filed a second lawsuit against Bernard personally based on alleged "loans" alleged to be secured by Bernard's wages, *Dal v. Black*, Cook County Case No. 2016-L-011947 (Hon. Margaret Ann Brennan), ("Olga's Second Lawsuit").

109.   In Olga's Second Lawsuit, Olga alleged that Bernard executed a "Promissory Note (Secured)" and a "Loan and Security Agreement" as of April 26, 2016, that is, after the Colorado Judgment against Bernard for stealing $1.5 million from Joanne.

110.   Pursuant to the "Loan and Security Agreement," at the time Olga and Bernard dated "as of the 26th day of April, 2016," Bernard already was in default of another loan

agreement with Olga "dated as of May 15, 2002" and owed Olga $453,891.03 on the earlier dated loan.

111.    In addition, Bernard had purportedly borrowed over $600,000 from his wife and Olga's cousin, Kate, "to pay legal and accounting expenses for litigation in Colorado, New York, and perhaps elsewhere related to [Bernard's] sister Joanne Black" pursuant to a "Senior Secured Credit Agreement" "Dated as of 20 August 2015" and executed on some unidentified date, which indebtedness was "senior to all other indebtedness of Bernard Black, other than any mortgage on [Kate's and Bernard's] family house located at 2829 Sheridan Place, Evanston IL 60201."

112.    Nonetheless, Olga allegedly loaned Bernard another $250,000 to pay Bernard's legal fees relating to litigation against Joanne's interests.

113.    Among the provisions contained in the "Loan and Security Agreement":

(a)    Bernard borrowed more money from Olga "to pay for certain of his needed expenses and/or obligations including, without limitation, legal and accounting expenses for litigation that relates to his sister, Joanne Black, and/or his other relatives, Anthony Dain and/or Cherie Wrigley."

(b)    Bernard's debt to Olga was secured by, among other things, "all Commercial Tort Claims, including [litigation relating to Joanne and the Trusts]."

(c)    Bernard told Olga of recent judgment entered against Bernard in the litigation relating to Joanne which constitutes a default under the loan agreement with Olga "dated as of May 15, 2002" and that he had "no unencumbered nonexempt assets to satisfy his obligations."

(d)    Bernard agreed that he would consent to entry of and execute an agreed judgment in favor of Olga on the loan agreement with Olga "dated as of May 15, 2002."

(e)    The events that could constitute a default on the "Loan and Security Agreement" excluded any then-existing events of default on the loan agreement with Olga "dated as of May 15, 2002."

114.    In Olga's Second Lawsuit, Olga alleged: "there was principal of $210,483.60 and interest of $2,606.97, and at lest $2,500 of legal fees and costs, due and owing under the Note,"

for a total balance due from Bernard to Olga of $215,590.57, plus $69.20 per diem after November 30, 2016 – not including expenses, costs, charges and fees she also sought to collect by garnishing Bernard's wages.

115.    Olga further alleged Bernard was in default on this purported "loan" because a foreign judgment (the Colorado Judgment) entered against Bernard exceeding $4.3 million was registered in Cook County, Illinois on September 28, 2016.

116.    On December 9, 2016, two days after Olga's Second Lawsuit was filed, Bernard agreed to a judgment against him in the amount of $216,905.37, and Olga filed a Motion for Entry of Agreed Judgment.

117.    Neither Olga nor Bernard notified Joanne, her conservator, or Anthony of Olga's Second Lawsuit, Bernard's agreement to a judgment in favor of Olga, or Olga's efforts to collect from Bernard.

118.    Two weeks after filing Olga's Second Lawsuit, Bernard had agreed to and the court had entered judgment in the amount of $216,905.37, including payment of Olga's legal fees and costs.

119.    By December 21, 2016, Olga had filed an affidavit for wage deduction summons directed to Northwestern University.

120.    Olga received her Agreed Wage Deduction Turnover Order by January 26, 2017 garnishing Bernard's wages from Northwestern University.

**Kate's First Lawsuit**

121.    On December 7, 2016, the same day Olga's Second Lawsuit was filed, and through the same counsel as Olga's, Kate filed a lawsuit against her husband Bernard based on

alleged "loans" alleged to be secured by Bernard's wages, *Litvak v. Black*, Cook County Case No. 2016L-011948 (Hon. Raymond W. Mitchell), ("Kate's First Lawsuit").

122.     In Kate's First Lawsuit, Kate alleged that Bernard executed a "Secured Promissory Note" and a "Senior Secured Credit Agreement" which was "dated as of August 20, 2015", pursuant to which Bernard borrowed "up to $500,000" from his wife "to pay legal and accounting expenses for litigation in Colorado, New York, and perhaps elsewhere related to his sister Joanne Black," pursuant to the "Senior Secured Credit Agreement."

123.     Among the provisions contained in the "Senior Secured Credit Agreement":

(a)     Bernard's debt to his wife purported to be "senior to all other indebtedness of Bernard Black, other than any mortgage on [Kate's and Bernard's] family house located at 2829 Sheridan Place, Evanston IL 60201.

(b)     the debt was also secured by "all current and future wages and bonuses from Northwestern University or any other employer;" " all consulting income;" "payments for any use of his assets, including rent;" and "interest payments on any loans that he makes."

(c)     Bernard's debt to Kate was also secured by Kate's own financial assets and "items located inside and around [Kate's and Bernard's] house located at 2829 Sheridan Place, Evanston IL 60201, including the house, garage, yards, and driveway."

(d)     Kate purportedly "has the right to enforce her demand for payment, including early repayment, … [by] requiring [her husband] to change the location for direct deposit of his paycheck from Northwestern University to an account solely in the name of [Kate];" "requiring Bernard … to receive his paycheck in physical form, and then to promptly endorse the check to [Kate];" and "establishing a garnishment order on the wages of Bernard."

(e)     Bernard agreed his wife could confess judgment against him by, upon any event of default, Kate appearing in court and confessing judgment against Bernard for an unpaid amount evidenced by an affidavit signed by Kate.

(f)     Bernard would have defaulted by "[a]ny attempt by any other party, whether or not successful, to challenge any transfer of assets from an account held jointly by Bernard Black and [his wife, Kate] to an account held solely by [Kate]."

124.    In Kate's First Lawsuit, Kate alleged she made a demand for repayment on February 26, 2016.

125.    Despite demanding repayment, Kate specifically noted in her in her "Demand for Repayment" that she "retains the discretion to provide further loans to [Bernard] under the [Senior Secured Credit Agreement]."

126.    In Kate's First Lawsuit, Kate alleged: "there was principal of $313,511.89, interest of $48,169.65, and at least $27,824.00 of legal fees and costs, due and owing under the Note," for a total balance due from Bernard to Kate of $389,505.54, plus $118.91 per diem after November 30, 2016 – not including expenses, costs, charges and fees she also sought to collect by garnishing Bernard's wages.

127.    On December 9, 2016, two days after Kate's First Lawsuit was filed, Bernard agreed to a judgment against him in the amount of $394,631.74, and Kate filed a Motion for Entry of Agreed Judgment.

128.    Neither Kate nor Bernard notified Joanne, her conservator, or Anthony of Kate's First Lawsuit, Bernard's agreement to a judgment in favor of Kate, or Kate's garnishment of Bernard's wages and other efforts to collect from Bernard.

129.    Less than 2 weeks after filing Kate's First Lawsuit, Bernard had agreed to and the court had entered judgment in the amount of $394,631.74, including payment of Kate's legal fees and costs.

130.    By December 21, 2016, Kate had filed an affidavit for wage deduction summons directed to Northwestern University.

131.    Kate received her Agreed Wage Deduction Turnover Order by January 26, 2017 garnishing Bernard's wages from Northwestern University.

### Kate's Second Lawsuit

132.    On September 26, 2017, Kate filed a lawsuit against Bernard and Samuel as co-trustees of the SNT, 2013 Trust, and Issue Trust, Cook County Case No. 2017-L-009743 (Hon. James E. Snyder), ("Kate's Second Lawsuit).

133.    In Kate's Second Lawsuit, Kate alleged that, by October 1, 2016, Bernard and Sam, on behalf of the SNT, 2013 Trust, and Issue Trust, jointly and severally, executed a Note in favor of Kate in the amount of $601,321.00 to pay Bernard's, Sam's and Kate's attorneys' fees litigating against Joanne's interest.

134.    Kate alleged that pursuant to a "Loan and Security Agreement," before October 1, 2016, the Trusts had borrowed from Kate $101,321.00, that amount was due and owing, but the Trusts had not repaid Kate.

135.    Nonetheless, Kate agreed to "loan" the Trusts an additional $500,000 as of October 1, 2016.

136.    Pursuant to that "Loan and Security Agreement," Bernard and Sam pledged to Kate as security on behalf of the Trusts, among other things, the accounts and assets of the Trusts, and all tort and arbitration claims the Trusts, Bernard, and Sam may have against court-appointed conservators, court-appointed guardian ad litem, and court-appointed legal counsel for Joanne, Anthony, Chase, and others.

137.    The amounts which Kate identified in Kate's Second Lawsuit as amounts allegedly made on behalf of and "loaned" to the Trusts jointly and severally by Kate were not for the benefit of the SNT, 2013 Trust, or Joanne.

138.    For example, Kate claims she "loaned" money to the Trusts jointly and severally by way of a payment she made on June 25, 2016 in the amount of $20,000 to attorneys Halling Cayo from "HELOC1001" for "Pinto-Wrigley and Dain suits"; a payment on July 3, 2016 in the amount of $11,131.00 to attorneys Barnes and Thornburgh to "unfreeze Issue Trust"; a payment on July 17, 2016 in the amount of $15,000 to attorneys Halling Cayo for "Pinto-Wrigley and Dain suits"; a payment on September 2, 2016 in the amount of $1,275.00 to attorneys Barnes and Thornburgh to "unfreeze Issue Trust"; a payment on September 3, 2016 in the amount of $20,000 to New York attorney Sharan Abraham for "Pinto Wrigley and Dain suits."

139.    The "First Amendment to Demand Note (Secured) and Loan and Security Agreement" attached to Kate's complaint claims she "loaned" money to the Trusts jointly and severally made in the amount of $5,000.00 on November 24, 2016 to Attorney Arden Besunder; in the amount of $42,000.00 on August 8, 2016 and $33,056.89.00 on September 4, 2016 to attorneys Davis Graham; in the amount of $24,364.42 on August 8, 2016 to attorneys HarperHofer; in the amount of $3,650.00 on September 20, 2016 and $9,232.00 on November 16, 2016 to attorneys Adelman Gettleman.

140.    None of the foregoing payments were made for Joanne's benefit, but were for attorneys' fees incurred for litigation either unrelated to or directly contrary to Joanne's interest.

141.    In Kate's Second Lawsuit, she alleged the SNT, 2013 Trust, and Issue Trust "are currently indebted, jointly and severally," to her pursuant to the "certain Demand Note (Secured)

dated October 1, 2016" as amended by another purported "Demand Note Secured and Loan and Security Agreement dated as of December 21, 2016."

142.   Kate alleged the SNT, 2013 Trust, and Issue Trust "are and have been in default," and that she "has made demand for payment under the terms of the Note, as is reflected in the demand email that is attached" to her complaint.

143.   The September 25, 2017 "demand email" attached to Kate's complaint, was sent fewer than 24 hours before Kate filed Kate's Second Lawsuit, was sent by counsel with a copy to Kate and her cousin, Olga.

144.   Neither Kate nor Bernard or Sam sent demand or other notice to Joanne, her conservator, or co-trustee Anthony.

145.   Kate sought an alleged $376,464.88 in principal, $18,431 in interest, and continuing interest.

146.   Kate also sought "at least $13,671.05" in attorneys' fees and costs she claims to have spent by September 25, 2017, as well as those she incurred thereafter in obtaining the Agreed Judgment from her husband Bernard and his son Sam against the Trusts.

147.   By September 27, 2017 the day after she filed her complaint against Bernard and Sam, Bernard had executed an Acknowledgement of Receipt of Summons and Complaint.

148.   Bernard and Sam both signed an Agreed Judgment on October 2, 2017, only a week after filing her complaint, Kate, filed a Motion for Entry of Agreed Judgment on October 3, 2017.

149.   On October 25, 2017, with no counsel appearing for the defendant trusts, the Court entered the Agreed Judgment.

150.    Having wrongfully obtained the Agreed Judgment from the court, Bernard, Sam and Kate are using the Agreed Judgment to take the same assets (Joanne's) from the same sources (the SNT, 2013 Trust, and Issue Trust) which Bernard is prohibited from doing by orders of the DPC and in breach of their duties to Joanne.

151.    What remains of Joanne's POD assets and other inheritance that Bernard, Sam, Kate, and Olga have not yet been able to divert and convert to their own uses are currently held by Chase.

152.    On November 8, 2017, Kate served on Chase Bank and JPMorgan citation notices as supplemental proceedings to collect the judgment in the instant lawsuit.

153.    By obtaining an Agreed Judgment against the Trusts and issuing citations, Kate, Bernard, and Sam seek to force Chase, by Court order in favor of Kate (rather than Bernard), to allow them to access the same funds in the Trusts which orders of other courts prohibited Bernard from accessing and in breach of fiduciary duties owed to Joanne, and which Chase may have considered in refusing to allow Bernard and Sam to access the funds in the Trusts.

**Olga's Third Lawsuit**

154.    On September 26, 2017, Olga filed a third lawsuit against Bernard and Sam as trustees of the SNT, 2013 Trust, and the Issue Trust, based on alleged "loans" made to pay Bernard's attorneys' fees, *Dal v. Black*, Cook County Case No. 2017-L-009744 (Hon. Thomas R. Mulroy) ("Olga's Third Lawsuit").

155.    Olga did not name as a defendant or otherwise give notice of her lawsuit to Joanne, her conservator, or co-trustee Anthony, nor had she given them notice of any alleged loan she entered into with Bernard and Sam purporting to bind the Trusts.

156. No attorney entered an appearance on behalf of the Trusts in Olga's Third Lawsuit.

157. The complaint in Olga's Third Lawsuit is nearly identical to the complaint in Kate's Second Lawsuit, filed by the same lawyers and relying on the same "demand" email to Bernard, Sam, Kate, and Olga.

158. Both Kate's and Olga's complaints were based on nearly identical "loans" they alleged to have made to Bernard and Sam as trustees of the Trusts to pay the attorneys' fees Bernard, Sam, and Kate incurred in repeatedly litigating against Joanne's interests, as well as Kate's and Olga's fees in suing the Trusts to use Joanne's money to pay for Bernard's, Sam's, and Kate's attorneys' fees.

159. Both Kate and Olga alleged that they had each, separately loaned money to the Trusts, which acted through Bernard and Sam, to pay Bernard's, Sam's and Kate's attorneys' fees between May 11, 2016 and December 3, 2016, and each, separately alleged the Trusts "are currently indebted, jointly and severally, to the Plaintiff pursuant to that certain Demand Note (Secured) dated October 1, 2016," as amended by another purported "Demand Note Secured and Loan and Security Agreement dated as of December 21, 2016."

160. Olga alleged that, by October 1, 2016, Bernard and Sam, on behalf of the SNT, 2013 Trust, and Issue Trust, jointly and severally, executed a Note in favor of Olga in the amount of $572,228.00 to pay Bernard's, Sam's and Olga's attorneys' fees.

161. The "Loan and Security Agreement," recites that before October 1, 2016, the Trusts had borrowed from Olga $72,228.00, that amount was due and owing, the Trusts had not

28

repaid Olga, but nonetheless Olga agreed to "loan" the Trusts an additional $500,000 as of October 1, 2016.

162.    Pursuant to that "Loan and Security Agreement," Bernard and Sam pledged to Olga as security on behalf of the Trusts, among other things, the accounts and assets of the Trusts and all tort and arbitration claims the Trusts, Bernard, and Sam may have against court-appointed conservators, court-appointed guardian ad litem, and court-appointed legal counsel for Joanne, Anthony, Chase, and others.

163.    The amounts which Olga identified in Olga's Third Lawsuit as amounts allegedly made on behalf of and "loaned" to the Trusts jointly and severally by Olga were not for the benefit of the SNT, 2013 Trust, or Joanne.

164.    For example, Olga claims she "loaned" money to the Trusts jointly and severally by way of payments she made to attorneys Halling Cayo on August 8, 2016 in the amount of $4,000, September 21, 2016 in the amount of $1,478.00, and September 22, 2016 in the amount of $25,000.00; and further that she "loaned" money to the Trusts jointly and severally by way of payments she made to attorney Sharan Abraham on May 11, 2016 in the amount of $17,000, June 26, 2016 in the amount of $17,000.00, August 13, 2016 in the amount of $8,000.00, and November 5, 2016 in the amount of $20,000.00.

165.    Halling Cayo and Sharan Abraham are some of a number of lawyers and law firms representing Kate in her lawsuit pending in the Northern District of Illinois, *Katherine Black v. Wrigley, et. al,* U.S. Dist. Court for the Northern District of Illinois, Case No. 1:17-cv-00101.

166.     Halling Cayo and Sharan Abraham also represent Sam, Sarah, Daniel, and Jacob Black in their ongoing lawsuit against Anthony and others, *Samuel H. Black, et. al v. Dain, et al.,* U.S. Dist. Court for the Eastern Dist. of New York, Case No. 16-cv-01238 (Hon. Carol Bagley Amon).

167.     Olga further claims in Olga's Third Lawsuit that she "loaned" money to the Trusts jointly and severally by way of payments she made to attorneys HarperHofer on May 11, 2016 in the amount of $15,880.95 and a double payment on May 11, 2016 in the amount of $15,880.95.

168.     HarperHofer represented Bernard during the forensic accounting of his breach of fiduciary duties in the conservatorship suit he initiated in the DPC, which resulted in the Colorado Judgment against Bernard.

169.     Olga's complaint claims she "loaned" money to the Trusts jointly and severally by way of payments she made to attorneys Davis Graham in the amount of $50,965.29 on May 11, 2016, a double payment of $51,000.00 on June 26, 2016, in the amount of $70,000.00 on October 24, 2016, in the amount of $40,000.00 on November 5, 2016, and in the amount of $25,000.00 on November 24, 2016.

170.     Davis Graham also represented Bernard in the conservatorship suit he initiated in the DPC, which resulted in the Colorado Judgment.

171.     Olga's complaint claims she "loaned" money to the Trusts jointly and severally by way of payments she made in the amount of $8,601.55.00 on May 11, 2016 and $722.50 on September 21, 2016 to attorneys Barnes and Thornburg.

172.     Barnes and Thornburgh represented Bernard and Sam in their lawsuit against Joanne, *Black v. Black*, Case No. 1:16-cv-01763 (Hon. Virginia M. Kendall).

173. Olga's complaint claims she "loaned" money to the Trusts jointly and severally by way of payments she made in the amount of $516.75 on August 13, 2016 and $8,000.00 on October 16, 2016 to attorneys Arden Besunder.

174. Arden Besunder represents Bernard in his accounting lawsuit in New York, *In re Black*, Surrogate's Court of the State of New York County of Westchester File No. 20012/1209/A (Hon. Thomas P. Aliotta).

175. Olga's complaint claims the Trusts are jointly and severally for payment she made in the amount of $8,089.80 on November 11, 2017 to attorneys Adelman Gettleman.

176. Adelman Gettleman represents Kate and Olga in their Cook County lawsuits against Bernard, personally, and against the Trusts, and in Kate's lawsuit against Cherie and others pending in the Northern District of Illinois, *Katherine Black v. Wrigley, et al.,* U.S. Dist. Court for the Northern District of Illinois Case No. 1:17-cv-00101 (Hon. Matthew H. Kennelly).

177. In Olga's Third Lawsuit, Olga sought an alleged $322,709.84 in principal, $13,160.98 in interest, and continuing interest.

178. Olga also sought "at least $6,658.00" in attorneys' fees and costs she claims to have spent by September 25, 2017, as well as those she incurred thereafter in obtaining the Agreed Judgment from her husband Bernard and his son Sam against the Trusts.

179. By September 27, 2017 the day after Kate and Olga filed their complaints against Bernard and Sam as trustees of the Trusts, Bernard had executed an Acknowledgement of Receipt of Summons and Complaint on behalf of the Trusts.

180. Once Sam executed an Acknowledgement of Receipt of Summons and Complaint on behalf of the Trusts and Bernard and Sam both signed an Agreed Judgment on behalf of the

Trusts on October 2, 2017, only a week after filing the complaint, Kate and Olga each filed a Motion for Entry of Agreed Judgment on October 3, 2017.

181.    On October 12, 2017, pursuant to Bernard's and Sam's written agreement on behalf of the Trusts, the Court entered an Agreed Judgment against the Trusts in the amount of $348,936.93, plus accruing interest, in favor of Olga in Olga's Third Lawsuit.

182.    Having wrongfully obtained the Agreed Judgment from the court, Bernard, Sam Kate, and Olga are using the Agreed Judgment to take the same assets (Joanne's) from the same sources (the SNT, 2013 Trust, and Issue Trust) Bernard is prohibited from doing by orders of the DPC and in breach of their duties to Joanne.

183.    What remains of Joanne's POD assets and other inheritance that Bernard, Sam, Kate, and Olga have not yet been able to divert and convert to their own uses are currently held by Chase.

184.    On November 8, 2017, Olga and Kate each served on Chase Bank and JPMorgan citation notices as supplemental proceedings to collect the judgment in the instant lawsuit.

185.    By obtaining an Agreed Judgment against the Trusts and issuing citations, Olga, Kate, Bernard, and Sam seek to force Chase, by Court order in favor of Olga (rather than Bernard), to allow them to access the same funds in the Trusts which orders of other courts prohibited Bernard from accessing and in breach of fiduciary duties owed to Joanne, and which Chase may have considered in refusing to allow Bernard and Sam to access the funds in the Trusts.

## COUNT I: BREACH OF FIDUCIARY DUTY AS TRUSTEES OF SNT AND 2013 TRUST
### *Against Bernard and Samuel*

186.    Plaintiff realleges and incorporates each allegation in the preceding paragraphs as if fully set forth herein.

187.    Bernard and Sam as trustees of the SNT and 2013 Trust owed fiduciary duties to Joanne.

188.    Bernard and Sam were required to identify assets belonging to or associated with the SNT and belonging to or associated with the 2013 Trust separately from assets belonging to the Issue Trust, themselves, Kate, Olga, and anyone or anything else.

189.    Bernard and Sam used assets belonging to the SNT and the 2013 Trust for their own benefit and for the benefit of Kate and Olga and Bernard's other children.

190.    In their capacities as trustees of the SNT and 2013 Trusts, Bernard and Sam engaged in self-dealing and breached their fiduciary duties to Joanne.

191.    Bernard and Sam commingled and continue to commingle assets belonging to the SNT and the 2013 Trust with assets in the Issue Trust and elsewhere for their own benefit the benefit of Kate and Olga and the benefit of Bernard's other children.

192.    Bernard took approximately $1.5 million which was to be transferred into the SNT and transferred it, instead, into the Issue Trust for his, Kate's, Sam's and his other children's benefit.

193.    Neither Bernard nor Sam sought to recover that $1.5 million.  Instead, they have resisted and prevented its return to the SNT and dissipated assets of the SNT and 2013 Trust.

194.    Bernard and Sam, in concert with Kate and Olga, fraudulently transferred assets of Bernard and the Trusts to prevent Joanne from collecting the approximately $4.5 million judgment she obtained in the DPC against Bernard due to his breach of fiduciary duties he owed to Joanne, as well as any future judgment against Bernard, Sam, or the Issue Trust.

195.    Bernard and Sam, in concert with Kate and Olga, knowingly indebted the Trusts for amounts which were not for the benefit of Joanne, the SNT or 2013 Trust.

196.    Bernard and Sam, in concert with Kate and Olga, knowingly filed lawsuits and caused agreed judgments and citations to be entered against the Trusts, jointly and severally, so as to use assets belonging to Joanne for their own benefit and purposes.

197.    Bernard and Sam, in concert with Kate and Olga, knowingly agreed to judgments against the Trusts for amounts which were not for the benefit of Joanne, the SNT or 2013 Trust.

198.    Bernard, in concert with Kate and Olga, knowingly indebted Bernard to Kate and Olga in order to prevent Joanne from collecting the approximately $4.5 million judgment she obtained in the DPC against Bernard due to his breach of fiduciary duties he owed to Joanne.

199.    Bernard, in concert with Kate and Olga, knowingly agreed to judgments against Bernard in order to prevent Joanne from collecting the approximately $4.5 million judgment she obtained in the DPC against Bernard due to his breach of fiduciary duties he owed to Joanne.

200.    Bernard's and Sam's actions constitute breaches of their duty to segregate assets of the SNT and 2013 Trust.

201.    Bernard and Sam owed the highest duty to fully and completely disclose to the Joanne all material facts relating to dealings with the SNT and 2013 Trust, including but not limited to Bernard's and Sam's handling and disposition of trust assets.

34

202.     Bernard and Sam, in concert with Kate and Olga, engaged in self-dealing through their use and dissipation of assets of the SNT and 2013 Trust and interference with Joanne's ability to recover her judgment against Bernard for his breach of fiduciary duties owed to her.

203.     Bernard and Sam, in concert with Kate and Olga, intentionally attempted to conceal their misconduct from Joanne, her conservator, and Anthony.

204.     Bernard and Sam, in concert with Kate and Olga, breached their fiduciary duties of candor and disclosure to Joanne, when they engaged in misrepresentation and concealed their conduct in order to facilitate their efforts to manipulate themselves into positions of power and control over Joanne's assets, stole Joanne's assets, used Joanne's assets for their own benefit and that of Kate, Olga, and Bernard's other children and acted against Joanne's interest, including to pay their attorneys' fees and otherwise as alleged herein.

205.     Bernard and Sam have exceeded their fiduciary authority.

206.     Bernard and Sam breached their obligations as set forth in the SNT and 2013 Trust to distribute the assets for Joanne's benefit during her lifetime.

207.     Bernard and Sam breached their fiduciary duties of loyalty.

208.     Bernard's and Sam's actions diminished the value of assets belonging to the SNT and 2013 Trust, including but not limited to the actions Bernard and Sam took in causing Agreed Judgments and citations to be entered putting a lien upon and freezing the assets held in the Trusts which negatively affects the value of the Trusts' assets, interferes with Joanne's ownership, and is preventing the assets from being used for Joanne's needs and benefit.

209.     For the reasons alleged herein, Bernard is unfit to be trustee of the SNT and 2013 Trust.

210. For the reasons alleged herein, Sam is unfit to be trustee of the SNT and 2013 Trust.

211. Bernard's and Sam's actions and failures to act as alleged herein were committed willfully and wantonly and with intentional disregard of their duties as trustees of the SNT and 2013 Trust.

212. Plaintiff has been forced to incur attorneys' fees, costs and expenses to pursue her rights under the SNT and 2013 Trust.

213. Bernard's and Sam's misconduct caused and continues to cause Joanne to suffer losses and to receive less than the full beneficial interest to which she is entitled.

WHEREFORE, Plaintiff Jeanette Goodwin, as successor conservator for Joanne Black, prays for the entry of judgment in favor of Plaintiff against Defendants, Bernard S. Black and Samuel H. Black: (1) awarding Joanne Black a money judgment, including but not limited to punitive damages, in an amount to be proven at trial against Bernard S. Black and Samuel H. Black; (2) removing Bernard as trustee of the Supplemental Needs Trust for the Benefit of Joanne Black under agreement dated December 19, 1997 and appointing an independent successor; (3) removing Samuel as trustee of the Supplemental Needs Trust for the Benefit of Joanne Black under agreement dated December 19, 1997; (4) terminating the Joanne Black 2013 Trust Agreement executed on March 22, 2013; (5) enjoining each and both of Bernard S. Black and Samuel H. Black from attempting to access and accessing or dissipating Joanne's assets whether held in the SNT, 2013 Trust, the Issue Trust, Chase, or elsewhere; (6) awarding Conservator her attorneys' fees and costs; and (7) for such other and further relief this Court deems just and proper.

## COUNT II: AIDING AND ABETTING BREACH OF TRUSTEES' FIDUCIARY DUTY
### *Against Kate and Olga*

214.    Plaintiff realleges and incorporates each allegation in the preceding paragraphs as if fully set forth herein.

215.    Bernard's and Sam's misconduct caused injury to Joanne as alleged herein.

216.    At the time they participated in the misconduct and breaches of fiduciary duty by Bernard and Sam, Kate and Olga were aware of their roles as part of the overall and tortious activity by Defendants.

217.    Kate and Olga knew Bernard and Sam were trustees of the Trusts.

218.    Kate and Olga knew Joanne was the beneficiary of the SNT and 2013 Trusts.

219.    Kate knew Renata had bequeathed to Joanne the entirety of the POD assets.

220.    Kate and Olga knew Bernard had been found by the DPC liable for breaches of fiduciary duty and civil theft for stealing from Joanne and placing into the Issue Trust approximately $1.5 million.

221.    Kate and Olga knew the DPC had entered judgment against Bernard in the approximate amount of $4.5 million as a result of his for breaches of fiduciary duty and civil theft from Joanne.

222.    Kate and Olga knew Bernard was ordered to return to Joanne and the SNT the approximately $1.5 million Bernard stole from Joanne.

223.    Kate and Olga knew the DPC had enjoined Bernard from using Joanne's assets held in any of the Trusts to pay his legal fees.

224.    Kate and Olga knowingly and substantially assisted Bernard and Sam in their misconduct and breaches of fiduciary duty.

225.    For example, Kate and Olga, in concert with Bernard and Sam, caused Agreed Judgments and citations to be entered putting a lien upon and freezing the assets held in the Trusts which negatively affects the value of the Trusts' assets, interferes with Joanne's ownership, and is preventing the assets from being used for Joanne's needs and benefit.

226.    Kate and Olga, in concert with Bernard and Sam, knowingly indebted the Trusts for amounts which were not for the benefit of Joanne, the SNT, or 2013 Trust, in breach of Bernard's and Sam's fiduciary duties to Joanne.

227.    Kate and Olga, in concert with Bernard and Sam, knowingly filed lawsuits and citations against Bernard, personally, and the Trusts to avoid Joanne's collection from Bernard of the approximately $4.5 million judgment she obtained in the DPC against Bernard due to his breach of fiduciary duties he owed to Joanne.

228.    Kate and Olga, in concert with Bernard and Sam, knowingly filed lawsuits and caused agreed judgments and citations to be entered against the Trusts, jointly and severally, so as to use assets belonging to Joanne for their own benefit and purposes.

229.    Kate and Olga, in concert with Bernard and Sam, knowingly agreed to judgments against the Trusts for amounts which were not for the benefit of Joanne, the SNT, or 2013 Trust, in breach of Bernard's and Sam's fiduciary duties to Joanne.

230.    Kate and Olga, in concert with Bernard, knowingly indebted Bernard to Kate and Olga in order to prevent Joanne from collecting the approximately $4.5 million judgment she obtained in the DPC against Bernard due to his breach of fiduciary duties he owed to Joanne, in breach of Bernard's and Sam's fiduciary duties to Joanne.

231.    Kate and Olga, in concert with Bernard, knowingly agreed to judgments against Bernard in order to prevent Joanne from collecting the approximately $4.5 million judgment she obtained in the DPC against Bernard due to his breach of fiduciary duties he owed to Joanne, in breach of Bernard's and Sam's fiduciary duties to Joanne.

232.    Kate and Olga, in concert with Bernard and Sam, engaged in self-dealing through their use and dissipation of assets of the SNT and 2013 Trust and interference with Joanne's ability to recover her judgment against Bernard for his breach of fiduciary duties owed to her.

233.    Kate and Olga, in concert with Bernard and Sam, engaged in self-dealing through their use and dissipation of assets of the SNT and 2013 Trust and interference with Joanne's ability to recover her judgment against Bernard for his breach of fiduciary duties owed to her.

234.    Kate and Olga, in concert with Bernard and Sam, intentionally attempted to conceal their misconduct from Joanne, her conservator, and Anthony.

235.    Kate's and Olga's actions were committed willfully and wantonly.

236.    Kate's and Olga's misconduct caused and continues to cause Joanne to receive less than the full beneficial interest to which she is entitled and suffer losses.

237.    Plaintiff has had to incur attorneys' fees, costs and expenses to pursue her rights.

WHEREFORE, Plaintiff Jeanette Goodwin, as successor conservator for Joanne Black, prays for the entry of judgment in favor of Plaintiff against Defendants, Katherine Litvak Black and Olga Dal: (1) awarding Joanne Black a money judgment, including but not limited to punitive damages, in an amount to be proven at trial against Katherine Litvak Black and Olga Dal; (2) enjoining each and both of Katherine Litvak Black and Olga Dal from from attempting to access and accessing Joanne's assets whether held in the SNT, 2013 Trust, the Issue Trust,

Chase, or elsewhere; (3) awarding Conservator her attorneys' fees and costs; and (4) for such other and further relief this Court deems just and proper.

### COUNT III: FRAUDULENT TRANSFERS IN VIOLATION OF THE ILLINOIS UNIFORM FRAUDULENT TRANSFER ACT

#### *Against All Defendants*

238.    Plaintiff realleges and incorporates each allegation in the preceding paragraphs as if fully set forth herein.

239.    After Bernard had stolen assets from Joanne, Bernard had put into the Issue Trust assets belonging to Joanne; Bernard and Sam were obligated to return to Joanne the assets belonging to her which has been wrongfully transferred to the Issue Trust; Bernard was enjoined from using Joanne's assets for his benefit and that of his children; Bernard was enjoined from using Joanne's assets to pay attorneys' fees; a judgment against Bernard was imminent; a judgment against Bernard had been entered and Bernard was a judgment creditor; Bernard owed money to Joanne; and/or Bernard and Sam had duties to return to Joanne assets belonging to her, Bernard and Sam fraudulently transferred Joanne's and their own assets with the actual intent to hinder, delay, and defraud Joanne from recovering her assets and amounts awarded in judgments against Bernard and Sam.

240.    Bernard transferred Joanne's assets to the Issue Trust for his benefit, Sam's benefit, and the benefit of Bernard's other children to hinder, delay, and defraud Joanne from recovering her assets and amounts awarded in judgments against Bernard and Sam.

241.    Bernard, personally, entered into various loans with Kate and Olga to hinder, delay, and defraud Joanne from recovering her assets and amounts awarded in judgments against Bernard and Sam.

242. Bernard, personally, agreed to judgments against himself and facilitated collections by garnishment of his wages in favor of Kate and Olga based on purported loans with Kate and Olga to hinder, delay, and defraud Joanne from recovering her assets and amounts awarded in judgments against Bernard and Sam him.

243. On behalf of the SNT and 2013 Trust, Bernard and Sam, entered into various loans with Kate and Olga to hinder, delay, and defraud Joanne from recovering her assets and amounts awarded in judgments against Bernard and Sam.

244. On behalf of the SNT and 2013 Trust, Bernard and Sam, agreed to judgments against the Trusts and facilitated collections by garnishment of Bernard's wages in favor of Kate and Olga based on purported loans with Kate and Olga to hinder, delay, and defraud Joanne from recovering her assets and amounts awarded in judgments against Bernard and Sam.

245. Bernard and Sam transfers Joanne's assets to pay debts of Bernard, Sam, Kate and Olga to their attorneys to hinder, delay, and defraud Joanne from recovering her assets and amounts awarded in judgments against Bernard and Sam.

246. Bernard's and Sam's actions and failures to act were committed willfully and wantonly and with intentional disregard of his duties as trustees of the SNT and 2013 Trust.

247. Plaintiff has been forced to incur attorneys' fees, costs and expenses to pursue her rights as a result of Bernard's and Sam's fraudulent transfers in violation of the Illinois Uniform Fraudulent Transfers Act, 740 ILCS 160/1, *et seq.*

WHEREFORE, Plaintiff Jeanette Goodwin, as successor conservator for Joanne Black, prays for the entry of judgment in favor of Plaintiff against Defendants: (1) reversing and recalling each transfer made and obligation or encumbrance incurred relating to assets belonging to Joanne Black or in which Joanne Black has an interest by Bernard S. Black and/or Samuel H.

41

Black to Katherine Litvak Black, Olga Dal, attorneys who performed work benefitting anyone other than Joanne Black, and any other person or entity which did not provide a thing of value exclusively for the benefit of Joanne Black; (2) awarding Joanne Black a money judgment, including but not limited to punitive damages, in an amount to be proven at trial; (3) enjoining each and all Defendants from attempting to access and accessing Joanne's assets whether held in the SNT, 2013 Trust, the Issue Trust, Chase, or elsewhere; (4) awarding Conservator her attorneys' fees and costs; and (5) for such other and further relief this Court deems just and proper.

### COUNT IV: ACCOUNTING
#### *Against Bernard and Sam*

248.    Plaintiff realleges and incorporates each allegation in the preceding paragraphs as if fully set forth herein.

249.    As trustees of the SNT and 2013 Trusts, Bernard and Sam filed to render to Joanne an account of trust receipts, disbursements, distributions of income or principal, and a complete statement of Trust property.

250.    As trustees of the SNT and 2013 Trusts, Bernard and Sam are in control of and/or have access to the records of the SNT and 2013 Trusts.

251.    Plaintiff requires access to the records of the SNT and 2013 Trust to determine the extent of the assets of the SNT and 2013 Trust and how the assets have been administered since Bernard was appointed conservator by the DPC in or about 2013.

252.    Bernard's and Sam's failures to account violated their fiduciary duties to account to Joanne and the terms of the SNT which require them to "report, at least annually, to [Joanne] or [Joanne's] legal representative … all receipts, disbursements and distributions occurring during the reporting period along with a complete statement of the Trust property."

253.   Bernard's and Sam's actions and failures to act as alleged herein were committed willfully and wantonly and with intentional disregard of his duties as trustees of the SNT and 2013 Trust.

254.   Plaintiff has been forced to incur attorneys' fees, costs and expenses to pursue her rights to an accounting of the SNT and 2013 Trust.

WHEREFORE, Plaintiff Jeanette Goodwin, as successor conservator for Joanne Black, prays for the entry of judgment in favor of Plaintiff against Defendants, Bernard S. Black and Samuel H. Black: (1) compelling Defendants, Bernard S. Black and Samuel H. Black to provide a full and adequate accounting of the assets and all transfers made and obligations made impacting the SNT, 2013 Trusts, and any other assets in which Joanne Black has any interest, including but not limited to trust receipts, disbursements, distributions of income or principal, and a complete statement of Trust property; (2) awarding Joanne Black a money judgment, including but not limited to punitive damages, in an amount to be proven at trial against Bernard S. Black and Samuel H. Black; (3) awarding Conservator her attorneys' fees and costs; and (4) for such other and further relief this Court deems just and proper.

Plaintiff demands trial by jury as to all claims so triable.

Dated: January 16, 2018

Respectfully submitted,
Jeanette Goodwin as Conservator of
Joanne Black

By: _____
One of Her Attorneys

Robert A. Carson (rcarson@gouldratner.com)
Stephanie A. Petersmarck (spetersmarck@gouldratner.com)
Alison S. Constantine (aconstantine@gouldratner.com)
Gould & Ratner LLP
222 N. LaSalle Street, 8th Fl.
Chicago, IL 60601
(312) 236-3003
Firm No. 04018