# Exhibit 1

ELECTRONICALLY FILED
9/26/2017 2:40 PM
2017-L-009743
CALENDAR: Y
PAGE 1 of 31
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| Katherine Litvak, | ) |
|       Plaintiff, | ) |
|       v. | ) Case No. _____ |
| | ) |
| Bernard Steven Black and Samuel | ) Honorable _____ |
| Black, each as Trustees of the Supplemental | ) |
| Needs Trust For The Benefit of Joanne | ) |
| Black under agreement dated December 19, | ) |
| 1997; Bernard Steven Black and Samuel | ) |
| Black, each as Trustees of the Irrevocable | ) |
| Trust For The Benefit Of The Issue Of | ) |
| Renata Black under agreement dated | ) |
| December 19, 1997; and Bernard Steven | ) |
| Black and Samuel Black, each as Trustees | ) |
| of the Joanne Black 2013 Trust Agreement | ) |
| Executed on March 22, 2013; | ) |
|       Defendants. | ) |
| | ) |

### COMPLAINT

NOW COMES the plaintiff, Katherine Litvak (the "**Plaintiff**"), by her undersigned counsel, and for her Complaint (the "**Complaint**") against Bernard Steven Black, and Samuel Black, each as Trustees of the Supplemental Needs Trust For The Benefit of Joanne Black under agreement dated December 19, 1997 (collectively, the "**SNT Trustees**"), Bernard Steven Black and Samuel Black, each as Trustees of the Irrevocable Trust For The Benefit Of The Issue Of Renata Black under agreement dated December 19, 1997 (collectively, the "**Issue Trust Trustees**"), and Bernard Steven Black and Samuel Black, each as Trustees of the Joanne Black 2013 Trust Agreement executed on March 22, 2013 (collectively, the "**2013 Trust Trustees**", and together with the SNT Trustees and the Issue Trust Trustees, the "**Defendants**"), and states as follows:

### JURISDICTION AND VENUE

878403                                         1

ELECTRONICALLY FILED
9/26/2017 2:40 PM
2017-L-009743
PAGE 2 of 31

1.      This Court has personal jurisdiction over the Defendants under 735 ILCS 5/2-209 including, without limitation, subsections (a)(1&7)and/or (b)(2).

2.      The Note (hereafter defined) which is the subject of this Complaint is, by its terms, governed by Illinois law and made in Chicago, Illinois, and the Defendants have agreed that any legal action concerning said Note and the Defendants may be brought in this Court.

3.      Venue is proper in this circuit pursuant to 735 ILCS 5/2-101.

### THE PARTIES

4.      The Plaintiff is a resident of the state of Washington.

5.      The Defendant, Bernard Steven Black, is a resident of the state of Illinois and the Defendant, Samuel Black, is a resident of the state of Maryland.

### DEMAND NOTE (SECURED)

6.      The Defendants are currently indebted, jointly and severally, to the Plaintiff pursuant to the terms and conditions of that certain Demand Note (Secured) dated October 1, 2016, as amended by that certain First Amendment To Demand Note Secured and Loan and Security Agreement dated as of December 21, 2016, with a maximum borrowing limit of $601,321.00 (the "**Note**"), a copy of which Note is attached hereto as **Exhibit A** and by express reference made a part hereof.  In connection with the Note, the Plaintiff and Defendant also signed a Loan and Security Agreement dated as of October 1, 2016, a copy of which is attached hereto as **Exhibit B**.

7.      The Lender under the Note is the Plaintiff.

8.      The Note is signed by each of the Defendants as the "Borrower" thereunder. The liability of each of the Defendants under the Note is joint and several.

9.      The Defendants are and have been in default under the terms and conditions of the Note, and the Note is due and payable in full without further notice, act, or deed, as a result of the fact that the Note is a demand note, and the Plaintiff has made demand for payment under the terms of the Note, as is reflected in the demand email that is attached hereto as **Exhibit C**, and the Defendants have failed to pay any amounts due under the Note.

10.     As of September 25, 2017, there was principal of $376,464.88, interest of $18,431, and at least $13,671.05 of legal fees and costs, due and owing under the Note, and the total balance as of such date, was at least $408,566.93 (the "**Indebtedness**").

11.     By reason of the foregoing, the Defendants are indebted to Plaintiff under the Note in the total amount of at least $408,566.93 as of September 25, 2017, plus interest accruing thereafter at the per diem rate of $125.49, and any and all attorneys' fees, costs and expenses incurred and to be incurred thereafter by the Plaintiff in connection with the Note.

ELECTRONICALLY FILED
9/26/2017 2:40 PM
2017-L-009743
PAGE 3 of 31

<u>Count I – the SNT Trustees</u>

12.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 11 above as and for paragraph 12 of Count I as if fully set forth herein.

WHEREFORE, the Plaintiff, Katherine Litvak, respectfully requests that this Court enter judgment in her favor and against the SNT Trustees for the amounts due and owing under the Note in the amount of at least $408,566.49, plus interest of $125.49 per day after September 25, 2017, her attorney's fees and costs, and for such other and further relief as is just.

<u>Count II – the Issue Trust Trustees</u>

13.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 11 above as and for paragraph 13 of Count II as if fully set forth herein.

878403                                          3

WHEREFORE, the Plaintiff, Katherine Litvak, respectfully requests that this Court enter judgment in her favor and against the Issue Trust Trustees for the amounts due and owing under the Note in the amount of at least $408,566.49, plus interest of $125.49 per day after September 25, 2017, her attorney's fees and costs, and for such other and further relief as is just.

<center>Count III – the 2013 Trust Trustees</center>

14.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 11 above as and for paragraph 14 of Count I as if fully set forth herein.

WHEREFORE, the Plaintiff, Katherine Litvak, respectfully requests that this Court enter judgment in her favor and against the 2013 Trust Trustees for the amounts due and owing under the Note in the amount of at least $408,566.49, plus interest of $125.49 per day after September 25, 2017, her attorney's fees and costs, and for such other and further relief as is just.

Dated: This 26th day of September, 2017:

ELECTRONICALLY FILED
9/26/2017 2:40 PM
2017-L-009743
PAGE 4 of 31

KATHERINE LITVAK

By: /s/ Brad A. Berish
One of Her Attorneys

BRAD A. BERISH, ESQ. (ARDC# 06200891)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
(312) 435-1050 (Firm no. 12873)

# EXHIBIT A

ELECTRONICALLY FILED
9/26/2017 2:40 PM
2017-L-009743
PAGE 5 of 31

ELECTRONICALLY FILED
9/26/2017 2:40 PM
2017-L-009743
PAGE 6 of 31

## DEMAND NOTE (SECURED)

$601,321.00                                         Dated: October 1, 2016

     FOR VALUE RECEIVED, each of the undersigned (collectively and individually, the **"Borrower"**), jointly and severally, promises to pay to the order of Katherine Litvak (the **"Lender"**), in lawful money of the United States, at 2829 Sheridan Place, Evanston, Illinois 60201, 98117, or as the Lender may otherwise direct, the principal sum that is the lesser of (a) Six Hundred One Thousand, Three Hundred Twenty-One and no/100 Dollars ($601,321.00) or (b) the sum of $101,321.00 (representing the "Prior Loans" (as defined in the Security Agreement)) and the aggregate outstanding unpaid amount of "New Loans" (as defined in the Security Agreement) advanced from the date hereafter to Borrower by Lender pursuant to the terms of that certain Loan and Security Agreement dated as of the date hereof and executed by Borrower and Lender (as the same may be amended, modified or supplemented, the **"Security Agreement"**), together with interest as provided below.

     Borrower's obligations and liabilities to Lender under this Note shall be defined and referred to herein as **"Borrower's Liabilities"**.

     All of Borrower's Liabilities hereunder are payable at the earlier of: (a) demand made by Lender on or after January 1, 2017, which demand may be made to the Borrower in writing to the address of Borrower herein by any method including email, or (b) the occurrence of an "Event of Default" as defined herein, without further notice, act or deed.

     Interest on the principal amount of Borrower's Liabilities outstanding, but not yet due and payable, under this Demand Note (Secured) (the **"Note"**) shall accrue at the rate of six percent (6.00%) per annum computed on a 360 day year and actual days elapsed. All principal sums coming due and payable hereunder, whether on demand or due to an Event of Default, shall bear interest thereafter at the rate of twelve percent (12.00%) per annum computed on a 360 day year and actual days elapsed.

     **Prepayment.** Borrower may make full or partial prepayments of Borrower's Liabilities at any time in their respective sole discretion without paying any penalty.

     **Security Interest.** To secure the prompt payment to Lender of Borrower's Liabilities and the prompt, full and faithful performance by Borrower of all of the provisions to be kept, observed or performed by Borrower under this Note, and/or any other agreement, instrument or document, now and/or from time to time hereafter delivered by or on behalf of Borrower to Lender, Lender has been granted a lien and security interest in and to (a) the "Collateral" as that term is defined in the Security Agreement, and (b) all substitutions, renewals, improvements, accessions or additions thereto, replacements, offspring, rents, issues, profits, returns, products and proceeds thereof (all of the foregoing property are referred to herein individually and collectively as the **"Collateral"**).

     **Events of Default.** The following shall constitute an **"Event of Default"** under this Note:

765090

ELECTRONICALLY FILED
9/26/2017 2:40 PM
2017-L-009743
PAGE 7 of 31

1. the failure of the Borrower to pay any amount when due under this Note or the Security Agreement; or

2. the occurrence of any "Event of Default" as defined in the Security Agreement.

**Remedies.** If this Note is not paid at maturity or when due, whether by acceleration or otherwise, the Lender shall have all of the rights and remedies provided by any law or agreement.

**Attorney's Fees and Costs.** Borrower agrees to pay, upon Lender's demand therefor, any and all costs, fees and expenses (including attorneys' fees, costs and expenses), incurred by Lender (i) in enforcing any of Lender's rights hereunder, and (ii) in representing Lender in any litigation, contest, suit or dispute, or to commence, defend or intervene or to take any action with respect to any litigation, contest, suit or dispute (whether instituted by Lender, Borrower or any other person) in any way relating to this Note, Borrower's Liabilities, the Security Agreement, or the Collateral, and to the extent not paid, the same shall become part of Borrower's Liabilities hereunder.

**Waivers.** Borrower waives (a) to the extent permitted by law, all rights and benefits under any laws or statutes regarding sureties, as may be amended; (b) any right to receive notice of the following matters before the Lender enforces any of its rights: (i) the Lender's acceptance of this Note, (ii) any credit that the Lender extends to the Borrower, (iii) the Borrower's default, (iv) any demand, diligence, presentment, dishonor and protest, or (v) any action that the Lender takes regarding the Borrower, anyone else, any Collateral, or any of the Borrower's Liabilities, that she might be entitled to by law or under any other agreement; (c) any right to require the Lender to proceed against any Borrower, any other obligor or guarantor of the Borrower's Liabilities, or any Collateral, or pursue any remedy in the Lender's power to pursue; (d) any defense based on any claim that any endorser or other parties' obligations exceed or are more burdensome than those of the Borrower; (e) the benefit of any statute of limitations affecting liability of any endorser or other party liable hereunder or the enforcement hereof; (f) any defense arising by reason of any disability or other defense of the Borrower or by reason of the cessation from any cause whatsoever (other than payment in full) of the obligation of the Borrower for the Borrower's Liabilities; and (g) any defense based on or arising out of any defense that the Borrower may have to the payment or performance of the Borrower's Liabilities or any portion thereof. Any party liable on this Note consents to any extension or postponement of time of its payment without limit as to the number or period, to any substitution, exchange or release of all or any part of the Collateral, to the addition of any other party, and to the release or discharge of, or suspension of any rights and remedies against, any person who may be liable for the payment of this Note. The Lender may waive or delay enforcing any of its rights without losing them. Any waiver affects only the specific terms and time period stated in the waiver. No modification or waiver of any provision of this Note is effective unless it is in writing and signed by the party against whom it is being enforced.

**Governing Law and Venue.** This Note is delivered in the City of Chicago, State of Illinois and is governed by Illinois law (without giving effect to its laws of conflicts). The Borrower agrees that any legal action or proceeding with respect to any of its obligations under this Note may be brought by the Lender in any state or federal court located in Cook County in the State of Illinois, as the Lender, in her sole discretion, may elect. By the execution and delivery of this Note, the Borrower submits to and accepts, for itself and in respect of its

2

property, generally and unconditionally, the non-exclusive jurisdiction of those courts. The Borrower waives any claim that a court in Cook County in the State of Illinois is not a convenient forum or the proper venue for any such suit, action or proceeding.

**Confession of Judgment.** Borrower hereby irrevocably authorizes any attorney at law of Lender at any time or times to appear in any state or federal court of record in the United States of America including, without limitation, in any state or federal court located in Cook County in the State of Illinois, after all or any part of the obligations evidenced by this Note shall have become due, whether by lapse of time, acceleration, or otherwise, and in each case to waive the issuance and service of process, to present to the court this Note and any other writing (if any) evidencing the obligation or obligations in question, to admit the due date thereof and the nonpayment thereof when due, to confess judgment against any Borrower in favor of Lender for the full amount then appearing due, together with interest and costs of suit (including, but not limited to, attorneys' fees), and thereupon to release all errors and waive all rights of appeal and any stay of execution. The foregoing warrant of attorney shall survive any judgment, it being understood that should any judgment against any Borrower be vacated for any reason, Lender may nevertheless utilize the foregoing warrant of attorney in thereafter obtaining one or more additional judgments against any Borrower. Borrower hereby waives and releases any and all claims or causes of action which any Borrower might have against any attorney acting under the terms of the authority which Borrower has granted herein arising out of or connected with the confession of any judgment. Should any Borrower enter an appearance in such cause of action and commence any proceeding to open or vacate a judgment taken by confession hereunder and seek to defend against that judgment, Borrower shall be liable for and hereby agrees to pay all additional expenses of Lender including attorneys' fees, expenses and court costs incurred in connection with the collection of the obligations evidenced by this Note.

**Counterparts.**   This Note may be signed in any number of counterparts by the undersigned hereto, but all of such counterparts shall constitute one and the same instrument.

**WAIVER OF SPECIAL DAMAGES.** THE BORROWER WAIVES, TO THE MAXIMUM EXTENT NOT PROHIBITED BY LAW, ANY RIGHT THE UNDERSIGNED MAY HAVE TO CLAIM OR RECOVER FROM THE LENDER IN ANY LEGAL ACTION OR PROCEEDING ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES.

**JURY WAIVER.** THE BORROWER HEREBY VOLUNTARILY, KNOWINGLY, IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE (WHETHER BASED ON CONTRACT, TORT, OR OTHERWISE) BETWEEN THE BORROWER AND THE LENDER ARISING OUT OF OR IN ANY WAY RELATED TO THIS NOTE OR THE OTHER RELATED

(The balance of this page is left intentionally blank)

ELECTRONICALLY FILED
9/26/2017 2:40 PM
2017-L-009743
PAGE 8 of 31

3

765090

DOCUMENTS. THIS PROVISION IS A MATERIAL INDUCEMENT TO THE LENDER TO PROVIDE THE FINANCING EVIDENCED BY THIS NOTE.

The validity and construction of this Note shall be governed by the laws of the State of Illinois.

Executed on this 30th day of Sept, 2016.

BORROWER:

ELECTRONICALLY FILED
9/26/2017 2:40 PM
2017-L-009743
PAGE 9 of 31

Supplemental Needs Trust For
The Benefit of Joanne Black
under agreement dated December 19, 1997

By: *Bernard Black*
    Bernard Black, trustee
    2829 Sheridan Place
    Evanston, Illinois 60201
    bernardsblack@gmail.com

By: *S. Black*
    Samuel Black, trustee
    739 W. Pratt St., Apt. A
    Baltimore, MD 21201
    shblack@gmail.com

Irrevocable Trust For The Benefit Of The
Issue Of Renata Black under agreement
dated December 19, 1997

By: *Bernard Black*
    Bernard Black, trustee
    2829 Sheridan Place
    Evanston, Illinois 60201
    bernardsblack@gmail.com

By: *Sam Black*
    Samuel Black, trustee
    739 W. Pratt St., Apt. A
    Baltimore, MD 21201
    shblack@gmail.com

Joanne Black 2013 Trust Agreement
executed on March 22, 2013

By: *Bernard Black*
    Bernard Black, trustee
    2829 Sheridan Place
    Evanston, Illinois 60201
    bernardsblack@gmail.com

By: *Sam Black*
    Samuel Black, trustee
    739 W. Pratt St., Apt. A
    Baltimore, MD 21201
    shblack@gmail.com

4

765090

**FIRST AMENDMENT TO DEMAND NOTE (SECURED)**
**AND LOAN AND SECURITY AGREEMENT**

ELECTRONICALLY FILED
9/26/2017 2:40 PM
2017-L-009743
PAGE 10 of 31

THIS FIRST AMENDMENT TO DEMAND NOTE (SECURED) (**"Amendment"**) is made as of December 21, 2016, by and among the Supplemental Needs Trust For The Benefit Of Joanne Black under agreement dated December 19, 1997, the Irrevocable Trust For The Benefit Of The Issue Of Renata Black under agreement dated December 19, 1997, and the Joanne Black 2013 Trust Agreement executed on March 22, 2013 (collectively, the **"Borrowers"**), and Katherine Litvak (the **"Lender"**).

WHEREAS, the Borrowers are indebted to the Lender pursuant to a Demand Note (Secured) with a maximum principal amount of Six Hundred One Thousand, Three Hundred Twenty-One and no/100 Dollars ($601,321.00) dated October 1, 2016, made, executed, and delivered by the Borrowers, jointly and severally, to the Lender (as extended, amended or otherwise modified to date, the **"Note"**) (the Note and the Loan and Security Agreement dated as of October 1, 2016, and executed by the Borrowers to the Lender (the **"Loan Agreement"**), that was given in connection with, and to secure, the Note, shall be collectively referred to as the **"Loan Documents"**). Capitalized terms not otherwise defined herein shall have the meaning set forth in the Note;

WHEREAS, the parties desire to make certain amendments to the Loan Documents, including to (a) amend and clarify the attorney's fees and costs considered as Borrower's Liabilities due under the Note, (b) clarify and/or amend the outstanding balance of the principal amount of the Prior Loans and the New Loans, as well as the attorneys' fees and costs outstanding as of December 3, 2016, and (c) to extend, at the Borrowers' request, the date after which the Lender may make demand under the Note, as more fully provided herein; and

WHEREAS, the parties hereto desire to modify the Note and Loan Agreement as hereinafter provided.

NOW, THEREFORE, in exchange for good and valuable consideration including the foregoing promises and the covenants contained herein, the parties hereto intending to be legally bound agree as follows:

1. **Amendment to Note**. The Note be and is hereby amended as follows:

(a) The third paragraph on page 1 of the Note defining when the Borrower's Liabilities are due is amended in its entirety to state as follows:

All of Borrower's Liabilities hereunder are payable at the earlier of: (a) demand made by Lender on or after February 1, 2017, which demand may be made to the Borrower in writing to the address of Borrower herein by any method including email, or (b) the occurrence of an "Event of Default" as defined herein, without further notice, act or deed.

(b) The "Attorneys' Fees and Costs" provision on page 2 of the Note is amended in its entirety to state as follows:

**Attorney's Fees and Costs.** Borrowers agree to pay, upon Lender's demand therefor, any and all costs, fees and expenses (including attorneys' fees, costs and expenses), incurred by Lender (i) in enforcing any of Lender's rights hereunder, (ii) in preparing and negotiating the Note, Security Agreement, and any amendments or modifications to either of the foregoing, and (iii) in representing Lender in any litigation, contest, suit or dispute, or to commence, defend or intervene, or to take any action with respect to any litigation, contest, suit or dispute (whether instituted by Lender, any Borrowers or any other person), in any way relating to this Note, Borrower's Liabilities, the Security Agreement, or the Collateral, and to the extent not paid, the same shall become part of Borrower's Liabilities hereunder.

2.     **Amendment to Loan Agreement**.  The definition of the term "New Loan Request" in paragraph 3(b) of the Loan Agreement be and is hereby amended in its entirety to mean: if Grantor desires a New Loan, it may request a New Loan orally, or in writing including through the use of the form attached as **Exhibit B** to the Loan Agreement.

3.     **Acknolwedgment of Borrowers' Liabilities; Prior Loans; New Loans**. Exclusive of interest which has accrued and continues to accrue under the terms of the Note, as of December 3, 2016, (a) the outstanding principal balance under the Note is $141,603.92 as is set forth on **Exhibit A** hereto, and (b) the total attorneys' fees and costs that Lender has incurred, and which is included as Borrower's Liabilities, under the terms of the Note is $12,862.00.  The definition of Prior Loans as of the date of the original Note (10/1/16) in the Loan Documents be and is hereby amended to be $133,591.42 as is set forth on Exhibit A hereto, and Exhibit A hereto hereby replaces, in its entirety, the exhibit A that is attached to the Loan Agreement.

4.     **Liability of Borrowers**.  Borrowers hereby ratify and reconfirm Borrowers' obligations to Lender under the terms and conditions of the Loan Documents and acknowledge that Borrowers have no defenses to or rights of set-off against Borrowers' obligations to Lender thereunder.  Borrowers further acknowledge that the Lender has performed all of the Lender's obligations under the Loan Documents.

5.     **Amendment to Loan Documents; Allonge to Note**.  This Amendment constitutes an amendment and modification to the Loan Documents.  If and to the extent that there is any conflict or inconsistency between any of the terms and provisions of this Amendment and any of the terms and provisions of the Loan Documents, then the terms and provisions of this Amendment shall govern and control.  The Loan Documents shall not be deemed or constituted to be amended or modified except to the extent and in the manner expressly set forth herein.  The Borrowers hereby authorize the Lender, the present owner and holder of the Note, to place a legend on the Note giving effect to the changes herein agreed upon, or to attach this Amendment or an executed counterpart hereof to said Note as a part thereof.  Borrowers fully and unequivocally consent and agree that there is no obligation of the Lender to extend or renew the Note or this Amendment, or to provide any further or additional financial accommodations of any kind or nature whatsoever, except as expressly provided in the Note or this Amendment.  This Amendment is a modification of the Note and Loan Agreement and is not a novation.

ELECTRONICALLY FILED
9/26/2017 2:40 PM
2017-L-009743
PAGE 11 of 31

ELECTRONICALLY FILED
9/26/2017 2:40 PM
2017-L-009743
PAGE 12 of 31

6.      **Contract Review**. All parties hereto agree that this Amendment has been thoroughly reviewed by counsel of their respective choice and, in the event of an ambiguity or conflict in the terms hereof, there shall be no presumption against any party hereto as the drafter hereof.

7.      **Headings**. The paragraph headings used in this Amendment are for convenience only, and do not in any way limit, amplify, or affect the terms or conditions hereof.

8.      **Severability**. If any provision of this Amendment shall be judicially determined to be unenforceable or invalid, the remainder of this Amendment shall be unaffected to the greatest extent possible.

9.      **Miscellaneous**.      This Amendment may be executed in one or more counterparts, each of which, when executed and delivered, shall be deemed an original, and all of which, when taken together, shall constitute but one and the same agreement. A signature hereto sent or delivered by facsimile or email transmission shall be as legally effective and binding as a signed original for all purposes, provided, however, the parties hereto shall deliver and exchange original signatures to each other as soon as practicable after the date hereof. Each party hereby represents to the other parties that they have full power and, if applicable, organizational authority, to enter into, execute, deliver, and perform this Amendment and to consummate the transactions contemplated herein, that the party or, if applicable, the representative, executing and delivering this Amendment is duly authorized and empowered to act, and that upon execution and delivery by such party or representative, this Amendment will be a valid, binding and enforceable obligation of such party. This Amendment is for, and shall inure to, the benefit of the parties hereto and their respective successors and assigns. This Amendment shall be governed by and construed in accordance with the internal laws of the State of Illinois, without regard to conflict of law principles.

IN WITNESS WHEREOF, the undersigned have caused this Amendment to be executed as of the day and year first above written.

LENDER:

KATHERINE LITVAK

BORROWERS:

SUPPLEMENTAL NEEDS TRUST FOR THE BENEFIT OF JOANNE BLACK UNDER AGREEMENT DATED DECEMBER 19, 1997

By: _____
Bernard Black, trustee

By: _____
Samuel Black, trustee

IRREVOCABLE TRUST FOR THE BENEFIT OF THE ISSUE OF RENATA

791841

3

BLACK UNDER AGREEMENT
DATED DECEMBER 19, 1997

By: _Bernard Black_____
     Bernard Black, trustee

By: _Sam Black_____
     Samuel Black, trustee

JOANNE BLACK 2013 TRUST
AGREEMENT EXECUTED ON
MARCH 22, 2013

By: _Bernard Black_____
     Bernard Black, trustee

By: _Sam Black_____
     Samuel Black, trustee

ELECTRONICALLY FILED
9/26/2017 2:40 PM
2017-L-009743
PAGE 13 of 31

801921                  4

ELECTRONICALLY FILED
9/26/2017 2:40 PM
2017-L-009743
PAGE 14 of 31

Kate
Loan disbursements

| Date | Date | Amount | | Not Trust Loans | Trust Loans | Note |
|---|---|---|---|---|---|---|
| 2016.0625 pay Halling Cayo | | 20,000.00 | HELOC 1001 | | 20,000.00 | Pinto-Wrigley and Dain suits |
| Barnes and Thornburgh | 2016.0703 | 11,131.00 | NVK 1016 | | 11,131.00 | unfreeze Issue Trust |
| Halling Cayo | 2016.0716 | 15,000.00 | NVK 1017 | | 15,000.00 | Pinto-Wrigley and Dain suits |
| total end of July 2016 | | 46,131.00 | | | 46,131.00 | |
| interest - July 2016 | | 461.31 | | | 461.31 | |
| Davis Graham | 2016.0808 | 42,000.00 | K NV 1024 | 25,474.00 | 16,526.00 | |
| HarperHofer | 2016.0808 | 24,364.42 | K NV 1025 | | 24,364.42 | |
| total end of August 2016 | | 112,956.73 | | 25,474.00 | 87,021.42 | |
| Interest August 2016 | | 1,129.57 | | 254.74 | 870.21 | |
| Barnes and Thornburgh | 2016.0902 | 1,275.00 | NVK 1030 | | 1,275.00 | unfreeze Issue Trust |
| Sharan Abraham | 2016.0903 | 20,000.00 | NV K 1076 | | 20,000.00 | Pinto Wrigley and Dain suits |
| Davis Graham | 2016.0904 | 33,056.89 | K NV 1078 | 7,761.89 | 25,295.00 | |
| total end of Sept 2016 | | 168,418.19 | | 33,490.63 | 193,591.42 | |
| Interest Sept 2016 | | 1,684.18 | | 334.91 | 1,335.91 | |
| total end of Oct 2016 | | 170,102.37 | | 33,825.54 | 193,591.42 | |
| Interest Oct 2016 | | 1,701.02 | | 338.26 | 1,335.91 | |
| Arden Besunder | 2016.1124 | 5,000.00 | K NV 1100 | | 5,000.00 | |
| total end of Nov 2016 | | 176,803.39 | | 34,163.79 | 138,591.42 | |
| Interest Nov 2016 | | 1,768.03 | | 341.64 | 1,385.91 | |
| Kurzman Eisenberg | 2016.1203 | 3,012.50 | K NV 1156 | | 3,012.50 | |
| Total principal as of 12/3/16 | | | | | 141,603.92 | |
| Costs as of 12/3/16 | | | | | | |
| Adelman Gettleman | 2016.0920 | 3,650.00 | K NV 1054 | | 3,650.00 | |
| Adelman Gettleman | 2016.1116 | 9,212.00 | K NV 1126 | | 9,212.00 | |
| Total costs as of 12/3/16 | | | | | 12,862.00 | |

EXHIBIT A

802,094v2

# EXHIBIT B

ELECTRONICALLY FILED
9/26/2017 2:40 PM
2017-L-009743
PAGE 15 of 31

# LOAN AND SECURITY AGREEMENT

THIS LOAN AND SECURITY AGREEMENT (this "**Agreement**"), dated as of the 1st day of October, 2016, is made by the Supplemental Needs Trust For The Benefit of Joanne Black under agreement dated December 19, 1997, the Irrevocable Trust For The Benefit Of The Issue Of Renata Black under agreement dated December 19, 1997, and the Joanne Black 2013 Trust Agreement executed on March 22, 2013 (collectively and individually, the "**Grantor**"), with an address for Grantor at c/o Bernard Black, as trustee of each Grantor, 2829 Sheridan Place, Evanston, Illinois 60201 (email – shblack@gmail.com and **bernardsblack@gmail.com**), and Katherine Litvak (the "**Secured Party**"), with an address at 2829 Sheridan Place, Evanston, Illinois 60201 (email-**kate.litvak@gmail.com**).

A.    WHEREAS, Grantor is currently indebted to, and has borrowed money from, Secured Party in the past, in an amount which totals $101,321.00 as is detailed on **Exhibit A** hereto (the **"Prior Loans"**), and such Prior Loans are due and outstanding;

B.    WHEREAS, Grantor desires to (i) borrow new funds from Secured Party to pay for certain expenses and/or obligations including, without limitation, legal and accounting expenses pertaining to litigation that is being brought against, by, or for the benefit of, one or more of the Grantor or its respective beneficiaries, and (ii) have Secured Party forbear from collection of the Prior Loans and the New Loans (hereafter defined); and

C.    WHEREAS, provided Grantor (i) executes and delivers to Secured Party that certain Demand Note (Secured) dated as of the date hereof (as the same may be amended, modified or supplemented, the **"Note"**) which will represent the Grantor's obligation to repay the Prior Loans and the New Loans under the terms of the Note, and (ii) executes and delivers to Secured Party this Agreement, to secure repayment of the Obligations (as hereinafter defined); then Secured Party hereby agrees (a) to forbear from demanding payment of the Prior Loans and any New Loans until on or after January 1, 2017, as is provided in the Note, and (b) to make new loans under the Note to Grantor on the terms as provided in section 3 below (the **"New Loan(s)"**).

NOW, THEREFORE, the Grantor and the Secured Party, intending to be legally bound, hereby agree as follows:

1.    **Recitals**.  The recitals hereinbefore set forth constitute an integral part of this Agreement, evidencing the intent of the parties in executing this Agreement and describing the circumstances surrounding its execution.  Accordingly, said recitals are, by express reference, made a part of the covenants hereof, and this Agreement shall be construed in the light thereof.

2.    **Definitions.**

(a)    "**Collateral**" shall include all of the following properties, assets and rights of the Grantor, wherever located, whether now owned or hereafter acquired or arising, and all

ELECTRONICALLY FILED
9/26/2017 2:40 PM
2017-L-009743
PAGE 16 of 31

ELECTRONICALLY FILED
9/26/2017 2:40 PM
2017-L-009743
PAGE 17 of 31

proceeds and products thereof (all of the same as defined in the UCC and being hereinafter called the "**Collateral**"): all personal property of every kind and nature including, without limitation, all (a) all Accounts (whether or not Eligible Accounts), and all Goods whose sale, lease or other disposition by any Grantor has given rise to Accounts and that have been returned to, or repossessed or stopped in transit by, any Grantor; (b) all Chattel Paper, Instruments, Documents, Supporting Obligations and General Intangibles (including, without limitation, all patents, patent applications, trademarks, trademark applications, trade names, trade secrets, goodwill, copyrights, copyright applications, registrations, licenses, software, franchises, customer lists, tax refund claims, claims against carriers and shippers, guarantee claims, contracts rights, payment intangibles, security interests, security deposits and any rights to indemnification); (c) all Inventory (whether or not Eligible Inventory); (d) all Goods (other than Inventory) including, without limitation, Equipment (and all Documents issued with respect thereto), vehicles, and all tangible personal property including, without limitation, furniture, furnishings, clothing, artwork, electronic equipment, sports equipment, rugs, musical instruments and tools; (e) all Deposit Accounts, bank accounts, deposit and cash including, without limitation, all Deposit Accounts held at or by Chase Bank; (f) all Investment Property including, without limitation, all Investment Property held at or by JPMorgan Chase Bank, N.A.; (g) all Letter-of-Credit Rights; (h) all Commercial Tort Claims including, without limitation, those described on **Exhibit C** hereto; (i) all Consumer Goods; (j) any other property of Grantor now or hereafter in the possession, custody or control of the Secured Party or any agent of the Secured Party with respect to the Obligations for any purpose (whether for safekeeping, deposit, collection, custody, pledge, transmission or otherwise); and (l) all additions and accessions to, substitutions for, and replacements, products and Proceeds of the foregoing property, including, without limitation, Proceeds of all insurance policies insuring the foregoing property, stock rights, subscription rights, dividends, stock dividends, stock splits, or liquidating dividends, and all cash, Accounts, Chattel Paper, Instruments, Investment Property, and General Intangibles arising from the sale, rent, lease, casualty loss or other disposition of the Collateral and any Collateral returned to, repossessed by or stopped in transit by the Grantor, and all insurance claims or proceeds of litigation relating to any of the Collateral, and all of Grantor's books, Records and data, including all Software relating to any of the foregoing and to Grantor's business, if any.  For purposes of the foregoing grant of the Collateral, "Account," "Chattel Paper," "Commercial Tort Claims," "Consumer Goods", "Deposit Accounts," "Documents," "Equipment," "Fixtures," "General Intangibles," "Goods," "Instruments," "Inventory," "Investment Property," "Letter-of-Credit Rights," "Proceeds," "Records," "Software" and "Supporting Obligations" shall have the respective meanings assigned to such terms in the UCC.

      (b)    "**Obligations**" shall include obligations arising under the Note (including the Prior Loans and New Loans, as well as any interest, costs, and attorneys' fees arising thereunder), and all other loans, advances, debts, liabilities, obligations, covenants and duties heretofore, now, or hereafter arising to or of any Grantor to and in favor of the Secured Party or her successor(s) and assign(s), of any kind or nature (including any interest accruing thereon after maturity, or after the filing of any petition in bankruptcy, or the commencement of any insolvency, reorganization or like proceeding relating to any Grantor, whether or not a claim for post-filing or post-petition interest is allowed in such proceeding), whether direct or indirect (including those acquired by assignment or participation), absolute or contingent, joint or several, due or to become due, now

765166                                                                2

ELECTRONICALLY FILED
9/26/2017 2:40 PM
2017-L-009743
PAGE 18 of 31

existing or hereafter arising, whether or not (i) evidenced by any note, guaranty or other instrument, (ii) arising under any agreement, instrument or document, (iii) for the payment of money, or (iv) arising by reason of an extension of credit, opening of a letter of credit, loan, equipment lease or guarantee; and any amendments, extensions, renewals and increases of or to any of the foregoing, and all costs and expenses of the Secured Party incurred in the documentation, negotiation, modification, enforcement, collection and otherwise in connection with any of the foregoing, including reasonable attorneys' fees and expenses.

(c)    "UCC" means the Uniform Commercial Code, as adopted and enacted and as in effect from time to time in the State whose law governs pursuant to the Section of this Agreement entitled "Governing Law and Jurisdiction." Terms used herein which are defined in the UCC and not otherwise defined herein shall have the respective meanings ascribed to such terms in the UCC. To the extent the definition of any category or type of collateral is modified by any amendment, modification or revision to the UCC, such modified definition will apply automatically as of the date of such amendment, modification or revision.

3.    **New Loans.** Secured Party shall hereafter make New Loan(s) to Grantor subject to the following terms and conditions: (a) once the aggregate principal amount outstanding of the New Loans at any one time reaches $500,000, the Secured Party shall have no obligation to make any more New Loans; (b) if Grantor desires a New Loan, it must deliver to Secured Party a fully executed loan request with the information set forth on, and in the form of, **Exhibit B** hereto (the **"New Loan Request"**); (c) the Secured Party shall lend up to $50,000 in one or more disbursements of New Loans (the **"Initial Loan"**) to Grantor pursuant to, and following receipt of, a New Loan Request(s) made hereafter and provided no "Event of Default" (hereafter defined) then exists; and (d) following the making of the Initial Loan, the duty or obligation to make a New Loan after receipt of a New Loan Request thereafter shall be within the sole and absolute discretion of the Secured Party (the **"Additional New Loan(s)"**)(for clarification, the Secured Party may, in her sole and absolute discretion, refuse to make an Additional New Loan(s) at any time after receiving a New Loan Request for same).

4.    **Grant of Security Interest.** To secure the Obligations, the Grantor, as debtor, hereby assigns and grants to the Secured Party, as secured party, a continuing lien on and security interest in the Collateral.

5.    **Change in Name or Locations.** The Grantor hereby agrees that if any Grantor changes its name or principal residence, or if any trustee of any Grantor changes his or her principal resident, the Grantor will immediately notify the Secured Party in writing of the changes.

6.    **Representations and Warranties.** The Grantor represents, warrants and covenants to the Secured Party that: (a) the Grantor has good, marketable and indefeasible title to the Collateral, has not made any prior sale, pledge, encumbrance, assignment or other disposition of any of the Collateral, and the Collateral is free from all encumbrances and rights of setoff of any kind except the security interests in favor of Olga Dal; (b) except as herein provided, the Grantor will not hereafter, without the Secured Party's prior written consent, sell, pledge, encumber, assign or otherwise dispose

765166                    3

ELECTRONICALLY FILED
9/26/2017 2:40 PM
2017-L-009743
PAGE 19 of 31

of any of the Collateral or permit any right of setoff, lien or security interest to exist thereon except to the Secured Party; (c) the Grantor will defend the Collateral against all claims and demands of all persons at any time claiming the same or any interest therein which is alleged to be superior to liens of Secured Party, excepting only those specific liens identified in subsection (a) above; (d) the execution and delivery of this Agreement and the Note, and the performance of the obligations imposed thereunder do not violate any law, do not conflict with any agreement by which Grantor is bound, or require the consent or approval of any governmental authority or any third party; (e) this Agreement is a valid and binding agreement, enforceable according to its terms; (f) Grantor is a resident of the state of Illinois and has full power and authority to enter into this Agreement and Note and to consummate the transactions contemplated therein; (g) with the advice of counsel, Grantor has of its own free will and volition, knowingly and voluntarily assented to become a party to this Agreement; (h) upon execution and delivery, this Agreement and the Note will be a valid, binding and enforceable obligation of Grantor; (i) Grantor has executed this Agreement freely and voluntarily, and without reliance upon any statement or representation of the Secured Party or her respective attorneys, agents, or other representatives concerning this Agreement in any manner whatsoever other than as expressly provided herein; (j) no promise or inducement for this Agreement has been made to the Grantor other than as expressly set forth herein; (k) that this Agreement and the Note have been thoroughly reviewed by counsel of its choice and, in the event of an ambiguity or conflict in the terms hereof, there shall be no presumption against any party as the drafter hereof; (l) Grantor has read and fully understands this Agreement and the Note and the meaning of its provisions; and (m) notwithstanding any other provisions herein, references herein to the Grantor shall mean each and every Grantor both individually and collectively.

7.    **Negative Pledge: No Transfer**.   Except as otherwise provided herein, the Grantor will not sell, lease or offer to sell, lease, or otherwise transfer or grant or allow the imposition of a lien or security interest upon the Collateral, will not allow any third party to gain control of all or any part of the Collateral, and will not use any portion thereof in any manner inconsistent with this Agreement.

8.    **Further Assurances**.   By its signature hereon, the Grantor hereby irrevocably authorizes the Secured Party to execute (on behalf of the Grantor) and file against the Grantor one or more financing, continuation or amendment statements pursuant to the UCC in form satisfactory to the Secured Party, and the Grantor will pay the cost of preparing and filing the same in all jurisdictions in which such filing is deemed by the Secured Party to be necessary or desirable in order to perfect, preserve and protect its security interests. If required by the Secured Party, the Grantor will execute all documentation and take any other actions necessary for the Secured Party to obtain and maintain perfection of its security interests in the Collateral including, without limitation, (a) permitting Secured Party to control or possess certain Collateral including, without limitation, Investment Property, Instruments or Deposit Accounts, (b) entering into a control agreement (in form and substance acceptable to Secured Party) with Secured Party and any bank or investment company concerning any Deposit Accounts or Investment Property of Grantor, and (c) entering into any pledge agreement with, and as may be requested by, Secured Party and any entity to which Grantor holds an ownership or other beneficial interest that constitutes Collateral.

9.   **Events of Default**. The Grantor shall be in default under this Agreement, without further notice, deed or act, upon the happening of any of the following events or conditions (each, an "**Event of Default**"): (a) the failure of any Grantor to make any payments when due under the terms of the Note; (b) the failure by any Grantor to perform any of its payment obligations under this Agreement; (c) any failure of any Grantor to perform any covenant, condition or agreement contained in this Agreement or in the Note; (d) falsity, inaccuracy or material breach by any Grantor of any written warranty, representation or statement made or furnished to the Secured Party by or on behalf of any Grantor; (e) the entry of any judgment hereafter against any Grantor or any new lien hereafter obtained against, or any attempt, whether or not successful, at the making of any levy, seizure or attachment of or on, the Collateral, (f) any indication or evidence received by the Secured Party that any Grantor may have directly or indirectly been engaged in any type of activity which, in the Secured Party's discretion, might result in the forfeiture of any property of any Grantor to any governmental entity, federal, state or local; (g) any default by any Grantor under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of any Collateral or any Grantor's ability to repay the Note or perform their respective obligations under this Agreement, or (h) proceedings are commenced by or against any Grantor under any bankruptcy, reorganization, liquidation, or similar laws of any jurisdiction.

10.   **Remedies**.   Upon the occurrence of any such Event of Default and at any time thereafter, all Obligations secured hereby shall immediately be due and payable, without further notice, act, or deed, and Secured Party shall have, in addition to any remedies provided herein or by any applicable law or in equity, all the remedies of a secured party under the UCC. The Secured Party's remedies include, but are not limited to, the right to (a) peaceably by her own means or with judicial assistance enter the Grantor's premises and take possession of the Collateral without prior notice to the Grantor or the opportunity for a hearing, (b) render the Collateral unusable, (c) dispose of the Collateral on the Grantor's premises, and (d) require the Grantor to assemble the Collateral and make it available to the Secured Party at a place designated by the Secured Party.  Unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, the Secured Party will give the Grantor reasonable notice of the time and place of any public sale thereof or of the time after which any private sale or any other intended disposition thereof is to be made. The requirements of commercially reasonable notice shall be met if such notice is sent to the Grantor at least ten (10) days before the time of the intended sale or disposition. Expenses of retaking, holding, preparing for disposition, disposing or the like shall include the Secured Party's reasonable attorneys' fees and legal expenses, incurred or expended by the Secured Party to enforce any payment due it under this Agreement either as against the Grantor, or in the prosecution or defense of any action, or concerning any matter growing out of or in connection with the subject matter of this Agreement and the Collateral pledged hereunder.  The Grantor waives all relief from all appraisement or exemption laws now in force or hereafter enacted.  Any recovery from Collateral under this agreement or the UCC after an Event of Default, shall be applied first to costs and

ELECTRONICALLY FILED
9/26/2017 2:40 PM
2017-L-009743
PAGE 20 of 31

ELECTRONICALLY FILED
9/26/2017 2:40 PM
2017-L-009743
PAGE 21 of 31

fees due under the Note or this Agreement, second to interest due under the Note, third to principal due under the Note, and fourth to any other Obligations.

11.  **Power or Attorney**.  The Grantor does hereby make, constitute and appoint any officer or agent of the Secured Party as the Grantor's true and lawful attorney-in-fact, with power to (a) endorse the name of the Grantor or any of the Grantor's officers or agents upon any notes, checks, drafts, money orders. or other instruments of payment or Collateral that may come into the Secured Party's possession in full or part payment of any Obligations; (b) sue for, compromise, settle and release all claims and disputes with respect to, the Collateral; and (c) sign, for the Grantor, such documentation required by the UCC, granting to the Secured Party's said attorney full power to do any and all things necessary to be done in and about the premises as fully and effectually as the Grantor might or could do. The Grantor hereby ratifies all that said attorney shall lawfully do or cause to be done by virtue hereof.  This power of attorney is coupled with an interest, and is irrevocable.

12.  **Payment of Expenses**.  At its option, the Secured Party may discharge taxes, liens, security interests or such other encumbrances as may attach to the Collateral, may pay for required insurance on the Collateral and may pay for the maintenance, appraisal or reappraisal, and preservation of the Collateral as determined by the Secured Party to be necessary. The Grantor will reimburse the Secured Party on demand for any payment so made or any expense incurred by the Secured Party pursuant to the foregoing authorization, and the Collateral also will secure any advances or payments so made or expenses so incurred by the Secured Party.

13.  **Notices**.   All notices, demands, requests, consents, approvals and other communications required or permitted hereunder ("**Notices**") must be in writing and will be effective upon receipt. Notices may be given in any manner to which the parties may separately agree, including electronic mail. Without limiting the foregoing, first-class mail, facsimile transmission, email, and commercial courier service are hereby agreed to as acceptable methods for giving Notices. Regardless of the manner in which provided, Notices may be sent to a party's address as set forth above or to such other address as any party may give to the other for such purpose in accordance with this section.

14.  **Preservation of Rights**.   No delay or omission on the Secured Party's part to exercise any right or power arising hereunder will impair any such right or power or be considered a waiver of any such right or power, nor will the Secured Party's action or inaction impair any such right or power. The Secured Party's rights and remedies hereunder are cumulative and not exclusive of any other rights or remedies which the Secured Party may have under other agreements, at law or in equity.

15.  **Illegality**.   If any provision contained in this Agreement should be invalid, illegal or unenforceable in any respect, it shall not affect or impair the validity, legality and enforceability of the remaining provisions of this Agreement.

16.  **Changes in Writing**.   No modification, amendment or waiver of, or consent to any departure by any Grantor from, any provision of this Agreement will be effective unless made in a writing signed by the Secured Party, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given. No

765166                                                      6

ELECTRONICALLY FILED
9/26/2017 2:40 PM
2017-L-00743
PAGE 22 of 31

notice to or demand on the Grantor will entitle the Grantor to any other or further notice or demand in the same, similar or other circumstance.

17. **Entire Agreement**.   This Agreement (including the documents and instruments referred to herein) constitutes the entire agreement and supersedes all other prior agreements and understandings, both written and oral, between the parties with respect to the subject matter hereof.

18. **Suretyship Waivers by Grantor**.   The Grantor waives demand, notice, protest, notice of acceptance of this Agreement, notice of loans made, credit extended, Collateral received or delivered or other action taken in reliance hereon and all other demands and notices of any description. With respect to both the Obligations and the Collateral, the Grantor assents to any extension or postponement of the time of payment or any other indulgence, to any substitution, exchange or release of or failure to perfect any security interest in any Collateral, to the addition or release of any party or person primarily or secondarily liable, to the acceptance of partial payment thereon and the settlement, compromising or adjusting of any thereof, all in such manner and at such time or times as the Secured Party may deem advisable. The Secured Party shall have no duty as to the collection or protection of the Collateral or any income therefrom, the preservation of rights against prior parties, or the preservation of any rights pertaining thereto. The Grantor further waives any and all other suretyship defenses.

19. **Marshaling**.   The Secured Party shall not be required to marshal any present or future collateral security (including but not limited to the Collateral) for, or other assurances of payment of, the Obligations or any of them or to resort to such collateral security or other assurances of payment in any particular order, and all of its rights and remedies hereunder and in respect of such collateral security and other assurances of payment shall be cumulative and in addition to all other rights and remedies, however existing or arising. To the extent that it lawfully may, the Grantor hereby agrees that it will not invoke any law relating to the marshalling of collateral which might cause delay in or impede the enforcement of the Secured Party's rights and remedies under this Agreement or under any other instrument creating or evidencing any of the Obligations or under which any of the Obligations is outstanding or by which any of the Obligations is secured or payment thereof is otherwise assured, and, to the extent that it lawfully may, the Grantor hereby irrevocably waives the benefits of all such laws.

20. **Overdue Amounts**. Until paid, all amounts due and payable by the Grantor hereunder shall be a debt secured by the Collateral and shall bear, whether before or after judgment, interest at the rate of interest for overdue principal set forth in the Note.

21. **Counterparts**.   This Agreement may be signed in any number of counterpart copies and by the parties hereto on separate counterparts, but all such copies shall constitute one and the same instrument.  An electronically or facsimile transmitted signature hereto shall be as legally effective and binding as a signed original for all purposes.

22. **Successors and Assigns**.   This Agreement will be binding upon and inure to the benefit of the Grantor and the Secured Party and their respective heirs, executors, administrators; successors and assigns; provided, however, that the Grantor may not assign this Agreement in whole or in part without the Secured Party's prior written

ELECTRONICALLY FILED
9/26/2017 2:40 PM
2017-L-009743
PAGE 23 of 31

consent, in her sole and absolute discretion, and the Secured Party at any time may assign this Agreement in whole or in part.

23.   **Interpretation**.   In this Agreement, unless the Secured Party and the Grantor otherwise agree in writing, the singular includes the plural and the plural the singular; words importing any gender include the other genders; references to statutes are to be construed as including all statutory provisions consolidating, amending or replacing the statute referred to; the word "or" shall be deemed to include "and/or", the words "including", "includes" and "include" shall be deemed to be followed by the words "without limitation"; references to articles, sections (or subdivisions of sections) or exhibits are to those of this Agreement; and references to agreements and other contractual instruments shall be deemed to include all subsequent amendments and other modifications to such instruments, but only to the extent such amendments and other modifications are not prohibited by the terms of this Agreement. Section headings in this Agreement are included for convenience of reference only and shall not constitute a part of this Agreement for any other purpose. Unless otherwise specified in this Agreement, all accounting terms shall be interpreted and all accounting determinations shall be made in accordance with GAAP. If this Agreement is executed by more than one Grantor, the obligations of such persons or entities will be joint and several.

24.   **Indemnity**.   The Grantor agrees to indemnify the Secured Party, each legal entity, if any, who controls the Secured Party, and each of their respective successors and assigns (the "**Indemnified Parties**") and to defend and hold each Indemnified Party harmless from and against any and all claims, damages, losses, liabilities and expenses (including all fees and charges of internal or external counsel with whom any Indemnified Party may consult and all expenses of litigation and preparation therefor) which any Indemnified Party may incur or which may be asserted against any Indemnified Party by any person, entity or governmental authority (including any person or entity claiming derivatively on behalf of the Grantor), in connection with or arising out of or relating to the matters referred to in this Agreement or the Obligations, whether (a) arising from or incurred in connection with any breach of a representation, warranty or covenant by any Grantor, or (b) arising out of or resulting from any suit, action, claim, proceeding or governmental investigation, pending or threatened, whether based on statute, regulation or order, or tort, or contract or otherwise, before any court or governmental authority; provided, however, that the foregoing indemnity agreement shall not apply to any claims, damages, losses, liabilities and expenses solely attributable to an Indemnified Party's gross negligence or willful misconduct. The indemnity agreement contained in this Section shall survive the termination of this Agreement, payment of the Obligations and assignment of any rights hereunder. The Grantor may participate at its expense in the defense of any such claim.

25.   **Governing Law and Jurisdiction**. This Agreement has been delivered to and accepted by the Secured Party and will be deemed to be made in the City of Chicago, State of Illinois. THIS AGREEMENT WILL BE INTERPRETED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES HERETO DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF ILLINOIS. The Grantor hereby irrevocably consents to the exclusive jurisdiction of any state or federal court in the county of Cook,

765166                                              8

State of Illinois; provided that nothing contained in this Agreement will prevent the Secured Party from bringing any action, enforcing any award or judgment or exercising any rights against the Grantor individually, against any security or against any property of the Grantor within any other county, state or other foreign or domestic jurisdiction. The Secured Party and the Grantor agree that the venue provided above is the most convenient forum for both the Secured Party and the Grantor. The Grantor waives any objection to venue and any objection based on a more convenient forum in any action instituted under this Agreement.

26.   **WAIVER OF SPECIAL DAMAGES.** THE GRANTOR WAIVES, TO THE MAXIMUM EXTENT NOT PROHIBITED BY LAW, ANY RIGHT THEY MAY HAVE TO CLAIM OR RECOVER FROM THE SECURED PARTY IN ANY LEGAL ACTION OR PROCEEDING ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES.

27.   **WAIVER OF JURY TRIAL**. EACH OF THE GRANTOR AND THE SECURED PARTY IRREVOCABLY WAIVES ANY AND ALL RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR CLAIM OF ANY NATURE RELATING TO THIS AGREEMENT, ANY DOCUMENTS EXECUTED IN CONNECTION WITH THIS AGREEMENT OR ANY TRANSACTION CONTEMPLATED IN ANY OF SUCH DOCUMENTS. THE GRANTOR AND THE SECURED PARTY ACKNOWLEDGE THAT THE FOREGOING WAIVER IS KNOWING AND VOLUNTARY.

The Grantor acknowledges that each has read and understood all the provisions of this Agreement, including the waiver of jury trial, and has been advised by counsel.

IN WITNESS WHEREOF, this Agreement has been fully executed as of the date specified at the beginning hereof.

ELECTRONICALLY FILED
9/26/2017 2:40 PM
2017-L-009743
PAGE 24 of 31

GRANTOR:

SUPPLEMENTAL NEEDS TRUST FOR THE BENEFIT OF JOANNE BLACK UNDER AGREEMENT DATED DECEMBER 19, 1997

By: *Bernard Black*
Bernard Black, trustee

By: *Sam Black*
Samuel Black, trustee

IRREVOCABLE TRUST FOR THE BENEFIT OF THE ISSUE OF RENATA

765166                                         9

ELECTRONICALLY FILED
9/26/2017 2:40 PM
2017-L-009743
PAGE 25 of 31

BLACK UNDER AGREEMENT
DATED DECEMBER 19, 1997

By: _Bernard Black_
Bernard Black, trustee

By: _____
Samuel Black, trustee

JOANNE BLACK 2013 TRUST
AGREEMENT EXECUTED ON
MARCH 22, 2013

By: _Bernard Black_
Bernard Black, trustee

By: _____
Samuel Black, trustee

SECURED PARTY:
_____
KATHERINE LITVAK

765166                                      10

767,806

ELECTRONICALLY FILED
9/26/2017 2:40 PM
2017-L-009743
PAGE 26 of 31

## Kate Litvak Loans to Trusts

| Payee | Date | Check | Paid | All 3 trusts | Estate | All | Kate |
|---|---|---|---|---|---|---|---|
| Poskus Caton Klein | 2016.0603 | K NV 1011 | 8,000.00 | 101,321 | 24,364 | 125,686 | 125,686 |
| Jeff Grell (RICO person) | 2016.0603 | K NV 1013 | 500.00 | 4,000 | | | 4,000 |
| Halling and Cayo | 2016.0626 | HELOC 1001 (Kate) | 20,000.00 | 500 | | | 500 |
| Halling Cayo (Dain case) | 2016.0715 | K NV 1017 | 15,000.00 | 20,000 | | | 20,000 |
| Davis Graham Stubbs (thru May) | 2016.0808 | K NV 1024 | 42,000.00 | 15,000 | | | 15,000 |
| HarperHofer | 2016.0808 | K NV 1025 | 24,364.42 | 16,526 | | | 16,526 |
| Sharan Abraham | 2016.0903 | K NV 1076 | 20,000.00 | 0 | 24,364.42 | | 24,364 |
| Davis Graham Stubbs (thru June) | 2016.0904 | K NV 1078 | 33,056.89 | 20,000 | | | 20,000 |
| | | | | 25,295 | | | 25,295 |

EXHIBIT A

<u>EXHIBIT B</u> - NEW LOAN REQUEST FORM

Dated: _____

TO:   Katherine Litvak

The undersigned hereby request a "New Loan" as that term is defined in that certain Loan and Security Agreement between the undersigned and you dated October 1, 2016:

| New Loan Amount Requested | Make Check Payable to | Mail Check To: | Reason for Loan, or lawsuit which loan is needed for: |
|---|---|---|---|

*FILL IN INFORMATION IN EACH OF THESE COLUMNS*

**GRANTOR:**

SUPPLEMENTAL NEEDS TRUST FOR THE BENEFIT OF JOANNE BLACK UNDER AGREEMENT DATED DECEMBER 19, 1997

By:_____
     Bernard Black, trustee

By:_____
     Samuel Black, trustee

IRREVOCABLE TRUST FOR THE BENEFIT OF THE ISSUE OF RENATA BLACK UNDER AGREEMENT DATED DECEMBER 19, 1997

By:_____
     Bernard Black, trustee

By:_____
     Samuel Black, trustee

JOANNE BLACK 2013 TRUST AGREEMENT EXECUTED ON MARCH 22, 2013

By:_____
     Bernard Black, trustee

By:_____
     Samuel Black, trustee

ELECTRONICALLY FILED
9/26/2017 2:40 PM
2017-L-009743
PAGE 27 of 31

765166                                            11

## EXHIBIT C - Commercial Tort Claims

1. All tort claims, if any, arising out of actions, contacts or communications by the parties named in paragraph 2 with respect to (a) the Supplemental Needs Trust For The Benefit of Joanne Black under agreement dated December 19, 1997, (b) the Irrevocable Trust For The Benefit Of The Issue Of Renata Black under agreement dated December 19, 1997, (c) the Joanne Black 2013 Trust Agreement executed on March 22, 2013, (d) Bernard Black or Samuel Black in their capacities as trustees of the foregoing trusts, or (e) any of the beneficiaries of these trusts, other than Joanne Black.

2. All tort and/or arbitration claims against any of Anthony Dain, Cherie Wrigley, Esaun G. Pinto, Sr., CPI Investigations, Inc., Pamela Kerr, Melissa Cohenson, Brian A. Raphan, P.C., Ira Salzman, Goldfarb, Abrandt, Salzman & Kutzin LLP, Gayle Young, Lisa DiPonio, Carl Glatstein, Lee Hoffman, Law Offices of Lee A. Hoffman, Jr., Hoffman and Keating, JPMorgan Chase Bank, J.P. Morgan Securities, LLC, and their affiliates.

ELECTRONICALLY FILED
9/26/2017 2:40 PM
2017-L-009743
PAGE 28 of 31

# EXHIBIT C

ELECTRONICALLY FILED
9/26/2017 2:40 PM
2017-L-009743
PAGE 29 of 31

## Brad Berish

| | |
|---|---|
| **From:** | Brad Berish |
| **Sent:** | Monday, September 25, 2017 4:18 PM |
| **To:** | bernardsblack@gmail.com; 'shblack@gmail.com' |
| **Cc:** | 'Kate Litvak'; olgadalpdx@gmail.com |
| **Subject:** | Demand under "Notes" (as hereinafter defined) |
| **Attachments:** | Kate - amendment.pdf; Kate - Note.pdf; Olga Amendment.pdf; Olga - Note.pdf |

Re:   DEMAND LETTER

To:   Mr Bernard Black & Mr. Samuel Black, not individually, but as trustees under the Supplemental Needs Trust For The Benefit of Joanne Black under agreement dated December 19, 1997 ("**SNT Trust**"), the Irrevocable Trust For The Benefit Of The Issue Of Renata Black under agreement dated December 19, 1997 ("**Issue Trust**"), and the Joanne Black 2013 Trust Agreement executed on March 22, 2013 (the "**2013 Trust**", and together with the SNT Trust and the Issue Trust, the "**Trusts**"):

I am counsel to Olga Dal ("**Olga**") and Katherine Litvak ("**Kate**", and together with Kate, the "**Lenders**") in connection with the following notes and related loan documentation (attached hereto), as may have been amended from time to time, whether specifically referenced below or otherwise, between the Trusts and each of the Lenders (collectively, the "**Obligations**" or "**Loan Documents**"):

ELECTRONICALLY FILED
9/26/2017 2:40 PM
2017-L-009743
PAGE 30 of 31

1.   Demand Note (Secured) dated October 1, 2016, as amended by that certain First Amendment To Demand Note Secured and Loan and Security Agreement dated as of December 21, 2016, each of which were made, executed and delivered by you as trustees for the Trusts and in favor of Olga, with a maximum borrowing limit of $572,228 (the "**Olga Note**"); and

2.   Demand Note (Secured) dated October 1, 2016, as amended by that certain First Amendment To Demand Note Secured and Loan and Security Agreement dated as of December 21, 2016, each of which were made, executed and delivered by you as trustees for the Trusts and in favor of Kate, with a maximum borrowing limit of $601,321 (the "**Kate Note**", and collectively, with the Olga Note, the "**Notes**").

I write to notify you that the Lenders hereby make demand under their respective Olga Note and Kate Note for all Obligations arising under such Notes, which respective Obligations are immediately accelerated and are now fully due and payable, including all accrued and unpaid interest thereon and all costs, fees, charges and expenses incurred, and continuing to be incurred, by the respective Lenders in connection therewith.  In addition, such principal Obligations shall also hereafter bear interest at the default rate under such Notes at the rate of twelve percent (12.00%).

As of September 25, 2017, the outstanding <u>principal</u> and interest balances due and owing under the Notes (<u>exclusive</u> of all accrued and unpaid interest thereon, which continues to accrue, and all costs, fees, charges and expenses incurred and continuing to be incurred by the Lenders) are as follows:

| | | |
|---|---|---|
| (i) | Olga Note: | $ 322,709.84 |
| (ii) | Kate Note: | $ 376,464.88 |

The Lenders may immediately hereafter, in their sole, absolute and respective discretion, exercise any and all of their applicable remedies under the Loan Documents against any or all of the Trusts and all collateral pledged in connection therewith.

Please be advised that nothing contained herein shall: (1) be construed as an offer or commitment by the Lenders to restructure any of the Obligations, or forbear or grant any financial accommodations of any kind or nature to the Obligors, or any of them; (2) constitute a waiver of any of the Lenders' rights and remedies under any or all of the Loan Documents, all of which rights and remedies are hereby expressly reserved; or (3) constitute a waiver by the Lender of any past, present or future defaults under any or all of the Loan Documents.

Thank you in advance for your prompt attention to this matter.

Brad Berish

**Brad A. Berish**
bberish@ag-ltd.com

<div style="writing-mode: vertical">ELECTRONICALLY FILED
9/26/2017 2:40 PM
2017-L-009743
PAGE 31 of 31</div>



ADELMAN & GETTLEMAN LTD
*Celebrating 34 years*
Established 1983

Adelman & Gettleman, Ltd. • 53 W. Jackson Blvd., Suite 1050 • Chicago, IL 60604 • Phone 312.435.1050 • Fax 312.435.1059 • www.ag-ltd.com

**IMPORTANT:** This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is subject to the attorney/client privilege, other privileges under law, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to us at the address listed above via the United States Postal Service. Thank you.

 Please consider the environment before printing this email

2