

**ANDREW MANCILLA**
NY, NJ, SDNY, EDNY, DNJ, 2ND CIRCUIT

260 MADISON AVE, 22ND FLR
NEW YORK, NY 10016
T 646.225.6686  F 646.655.0269
andrew@law-mf.com

April 15, 2020

<u>Via ECF</u>
Hon. Steven L. Tiscione
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re:  **Black et al. v. Dain et. al. (16-cv-01238)(CBA)(ST)**

Dear Judge Tiscione:

  We represent Defendants Cherie Wrigley, Esaun Pinto, and CPI Investigations in the above referenced civil matter. All Defendants submit this joint letter motion requesting the Court to reconsider its docket entry Order dated March 16, 2020, which granted in part Plaintiffs' motion to compel. D.E. 213.

**I.  Procedural Background**

  On July 1, 2019 Plaintiffs filed a letter motion to compel communications that defendants either omitted from their privilege logs or withheld on grounds of attorney-client privilege, work product, common interest and/or joint defense privilege. D.E. 213. Defendants filed opposition papers on July 19, 2019 asserting Plaintiffs failed to identify specific privileged documents and further that defendants' claims of privilege were proper. *See* D.E. 216 (Dain), 217 (Raphan and Cohenson), 219 (CPI, Pinto, Wrigley), and 220 (Salzman). Plaintiffs filed their reply papers on August 1, 2019 and a hearing was held on August 13, 2019 resulting in the following minute entry: "Court heard argument on Plaintiffs' motion to compel 213. Parties shall submit documents for in camera review as discussed." D.E. 227.

  On March 16, 2020, Your Honor issued a docket entry Order that read:

> ORDER granting in part and denying in part 213 Motion to Compel. [...] Defendants have failed to sufficiently establish the existence of a valid common interest agreement prior to 2018. Accordingly, the assertion of common interest privilege for any documents and communications prior to the written agreement that was provided to the Court is invalid and Defendants will need to produce these documents and revise their privilege logs.

Hon. Steven L. Tiscione
Re: Motion to Reconsider
April 15, 2020
Page 2 of 6

## II. Defendants' Communications Are Protected By The Common Interest Privilege That Existed Prior To The 2018 Written Common Interest Agreement

### a. Judge Matthew Kennelly in the Northern District of Illinois Found That A Common Interest Agreement Among These Defendants And Others Existed Prior to the 2018 Reduction to Writing

As defendants argued during the hearing on August 13, 2019, a common interest privilege existed among defendants well before 2018. This common interest privilege was confirmed by District Judge Matthew Kennelly in another matter brought by Plaintiff Katherine Black against named defendants to this case. In 2017 Katherine Black, filed a lawsuit in the Northern District of Illinois against defendants Cherie Wrigley, Brian Raphan P.C., Melissa Cohenson, and Pamela Kerr[1] (hereinafter referred to as the "Illinois case"). In the Illinois case, Ms. Black was represented by Mr. Schaalman, who also represents Plaintiffs in the instant case.

In the Illinois case, Ms. Black filed a motion to compel communications withheld by defendants under the attorney-client/common interest privilege and work product doctrine, the majority of which were communications between the defendants herein prior to 2018. On November 15, 2018, following an *in camera* inspection of specific communications at issue, Judge Kennelly concluded that the communications among the parties were not only protected work product, but were protected by a common interest irrespective of the fact that the parties did not have a written common interest agreement at the time.[2] Moreover, Judge Kennelly found that the common interest protected all parties to the communications whether they were lawyers or non-lawyers, because all had a common interest in pending and anticipated litigation. Specifically, Judge Kennelly found:

> The remaining documents consist of a series of e-mail exchanges, most of them overlapping with each other. They involve various members of a large collection of people, some lawyers and some not: defendant Wrigley, attorney Lisa Diponio, Wrigley's brother Anthony Dain, who is also an attorney, attorney Ira Salzman, defendant and attorney Cohenson, defendant Kerr, someone with the email address d.zen@q.com, attorney Melissa Schwartz, attorney Michael Kutzin, and perhaps others. The e-mails concern discussion about settlement of pending litigation and litigation strategy. They are all protected work product, if nothing else. And again, the Court sees no viable basis for a claim of waiver. **The non-lawyers involved all had a common interest in connection with all sorts of pending and anticipated litigation, even if they did not have a written agreement to this at the time.** Dain was not a party to the litigation, but it is clear from the contents and context of the e-mails that he was participating

---

[1] On December 29, 2016 Judge Amon granted Pamela Kerr's motion to dismiss in the instant action for lack of personal jurisdiction. D.E. 100.
[2] Annexed hereto at Exhibit A is a copy of Judge Kennelly's Order dated November 15, 2018.

>	not just as Wrigley's brother but also because he was providing input as an attorney.

Ex. A, at 1-2 (emphasis added).

In light of Judge Kennelly's well-reasoned determination, in a case involving the same parties and the same universe of documents, that a common interest agreement existed among the defendants, as well as others, irrespective of when the agreement was memorialized in writing, this Court should reconsider its summary finding to the contrary.

>	b.	**The Lack Of A Written Common Interest Agreement Prior To 2018 Does Not Render It Invalid**

Implicit in the Court's March 16, 2020 docket Order is a finding that the common interest agreement only came into existence once defendants memorialized it. However, the Second Circuit has held that the existence of a written common interest agreement is not required for the parties claiming such privilege to enjoy its protections. *United States v. Napout*, 15 CR 252, 2017 US Dist LEXIS 34759, at *10 (EDNY Mar. 10, 2017); *see also, HSH Nordbank AG NY Branch v. Swerdlow*, 259 FRD 64, 72, n 12 (SDNY 2009), *citing Denney v. Jenkins & Gilchrist*, 362 F. Supp. 2d 407, 415 (S.D.N.Y. 2004); *Lugosch v. Congel*, 219 F.R.D. 220, 237 (N.D.N.Y. 2003) ("Courts in this circuit have acknowledged that although the common interest doctrine applies only where a party has demonstrated the existence of an agreement to pursue a common legal strategy, the agreement need not be in writing.")

Indeed, plaintiffs themselves never argued that a written agreement was necessary for defendants to assert a valid common interest agreement. Accordingly, to the extent that the Court's Order was based on the fact that defendants' common interest agreement was not memorialized in writing prior to 2018, it should be reconsidered in light of the well-established rule that the common interest privilege need not be in writing to be enforceable.

>	c.	**A Valid Common Interest Agreement Existed Among Defendants Prior To 2018**

As discussed at length in the parties pre-hearing submissions, "[i]n order to demonstrate the applicability of the common interest doctrine, the party asserting the rule must show that (1) it shares a common legal interest with the party with whom the information was shared and (2) the statements for which protection is sought must have been designed to further that interest." *Gallelli v. Crown Imports*, LLC, 08 CV 3372, 2010 U.S. Dist. LEXIS 11 8819, at *3 (E.D.N.Y. Nov. 5, 2010).

Here, defendants shared common legal interests prior to 2018. The common nexus binding defendants together was Bernard and Katherine Black's "legal war involving Joanne's assets" and more specifically, as the Colorado Court of Appeals put it in its most recent

Hon. Steven L. Tiscione
Re: Motion to Reconsider
April 15, 2020
Page 4 of 6

published decision[3], putting a stop to Bernard Black's "self-serving, collusive, and fraudulent schemes to steal his disabled sister's assets." Ex. B at ¶¶ 81, 126.  Notably, this Court's March 16th docket Order acknowledges the existence of a common legal interest, but only upon its memorialization in 2018.  However, it was Bernard's theft from Joanne back in 2013 that gave rise to the defendants' shared interests to rectify that theft when they found out about it in 2014.  Defendants merely memorialized in writing that shared interest in 2018.  The parties' shared involvement in assisting Joanne Black also created a common interest in anticipation of litigation from Bernard Black and his family, which is exactly what happened.  As the Colorado Court of Appeals recognized, Bernard's scheme to steal his sister's assets include, "years-long litigation over the disposition of her assets in no fewer than eight courts in three states." Ex. B at ¶1.

In fact, defendants Wrigley, Pinto, Salzman, Kerr, Cohenson, and Dain had no other reason to communicate, let alone ever know of one another (aside from siblings Wrigley and Dain), but for their common legal interest to protect Joanne and rectify Bernard Black's theft from his disabled sister.  That defendants' communications prior to 2018 were in furtherance of their shared legal interest will be readily apparent to the Court from an *in camera* review of any communication identified by Plaintiffs, but Plaintiffs have yet to challenge defendants' claim of privilege for any specific communication.  These communications reflect that in 2016 defendants were "formulat[ing] a common strategy to defend themselves" (*Eugenia VI Venture Holdings v. Chabra,* 05 CV 5277 et al., 2006 US Dist LEXIS 23421, at *3 (SDNY Apr. 25, 2006)), "fac[ing] common problems in pending or threatened civil litigation" (*GUS Consulting GMBH*, 20 Misc. 3d at 542, (Sup. Ct. N.Y. Co. May 22, 2008), and "actual[ly] cooperat[ing] toward a common legal goal." *Eagle Outfitters, Inc. v. Payless Shoesource, Inc.*, 07 CV 1675, 2009 U.S. Dist. LEXIS105608, at *6 (E.D.N.Y. Nov. 12, 2009).

### III.     Defendants' Communications Are Also Protected By The Work-Product Privilege

In addition to the common interest privilege, defendants argued that the communications at issue are also protected by the work product doctrine. *See, e.g.,* D.E. 220 at 6.  Voluntary disclosure of work product to third parties does not constitute a waiver of work-product protection unless the disclosure 'substantially increases the opportunity for potential adversaries to obtain the information.'" *Id*. (internal citations omitted).  "[T]he [work-product] privilege protects information 'against opposing parties, rather than against all others outside a particular confidential relationship'…. Counsel may therefore share work product … with those having similar interests in fully preparing litigation against a common adversary." *Am. Eagle Outfitters, Inc. v. Payless Shoesource, Inc*., 2009 WL 3786210 (E.D.N.Y. 2009) (internal citations omitted).

In *Eagle Outfitters, Inc. v. Payless Shoesource, Inc*., 2009 WL 3786210 (E.D.N.Y. 2009), this Court found that documents reflecting communications between the Defendant, Payless Shoesource, Inc. ("Payless"), and non-party Jimlar Corporation ("Jimlar"), were protected under the common interest rule and as protected work-product.  With respect to the latter, this Court noted that, "**any documents reflecting communications between Jimlar and Payless concerning the claims in this litigation necessarily constitute work product**." *Id*. (emphasis

---

[3] Annexed hereto at Exhibit B is a copy of the Colorado Court of Appeals published decision dated April 9, 2020.

Hon. Steven L. Tiscione
Re: Motion to Reconsider
April 15, 2020
Page 5 of 6

added). Federal Rule of Civil Procedure 26(b)(3) indicates that work product protection is afforded to "documents … prepared in anticipation of litigation or for trial by or for another party or by or for that party's representative." *Id*. This Court further noted in *Eagle Outfitters* that the definition of work-product "certainly covers all communications between Jimlar and Payless concerning the claims in this action," and that "the work product they share with one another remains protected since the sharing of those matters with one another does not materially increase the likelihood that the matters will be disclosed to AEO [American Eagel Outfitters]." *Id*. (internal citations omitted).

  Here, as in *Eagle Outfitters*, all communications between the Defendants and others concerning the claims in the Colorado proceeding, the New York guardianship proceeding, the New York Surrogate Court's proceeding, and other proceedings, necessarily constitute work product. Work product may be shared with third parties and remains protected so long as sharing those matters will not materially increase the likelihood that the matters would be disclosed to the opposing party. The individuals involved in the communications at issue certainly did not increase the likelihood of such communications being disclosed to the Plaintiffs and, in fact, the reason the Plaintiffs are seeking such communications in connection with this motion is that to date such communications have not been disclosed to them. Thus, work product clearly provides a second basis of protection to Defendants and makes clear that the Plaintiffs are not entitled to obtain such communications.

  Further, as noted above, Judge Kennelly also concluded that the work product doctrine protected communications between the defendants. *See* Ex. A, The Court has yet to rule on the applicability and scope of the work product doctrine. Accordingly, prior to defendants amending their privilege logs and producing any of the documents at issue to the plaintiffs, a hearing must be held to determine the specific scope and validity of defendants' work product assertions.

**IV.**  **Dain, Wrigley, Pinto, and CPI Investigations, Inc. Do Not Possess Privileged Documents Responsive to Plaintiffs' Requests For Documents**

  Dain, Wrigley, Pinto, and CPI Investigations, Inc. have not produced any privilege logs in this action because they are not in possession of any privileged documents responsive to plaintiffs' First Request For Production And Inspection Of Documents And Things, (plaintiffs' "First Set of Requests for Documents") dated March 9, 2018. As the Court may recall, on March 19, 2019 the Court addressed Dain, Wrigley, Pinto, and CPI Investigations, Inc.'s objections[4] to plaintiffs' Second Set Of Requests For Production Of Documents (plaintiffs' "Second Set of Requests for Documents") and found them to be objectionable. D.E. 207. Via Order dated March 20, 2019, the Court specifically ordered the parties to "meet and confer in an attempt to severely narrow the scope of the discovery requests." D.E. 207.

  Defendants Dain, Wrigley, Pinto, and CPI Investigations. Inc. subsequently conferred with plaintiffs; ultimately, however, plaintiffs never narrowed their Second Set Of Requests For Documents as the Court ordered. Instead, Plaintiffs filed a subsequent motion on July 1, 2019 (which is the subject of this application to reconsider) in which they argued that the defendants

---

[4] See D.E. 194, 195, 196, 197, 199, 202, 206, 207.

Hon. Steven L. Tiscione
Re: Motion to Reconsider
April 15, 2020
Page 6 of 6

improperly withheld documents responsive to their First Set Of Requests For Documents. *See* D.E. 213 at 1. Defendants Dain, Wrigley, Pinto and CPI Investigations reiterate that they are not withholding any privileged documents responsive to plaintiffs' First Set Of Requests For Documents.

### V.     Conclusion

For the above reasons we respectfully request the Court reconsider its March 16, 2020 docket Order granting in part Plaintiff's motion to compel on the grounds that defendants failed to establish the existence of a common interest privilege prior to 2018.

We thank Your Honor for your continued attention and consideration of this matter.

Respectfully submitted,

Andrew Mancilla, Esq.

Encl.

cc.     Anthony Dain via Email
        (anthony.dain@procopio.com)

        All other parties of record via ECF