# Exhibit B

The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

DATE FILED: April 9, 2020
CASE NUMBER: 2016CA2157

SUMMARY
April 9, 2020

### 2020COA64

**No. 18CA0346, *Matter of Black* — Probate — Persons Under Disability — Conservators — Effect of Acceptance of Appointment — Jurisdiction Over Business Affairs of Protected Person; Jurisdiction of Courts — Personal Jurisdiction — Long-arm Statute**

On a matter of first impression, a division of the court of appeals analyzes whether a Colorado probate court can exercise jurisdiction over the trustees and property of a foreign trust when that trust was funded with assets misappropriated from a Colorado conservatorship.  The division specifically considers whether the probate court can exercise subject matter jurisdiction over the conservatorship, can exercise in rem jurisdiction over the misappropriated conservatorship assets, properly exercised personal jurisdiction over two of the trustees of the foreign trust, had jurisdiction to authorize disbursements from the foreign trust

for the benefit of the protected person, and had authority to suspend two of the trustees of the foreign trust.  The division holds that the probate court properly exercised jurisdiction over the Colorado conservatorship, the misappropriated assets, and one of the trustees of the foreign trust; however, the probate court exceeded its authority by suspending the other trustee of the foreign trust without affording him due process.

The division additionally holds that the probate court exceeded its authority in voiding certain disclaimers it had previously authorized.  The probate court lacked jurisdiction over the disclaimer issue while a prior appeal in the case was pending in the Colorado Supreme Court.

COLORADO COURT OF APPEALS                                    **2020COA64**

---

Court of Appeals Nos. 16CA2157, 17CA2242, 18CA0346 & 18CA1094
City and County of Denver Probate Court No. 12PR1772
Honorable Elizabeth D. Leith, Judge

---

In the Matter of

Joanne Black, Protected Person,

Appellee,

and Guardian Ad Litem for Joanne Black,

v.

Bernard Steven Black, individually and as Trustee for the Supplemental Needs Trust for the Benefit of Joanne Black, and Samuel Black, as Co-Trustee for the Supplemental Needs Trust for the Benefit of Joanne Black,

Appellants.

---

ORDERS AFFIRMED IN PART, VACATED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE LIPINSKY
Fox and Berger, JJ., concur

Announced April 9, 2020

---

Holland & Hart, LLP, Rebecca Klock Schroer, Morgan M. Wiener, Denver, Colorado, for Appellee

Gayle Y. Young, Guardian Ad Litem

Davis Graham & Stubbs, LLP, Shannon Wells Stevenson, Aditi Kulkarni-Knight, Denver, Colorado, for Appellant Bernard Steven Black

Moore Williams, PLLC, Marie E. Williams, Golden, Colorado, for Appellant Samuel Black

Table of Contents

I.   Background Facts and Procedural History ............................ ¶ 6

   A.   The Parties and the Trusts ............................................ ¶ 6

   B.   Bernard's Appointment as Joanne's Conservator .......... ¶ 10

   C.   The April 2015 Order ................................................ ¶ 13

   D.   The September 2015 Order ........................................ ¶ 17

   E.   Bernard's Merits Appeal ............................................ ¶ 21

   F.   The February 2016 Order ........................................... ¶ 25

   G.   Bernard's Jurisdictional Appeal ................................. ¶ 27

   H.   The SNT Spending Orders ........................................ ¶ 29

      1.   The October 2016 Order ....................................... ¶ 30

      2.   The October 2017 Order ....................................... ¶ 31

      3.   The January 2018 Order ....................................... ¶ 34

   I.   The April 2018 Order .............................................. ¶ 38

II.  Discussion ..................................................................... ¶ 43

   A.   The Probate Court's Jurisdiction .................................. ¶ 47

      1.   The Probate Court's Subject Matter Jurisdiction ....... ¶ 49

      2.   The Probate Court's Authority on Remand ............... ¶ 50

      3.   The Probate Court's in Rem Jurisdiction .................. ¶ 53

         a.   Legal Authority .................................................. ¶ 54

         b.   Analysis ........................................................... ¶ 55

      4.   The Probate Court's Personal Jurisdiction ................ ¶ 60

         a.   Personal Jurisdiction Over Bernard ..................... ¶ 61

            i.   Bernard Waived His Objection .......................... ¶ 62

               (1)   Legal Authority ........................................... ¶ 62

               (2)   Analysis ..................................................... ¶ 65

            ii.   Personal Jurisdiction as Joanne's Conservator . ¶ 68

            iii.   Personal Jurisdiction and Due Process ............. ¶ 74

               (1)   Legal Authority ........................................... ¶ 75

               (2)   Analysis ..................................................... ¶ 78

b.     Personal Jurisdiction Over All Trustees ................. ¶ 86

c.     Personal Jurisdiction Over Samuel ....................... ¶ 87

B.     The Probate Court's Jurisdiction Over the Disclaimers.. ¶ 88

1.     Legal Authority ...................................... ¶ 89

2.     Analysis ................................................. ¶ 91

C.     Dain's Motions for SNT Distributions ......................... ¶ 100

D.     The Probate Court's Suspension of the Trustees.......... ¶ 102

1.     Legal Authority ...................................... ¶ 103

2.     Analysis ................................................. ¶ 105

a.     The Probate Court's Suspension of Bernard ........ ¶ 109

b.     The Probate Court's Suspension of Samuel ......... ¶ 113

E.     Bernard's Recusal Motion ........................................ ¶ 115

1.     Legal Authority ...................................... ¶ 116

2.     Analysis ................................................. ¶ 120

a.     Bernard Waived His Recusal Argument .............. ¶ 120

b.     Bernard's Recusal Argument Fails on the Merits . ¶ 122

F.     Samuel's Appellate Attorney Fees .............................. ¶ 132

1.     Legal Authority ...................................... ¶ 133

2.     Analysis ................................................. ¶ 134

III. Conclusion ................................................................. ¶ 138

(This table of contents and the section headings are offered solely for the convenience of the reader and do not control or modify the substance of each section.)

¶ 1     When Renata Black planned her estate and established trusts benefitting her children and grandchildren, she surely did not foresee that her descendants would become embroiled in years-long litigation over the disposition of her assets in no fewer than eight courts in three states.  The comparisons to Charles Dickens's *Jarndyce and Jarndyce* are all too obvious.

¶ 2     For the third time, we consider an appeal of the Denver Probate Court's rulings in this matter.  The appeal raises an issue of first impression in this state — whether a Colorado probate court can exercise jurisdiction over the trustees and assets of a foreign trust when that trust was funded with assets misappropriated from a Colorado conservatorship.  We address this issue in two parts: first, we hold that the probate court retains in rem jurisdiction over the assets transferred to the foreign trust, *infra* Part II.A.3; second, we conclude that the court may exercise personal jurisdiction over one of the trustees of the trust who actively litigated in the Colorado court, *infra* Part II.A.4.a.

¶ 3     Bernard Steven Black and Samuel Black challenge four of the probate court's orders:

- orders entered in October 2016 (the October 2016 Order) and October 2017 (the October 2017 Order) authorizing Anthony Dain to disburse assets from a supplemental needs trust benefitting Joanne Black (the SNT);

- a January 2018 order (the January 2018 Order) suspending Bernard and Samuel as trustees of the SNT and directing them to send the SNT's information and assets to Joanne's counsel and Dain; and

- an April 2018 order (the April 2018 Order) holding that the probate court could exercise jurisdiction over Bernard and Samuel, authorizing Dain to disburse additional funds from the SNT, and voiding certain disclaimers it had previously authorized Bernard to make in his capacity as Joanne's conservator.

¶ 4    Because the probate court lacked jurisdiction to void the disclaimers due to Bernard's then-pending appeal, we vacate the portion of the April 2018 Order voiding the disclaimers.  We also hold that the probate court erred in suspending Samuel as a "co-trustee[] of the SNT and any other trusts which benefit Joanne" and therefore vacate the portion of the January 2018 Order suspending

4

him as a trustee of such trusts and directing him to provide information on those trusts to Joanne's counsel and Dain.  We reject Bernard and Samuel's other arguments and affirm the remainder of the appealed orders.

¶ 5    A recitation of the facts and procedural history of the Black family battle is necessary before we consider the legal issues presented in this appeal.  (For clarity, and without intending any disrespect, we refer to the members of the Black family by their first names.)

## I.    Background Facts and Procedural History

### A.    The Parties and the Trusts

¶ 6    Bernard and Joanne were Renata's only children.  Bernard is a resident of Illinois.  Bernard's son Samuel is a resident of Maryland.  Katherine Litvak is Bernard's wife.  Bernard and Katherine are law professors.  Joanne, who has schizophrenia, was homeless in Denver when this case began.  She currently resides in New York.  Dain is one of Bernard and Joanne's cousins.  He resides in California.

¶ 7    Renata died in New York in 2012, leaving an estate valued at more than $4.7 million.  She created two trusts relevant to this

5

appeal: the SNT and an Irrevocable Trust for the Benefit of the Issue of Renata Black (the Issue Trust).

¶ 8     Renata established the SNT to provide for Joanne's "special needs."  Following Renata's death, the co-trustees of the SNT were Bernard and Dain.  In May 2013, Bernard and Dain appointed Samuel as the third co-trustee of the SNT.  Although the record does not reflect where the SNT was registered, it has never been registered in Colorado.  Its assets have been held by Chase Bank and J.P. Morgan Securities in Illinois.

¶ 9     Renata established the Issue Trust to provide for the "financial needs and medical expenses" of Bernard and his children.  Bernard and Dain served as co-trustees of the Issue Trust until December 2015, when Dain resigned and was replaced by Samuel.  The Issue Trust also has never been registered in Colorado, and its assets are located in Illinois.

### B.     Bernard's Appointment as Joanne's Conservator and the Disclaimers

¶ 10    Shortly before her death, Renata changed the beneficiary designations on a number of her bank accounts (the bank accounts), valued at approximately $3 million, to be payable-on-

death (POD), primarily to Joanne.  As a result, the funds in the bank accounts would have passed directly to Joanne upon Renata's death without the need for probate.  This distribution arrangement differed from the plan reflected in Renata's will, which provided that two-thirds of her residuary estate would pass to the SNT and one-third to the Issue Trust.

¶ 11    After learning of the POD designations, Bernard, professing concern about Joanne's ability to manage her assets, filed a petition for a conservatorship over her in the Denver Probate Court.  In the petition, Bernard claimed that Renata had inadvertently changed her beneficiary designations and that the funds in the bank accounts should be placed in trust so Joanne could not squander them.  Based on his stated desire to protect Joanne, Bernard sought the probate court's permission to disclaim the POD designations.

¶ 12    The probate court appointed Bernard as Joanne's conservator and, in March 2013, expressly authorized him to execute the disclaimers (the March 2013 Order).  After disclaiming the POD designations, Bernard moved the funds into Renata's estate and later transferred approximately two-thirds of the funds to the SNT

and one-third to the Issue Trust.  (The Surrogate's Court for Westchester County, New York appointed Bernard as executor of Renata's estate.)  He also created a trust (the 2013 Trust) to receive Joanne's governmental benefits (collectively with the SNT and the Issue Trust, the Trusts).  Samuel was not involved in Joanne's conservatorship proceedings.

### C.    The April 2015 Order

¶ 13    In April 2015, the probate court held a status conference in response to allegations from Joanne's court-appointed counsel and Dain that Bernard was mismanaging the assets of Joanne's conservatorship.  Following the status conference, the probate court entered an order (the April 2015 Order) freezing most of Joanne's assets — including Joanne's governmental benefits that Bernard diverted to the 2013 Trust and the funds that Bernard transferred from the bank accounts — pending an evidentiary hearing.  In the April 2015 Order, the court also suspended Bernard as Joanne's conservator and appointed a special conservator to manage her conservatorship.

¶ 14    Bernard did not object to the April 2015 Order or the probate court's exercise of jurisdiction over him reflected in that order.  He

requested permission to pay the taxes and accounting fees for the Trusts out of their respective assets.  The court granted Bernard's request, but it denied his separate request to pay for his personal legal fees relating to the Colorado litigation from trust or conservatorship funds.

¶ 15    After discovering that Bernard had apparently violated the April 2015 Order by paying his personal attorney fees from funds in the 2013 Trust and Renata's estate, Dain filed a motion for an order requiring Bernard to show cause why he should not be held in contempt of court.  When the court addressed Dain's motion, Bernard again did not object to the court's exercise of jurisdiction over him.

¶ 16    Further, Bernard stipulated that Joanne's cousin Cherie Wrigley could be paid "from either the [SNT] or the [2013 Trust]" for services she had provided to Joanne.  Again, Bernard did not object to the probate court's exercise of jurisdiction over him.

### D.    The September 2015 Order

¶ 17    Nearly two years after Bernard executed the disclaimers, Joanne moved to void them, claiming that Bernard had not provided her with adequate notice that he intended, through the

disclaimers, to divert one-third of her nonprobate assets to himself and his children through the Issue Trust.

¶ 18     Following a four-day evidentiary hearing, the probate court found that Bernard had not properly disclosed the consequences of the disclaimers.  In September 2015, the court entered an order (the September 2015 Order) in which, among other things, it (1) found that Bernard had breached his fiduciary duties to Joanne and committed civil theft by diverting conservatorship assets; (2) permanently removed him as Joanne's conservator; (3) surcharged him approximately $1.5 million for the improperly diverted assets and trebled those damages under the civil theft statute, section 18-4-405, C.R.S. 2019; and (4) ordered him to reimburse Joanne for her costs and attorney fees incurred in obtaining the September 2015 Order.

¶ 19     The court additionally recommended that Bernard not be appointed as a fiduciary for Joanne in any capacity and that the Westchester County Surrogate's Court remove him as the executor of Renata's estate.  It did not address Joanne's request to void the disclaimers, however.

¶ 20     Following a hearing to determine the amount of costs and fees awardable to Joanne, the probate court entered a judgment against Bernard totaling approximately $4.6 million.

E.     Bernard's Merits Appeal

¶ 21     Bernard appealed the September 2015 Order and related judgment (the Merits Appeal).  He argued, among other things, that the probate court lacked jurisdiction to enter the September 2015 Order.

¶ 22     Joanne cross-appealed, contending that the probate court erred by failing to make express findings supporting its denial of her request to void the disclaimers.

¶ 23     In a published opinion, *Black v. Black*, 2018 COA 7, 422 P.3d 592 (*Black I*), a division of this court affirmed the September 2015 Order and related judgment.  Among other rulings, the division held that the probate court did not err by finding that Bernard had breached his fiduciary duty to Joanne and, in doing so, had committed civil theft, or in surcharging Bernard rather than voiding the disclaimers.  *Id.* at ¶¶ 71, 102, 129, 422 P.3d at 605, 609, 613.

¶ 24    The Colorado Supreme Court denied Bernard's petition for a writ of certiorari on May 20, 2019.  This court then issued its mandate to the probate court.

### F.    The February 2016 Order

¶ 25    In February 2016, Dain filed a pro se motion in his capacity as a co-trustee of the SNT to use SNT funds to pay Joanne's attorney and accounting fees (the professional fees) in her ongoing litigation against Bernard and Samuel in Colorado, New York, and Illinois. Dain alleged that Bernard and Samuel, the other co-trustees of the SNT, would not disburse SNT funds to allow Joanne to hire counsel in their lawsuits against her, including a declaratory judgment action they filed against Joanne in the United States District Court for the Northern District of Illinois.

¶ 26    The probate court entered an order granting Dain's motion (the February 2016 Order), reasoning that the funds were necessary to allow Joanne to retain counsel to counter Bernard and Samuel's declaratory judgment action.

### G.    Bernard's Jurisdictional Appeal

¶ 27    Bernard appealed the February 2016 Order (the Jurisdictional Appeal), arguing, among other points, that the probate court erred

by allowing Dain to release SNT funds for Joanne's professional fees because the court lacked jurisdiction over the SNT's assets.

¶ 28    In an unpublished opinion, a division of this court held that "the probate court has subject matter jurisdiction over the administration of the conservatorship" pursuant to sections 13-9-103(1)(f), C.R.S. 2019, and 15-16-201(1), C.R.S. 2017 (repealed 2018). *Black v. Black*, slip op. at ¶ 22 (Colo. App. No. 16CA0625, Jan. 25, 2018) (not published pursuant to C.A.R. 35(e)) (*Black II*). However, because "the probate court did not make any factual findings related to jurisdiction," the division could not determine whether Bernard, Samuel, and the SNT had sufficient minimum contacts with Colorado to support the probate court's exercise of personal jurisdiction over them.  *Id.* at ¶¶ 27-31.  The division explained that, absent an express finding that the probate court retained continuing in rem jurisdiction over the transferred funds now held in the SNT, the court could not authorize distributions from those funds unless it could exercise personal jurisdiction over the SNT's trustees.  *Id.* at ¶¶ 23-26.  The division vacated the February 2016 Order and remanded the case to the probate court for additional jurisdictional findings.  *Id.* at ¶¶ 32-33.

H.    The SNT Spending Orders

¶ 29    While the Jurisdictional Appeal was pending, the probate court entered additional orders authorizing disbursements of SNT funds for Joanne's professional fees in Bernard and Samuel's ongoing litigation against her.

1.    The October 2016 Order

¶ 30    In September 2016, Dain filed a second pro se motion to use SNT funds to pay Joanne's professional fees.  Bernard objected to this motion on the same jurisdictional grounds asserted in his response to Dain's February 2016 motion.  Without expressly addressing Bernard's argument, the court granted Dain's motion in the October 2016 Order, pending a determination of the reasonableness of the requested fees.  Bernard timely appealed the October 2016 Order.

2.    The October 2017 Order

¶ 31    In April 2017, Dain again appeared pro se to seek authorization to use SNT funds to pay Joanne's professional fees. Bernard raised the same jurisdictional challenge raised in his response to Dain's two prior motions.

14

¶ 32   In October 2017, after a hearing on the reasonableness of the requested professional fees, the probate court granted Dain's April 2017 motion.  In the October 2017 Order, the probate court reiterated that it could exercise jurisdiction over Bernard because he availed himself of its jurisdiction by seeking the conservatorship over Joanne.

¶ 33   Bernard timely appealed the October 2017 Order.  This court stayed Bernard's appeals of the October 2016 and October 2017 Orders pending resolution of the Jurisdictional Appeal.

### 3.   The January 2018 Order

¶ 34   After discovering that Bernard had apparently violated the April 2015 Order by withdrawing SNT funds, in November 2017, Joanne moved to enjoin Bernard from further transfers of SNT funds.  The probate court conditionally granted the motion pending a hearing (the November 2017 Order).

¶ 35   In December 2017, Joanne filed a motion to authorize Dain to use SNT funds to pay her professional fees in her pending litigation against Bernard and other family members.  She alleged that Bernard and Samuel had, without her or Dain's knowledge, entered into fraudulent consent judgments in Illinois state court in favor of

15

Katherine and her cousin Olga Dal, who claimed that the SNT owed them hundreds of thousands of dollars for loans they had made to allow Bernard to pay his personal attorney fees in litigation on behalf of the Trusts (the consent judgments).

¶ 36    On January 4, 2018, the probate court conducted a hearing on making the November 2017 Order permanent and on Joanne's December 2017 expenditure motion (the January 2018 Hearing). Before the hearing, Joanne sent Bernard a notice stating that the hearing would address the issues identified in the November 2017 Order.

¶ 37    Following the hearing, the probate court entered the January 2018 Order (1) suspending Bernard and Samuel as trustees of all trusts benefitting Joanne; (2) holding that neither Bernard nor Samuel could take any action with respect to the Trusts' assets, other than providing Joanne's counsel and Dain with information regarding the Trusts' documents, funds, and accounts; and (3) authorizing Dain to use SNT funds to pay Joanne's ongoing professional fees.  Bernard and Samuel timely appealed the January 2018 Order.

I.    The April 2018 Order

¶ 38    Following this court's remand in *Black II*, on February 1, 2018, Bernard sought disqualification of the probate judge.  The probate court denied his recusal motion as untimely and meritless.

¶ 39    In March 2018, this court granted a limited remand in Bernard's appeals of the October 2016 and October 2017 Orders to allow "the probate court to address the jurisdictional issue concerning the [SNT]" (the March 2018 limited remand).  Joanne filed a brief asserting that the probate court had properly exercised jurisdiction over the Trusts.  And, in her reply to Bernard's brief on the issue, Joanne argued that the probate court should revisit its ruling in the September 2015 Order — regarding the appropriate remedy for Bernard's misappropriation of conservatorship funds — and void the disclaimers.  (A division of this court affirmed the September 2015 Order in *Black I*).

¶ 40    On April 27, 2018, following the remand in *Black II* and the March 2018 limited remand, the probate court entered the April 2018 Order, finding that it could exercise jurisdiction over Bernard under the two approaches discussed in *Black II*: (1) the probate court retained in rem jurisdiction over the conservatorship funds

17

that Bernard transferred to the Trusts and (2) Bernard submitted to the court's jurisdiction through actions he took in his capacity as co-trustee of the Trusts.  Thus, according to the court, Bernard waived his objections to jurisdiction by invoking its jurisdiction and subsequently failing to object to its actions regarding Joanne's conservatorship and the funds Bernard transferred to the Trusts. The court found that it had jurisdiction over Samuel because of its continuing jurisdiction over Joanne's conservatorship funds and Samuel's breaches of his fiduciary duty to Joanne.  Samuel had not received notice of the court's intention to rule on its jurisdiction over him, however.

¶ 41    Further, the probate court vacated that part of the March 2013 Order authorizing Bernard to disclaim the POD designations, noting that "unwinding the disclaimer[s] is appropriate, given the significant amount of litigation that has taken place since entry of the Court's [September 2015] Order."  The court ordered Bernard to pay the disclaimed funds into the court registry immediately.  It based its decision on C.R.C.P. 60(b), even though Joanne had not sought Rule 60(b) relief, and the court had not provided Bernard notice that it would revisit the disclaimers.

18

¶ 42     Bernard and Samuel timely appealed the April 2018 Order.

This court consolidated their appeals of the October 2016 Order

(authorizing use of SNT funds to pay Joanne's professional fees),

the October 2017 Order (authorizing use of additional SNT funds to

pay Joanne's professional fees), the January 2018 Order

(suspending Bernard and Samuel as trustees of the SNT and

further authorizing use of SNT funds to pay Joanne's professional

fees), and the April 2018 Order (voiding the disclaimers and finding

jurisdiction over Bernard, Samuel, and the Trusts).

## II.    Discussion

¶ 43     We consolidate Bernard and Samuel's contentions of error as

follows:

(1)     Whether the probate court properly exercised jurisdiction
over Bernard, Samuel, the SNT, and the Issue Trust.

(2)     Whether the probate court exceeded its authority in
voiding the disclaimers.

(3)     Whether the probate court properly granted Dain's and
Joanne's requests to pay Joanne's professional fees from
SNT funds.

19

(4)    Whether the probate court violated Bernard's and
Samuel's due process rights by suspending them as
trustees of the SNT.

(5)    Whether the probate court judge should recuse herself
from future proceedings involving Bernard.

(6)    Whether Samuel is entitled to recover his appellate
attorney fees.

¶ 44    We agree that the probate court exceeded its authority in
voiding the disclaimers during the pendency of the Merits Appeal in
the supreme court.  Accordingly, now that the Merits Appeal has
concluded, we vacate the portion of the April 2018 Order voiding
the disclaimers and remand the issue to the probate court to revisit
the disclaimer issue.

¶ 45    We also agree that the probate court did not afford Samuel
due process in sua sponte suspending him as a trustee of the SNT.
Thus, we vacate the portions of the January 2018 Order
suspending him as a trustee of the SNT and ordering him to provide
information about the Trusts' documents, funds, and accounts to
Joanne's counsel and Dain.

¶ 46    We disagree with Bernard and Samuel's remaining arguments.

20

A.     The Probate Court Did Not Err in Exercising Jurisdiction Over Bernard and the Trusts

¶ 47     Bernard and Samuel contend that (1) the probate court exceeded its authority in entering the April 2018 Order because the remand following *Black II* and the March 2018 limited remand only authorized the court to determine whether it could exercise personal jurisdiction over the SNT's trustees; (2) the court lacked in rem jurisdiction over assets in the SNT; (3) the court lacked jurisdiction over the Issue Trust's assets and its trustees, Bernard and Samuel; and (4) the court lacked personal jurisdiction over Bernard and Samuel in their capacity as co-trustees of the SNT. We reject these arguments, but do not reach Samuel's challenge to the court's exercise of personal jurisdiction over him because the probate court did not afford him due process.

¶ 48     Before we address Bernard and Samuel's jurisdictional arguments, we must consider whether the probate court properly exercised subject matter jurisdiction over Joanne's conservatorship.

1.     The Probate Court Properly Exercised Subject Matter Jurisdiction Over Joanne's Conservatorship

¶ 49     Bernard and Joanne acknowledge that the probate court has subject matter jurisdiction over the administration of Joanne's

21

conservatorship because Bernard filed the petition to establish the conservatorship in the probate court.  *See* Colo. Const. art. VI, § 9(3) ("[E]xclusive original jurisdiction in all matters of probate, settlements of estates of deceased persons, appointment of guardians, conservators[,] and administrators, and settlement of their accounts . . . shall be vested in a probate court . . . ."); § 13-9-103(1)(f) (probate courts have exclusive jurisdiction over the "conservatorships of persons with mental health disorders"); § 15-14-402(1)(b), C.R.S. 2019 (the probate court where a petition seeking a conservatorship was filed has "[e]xclusive jurisdiction to determine how the estate of the protected person . . . must be managed, expended, or distributed").  Moreover, a division of this court made this jurisdictional determination in *Black II,* No. 16CA0625, slip op. at ¶ 22, and we afford deference to that decision under the law of the case doctrine.  *See Giampapa v. Am. Family Mut. Ins. Co.*, 64 P.3d 230, 243 (Colo. 2003) ("When a court issues final rulings in a case, the 'law of the case' doctrine generally requires the court to follow its prior relevant rulings.").  Thus, we conclude that the probate court properly exercised subject matter jurisdiction over Joanne's conservatorship.

2.    The Probate Court Did Not Exceed Its Authority on Remand

¶ 50    Because the prior division remanded *Black II* to the probate court to "settle[] the question of personal jurisdiction to adjudicate matters related to the SNT," No. 16CA0625, slip op. at ¶ 30, Bernard claims that, following remand, the probate court only had authority to resolve whether it must have personal jurisdiction over all three co-trustees of the SNT to exercise jurisdiction over the SNT.  We disagree that the probate court's authority following the remand was so circumscribed.

¶ 51    The prior division neither issued a limited remand nor otherwise expressly restricted the further proceedings in the probate court to a determination of whether it had personal jurisdiction over Bernard and Samuel.  Instead, the division described two avenues through which the probate court could exercise jurisdiction over the SNT: (1) the probate court could retain continuing supervision over the SNT or (2) it could find that Bernard and Samuel had voluntarily submitted to its jurisdiction. Under the first avenue, the probate court would have jurisdiction over the SNT by exercising continuing in rem jurisdiction over the assets of Joanne's conservatorship that Bernard had transferred to

23

the SNT.  *See District of Columbia v. Chase Manhattan Bank*, 689 A.2d 539, 544 (D.C. 1997) (holding that the District of Columbia could tax a testamentary trust of a resident that had been probated in the D.C. courts, regardless of the absence of trustees, trust assets, or trust beneficiaries in the District because of the nexus between the District and the trust).  And because Bernard funded the Issue Trust with conservatorship assets through his disclaimers of the POD designations, the probate court possessed the authority to determine that it had continuing jurisdiction over those funds.

¶ 52    Further, this court's March 2018 limited remand did not circumscribe the arguments the probate court could consider in determining whether it had jurisdiction over the SNT.  Rather, the remand broadly directed the "probate court to address the jurisdictional issue concerning the [SNT]," including whether the court could exercise continuing in rem jurisdiction over the conservatorship assets Bernard had improperly diverted to the SNT. Thus, the probate court did not exceed its authority on remand.

3.     The Probate Court's Findings Support Its Exercise of Jurisdiction Over the Trusts Through Its Continuing in Rem Jurisdiction Over the Assets Transferred from Joanne's Conservatorship

¶ 53    We next consider Bernard's argument that the probate court lacked in rem jurisdiction over the SNT's and Issue Trust's assets because the assets are located outside Colorado.

a.     Legal Authority

¶ 54    Generally, a court may exercise in rem jurisdiction only over property that is "within the jurisdiction." *Riley v. N.Y. Tr. Co.*, 315 U.S. 343, 353 (1942); *see also JPMorgan Chase Bank, N.A. v. McClure*, 2017 CO 22, ¶ 39, 393 P.3d 955, 961 (noting that in rem jurisdiction requires the property to be situated within the state's boundaries).  However, as the prior division explained in *Black II*, "[w]here neither the trustee nor trust property is before the court, the court may have jurisdiction only if the court has retained continuing supervision of the trust."  No. 16CA0625, slip op. at ¶ 25.  Thus, a probate court may exercise in rem jurisdiction over conservatorship property that was transferred outside the state through its continuing jurisdiction over such property.  *See* § 15-10-301(1)(b), C.R.S. 2019 (providing that Colorado probate courts

25

may exercise jurisdiction over "property coming into the control of a fiduciary who is subject to the laws of this state"); *In re Estate of LaRose*, 1 P.3d 1018, 1021-22 (Okla. Civ. App. 1999) (holding that the district court retained jurisdiction over guardianship assets that were improperly transferred out of state); *Smith v. Lanier*, 998 S.W.2d 324, 333 (Tex. App. 1999) (holding that the probate court did not lose its in rem jurisdiction because the party asserting that the court lacked jurisdiction had unilaterally transferred the property to another state); *see also* George T. Bogert et al., *The Law of Trusts and Trustees* § 292, Westlaw (database updated June 2019) (discussing the "trust entity theory," where a "testamentary trust is established and remains at the testator's domicile, thereby giving the domiciliary court in rem jurisdiction independent and apart from the presence of the trustee, the trust assets[,] or the trust beneficiaries").

### b.    Analysis

¶ 55    Throughout this case, Bernard has maintained that the probate court cannot exercise in rem jurisdiction over the assets of the SNT and Issue Trust because "the disclaimer[s] caused funds from a Pennsylvania account . . . to flow into a New York estate . . .

and then, under Renata's will, to SNT accounts in Illinois." Thus, according to Bernard, the funds never touched Colorado. We disagree.

¶ 56   In the April 2018 Order, the probate court made findings regarding its continuing jurisdiction over the assets in the Trusts:

> The Court finds *all* of the funds Bernard Black transferred into the [Trusts] that are at issue in this action were sourced from the [POD] accounts naming Joanne Black as the sole or primary beneficiary. As these funds were all held in the POD accounts on the date of Bernard Black's appointment as conservator, the funds were and remain a part of the conservatorship estate established by this Court. This Court has explicitly retained continuing jurisdiction over the conservatorship estate assets. The Court finds that Bernard Black's acts transferring conservatorship assets into trusts or elsewhere does not change the initial character of the funds as conservatorship assets. The funds transferred into the Issue Trust were never trust assets at inception as they were POD funds with Joanne Black as beneficiary. Bernard Black's use of the Court's Orders to further a scheme of self-dealing did not change the essential nature of the funds from POD assets, which are conservatorship estate assets, to trust assets beyond the reach of the Court.

We agree with the probate court's analysis that Bernard's unilateral acts — seeking a Colorado conservatorship over Joanne and then

improperly transferring assets from the conservatorship to out-of-state trusts — did not convert the assets from conservatorship assets into assets of the Trusts, or mean that those assets never touched Colorado.  *Cf. Barber v. Ritter*, 196 P.3d 238, 250 (Colo. 2008) (holding that the transfer of fees from cash funds to the state's General Fund did not change the essential character of the fees into taxes).

¶ 57    A contrary conclusion would be absurd: it would immunize Bernard's wrongful conduct from the probate court's oversight through a jurisdictional shield that his own actions created.  We cannot find any authority, and Bernard has provided none, supporting his theory that the probate court cannot exercise continuing jurisdiction over the conservatorship assets that he improperly removed from Colorado.

¶ 58    Two additional facts support our conclusion that Bernard's unilateral acts do not shield the conservatorship's assets from the probate court's jurisdiction.  First, the funds that Bernard transferred from Joanne's conservatorship to the SNT and Issue Trust are located in Illinois only because Bernard deposited them in accounts in that state.  Second, if Bernard is correct that the

probate court lacks in rem jurisdiction over out-of-state property,
then the court likewise would not have jurisdiction over the 2013
Trust because its assets are maintained outside Colorado.
However, Bernard did not challenge the probate court's jurisdiction
over the 2013 Trust, which he also funded with assets from
Joanne's conservatorship, when the court authorized
disbursements for Joanne's professional fees from funds in the
2013 Trust.  In briefs filed before the probate court entered the
April 2018 Order, Bernard conceded that the court could exercise
jurisdiction over him in his capacity as a trustee of the 2013 Trust.
*See Bd. of Comm'rs v. Desmond*, 104 Colo. 269, 272, 90 P.2d 619,
620-21 (1939) (holding that a party to an appeal "will not be
permitted to assume a position inconsistent with that taken in the
trial court").

¶ 59    Thus, given that Bernard improperly diverted assets from a
Colorado conservatorship to out-of-state trusts, the probate court
may continue to exercise in rem jurisdiction over those assets.

29

### 4.    The Probate Court Has Personal Jurisdiction Over Bernard and the Transferred Assets

¶ 60    Although we conclude that the probate court can exercise in rem jurisdiction over Joanne's conservatorship assets, in rem jurisdiction only grants a court authority "to affect the interests of all persons in the trust property."  Bogert, § 292.  Put another way, "[t]he effect of a judgment in an in rem . . . action is limited to the property that supports jurisdiction.  Such a judgment does not impose personal liability on the defendant."  *ReMine v. Dist. Court*, 709 P.2d 1379, 1382 (Colo. 1985).  If, however, a court finds it "necessary to impose a personal liability or obligation" on a trustee, it must have personal jurisdiction over the trustee.  Bogert, § 292. Thus, because the probate court suspended Bernard and Samuel as "co-trustees of the SNT and any other trusts which benefit Joanne" and ordered them to provide Joanne's counsel and Dain with information concerning any conservatorship property to which they have access, we review whether it properly exercised personal jurisdiction over them.  We conclude that the court properly exercised personal jurisdiction over Bernard.  However, because the probate court did not afford Samuel due process, we need not

address his challenge to the court's exercise of personal jurisdiction over him.

### a.   The Probate Court Has Personal Jurisdiction Over Bernard

¶ 61      Bernard contends that the probate court lacks personal jurisdiction over him because his "actions in his role as conservator do not establish jurisdiction over him in any other capacity or waive his right to object to personal jurisdiction in another capacity." According to Bernard, he appeared before the probate court solely in his capacity as Joanne's conservator and promptly objected to the court's exercise of personal jurisdiction over him in his capacity as a trustee of the SNT when Dain first sought permission to spend SNT funds on Joanne's professional fees.  We disagree.

### i.   Bernard Waived His Objection to Personal Jurisdiction in Any of the Subject Capacities by Participating in Proceedings Before the Probate Court Without Objection

### (1)   Legal Authority

¶ 62      A party may submit to the personal jurisdiction of a court in one capacity without submitting to its personal jurisdiction in an unrelated capacity.  *See Rothchild Co. v. Alps*, 32 Colo. App. 426, 429, 513 P.2d 237, 239 (1973) (holding that the court lacked personal jurisdiction over the defendant as a fiduciary because he

31

appeared in an individual capacity rather than in a fiduciary capacity); *Tuper v. Tuper*, 824 N.Y.S.2d 857, 858-59 (App. Div. 2006) ("It has been repeatedly held that persons suing or being sued in their official or representative capacity are, in contemplation of law, distinct persons . . . ." (quoting *Leonard v. Pierce*, 75 N.E. 313, 313 (N.Y. 1905))).

¶ 63    However, a defendant's active participation in legal proceedings waives his or her ability to raise a personal jurisdiction defense later in the case.  *Giduck v. Niblett*, 2014 COA 86, ¶ 27, 408 P.3d 856, 866; *see also* C.R.C.P. 12(h)(1) ("A defense of lack of jurisdiction over the person . . . is waived . . . if it is neither made by motion under this Rule nor included in a responsive pleading or an amendment thereof . . . ."); *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 176 (10th Cir. 1992) (holding that a "defendant may [not] halfway appear in a case, giving plaintiff and the court the impression" that the court may exercise personal jurisdiction over the defendant, and later pull a lack of personal jurisdiction defense "out of the hat like a rabbit" (quoting *Broadcast Music, Inc. v. MTS Enters., Inc.*, 811 F.2d 278, 281 (5th Cir. 1987))).

¶ 64    We review de novo whether a court has personal jurisdiction over a party. *Giduck*, ¶ 11, 408 P.3d at 862. However, because waiver is generally an issue of fact, "such factual determinations [are] reviewable only for clear error, even if the ultimate legal conclusion drawn from those facts is reviewable de novo." *Jordan v. Panorama Orthopedics & Spine Ctr., PC*, 2013 COA 87, ¶¶ 12-13, 350 P.3d 863, 867, *aff'd*, 2015 CO 24, 346 P.3d 1035.

(2)    Analysis

¶ 65    As the probate court explained in the October 2017 Order, "[i]t was only after the Court found [Bernard] had breached his fiduciary duties [to Joanne as trustee of the SNT] that [he] began objecting to this Court's jurisdiction as to the SNT."

¶ 66    Bernard submitted himself to the personal jurisdiction of the probate court in his capacity as a co-trustee of the Trusts and repeatedly raised no objection to its exercise of jurisdiction over him:

- He did not object to the April 2015 Order, which froze the conservatorship assets he transferred to the Trusts and required court approval for any further distributions from the Trusts.

- Although the probate court removed him as Joanne's conservator, he requested the court's permission to pay the Trusts' taxes and accounting fees out of the assets he diverted to the Trusts.  The court granted his request in the April 2015 Order.

- He unsuccessfully sought the probate court's permission to pay his personal attorney fees from the Trusts' and conservatorship's assets.

- He stipulated that Wrigley may be reimbursed "from either the [SNT] or the [2013 Trust]" for the funds she personally provided to Joanne.

- He did not object to the probate court's order at a hearing on August 5, 2015, that he transfer all SNT checkbooks, statements, and other documents to Joanne's new conservator.

- He did not object to the probate court's jurisdiction when Joanne moved to require him to send all SNT and 2013 Trust assets to Joanne's new conservator and for permission to pay Joanne's professional fees from those assets.  He responded that he "already complied with the

Court's order regarding these assets," argued that the request "should be directed to [Joanne's] Conservator," and said not a word about jurisdiction.

- He did not appeal a January 2016 order that conditionally granted Joanne's motion to require him to send all SNT and 2013 Trust assets to Joanne's new conservator.

¶ 67    Each of these actions concerned Bernard in his capacity as a co-trustee of at least one of the Trusts, not as Joanne's conservator. Accordingly, we reject his argument that he appeared before the probate court solely as Joanne's conservator. Because Bernard actively participated in proceedings before the probate court in an individual capacity and in his capacity as a co-trustee of each of the Trusts, and because he raised no objections about jurisdiction on at least seven occasions when he could have done so, we hold that he waived any objections to the probate court's exercise of personal jurisdiction over him in any of the subject capacities.

ii.   The Probate Court May Exercise Personal Jurisdiction Over Bernard Because He Accepted Appointment as Joanne's Conservator

¶ 68     Even if Bernard had not waived his arguments regarding personal jurisdiction, the probate court could exercise personal jurisdiction over him under section 15-14-111, C.R.S. 2019.

¶ 69     Section 15-14-111 provides that, "[b]y accepting appointment, a guardian or conservator submits personally to the jurisdiction of the court in any proceeding relating to the guardianship or conservatorship."  The probate court relied upon this statute in the April 2018 Order, reasoning that "[Bernard's] diversion of conservatorship funds into trusts and other accounts and the process to recoup those funds are proceedings relating to the conservatorship and are on-going."

¶ 70     Bernard argues that the "probate court's expansive view of [section] 15-14-111 fails" because (1) the SNT spending motions did not relate to the conservatorship; (2) by accepting appointment as Joanne's conservator, he submitted to the court's jurisdiction personally, and not in his capacity as a trustee of the SNT; and (3) he did not retain counsel in his capacity as a trustee of the SNT

until February 2016, when he lodged his first jurisdictional objection.  We consider and reject each argument.

¶ 71    Bernard's first argument rests on the proposition that the funds within the SNT are distinct from Joanne's conservatorship assets.  But this is not the case.  The probate court found that "*all* of the funds Bernard Black transferred into the [Trusts] that are at issue in this action were sourced from the [POD] accounts naming Joanne Black as the sole or primary beneficiary."  Bernard does not dispute this finding.  For the reasons explained above, Bernard's unilateral acts of transferring assets from Joanne's conservatorship to the Trusts do not alter the essential nature of the funds as conservatorship property.  The SNT spending motions directly related to Joanne's conservatorship and thus were properly before the probate court.

¶ 72    We reject Bernard's second argument for the same reason.  He admits that he submitted to the probate court's jurisdiction personally when he accepted appointment as Joanne's conservator.  Based on the plain language of section 15-14-111, he "submit[ted] personally to the jurisdiction of the court in any proceeding relating to the guardianship or conservatorship."  Bernard's actions in the

37

probate court proceedings initially involved his diversion of conservatorship assets to the Trusts and later his attempt to defeat the conservatorship's efforts to recover those assets.  For these reasons, we conclude that Bernard personally submitted to the court's jurisdiction in his capacity as Joanne's conservator, individually, and as a trustee of the Trusts.

¶ 73       Bernard's third argument misses the mark because the substance of a filing, and not its designation given by a party, determines its character and weight.  *State ex rel. Suthers v. Mandatory Poster Agency, Inc.*, 260 P.3d 9, 13 (Colo. App. 2009). The probate court found that

> all of Bernard Black's requests made to [it] were through counsel and those requests are not limited by [Bernard's] fee agreements with counsel.  [Bernard's] counsel have all entered general appearances before the Court on his behalf and whether counsel acted beyond the scope of authority as described by the fee agreements is not before this Court for resolution.

The record predating February 2016 reflects that Bernard said he was appearing through counsel either in an individual capacity or as Joanne's conservator.  Bernard hired separate counsel in February 2016 when, for the first time, he contested the probate

court's exercise of jurisdiction over him in his capacity as a trustee of the SNT.  But, as we explained above in Part II.A.4.a.i.(2), many of Bernard's actions — including some taken before February 2016 — involved him in his capacity as a co-trustee of the Trusts.  Thus, Bernard was represented by counsel in his role as a trustee of the Trusts because of the affirmative relief he sought in the disputes concerning the transferred assets.  For example, in arguing that the SNT could retain those assets, Bernard acted solely as a trustee of the SNT.  He and his counsel's unilateral designations do not change the roles he played in the probate court proceedings.

### iii.   The Probate Court's Exercise of Personal Jurisdiction Over Bernard Does Not Violate Due Process

¶ 74    Bernard argues that the probate court violated his federal and state rights to due process through its broad application of section 15-14-111 to exercise personal jurisdiction over him.  We reject Bernard's argument because the probate court had the authority to exercise specific personal jurisdiction over him, and its assertion of personal jurisdiction over him was reasonable.  *See Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1194-95 (Colo. 2005).

(1)    Legal Authority

¶ 75    To exercise jurisdiction over a nonresident, a Colorado court must establish that the requirements of Colorado's long-arm statute and constitutional due process are met.  *Id.* at 1193.  Because Colorado's long-arm statute confers the maximum jurisdiction permitted by the due process clauses of the United States and Colorado Constitutions, the constitutional due process analysis encompasses the requirements of the long-arm statute.  *Id.*  "Due process requires that a defendant have certain minimum contacts with the forum state so that he may foresee being answerable in court there."  *Id.* at 1194.

¶ 76    A plaintiff can establish a defendant's requisite minimum contacts by asserting that Colorado has specific or general personal jurisdiction over the defendant.  *Id.*  Specific personal jurisdiction is proper when (1) the "defendant purposefully availed himself of the privilege of conducting business in the forum state" and (2) "the litigation 'arises out of' the defendant's forum-related contacts."  *Id.* (quoting *Keefe v. Kirschenbaum & Kirschenbaum, P.C.*, 40 P.3d 1267, 1270-71 (Colo. 2002)).  (Because we conclude that the probate court could exercise specific personal jurisdiction over

40

Bernard, *infra* Part II.A.4.a.iii.(2), we need not address whether it could also exercise general personal jurisdiction over him.)

¶ 77     Once a plaintiff establishes the defendant's requisite minimum contacts, these contacts are "considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Id.* at 1194-95 (quoting *Keefe*, 40 P.3d at 1271). These factors include "the burden on the defendant, the forum state's interest in resolving the controversy, and the plaintiff's interest in attaining effective and convenient relief." *Id.* at 1195.

(2)     Analysis

¶ 78     The probate court may exercise specific personal jurisdiction over Bernard in light of his actions affecting Joanne's conservatorship and the Trusts. First, Bernard "purposefully availed himself of the privilege of conducting business" in Colorado when he came to this state to obtain the conservatorship over Joanne and diverted the bank account funds to the SNT and Issue Trust and diverted Joanne's governmental benefits to the 2013 Trust. *Id.* at 1194. Unlike the defendants in *Archangel Diamond*, the case on which Bernard rests his jurisdictional argument,

another party did not hale him into court in a foreign jurisdiction. *See id.* at 1191.

¶ 79    Second, this litigation "arises out of" the contacts he created in Colorado.  *Id.* at 1194.  Every proceeding before the probate court related in some way to his request for appointment as Joanne's conservator, his disclaimers of the POD designations, and Joanne's and Dain's efforts to recover conservatorship assets he diverted out of state.

¶ 80    It is also reasonable for the probate court to exercise personal jurisdiction over Bernard.  There is a minimal burden on him to litigate in Colorado, as shown by the proceedings he initiated and in which he participated in this state.  As a tenured law professor, Bernard understands the complexities of our legal system and has the resources to travel to, and retain counsel in, Colorado.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 484-85 (1985) (the sophistication and resources of a defendant are proper considerations when assessing the burden on the defendant); *Keefe*, 40 P.3d at 1273 (the defendants, as attorneys, should not benefit from a jurisdictional shield when the other party lacks an understanding of jurisdictional distinctions).

42

¶ 81    Further, in an era of numerous daily flights between Chicago and Denver, arguments regarding the inconvenience of traveling between the two cities are anachronistic at best.  *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980) (holding that "modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity" (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222-23 (1957))).  Moreover, Bernard has been involved in probate and guardianship proceedings in the Westchester County Surrogate's Court and did not hesitate to expand his legal war involving Joanne's assets to a federal court in New York, which, like Denver, is hundreds of miles from Chicago.  *See Vento v. Colo. Nat'l Bank*, 985 P.2d 48, 52 (Colo. App. 1999) ("[A] court may take judicial notice of the contents of court records in a related proceeding.").

¶ 82    Colorado has an interest in ensuring that Bernard, who "purposefully derive[d] benefit" by appearing in Colorado to divert assets from Joanne's conservatorship to the Trusts, does not "escape having to account in [Colorado] for consequences that [arose] proximately from [his] activities."  *Rudzewicz*, 471 U.S. at

43

473-74 (quoting *Kulko v. Superior Court*, 436 U.S. 84, 96 (1978)).

Allowing Bernard to come to Colorado, invoke the jurisdiction of its

courts, commit torts against Joanne's conservatorship, and then

raise a personal jurisdiction shield would be antithetical to the

purpose of the Colorado courts to serve justice.  *See* C.R.C.P. 1(a).

¶ 83     Finally, Joanne's conservatorship has an "interest in attaining

effective and convenient relief" from the probate court because the

court has exclusive jurisdiction over it.  *Archangel Diamond*, 123

P.3d at 1195; *see* § 13-9-103(1)(f).  The Denver Probate Court is the

only tribunal that can directly and conveniently remedy Bernard's

misappropriation of Joanne's conservatorship assets; because they

lack jurisdiction over the conservatorship, the New York and Illinois

courts cannot void the disclaimers.  Even if those courts were to

exercise jurisdiction over the Trusts and order Bernard to return

the misappropriated assets to the conservatorship, such actions

could involve significant additional litigation, adding to the time and

expense of resolving the Black family's legal battles.

¶ 84     Further, if Bernard prevails on his jurisdictional arguments,

he may well succeed in misappropriating a portion of Joanne's

conservatorship assets for his own personal use through the Issue

Trust.  The record and number of out-of-state lawsuits support our conclusion.  First, Bernard placed Joanne's diverted conservatorship funds into twenty-five different accounts in the names of one or more of the Trusts, which the probate court concluded "could only be likened to a shell game."  Second, Bernard and Samuel filed a lawsuit in the United States District Court for the Northern District of Illinois to obtain a declaration "that [they], as Trustees of the Issue Trust, are free of restraint to carry out their obligations to administer the Issue Trust," which included paying Bernard's personal attorneys.  Complaint for Declaratory Relief at ¶ 26, *Black v. Black*, No. 1:16-cv-1763 (N.D. Ill. Jan. 29, 2016).  As noted above in Part II.A.3.b, the assets that Bernard diverted to the Issue Trust were derived entirely from Joanne's conservatorship estate.  Third, following the September 2015 Order, Joanne's conservatorship domesticated the $4.6 million judgment in Illinois to collect on the judgment it obtained against Bernard in Colorado.  *See Estate of Black v. Black*, 133 N.E.3d 61, 63 (Ill. App. Ct. 2019).  In response, Bernard asserted that the judgment was void due to jurisdictional defects.  *Id.*  The Illinois court rejected Bernard's challenge, and he appealed its ruling.  *Id.*  Under these

45

circumstances, it is reasonable for the probate court to exercise personal jurisdiction over Bernard to ensure he does not benefit from his tortious conduct.

¶ 85    Because the record supports the probate court's conclusions, we hold that the court properly exercised specific personal jurisdiction over Bernard in his capacity as Joanne's conservator, as a trustee of the Trusts, and in his individual capacity.

    b.    We Need Not Address Whether the Probate Court Must Have Personal Jurisdiction Over All Trustees Before It Can Distribute Trust Assets

¶ 86    Bernard next contends that the probate court must have personal jurisdiction over the three co-trustees of the SNT before it can assert jurisdiction over the SNT.  As explained above, the probate court may exercise in rem jurisdiction over the assets of Joanne's conservatorship that Bernard wrongfully diverted to the Trusts.  *See supra* Part II.A.3.b.  Because these assets are not the rightful property of the Trusts, we need not consider whether personal jurisdiction over one trustee is sufficient to enable the probate court to recover the transferred assets.

c.   We Need Not Address Whether the Probate Court Has Personal Jurisdiction Over Samuel

¶ 87   Because the probate court did not afford Samuel due process, we need not address whether the probate court properly exercised personal jurisdiction over him.  *See infra* Part II.D.2.b.; *see also In re C.L.S.*, 252 P.3d 556, 559 (Colo. App. 2011) ("A judgment [or order] entered in violation of due process is void.").

B.   The Probate Court Lacked Jurisdiction to Void the Disclaimers During the Pendency of the Merits Appeal

¶ 88   Bernard argues that the probate court lacked jurisdiction to void the disclaimers during the pendency of his appeal of the September 2015 Order, in which the probate court surcharged him the value of the funds he had diverted from Joanne's conservatorship, and declined to void the disclaimers.  We agree and vacate that portion of the April 2018 Order voiding the disclaimers.

1.   Legal Authority

¶ 89   "Courts universally recognize the general principle that once an appeal is perfected jurisdiction over the case is transferred from the trial court to the appellate court for all essential purposes with regard to the substantive issues that are the subject of the appeal."

47

*Molitor v. Anderson*, 795 P.2d 266, 268 (Colo. 1990).  Thus, "a trial court may not determine matters affecting the substance of a judgment once an appeal of that judgment has been perfected unless the appellate court issues an order remanding the judgment to the trial court for that purpose." *Id.* at 269.  A trial court retains jurisdiction to modify an order only if a statute explicitly grants the court that authority during the pendency of an appeal of the order. *See In re Parental Responsibilities Concerning W.C.*, 2020 CO 2, ¶ 3, 456 P.3d 1261, 1262.

¶ 90    Although Bernard did not raise this objection below, a party may challenge the trial court's subject matter jurisdiction for the first time on appeal.  *Triebelhorn v. Turzanski*, 149 Colo. 558, 561-62, 370 P.2d 757, 759 (1962).  Subject matter jurisdiction is a legal question that we review de novo.  *Elrick v. Merrill*, 10 P.3d 689, 694 (Colo. App. 2000).

## 2.    Analysis

¶ 91    In the September 2015 Order, the probate court found that Bernard had not properly disclosed to Joanne the effect of the disclaimers on her conservatorship's assets.  It determined that the "appropriate remedy [was to] surcharge" him the value of the assets

48

he had diverted from the conservatorship.  It did not directly rule on whether it should, or even could, void the disclaimers.

¶ 92     Bernard timely filed the Merits Appeal following entry of the September 2015 Order.  Joanne cross-appealed, arguing that the probate court erred by failing to make express findings explaining its denial of her request to void the disclaimers.  Citing the probate court's "significant discretion to impose a variety of remedies to protect the protected person or the assets of the estate" pursuant to section 15-10-503, C.R.S. 2019, a division of this court in *Black I* discerned "no abuse of discretion in the [probate] court's decision to impose a surcharge rather than to order that the disclaimer transaction[s] be unwound."  *Black I*, ¶¶ 128-129, 422 P.3d at 613.  The Colorado Supreme Court did not deny Bernard's petition for a writ of certiorari in *Black I* until May 20, 2019.

¶ 93     During the pendency of *Black I* in the supreme court, the probate court entered the April 2018 Order, in which it voided the disclaimers and ordered Bernard to deposit the diverted conservatorship funds into the court registry.  Bernard contends that the court lacked jurisdiction to revisit its choice of remedies while his appeal was pending in the supreme court.

¶ 94     Joanne responds with three arguments: (1) probate courts

have broader jurisdiction than courts in ordinary civil cases due to

their exclusive jurisdiction and emergency powers; (2) the probate

court never squarely addressed Joanne's request to void the

disclaimers and, in light of Bernard's ongoing wrongful conduct,

voiding the disclaimers was the appropriate remedy; and (3) during

the pendency of an appeal, federal district courts will entertain a

motion under the federal analogue to C.R.C.P. 60(b), even absent a

remand from the appellate court.

¶ 95     We agree with Bernard that the probate court lacked

jurisdiction to void the disclaimers during the pendency of his

petition for writ of certiorari.  We must follow the rule that, without

"subject matter jurisdiction, [a court] is deprived of any authority to

act." *People in Interest of P.K.*, 2015 COA 121, ¶ 9, 411 P.3d 963,

966.

¶ 96     In *Molitor*, the Colorado Supreme Court analyzed whether a

trial court could entertain a Rule 60(b) motion while the underlying

judgment was on appeal.  795 P.2d at 267-70.  It canvassed the

approaches of courts, including federal courts, across the country,

and held that "the trial court did not retain jurisdiction to consider

the defendants' [Rule] 60(b) motion to vacate the judgment appealed

from in the absence of an order issued by the Court of Appeals

remanding the case to the trial court for that purpose." *Id.* at 270.

In reaching this conclusion, the supreme court impliedly rejected

Joanne's argument that the probate court had jurisdiction to void

the disclaimers because federal district courts will entertain a Rule

60(b) motion during the pendency of an appeal without first

obtaining leave from the appellate court.  We are bound by the

supreme court's resolution of the issue.  *In re Estate of Ramstetter*,

2016 COA 81, ¶ 40, 411 P.3d 1043, 1050.

¶ 97    We also reject Joanne's argument concerning the broad

jurisdictional authority granted to probate courts.  She directs us to

no authority, and we can find none, that supports her sweeping

proposition.  While it is true that a probate court has exclusive

jurisdiction over the estate of a protected person, § 15-14-402, and

has broad authority to "take such further action as the court deems

appropriate to protect the ward or protected person or the assets of

the estate" in an emergency situation, § 15-10-503(1), the statutes

granting that authority "contain no language that might pass the

stringent test of a specific grant of jurisdiction to modify the[] order[]
when [it is] on appeal," *W.C.*, ¶ 18, 456 P.3d at 1265.

¶ 98       Finally, we reject Joanne's remaining argument — that the
probate court never squarely addressed her request to void the
disclaimers — because the probate court and a division of this
court considered her request to void the disclaimers, thereby
rendering it a "substantive issue[] that [is] the subject of the
appeal." *Molitor*, 795 P.2d at 268.  In the September 2015 Order,
the probate court devoted three pages to a discussion of the
disclaimers before it concluded that "the appropriate remedy is
surcharge."  Joanne appealed the court's election of the surcharge
remedy, and a division of this court affirmed.  By arguing that the
probate court deferred her request to void the disclaimers until
Bernard's ongoing misconduct required it to void the disclaimers,
she necessarily concedes that the September 2015 Order and the
April 2018 Order are, in effect, a single order.  "Thus, any change to
the [September 2015 Order] would be material to an appeal of that
order." *W.C.*, ¶ 23, 456 P.3d at 1266.

¶ 99       In sum, we hold that, while Bernard's petition for writ of
certiorari was pending, the probate court lacked jurisdiction to

reconsider its authorization of the disclaimers.  We need not

address Bernard's remaining contentions of error regarding the

probate court's decision to void the disclaimers because doing so

"would not have a practical effect upon an existing controversy."

*Grossman v. Dean*, 80 P.3d 952, 960 (Colo. App. 2003).

> C.   The Probate Court Did Not Err in Granting Dain's Motions to
>       Allow SNT Distributions for Joanne's Professional Fees

¶ 100   Bernard contends that the probate court erred in granting

Dain's and Joanne's motions to authorize the SNT to pay Joanne's

professional fees.  He argues that (1) the motions were improper

and (2) the SNT instrument does not permit expenditures for

professional fees.  Joanne responds that the probate court's

January 2016 order mooted Bernard's challenge by requiring him to

return the transferred assets from the SNT to the conservatorship.

¶ 101   Because we hold that the funds Bernard diverted to the Trusts

were at all times assets of Joanne's conservatorship, we conclude

that the expenditure requests were not subject to the limitations in

the SNT instrument.  Thus, we need not address Bernard's

arguments related to the SNT expenditures.  *See supra* Part II.A.3.b.

We further hold that the probate court did not err in allowing the

expenditures for Joanne's professional fees, albeit on different grounds than those upon which the probate court relied.  *See Rush Creek Sols., Inc. v. Ute Mountain Ute Tribe*, 107 P.3d 402, 406 (Colo. App. 2004) (holding that an appellate court may affirm the trial court's ruling on any grounds supported by the record).  The probate court can authorize expenditures from the conservatorship to pay the protected person's professional fees.  *See* § 15-14-410(1)(b), C.R.S. 2019 (providing that, "upon determining that a basis for a conservatorship . . . exists, the court has the following powers, which may be exercised directly or through a conservator . . . all the powers over the estate and business affairs . . . that the [protected] person could exercise"); § 15-14-425(2)(t)-(u), C.R.S. 2019 (providing that a conservator may "[p]ay or contest any claim" and "[p]ay taxes, assessments, compensation of the conservator and any guardian, and other expenses incurred in the collection, care, administration, and protection of the estate").

### D. The Probate Court Had the Authority to Sua Sponte Suspend Bernard, But Not Samuel, as a Trustee of the SNT and 2013 Trust

¶ 102    Bernard and Samuel assert that the probate court did not provide them with sufficient advance notice before it took actions

against them in their capacities as co-trustees of the SNT and 2013 Trust in the January 2018 Order, which suspended them as co-trustees and required them to transfer information and assets regarding the SNT to Joanne's counsel and Dain.  While we are not persuaded by Bernard's arguments, we agree with Samuel, vacate the portion of the January 2018 Order suspending Samuel as a co-trustee of the SNT and 2013 Trust, and conclude that any affirmative obligations in the January 2018 Order do not apply to Samuel.

### 1.   Legal Authority

¶ 103    Whether a party's due process rights were violated by lack of notice presents a question of law that we review de novo. *Klingsheim v. Cordell*, 2016 CO 18, ¶ 14, 379 P.3d 270, 272-73. Statutory interpretation is also a question of law that we review de novo.  *Id.* at ¶ 14, 379 P.3d at 272.  "The power to fashion equitable remedies lies within the discretion of the trial court," and "[w]e will not disturb such rulings on review absent an abuse of discretion." *Beren v. Beren*, 2015 CO 29, ¶ 12, 349 P.3d 233, 239.

¶ 104    "[A probate] court may, on its own motion or upon the request of an interested party," with or without a hearing, order the

suspension of a trustee.  § 15-10-503(1)-(2).  The court may proceed in emergency situations without providing prior notice or a hearing to the fiduciary, but if it "suspends the powers of a fiduciary, [it] shall set a hearing and direct that notice be given pursuant to section 15-10-505[, C.R.S. 2019]."  § 15-10-503(1).  And section 15-10-505(1)(a) provides that

> [i]f it appears to a court that an emergency exists . . . the court may take appropriate action and issue an order with or without prior notice to a fiduciary as the court determines appropriate based upon the nature of the emergency.  If a fiduciary of an estate is not present when an emergency order is entered concerning the administration of the estate, the court shall attempt to notify the fiduciary of the court's action and mail a copy of the court's order to the fiduciary at the fiduciary's last address . . . .  Notice of all hearings set under section 15-10-503(1) shall be given pursuant to section 15-10-401[, C.R.S. 2019].

## 2.    Analysis

¶ 105    After discovering that Bernard had withdrawn SNT funds in violation of the April 2015 Order, Joanne moved to enjoin Bernard from transferring further funds from the SNT.  The probate court conditionally granted the motion pending a hearing.

¶ 106    Shortly thereafter, Joanne moved to authorize Dain to use SNT

funds so that she could pay attorneys to take the following actions:

(1) remove Bernard and Samuel as trustees of the SNT; (2) set aside

the fraudulent consent judgments; and (3) litigate other claims

against Bernard and Samuel.  Joanne alleged that

> [f]ollowing failed attempts to obtain Orders
> from this Court to withdraw funds from the
> Trusts to pay his legal professionals,
> promissory notes were issued by Bernard
> Black to Kate Litvak and Olga Dal for loans
> purportedly given to him to pay his various
> attorneys.  [Bernard] defaulted on these
> promissory notes which resulted in fraudulent
> judgments obtained in favor of Ms. Litvak and
> Ms. Dal against the SNT and 2013 Trust.

The promissory notes totaled approximately $750,000.  Joanne and

Dain did not know of Bernard's actions until after the Illinois court

had entered the consent judgments.

¶ 107    The January 2018 Hearing included argument on the

November 2017 Order and Joanne's expenditure motion.  In the

January 2018 Order, the probate court stated that it "finds the

actions of Bernard Black are shocking to the conscience of the

Court, especially given [Bernard's] position as a professor of law."

The court noted that Bernard's actions "only serve to dramatically

increase attorney fees and costs and otherwise reduce or eliminate the funds that are due to Joanne Black apparently for no reason," and further explained that "Joanne Black's only source of funds to pay her attorneys to initiate proceedings to set aside the judgments, liens[,] and garnishments is the SNT which Bernard and Samuel have effectively frozen by the litigation they continue to initiate." Based on these findings, the court suspended Bernard and Samuel as trustees of the SNT and 2013 Trust.

¶ 108    On appeal, Bernard and Samuel argue that the probate court (1) lacked the authority to suspend them as trustees of the SNT because it lacked personal jurisdiction over them in that capacity; (2) abused its discretion in suspending them as trustees of the SNT based solely on the arguments of Joanne's counsel; and (3) violated their due process rights by granting relief that Joanne had not requested and of which they lacked advance notice.  (Bernard and Samuel do not challenge their suspension as trustees of the 2013 Trust.)

58

a.     The Probate Court Had the Authority to Suspend Bernard as a Trustee of the SNT and 2013 Trust

¶ 109   First, as explained above, the probate court properly exercised personal jurisdiction over Bernard in his capacity as a trustee of the Trusts.  *See supra* Part II.A.4.a.

¶ 110   Second, we do not agree with Bernard's argument that the court based its ruling solely on assertions by Joanne's counsel. Before the probate court suspended Bernard as a trustee of the SNT and 2013 Trust, Dain — who appeared at the January 2018 Hearing pro se as an interested party — apprised the court of Bernard's continuing breaches of his fiduciary duties to Joanne. Dain reported that Bernard had transferred $258,000 from the SNT to his personal home equity line of credit, despite the April 2015 Order freezing the SNT's assets.  Dain further argued that the consent judgments were fraudulent.  Finally, Dain apprised the probate court of the anticipated proceedings in Illinois to remove Bernard and Samuel as trustees of the SNT.  (Those proceedings were never initiated.)  In light of the emergency situation resulting from Bernard's transfer of SNT funds in violation of the April 2015 Order and his attempts to permanently deprive Joanne's

59

conservatorship of assets through the consent judgments, we hold that the court did not abuse its discretion in suspending Bernard as a trustee of the SNT and 2013 Trust to protect the conservatorship's assets.

¶ 111    In addition, we reject Bernard's contention that he received insufficient notice of the issues addressed at the January 2018 Hearing.  Before the hearing, Joanne sent Bernard a notice indicating that the hearing would cover the issues outlined in the November 2017 Order.  They included (1) the court's continuing jurisdiction over the conservatorship; (2) the existence of an emergency situation pursuant to section 15-10-505(1)(a); (3) the injunction against Bernard; and (4) Joanne's ongoing efforts to remove Bernard as a trustee of the SNT.  Thus, we hold that Bernard received actual notice that the court would address Joanne's request to remove him as a trustee of the SNT at the January 2018 Hearing.  *See Black I,* ¶ 27, 422 P.3d at 600 (holding that actual notice may be substituted for the notice required by section 15-10-401); *see also* § 15-10-505(1)(a).

¶ 112    In sum, we hold that the probate court properly suspended Bernard as a trustee of the SNT and 2013 Trust.

### b. The Probate Court Did Not Provide Samuel with Sufficient Notice Before Suspending Him as a Trustee of the SNT and 2013 Trust

¶ 113    Because nothing in the record indicates that Samuel received actual notice of the January 2018 Hearing, and because the probate court did not comply with the plain language of sections 15-10-503(1) and 15-10-505(1)(a), it lacked the authority to suspend him as a trustee of the SNT and 2013 Trust or order him to provide information regarding the SNT and 2013 Trust and their assets to Joanne's counsel and Dain.  Section 15-10-503(1) provides that a probate court may suspend a trustee without a hearing, so long as it then "set[s] a hearing and direct[s] that notice be given pursuant to section 15-10-505."  It is undisputed that the court did not set a hearing after it suspended Samuel as a trustee of the SNT and 2013 Trust.  Further, section 15-10-505(1)(a) provides that "[n]otice of all hearings set under section 15-10-503(1) shall be given pursuant to section 15-10-401."  Nothing in the record indicates that the court or Joanne provided Samuel with notice that, at the January 2018 Hearing, the court would consider suspending him as a trustee of the SNT and 2013 Trusts.

¶ 114   Thus, we hold that Samuel was not afforded the due process necessary to remove him as a trustee of the SNT and 2013 Trust. We vacate those portions of the January 2018 Order directed to Samuel, and hold that the affirmative obligations in the April 2018 Order to pay the diverted assets to the court registry do not apply to him.  *See C.L.S.*, 252 P.3d at 559 ("A judgment [or order] entered in violation of due process is void.").

E.   The Probate Court Correctly Denied Bernard's Disqualification Motion

¶ 115   Bernard contends that the probate judge should have recused herself because of the record "evidence of the court's partiality and evident bias against [him] and his family."  He requests that, if we remand this matter, we send the case to a different judge.  We disagree that recusal is required.

1.   Legal Authority

¶ 116   Because of a judge's "duty to eliminate every semblance of reasonable doubt or suspicion that a trial by a fair and impartial tribunal may be denied," a judge must disqualify herself when it "appears to the parties or to the public that [she] may be biased or prejudiced."  *Johnson v. Dist. Court*, 674 P.2d 952, 956 (Colo. 1984);

*see* C.J.C. 2.11(A)(1) ("A judge shall disqualify . . . herself in any proceeding in which the judge's impartiality might reasonably be questioned, including . . . [circumstances where] [t]he judge has a personal bias or prejudice concerning a party . . . ."); *see also* C.R.C.P. 97 ("A judge shall be disqualified in an action in which [s]he is interested or prejudiced . . . ."). The purpose of this disqualification rule is "to guarantee that no person is forced to litigate before a judge with a 'bent of mind.'" *Johnson*, 674 P.2d at 956 (quoting *People v. Botham*, 629 P.2d 589, 595 (Colo. 1981)).

¶ 117    When assessing the grounds for disqualification raised in a motion, "a judge is required to accept as true the facts stated in the motion and accompanying affidavits." *Zoline v. Telluride Lodge Ass'n*, 732 P.2d 635, 639 (Colo. 1987). The judge can base her decision only on the legal sufficiency of the motion and accompanying affidavits. *Id.* To be legally sufficient, the documents must "state facts from which it may reasonably be inferred that the judge has a bias or prejudice that will prevent [her] from dealing fairly with the [party]." *Id.* (quoting *Botham*, 629 P.2d at 595). "Facts are required; conclusory statements, conjecture, and innuendo do not suffice." *Id.*

¶ 118    "In a civil case, the trial judge's decision whether to disqualify

himself or herself is discretionary and will not be reversed unless an

abuse of discretion is shown." *Id.* A trial court abuses its

discretion when its decision is manifestly arbitrary, unreasonable,

unfair, or based on a misapplication of the law. *Freedom Colo. Info.,*

*Inc. v. El Paso Cty. Sheriff's Dep't*, 196 P.3d 892, 899 (Colo. 2008);

*see E-470 Pub. Highway Auth. v. Revenig*, 140 P.3d 227, 230-31

(Colo. App. 2006) ("In assessing whether a trial court's decision is

manifestly unreasonable, arbitrary, or unfair, we ask not whether

we would have reached a different result but, rather, whether the

trial court's decision fell within a range of reasonable options.").

¶ 119    Further, a motion to disqualify may be waived if not timely

filed. *See Johnson*, 674 P.2d at 957 (recognizing that "when the

grounds for disqualification are known, a motion to disqualify

should be filed prior to taking any other steps in the case"); *see also*

C.R.C.P. 98(k) ("A party does not waive his right to change of judge

or place of trial if his objection thereto is made in apt time.").

## 2.   Analysis

### a.   Bernard Waived His Ability to Challenge the Probate Court's Alleged Instances of Bias and Partiality Predating the April 2018 Order

¶ 120   Bernard contends that the probate judge must be removed from the case because she (1) improperly prejudged his actions and those of Samuel, Katherine, and Dal; (2) demanded to know why Joanne had not taken action to remove him as a trustee of the SNT; (3) recommended that he be removed from all fiduciary capacities relating to Joanne's conservatorship and Renata's estate; (4) violated his due process rights by awarding "extreme relief" without sufficient prior notice to him; and (5) levied ad hominem attacks against him.  Bernard's contentions are not only conclusory, but they rest exclusively on statements the probate judge made before entering the April 2018 Order.  *See In re Marriage of Elmer*, 936 P.2d 617, 619 (Colo. 1997) (holding that conclusory statements concerning a judge's bias are insufficient to establish that disqualification is required).  Bernard based his unsuccessful recusal motion, which is not the subject of this appeal, in part, on the same statements.  And he does not directly refute the probate court's reasoning supporting its denial of his recusal motion.  For

65

these reasons, we conclude that Bernard waived the recusal argument he presents on appeal.

¶ 121     Bernard did not seek to disqualify the probate judge until the sixth year of this litigation, after a division of this court affirmed the September 2015 Order in *Black I*.  He knew of the alleged grounds for disqualification for years, yet sat on his recusal motion.  For example, his recusal argument on appeal includes an attack on the court's recommendation in the September 2015 Order that he be removed from all fiduciary roles concerning Joanne's conservatorship and Renata's estate.  It is too late for him to challenge the court's statement and seek disqualification based on years-old statements and rulings.  *See Holland v. Bd. of Cty. Comm'rs*, 883 P.2d 500, 510 (Colo. App. 1994) (holding that a motion to recuse was untimely when the litigant waited until one year of legal proceedings had occurred before seeking recusal); *Bishop & Co. v. Cuomo*, 799 P.2d 444, 447 (Colo. App. 1990) (holding that the litigant waived its ability to seek recusal when it stated that it was willing to proceed with the litigation, and so proceeded, after learning of the alleged bias of the trial court and opposing counsel).

b.      Bernard's Recusal Argument Fails on the Merits

¶ 122   Given that further proceedings in the probate court will be

necessary and the court may make statements not to Bernard's

liking, we address the merits of Bernard's recusal argument based

on the few citations to the record he provides in support of his

recusal argument on appeal.  *See O'Quinn v. Baca*, 250 P.3d 629,

631-32 (Colo. App. 2010) (holding that "parties 'should not "expect

[an appellate] court to peruse the record without the help of

pinpoint citations"'" (quoting *L.S.F. Transp., Inc. v. NLRB*, 282 F.3d

972, 975 n.1 (7th Cir. 2002))).

¶ 123   Bernard appears to base his recusal argument on two

contentions: (1) the probate judge allegedly demonstrated bias

against him and members of his family and (2) she violated his due

process rights.  He points to the following statements to show that

the probate judge was biased:

- Before issuing the January 2018 Order, the court stated

    that Bernard should be someone that "the rest of us look

    up to as having a presence in our country and teaching

    our students.  And this behavior is completely

    antithetical to that.  And I just can't express strongly

enough how disappointed and deceiving and disturbing that these actions are."

- In the January 2018 Order, the court said that "the actions of Bernard Black are shocking to the conscience of the Court, especially given [his] position as a professor of law at a respected law school in this country. Similarly, the Court finds the actions of [Katherine], also a law professor, are shocking." The court then repeated that "it is unable to adequately express how shocking these actions taken by [Bernard] and his family are to the conscience of the Court."

- Later in the January 2018 Order, the court said that the actions of Bernard, Samuel, Katherine, and Dal were "reprehensible."

- The probate court implicitly encouraged Joanne to bring legal actions in Illinois to remove Bernard and Samuel as trustees of the SNT.

¶ 124   Bernard supports his argument that the probate judge violated his due process rights by referring to her statements concerning allegations about his conduct outside Colorado. He asserts that

68

these statements lacked an evidentiary basis and that the probate court failed to give him prior notice so he could respond to the allegations.

¶ 125    We agree with the probate court that Bernard's arguments for recusal lack merit.  The probate judge did not display bias through the above statements because she made them in conjunction with the orders she entered to recoup and protect assets of Joanne's conservatorship.  The statements reflected the bases for, and shed light on the reasoning underlying, those orders.  It was appropriate for the probate judge to explain why she was entering the orders. Nothing in the probate judge's statements reflects improper bias against Bernard, Samuel, Katherine, or Dal.

¶ 126    On the contrary, the statements reflect the judge's frustration upon learning that Bernard, Samuel, and Katherine had conspired to deplete the improperly transferred assets through the consent judgments.  The probate court properly took judicial notice of the Illinois Appellate Court's opinion in *Litvak v. Black*, 2019 IL App (1st) 181707, ___ N.E.3d ___, condemning Bernard, Samuel, and Katherine's "fraud or collusion" in obtaining the consent judgments. *Id.* at ¶ 24, ___ N.E.3d at ___; *see Vento*, 985 P.2d at 52 ("[A] court

69

may take judicial notice of the contents of court records in a related proceeding.").  Thus, although the probate judge's statements may reflect an ill disposition toward Bernard, Samuel, and Katherine, those views rested solidly on evidence presented in this case and their misconduct revealed in the Illinois decision.  *See Smith v. Dist. Court*, 629 P.2d 1055, 1056 (Colo. 1981) (holding that what a judge learns in her judicial capacity is a proper basis for observation, and the use of such information does not require disqualification); *Watson v. Cal-Three, LLC*, 254 P.3d 1189, 1192 (Colo. App. 2011) ("[A] judge is not recusable for bias or prejudice that is based on the facts and circumstances of the case, even where, upon completion of the evidence, the court is exceedingly ill disposed toward a party."); *see also In re J.P. Linahan, Inc.*, 138 F.2d 650, 654 (2d Cir. 1943) ("Impartiality is not gullibility.  Disinterestedness does not mean child-like innocence.  If the judge did not form judgments of the actors in those court-house dramas called trials, [she] could never render decisions.").  Bernard may not wield the threat of disqualification to muzzle or intimidate jurists who criticize his self-serving, collusive, and fraudulent schemes to steal his disabled sister's assets.

¶ 127    We similarly reject Bernard's argument that the probate judge

must be tossed off the case because she denied him due process.

Although Bernard may have been physically present in Illinois when

he attempted to drain the assets of Joanne's conservatorship

through the consent judgments, the conservatorship is based in

Colorado.  Colorado courts are expressly designated as forums

where residents of this state can seek redress for harm resulting

from tortious conduct, even if the conduct occurred outside

Colorado's borders, so long as the injury is deemed to occur in this

state.  *See* § 13-1-124(1)(b), C.R.S. 2019 (providing that Colorado's

long-arm statute empowers courts to exercise jurisdiction over out-

of-state defendants that commit torts within Colorado); *Classic Auto

Sales, Inc. v. Schocket*, 832 P.2d 233, 235 (Colo. 1992) ("In order to

satisfy the statutory standard for assertion of long arm jurisdiction,

. . . it is not necessary that both the tortious conduct constituting

the cause and the injury constituting the effect take place in

Colorado.  Instead, we have held the statute to be satisfied when

only the resulting injury occurs in this state.").

¶ 128    Further, the probate court was the only court with jurisdiction

over Joanne's conservatorship, making it imperative for it to take

71

action to protect the conservatorship's assets.  *See*

§ 15-14-402(1)(b) (stating that the probate court where a petition

seeking a conservatorship was filed has "[e]xclusive jurisdiction to

determine how the estate of the protected person . . . must be

managed, expended, or distributed").

¶ 129    Given our holding that the probate court properly took judicial

notice of the revelations regarding the consent judgments appearing

in *Litvak*, we disagree with Bernard's contention that the court's

statements and orders concerning the consent judgments lacked

evidentiary support.

¶ 130    We also reject Bernard's argument that he did not receive

notice that the probate court would take actions to protect Joanne's

conservatorship assets.  As noted above, before the January 2018

Hearing, Joanne sent Bernard a notice stating that the hearing

would cover, among other things, the following issues: (1) the

emergency situation regarding the conservatorship's assets; (2) the

injunction barring Bernard from further transferring SNT funds;

and (3) Joanne's ongoing efforts to remove him as a trustee of the

SNT.  *See supra* Part II.D.2.a.  Thus, we hold that Bernard received

sufficient notice that, at the January 2018 Hearing, the probate

court might issue orders addressing the matters identified in the notice.

¶ 131    In sum, we deny Bernard's request that we remand the matter to a different judge.

F.    Samuel is Not Entitled to Recover His Appellate Attorney Fees

¶ 132    In his reply brief, Samuel asserts that he is entitled to recover appellate attorney fees because of the conduct of Joanne's counsel or conservator.  We are not persuaded.

1.    Legal Authority

¶ 133    A Colorado court may award reasonable attorney fees "against any attorney or party who has brought or defended a civil action . . . that the court determines lacked substantial justification" or was "interposed for delay or harassment," or who has "unnecessarily expanded the proceeding by other improper conduct." § 13-17-102(2), (4), C.R.S. 2019; *see also* C.A.R. 38(b) (providing that an appellate court "may award damages it deems appropriate, including attorney fees," if it "determines that an appeal or cross-appeal is frivolous").  "A claim is frivolous if the proponent has no rational argument to support it based on evidence or the law.  A claim is groundless if there is no credible evidence to support the

allegations in the complaint.  A vexatious claim or defense is one
brought or maintained in bad faith." *Zivian v. Brooke-Hitching*, 28
P.3d 970, 974 (Colo. App. 2001) (citation omitted).

## 2.    Analysis

¶ 134    Samuel contends that he is entitled to recover his appellate
attorney fees because the actions of Joanne's counsel or
conservator "lack[ed] substantial justification and . . . unnecessarily
expanded the proceedings."

¶ 135    We conclude that Joanne's arguments on appeal neither
"lacked[ed] substantial justification" nor "unnecessarily expand[ed]
the proceedings."  Rather, Samuel's need to retain Colorado legal
counsel and spend attorney fees in connection with this appeal can
be traced to his failure to honor his fiduciary duties to Joanne and
efforts to deprive her conservatorship of the assets that Bernard
misappropriated.

¶ 136    Although we disagree with Joanne's arguments regarding the
probate court's jurisdiction to enter orders directed to Samuel,
those arguments are not "substantially frivolous, substantially
groundless, or substantially vexatious." § 13-17-102(4).  Joanne's

counsel made a rational argument supported by citations to record evidence and legal authority.  *See Zivian*, 28 P.3d at 974-75.

¶ 137    Accordingly, we deny Samuel's request for appellate attorney fees.

### III.    Conclusion

¶ 138    The portion of the April 2018 Order voiding the disclaimers is vacated.  The portions of the January 2018 Order suspending Samuel as a co-trustee of the SNT and ordering him to provide all information concerning the Trusts to Joanne's counsel and Dain are vacated.  All other portions of the January 2018 Order and the April 2018 Order are affirmed, as are the portions of the October 2016 Order and the October 2017 Order challenged in this appeal.

¶ 139    The case is remanded to the probate court for further proceedings consistent with this opinion, including for a determination of whether the disclaimers should be voided.

JUDGE FOX and JUDGE BERGER concur.

# Court of Appeals

**STATE OF COLORADO**
**2 East 14th Avenue**
**Denver, CO 80203**
**(720) 625-5150**

**PAULINE BROCK**
**CLERK OF THE COURT**

## NOTICE CONCERNING ISSUANCE OF THE MANDATE

Pursuant to C.A.R. 41(b), the mandate of the Court of Appeals may issue forty-three days after entry of the judgment.  In worker's compensation and unemployment insurance cases, the mandate of the Court of Appeals may issue thirty-one days after entry of the judgment.  Pursuant to C.A.R. 3.4(m), the mandate of the Court of Appeals may issue twenty-nine days after the entry of the judgment in appeals from proceedings in dependency or neglect.

Filing of a Petition for Rehearing, within the time permitted by C.A.R. 40, will stay the mandate until the court has ruled on the petition.  Filing a Petition for Writ of Certiorari with the Supreme Court, within the time permitted by C.A.R. 52(b), will also stay the mandate until the Supreme Court has ruled on the Petition.

BY THE COURT:    Steven L. Bernard
Chief Judge

DATED:  March 5, 2020

*Notice to self-represented parties:  The Colorado Bar Association provides free volunteer attorneys in a small number of appellate cases.  If you are representing yourself and meet the CBA low income qualifications, you may apply to the CBA to see if your case may be chosen for a free lawyer.  Self-represented parties who are interested should visit the Appellate Pro Bono Program page at* *https://www.cobar.org/For-Members/Committees/Appellate-Pro-Bono*