4UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X
SARAH H. BLACK, and KATHERINE BLACK,
on behalf of her minor children D.B. and J.B.,

                        Plaintiffs,                16-CV-01238 (CBA)(ST)


    -v-


ANTHONY DAIN, CHERIE WRIGLEY,
IRA SALZMAN, MELISSA COHENSON,
BRIAN A. RAPHAN, P.C., PAMELA KERR,
ESAUN G. PINTO, and CPI INVESTIGATIONS

                        Defendants.
-----------------------------------------------------------------X



_____

**MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT**
_____

**Mancilla & Fantone, LLP**
*Attorneys for Defendants*
**260 Madison Avenue, 22nd Floor**
**New York, New York 10016**
**P (646) 225-6686**
**F (646) 655-0269**

**Anthony Dain (*Pro Se*)**
**13272 Capstone Drive**
**San Diego, CA 92130**
**Telephone: 619-515-3241**
**Facsimile: 619-744-5441**

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ 4

Preliminary Statement............................................................................................. 8

Summary Judgment Standard ................................................................................ 11

Argument ................................................................................................................ 12

    I (A)    COLLATERAL ESTOPPEL AND RES JUDICATA APPLY TO
    PLAINTIFFS' CLAIMS ................................................................................ 12

        (1) The Issue Presented Is Identical to An Issue Adjudicated in Colorado .......... 13

        (2) Plaintiffs Are In Privity With Bernard For Purposes of Collateral Estoppel 13

        (3) The Colorado Judgment Was Issued on the Merits and Is Now Final ........... 18

        (4) Bernard Had a Full and Fair Opportunity to Litigate .................................... 18

        (5) Equitable Considerations Mandate the Application of Collateral Estoppel .. 19

        (6) The Plaintiffs' Claims Are Barred By Res Judicata ........................................ 20

    I (B)    PLAINTIFFS LACK STANDING BECAUSE THEY ARE PRECLUDED
    FROM ASSERTING A LEGAL INTEREST IN ANY OF THE ASSETS IN THE
    TRUSTS AND THE PROBATE EXCEPTION BARS PLAINTIFFS' CLAIMS . 21

    II.    DEFENDANT DAIN IS ENTITLED TO SUMMARY JUDGMENT BECAUSE
    NO REASONABLE JURY COULD CONCLUDE DAIN BREACHED HIS
    FIDUCIARY DUTIES................................................................................... 28

        A. No Reasonable Jury Could Conclude That Dain's Conduct Constituted A
        Breach Of His Fiduciary Duties .................................................................... 29

        B. Plaintiffs Failed To Offer Any Evidence Dain's Conduct Caused Any
        Identifiable Injury ........................................................................................ 37

     **C. Plaintiffs Failed To Produce Evidence Supporting The Allegations in Counts 6, 23, 8, and 25** ........................................................................................ 44

**III. DEFENDANTS WRIGLEY, PINTO AND CPI INVESTIGATIONS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNTS FIFTY THREE AND FIFTY SEVEN ALLEGING EACH AIDED AND ABETTED DAIN'S ALLEGED BREACHES OF FIDUCIARY DUTY** ........................................................................ 48

**Conclusion** ........................................................................................................................ 50

# TABLE OF AUTHORITIES

**Cases**

210-220-230 Owners Corp. v. Arancio, 899 N.Y.S.2d 63 (City Ct. 2009) .................................. 15

Alliance for Open Soc'y Int'l Inc. v. U.S. Agency for Int'l Dev.. 651 F.3d 218 (2d Cir. 2011).. 21

Am. Fed. Group, Ltd. v. Rothenberg, 136 F.3d 897 (2d Cir. 1998). ............................................ 38

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ................................................................ 11

Argus Real Estate, Inc. v. E-470 Pub. Highway Auth.. 109 P.3d 604 (Colo. 2005) ................... 20

Atl. Cotton-Mills v. Indian Orchard Mills, 147 Mass. 268 (1888) ............................................... 33

Barnes v. Andrews, 298 F. 614 (S.D.N.Y. 1924) .................................................................. 38, 41

Barnett v. Elite Properties of America, Inc., 252 P.3d 14 (Colo. App. 2010) ............................. 18

Barrie House Coffee Co. v. Teampac, LLC, No. 13-cv-8230, 2016 U.S. Dist. LEXIS 85527
    (S.D.N.Y. June 30, 2016) .......................................................................................................... 45

Bennet College v. United Bank of Denver, N. A., 799 P.2d 364 (1990) ...................................... 15

Bennett v. Spear, 520 U.S. 154 (1997) ........................................................................................ 21

Bigio v. Coca-Cola Co., 675 F.3d 163 (2d Cir. 2012) .................................................................. 48

Black v. Black, 422 P.3d 592 (2018), cert.den. in Black v. Black, 2019 Colo. LEXIS 381, 2019
    WL 2178077 (Colo., May 20, 2019) ......................................................................................... 27

Black v. Black, 482 P.3d 460, 475 (Colo. App. 2020), cert den. Black, 2021 Colo. LEXIS 191
    (Colo. 2021) ...................................................................................................................... passim

Black v. Wrigley, No. 16-CV-430 (CBA), 2021 U.S. Dist. LEXIS 206748 (E.D.N.Y. Sep. 21,
    2021): ........................................................................................................................................ 11

Blondell v. Bouton, No. 17-CV-372 (RRM) (RML), 2019 U.S. Dist. LEXIS 238347 (E.D.N.Y.
    Mar. 29, 2019) ..................................................................................................................... 29, 30

BNY Capital Mkts, Inc. v. Moltech Corp., No. 99 Civ. 11754 (GEL), 2001 U.S. Dist. LEXIS 2705, 2001 WL 262675 (S.D.N.Y. Mar. 14, 2001) ................................................... 38

Brod v. Omya, Inc., 653 F.3d 156 (2d Cir. 2011)........................................................... 12

Bullmore v. Ernst & Young Cayman Islands, 45 A.D.3d 461 (1st Dept 2007) .................... 48, 49

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ...................................................... 12, 45

Foster v. Plock, 2017 CO 39 (Colo. 2017) ............................................................. 14, 18

Friends of the Earth. Inc. v. Laidlaw Envtl. Servs. (TOC) Inc., 528 U.S. 167 (2000) ................ 22

Goldsworth v. American Family Mutual Insurance Company, 209 P.3d 1108 (Colo. App. 2008) .................................................................................................................. 19

Grynberg v. Arkansas Oklahoma Gas Corporation, 116 P.3d 1260 (Colo. App. 2005).............. 19

Heinert v. Bank of Am. N.A., No. 20-0691, 2020 U.S. App. LEXIS 35733 (2d Cir. Nov. 13, 2020)................................................................................................................ 49

Hernandez v. Coca Cola Refreshments USA, Inc., No. 12 Civ. 234(BMC), 2013 U.S. Dist. LEXIS 172400, 2013 WL 6388654 (E.D.N.Y. Dec. 6, 2013) .................................... 12

In re Corn Exch. Bank Tr. Co., 87 N.Y.S.2d 675 (Sup. Ct. 1948) .............................. 33

In re Mankin, 88 A.D.3d 717 (2nd Dep't 2010) ............................................................. 29

In re Sharp Int'l Corp., 403 F.3d 43 (2d Cir. 2005)....................................................... 49

In re Will of Fiscus, 45 A.D.2d 235 (4th Dept. 1974) ................................................... 33

In re. Water Rights of Tonko v. Mallow, 154 P.3d 397 (Colo. 2007).......................... 18

Khaldei v. Kaspiev, 135 F. Supp. 3d 70 (S.D.N.Y. 2015)............................................. 30

Krys v. Pigott, 749 F.3d 117 (2d Cir. 2014). ........................................................... 48

LNC Invs., Inc. v. First Fidelity Bank, 173 F.3d 454 (2d Cir. 1999) ........................... 38

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ............................................................ 10, 21

Matter of Bloomingdale, 48 A.D.3d 559 (2nd Dept. 2008)........................................................ 32

Matter of McCormick, 304 AD2d 759 (2003).............................................................................. 33

Matter of Niles, 113 NY 547 (1889 ........................................................................................... 33

McSpedon v. Levine, 2015 NY Slip Op 32821(U), ¶ 21 (Sup. Ct. 2015), affirm'd by McSpedon
v. Levine, 158 A.D.3d 618 (2nd Dept. 2018)........................................................................ 49

McSpedon v. Levine, 72 N.Y.S.3d 97 (N.Y. App. Div. 2018)...................................................... 29

Mercury Bay Boating Club, Inc. v. San Diego Yacht Club, 76 N.Y.2d 256 (1990) .................... 31

Mhany Mgmt.. Inc. v. Cty. of Nassau, 819 F.3d 581 (2d Cir. 2016)........................................... 22

Nordwind v. Rowland, 584 F.3d 420 (2d Cir. 2009).................................................................... 39

Oster v. Kirschner, 77 A.D.3d 51 (2010)). ................................................................................. 48

Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, 446 F. Supp. 2d
163 (S.D.N.Y. 2006)). ......................................................................................................... 49

Point Prods. A.G. v. Sony Music Entm't, Inc., 215 F. Supp. 2d 336 (S.D.N.Y. 2002).......... 38, 44

RSL Communs. PLC v. Bildirici, 649 F. Supp. 2d 184 (S.D.N.Y. 2009) ....................... 38, 39, 44

Richards v. Jefferson Cty., 517 U.S. 793 (1996) ........................................................................ 15

Rubens v. Mason, 527 F.3d 252 (2d Cir. 2008)........................................................................... 12

S.O.V. v. People in Interest of M.C.. 914 P.2d 355 (Colo. 1996) (en banc)). ............................. 13

Salazar v. State Farm Mutual Automobile Insurance, 148 P.3d 278 (Colo. App. 2006)............. 20

Santos v. Murdock, 243 F.3d 681 (2d Cir. 2001) (per curiam). .................................................. 10

Sea-Land Servs. v. Gaudet, 414 U.S. 573 (1974) ....................................................................... 16

Soc'y of Plastics Indus. v. Cty. of Suffolk, 77 N.Y.2d 761 (1991) ............................................... 10

Transflo Terminal Servs., Inc. v. Brooklyn Res. Recovery, Inc., 248 F. Supp. 3d 397 (E.D.N.Y. 2017)......................................................................................................................................... 12

Trott v. Platinum Mgmt. (NY) LLC (In re Platinum-Beechwood Litig.), No. 18-cv-6658 (JSR), 2020 U.S. Dist. LEXIS 70416 (S.D.N.Y. Apr. 21, 2020) ......................................................... 49

Twin City Fire Ins. Co. v. Arch Ins. Grp., Inc., 143 A.D.3d 533 (1st Dept. 2006) ...................... 48

Warth v. Seldin, 422 U.S. 490, 499 (1975)..................................................................................... 21

Weininger v. Castro, 462 F.Supp.2d 457 (SDNY 2006) ................................................................ 23

Whiting v. Hudson Tr. Co., 234 N.Y. 394 (1923). ......................................................................... 10

Williams v. R.H. Donnelley, Corp., 368 F.3d 123 (2d Cir. 2004)................................................... 12

**Statutes**

28 U.S.C. §1738............................................................................................................................... 23
Fed. R. Civ. P. 56(a) ....................................................................................................................... 10

**Other Authorities**

2A Scott, Trusts § 170, at 311 [Fratcher 4th ed].......................................................................... 30
Restatement (Second) of Trusts § 170 ........................................................................................... 30
Restatement (Second) of Trusts, comment to §166(1) .................................................................. 30
Restatement (Third) of Trusts (Third) § 29 ................................................................................... 30
 Restatement (Third) of Trusts (Third) § 72 ................................................................................... 30
Restatement (Third) of Trusts (Third) § 76 ................................................................................... 30

**Constitutional Provisions**

Const. Art. IV § 1............................................................................................................................ 23

## **PRELIMINARY STATEMENT**

Remaining Defendants Anthony Dain, Cherie Wrigley, Esaun Pinto, and CPI Investigations Inc. (jointly "Defendants") are entitled to summary judgment on Plaintiffs' remaining causes of action because (1) Plaintiffs lack standing because they are collaterally estopped from asserting a legal interest in any of the funds in the Issue Trust and Supplemental Needs Trust ("SNT") (jointly the "Trusts"); and (2) even assuming Plaintiffs had a legal interest, Mr. Dain's conduct did not constitute a breach of fiduciary duty with respect to the Trusts (Counts 1-36). Additionally, no reasonable jury could conclude that Wrigley, Pinto, and CPI Investigations Inc. aided and abetted Dain (Counts 53 and 57).

First and foremost, the Court must accept the numerous factual findings and legal conclusions in the related Colorado matter that were rendered final on March 15, 2021 when the Colorado Supreme Court denied Bernard Black's request for *certiorari*. Among those final rulings is that the Plaintiffs have no legal interest in the funds Bernard placed in the Trusts. Specifically, Bernard's theft of the funds from his sister's conservatorship estate and his improper transfer of those assets to the Trusts "did not convert the assets from conservatorship assets into assets of the Trusts". <u>Black v. Black</u>, 482 P.3d 460, 475 (Colo. App. 2020), <u>cert den</u>. <u>Black</u>, 2021 Colo. LEXIS 191 (Colo. 2021)). Put another way, since Plaintiffs were never entitled to those assets in the first place, the fact that Bernard stole them and funded the Trusts with those assets does not provide Plaintiffs with a legal basis upon which to assert breach of fiduciary duty against Dain, let alone claim any damages.

Therefore, Plaintiffs are precluded from asserting claims concerning the assets in the Trusts because there is a final ruling in Colorado declaring that the assets in the Trusts are not

Trust assets, but rather Joanne's Conservatorship assets. The following Colorado Court of Appeals holdings related to the legal status of these assets have now been rendered final:

1. "Bernard's unilateral acts — seeking a Colorado conservatorship over Joanne and then improperly transferring assets from the conservatorship to out-of-state trusts — **did not convert the assets from conservatorship assets into assets of the Trusts**". <u>Black</u>, 482 P.3d at 475.

2. "[T]he funds Bernard diverted to the Trusts **were at all times assets of Joanne's conservatorship.**" <u>Black</u>, 482 P.3d at 482.

3. All funds diverted to both the Issue Trust and SNT were improperly transferred and remained assets of Joanne's Conservatorship Estate. <u>Id</u>.

4. Because all the funds Bernard diverted to the Trusts were at all times assets of Joanne's conservatorship and not the Trusts, expenditures from them are not subject to the limitations of the SNT trust instrument. <u>Id</u>.

These rulings render Plaintiffs' claims meritless due to lack of standing.

After Bernard illegally diverted Joanne's Conservatorship assets to the Trusts, he subsequently fought tooth and nail to persuade the Colorado courts that the assets he diverted rightfully belonged to the respective Trusts. His arguments were wholly rejected, with the Colorado Court of Appeals determining that his diversion of assets into the Trusts "did not convert the assets from conservatorship assets into assets of the Trusts" and such funds have remained "all times assets of Joanne's conservatorship." <u>Black</u>, 482 P.3d at 475, 482. The Colorado courts further declared that since the assets <u>in</u> the Trusts are not legally assets <u>of</u> the Trusts, the disposition of the assets is not dictated by the trust instruments. <u>Id.</u> at 482 ("Because we hold that the funds Bernard diverted to the Trusts were at all times assets of Joanne's conservatorship, we conclude that the expenditure requests were not subject to the limitations in the SNT instrument."). These findings are final and they were necessary to Colorado's determination that the trial court properly exercised jurisdiction and control over the assets that Bernard diverted from Joanne's Conservatorship Estate into the Trusts. <u>Id</u>.

As discussed in more detail below, the rulings in Colorado that the assets in the Trusts are legally Joanne's Conservatorship assets and not assets in which the Trusts, or the Plaintiffs as beneficiaries of both, have any interest, serves to preclude Plaintiffs from asserting standing in the instant action. As the Court well knows, "standing" requires, at a bare minimum, that a plaintiff demonstrate "an injury" of a "legally protected interest." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992); <u>Soc'y of Plastics Indus. v. Cty. of Suffolk</u>, 77 N.Y.2d 761, 772 (1991) (standing requires "injury in fact -- an actual legal stake in the matter being adjudicated").

The Colorado findings confirm Plaintiffs do not have any interests in assets in the Trusts, which precludes them from asserting they have suffered an injury as a result of Dain's conduct with respect to those assets. Accordingly, since Plaintiffs have no legal right to the assets in the Issue Trust and SNT, they have no legal right to assert claims based on Defendants' actions with respect to those assets.

With these rulings final, the Plaintiff beneficiaries are squarely precluded under the law from asserting any right to recovery:

> Money accepted by a trustee with knowledge that its acceptance is a theft never becomes of right a part of the trust estate. The beneficiary will not be heard in equity to insist that it shall be so regarded.

<u>Whiting v. Hudson Tr. Co.</u>, 234 N.Y. 394, 407 (1923).

This very sentiment was echoed by the Colorado Court and has since been rendered final: "Mr. Black is not entitled to rely on his receipt of the funds, as he obtained them by deception and **by extension, his children are not entitled to rely on their receipt of the funds in excess of the POD amounts given to them by Renata Black**." SOF ¶52(d) (emphasis added).

Accordingly, no reasonable jury could conclude that Dain's alleged conduct, which was solely related to retrieving Joanne's improperly diverted conservatorship assets, constituted breaches of fiduciary duty with respect to the Trusts and the Trusts' assets.

Second, as discussed at length below, even assuming the assets Bernard improperly diverted to the Trusts allowed Plaintiffs to assert rights over same, summary judgment is appropriate because no reasonable jury could conclude that Dain breached his fiduciary duties with respect to the Issue Trust and SNT.

Defendants are also entitled to summary judgment with respect to counts 53 and 57, alleging respectively that Wrigley and Pinto/CPI Investigations aided and abetted Dain's breach of fiduciary duty because no reasonable jury could conclude that (i) Dain committed an underlying breach of fiduciary duty with respect to either trust, (ii) Wrigley and Pinto/CPI Investigations exercised control over Dain, or (iii) Wrigley and Pinto/CPI Investigations had actual knowledge that any underlying breach of fiduciary duty was committed.

Finally, Defendants are also entitled to summary judgment on all of the aforementioned counts because Plaintiffs have failed to produce any evidence of damages.

## SUMMARY JUDGMENT STANDARD

As provided by the Court's September 21, 2021 decision granting summary judgment in the related matter of Black v. Wrigley, No. 16-CV-430 (CBA), 2021 U.S. Dist. LEXIS 206748, at *8-9 (E.D.N.Y. Sep. 21, 2021):

> A party is entitled to summary judgment if the pleadings and evidence that would be admissible at trial show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001) (per curiam). At the summary judgment stage, the court's task is not to resolve disputed issues of fact, but "to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "The role of the district court

is not to weigh the evidence and determine the truth of the matter, but rather to answer the threshold inquiry of whether there is the need for a trial.'" Transflo Terminal Servs., Inc. v. Brooklyn Res. Recovery, Inc., 248 F. Supp. 3d 397, 399 (E.D.N.Y. 2017) (quoting Anderson, 477 U.S. at 249).

The moving party carries the burden of demonstrating the absence of a material factual question. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In determining whether this burden has been satisfied, a court must "construe the facts in the light most favorable to the non-moving party and ... resolve all ambiguities and draw all reasonable inferences against the movant." Brod v. Omya, Inc., 653 F.3d 156, 164 (2d Cir. 2011) (quoting Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 126 (2d Cir. 2004)). Nevertheless, the nonmoving party cannot rest on speculations, conjectures, or denials but "must 'set forth specific facts showing that there is a genuine issue for trial.'" Rubens v. Mason, 527 F.3d 252, 254 (2d Cir. 2008) (quoting Fed. R. Civ. P. 56(e)). A genuine issue exists only where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. When reviewing the evidence submitted for a motion for summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). With that said, Rule 56 does not obligate the district court "to hunt through a record, especially a voluminous record" like the one here "to find buried gems that might save a party's case." Hernandez v. Coca Cola Refreshments USA, Inc., No. 12 Civ. 234(BMC), 2013 U.S. Dist. LEXIS 172400, 2013 WL 6388654, at *3 (E.D.N.Y. Dec. 6, 2013).

Id. at *8-9.

Here, summary judgment in favor of defendants is appropriate with respect to all of

Plaintiffs' causes of action because the record is devoid of support for each of their claims.

## ARGUMENT

## I (A)  COLLATERAL ESTOPPEL AND RES JUDICATA APPLY TO PLAINTIFFS' CLAIMS

Plaintiffs' Amended Complaint and the causes of action therein are premised on the

delusional theory that the funds Bernard placed into the Trusts were not stolen assets belonging

to Joanne.  Therefore, this first argument addresses the application of collateral estoppel (or

"issue preclusion") and res judicata (or "claim preclusion") pertaining to the Denver Probate Court's finding that Bernard committed civil theft.

As the Court previously quoted in its August 16, 2017 ruling on the Defendants' motions to dismiss[1]: "Collateral estoppel bars re-litigation of an issue if: '(1) the issue is identical to that actually adjudicated in a prior proceeding; (2) the party against whom estoppel is asserted is a party or in privity with a party in the prior proceeding; (3) there was a final judgment on the merits; and (4) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.'" D.E. 119 at 34 (quoting S.O.V. v. People in Interest of M.C.. 914 P.2d 355, 359 (Colo. 1996) (en banc)).

Here, all four elements are satisfied to collaterally estop the Plaintiffs from asserting standing, i.e., that they have a legal right to any of the funds in the Trusts.

**(1) The Issue Presented Is Identical to An Issue Adjudicated in Colorado**

Each of Plaintiffs' allegations in the Amended Complaint are premised upon a single issue - their claim of right to funds in the Trusts - which the Colorado state court has already adjudicated.  The Denver Probate Court found that Bernard committed civil theft and that, as a result, the Plaintiffs have no legal interest in the funds in the Trusts.  Black ("Black III"), 482 P.3d at 474.

**(2) Plaintiffs Are In Privity With Bernard For Purposes of Collateral Estoppel**

Under Colorado law: "the concept of 'privity' embodies broad equitable principles, and it has been said that a finding of privity is simply a conclusion that something in the relationship of party and non-party justifies holding the latter to the result reached in litigation in which only the

---

[1] Defendants' previously asserted collateral estoppel and *res judicata* arguments in their motions to dismiss. These were denied by the Court on the grounds that, since the appeals of the Colorado judgment were pending, they were not final. DE 119 at 34, 36.

former is named." Foster v. Plock, 2017 CO 39, P24 (Colo. 2017) (internal quotations omitted).

The Foster Court explained further:

> Specifically, the question of when a second party is 'in privity" with a prior party requires (1) a comparison of the legal interests of each party and (2) an understanding of whether the second party's legal interests were protected by the prior party. We have articulated this privity test in a broader sense and have concluded that privity between a party and a non-party requires both a substantial identity of interests and a working or functional relationship in which the interests of the non-party are presented and protected by the party in the litigation.

Id. (internal quotations and ellipses omitted).

Here the record establishes that the Plaintiffs are in privity with Bernard because (i) their legal interests were and continue to be substantially the same, and (ii) their relationship is of a working and functional nature.

### (i) Bernard and the Plaintiffs Share Similar Legal Interests

First, Bernard, like Plaintiffs, is the primary beneficiary of the Issue Trust, as illustrated by the Issue Trust instrument. Issue Trust at Article II(D)(1)(a)-(b) ("The Trustee shall have the following express powers [...] (a) to pay, in the sole discretion of the Trustee, for meeting financial needs and medical expenses incurred by my son, BERNARD BLACK; (b) to pay, in the sole discretion of the Trustee, for the medical and financial expenses of my grandchildren, provided that during the lifetime of BERNARD BLACK, the Trustee shall make such payments only upon the request of BERNARD BLACK[...]") (SOF ¶25).

Bernard disclosed his entitlement to the Trusts' assets to his children via a September 16, 2012 email, which stated:

> The idea is to get everyone (the key person is your crazy Aunt Joanne) to disclaim their direct receipt of anything from Grandma, so everything passes through her will. That will mean 2/3 in a trust for Joanne, 1/3 in a trust for mostly you; **also me if I turn out to need it**, which I do not expect.

SOF ¶42 (emphasis added).  As a fellow beneficiary of the Issue Trust, he is also a remainder beneficiary of the SNT, just as Plaintiffs. Accordingly, Bernard's legal interests were and continue to be identical to Plaintiffs'.

Second, both Plaintiffs and Bernard had the same legal interest in establishing that Bernard's actions in Colorado were proper because such finding would entitle the Plaintiffs to the funds Bernard placed in the Trusts and, at the same time, would have exonerated Bernard of liability for civil theft.  SOF ¶29.  To put it another way, if Bernard achieved a successful result at trial in Colorado, the Plaintiffs would have been entitled to the money Bernard placed in the Trusts.  Thus their legal interests were aligned in achieving a favorable determination at trial.

Third, as trustee of the Issue Trust and SNT[2], Bernard represented the Plaintiff beneficiaries' interests in the Colorado litigation where he took the position that his actions did not amount to civil theft and the Trusts were legally entitled to the funds he diverted to them. Because his position as trustee of the Trusts was consistent with the Plaintiffs beneficiaries' position herein, privity exists for purposes of collateral estoppel.  See e.g. Bennet College v. United Bank of Denver, N. A., 799 P.2d 364 (1990) (plaintiff collaterally estopped from re-litigating issues already litigated by plaintiff's trustee in bankruptcy court).  See also: 210-220-230 Owners Corp. v. Arancio, 899 N.Y.S.2d 63, 63 (City Ct. 2009) (trustee/beneficiary relationship is the "type of relationship that would constitute privity as a matter of law"); Richards v. Jefferson Cty., 517 U.S. 793, 798 (1996) ("a judgment that is binding on a guardian or trustee may also bind the ward or the beneficiaries of a trust.");  Sea-Land Servs. v. Gaudet, 414 U.S. 573, 593-94 (1974) ("[N]onparties may be collaterally estopped from relitigating issues necessarily decided in a suit brought by a party who acts as a fiduciary representative for the

---

[2] Bernard has since been suspended as trustee of the Issue Trust and SNT via January 4, 2018 Order of the Denver Probate Court.  See SOF ¶ 69-70.

beneficial interest of the nonparties. In such cases, the beneficiaries are bound by the judgment with respect to the interest which was the subject of the fiduciary relationship; they are . . . bound by the rules of collateral estoppel in suits upon different causes of action") (internal citations and quotations omitted);

Fourth, a 2015 email from Bernard to his children evidences other interests shared by the Plaintiffs and Bernard, including: (i) Bernard successfully protected the stolen IRA funds for the Plaintiffs; (ii) Bernard expected the Plaintiffs to use the trust funds to pay any judgment that the Denver Probate Court issued against him[3]; and (iii) Bernard expected the Plaintiffs to use trust funds to pay his legal expenses, which the Plaintiffs are claiming as damages in the instant action. SOF ¶47. The email states:

> I need your help as I believe you all know Cherie and Tony are claiming in Colorado that I acted improperly in disclaiming assets that under your grandmother's will, would have gone directly to your Aunt Joanne, so that the assets went two-thirds to a trust for Joanne and one-third to an "Issue Trust" for you. They are arguing that the Issue Trust set up by your grandmother should be defunded and all amounts in it should be paid to Joanne.
>
> [...]
>
> One possible outcome is that the judge will defund the trust partly or fully. Even so I believe I will be able to protect the Roth IRAs that each of you received and the 1 percent shares that David and Ben received directly from Vanguard. Also, any money should go to Joanne's Supplemental Needs Trust, will be invested there, and will come back to the Issue Trust when she dies (unless it is spent, but that seems unlikely, as Joanne has ample funds to live on without this). So it will become retirement money for each of you.
>
> Another Possible outcome – which as of today may be more likely – is that the judge will leave the Issue Trust alone and assess damages against me personally. If that happens, the damages should be paid by the Issue Trust, which benefited from my actions [...]

---

[3] The Denver Probate Court subsequently issued a judgment of $4.6 million dollars, which is still unsatisfied. <u>Black</u>, 482 P.3d at 475.

> At this point, I need to ask for your support, including the following: Agreeing that the Issue Trust should reimburse me, as Trustee, for legal and accounting fees and other expenses I pay to defend the Trust against defunding, and for any damages that may be awarded by the court as a result of my actions in Colorado to obtain a disclaimer of Joanne Black's payable-on-death benefits, which benefited the Issue Trust.

> Agreeing to support settlement of the Colorado litigation [...] Agreeing to join litigation against Anthony Dain [...] seeking compensation for legal expenses and other damages caused by his efforts in Colorado to defund these trusts, in breach of his fiduciary duty to these trusts.

SOF ¶47.

Fifth, Bernard has controlled settlement negotiations pertaining to all outstanding Black family litigation, including this action to which he is not a party. The only discussions regarding settlement of the instant action have been contingent upon negotiating and resolving the $4.6 Million judgment charged against him for the civil theft. SOF ¶75. Therefore the Plaintiffs' legal interests are directly aligned with Bernard's for purposes of settlement.

<u>(ii) Bernard and the Plaintiffs Have a Functional Working Relationship</u>

Bernard and the Plaintiffs share a functional, working relationship. Bernard is the Plaintiffs' father and openly admits that he is participating significantly in the Plaintiffs' prosecution of the instant litigation, including drafting all the legal documents submitted to this Court on the Plaintiffs' behalf, and directing the Plaintiffs' overall strategy. SOF ¶75-78. Bernard is the only member of the Black family that has regularly attended telephonic court appearances pertaining to this matter despite the fact that he is not a party to the action. Mr. Schaalman, Plaintiffs' counsel, takes all direction from Mr. Black regarding actions he performs in this case on behalf of the Plaintiffs. Additionally, the deposition testimony of Plaintiff Sarah Black, the only Plaintiff deposed in this matter, provides several examples of how she had and continues to have a functional working relationship with her father. SOF ¶78.

For these reasons, there exists both a "substantial identity of interests" as well as a "working or functional relationship" between the Plaintiffs and Bernard, rendering Bernard and the Plaintiffs in privity for the purposes of collateral estoppel.  Foster, supra.

### (3) The Colorado Judgment Was Issued on the Merits and Is Now Final

"For the doctrine of issue preclusion to apply, a final judgment on the merits must have been entered in the prior proceeding. A judgment is final when it ends an action "leaving nothing further for the court to do in order to completely determine the rights of the parties involved in the proceeding."  In re. Water Rights of Tonko v. Mallow, 154 P.3d 397, 406 (Colo. 2007).

Here, the judgment was on the merits because it was issued after a bench trial, wherein the verdict was rendered against Bernard.  The judgment is final because the Colorado Court of Appeals affirmed the judgment and order via order dated April 9, 2020 (Black, 482 P.3d at 475) and the Colorado Supreme Court denied certiorari via order dated March 15,  2021 (Black, 2021 Colo. LEXIS 191 (Colo. 2021)). Further, there was no application for certiorari to the United States Supreme Court.  Therefore, the judgment is final for the purposes of collateral estoppel. Barnett v. Elite Properties of America, Inc., 252 P.3d 14, 22-23 (Colo. App. 2010).

### (4) Bernard Had a Full and Fair Opportunity to Litigate

Bernard had a full and fair opportunity to litigate the merits of his civil theft in the Colorado proceeding.  As Colorado Court of Appeals stated:

> To determine whether a party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the previous proceeding, the following factors are considered: (1) whether the remedies and procedures of the first proceeding are substantially different from the proceeding in which collateral estoppel is asserted, (2) whether the party against whom collateral estoppel is asserted had sufficient incentive to litigate vigorously, and (3) the extent to which the issues are identical.

Grynberg v. Arkansas Oklahoma Gas Corporation, 116 P.3d 1260, 1265 (Colo. App. 2005).

Here, the Denver Probate Court and this Court share the same comparable procedures and remedies that all court forums possess, and are therefore the same. Id. Bernard's incentive to vigorously litigate is established by the gravity of the charge he was facing (civil theft) and the $4.6 million at stake. Bernard was represented by counsel in Colorado and confronted all witnesses put forth at trial; and the extent to which Bernard has pursued his appeal leaves no question as to his incentive and vigor.

Lastly, as explained above, the issue subject to collateral estoppel – that the funds are in the Trusts as a result of Bernard's civil theft – is identical to the issue determined at the trial in Colorado. Therefore the record establishes that Bernard had a full and fair opportunity to litigate in the prior proceeding. See Goldsworth v. American Family Mutual Insurance Company, 209 P.3d 1108, 1118-19 (Colo. App. 2008).

**(5) Equitable Considerations Mandate the Application of Collateral Estoppel**

In addition to elements analyzed above, the equities of the situation dictate the application of collateral estoppel on this issue. Permitting Bernard to vicariously re-litigate his civil theft trial through his children (which is the likely purpose of this action), would provide Bernard an opportunity to attack the integrity of the Denver Probate Court's civil theft finding and the correlating judgment against Bernard for $4.5 Million. It could upset the fundamental premise on which countless other court actions, orders, and decisions have operated, and would likely have several unknown and unintended consequences that could result in another legion of lawsuits to supplement the myriad actions already commenced by the Black family. All of which would, of course, be to the detriment of Joanne.

It will also prejudice the Defendants by requiring them to participate in a second trial regarding Bernard's civil theft. Thus, the equitable considerations mandate the application of collateral estoppel on the issue of Bernard's civil theft.

### (6)  The Plaintiffs' Claims Are Barred By Res Judicata

The doctrine of res judicata (or "claim preclusion") also mandates dismissal of Plaintiffs' claims.  "For a claim in a second judicial proceeding to be precluded by a previous judgment, there must exist: "(1) finality of the first judgment, (2) identity of subject matter, (3) identity of claims for relief, and (4) identity or privity between parties to the actions." Argus Real Estate, Inc. v. E-470 Pub. Highway Auth.. 109 P.3d 604, 608 (Colo. 2005)." DE 119 at 36.

Here, the above-analysis pertaining to the application of collateral estoppel applies to satisfy the elements of res judicata regarding finality, subject matter, and privity.  With respect to the identity of claims, Colorado uses a "transactional approach" described as:

> The same claim or cause of action requirement is bounded by the injury for which relief is demanded, and not by the legal theory on which the person asserting the claim relies.  In addition, claim preclusion also bars a litigant from splitting claims into separate actions because once judgment is entered in an action it 'extinguishes the plaintiff's claim including all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

Salazar v. State Farm Mutual Automobile Insurance, 148 P.3d 278, 280-81 (Colo. App. 2006) (quoting Argus Real Estate, Inc.,109 P.3d at 608-09.

Here Plaintiffs' claims stem from the exact same transaction as those in the Colorado proceedings in that they ask the Court here to find the inverse of exactly what the Denver Probate Court concluded, that Bernard did not commit civil theft.  In finding that Bernard committed civil theft, the Denver Probate Court also drew the necessary conclusion that Plaintiffs are not entitled to any of the Trust funds, stating:  "Mr. Black is not entitled to rely on

his receipt of the funds, as he obtained them by deception and by extension, his children are not entitled to rely on their receipt of the funds in excess of the POD amounts given to them by Renata Black." SOF ¶52(d). Therefore, the doctrine of *res judicata* bars Plaintiffs' claims in the instant action.

## I (B)   PLAINTIFFS LACK STANDING BECAUSE THEY ARE PRECLUDED FROM ASSERTING A LEGAL INTEREST IN ANY OF THE ASSETS IN THE TRUSTS AND THE PROBATE EXCEPTION BARS PLAINTIFFS' CLAIMS

Here, Plaintiffs lack standing for two reasons: First, Plaintiffs have no right to or interest in, the assets of the SNT or the Issue Trust (SOF ¶¶52(d), 62) and, thus, have no standing to pursue damages for any purported depletion of those assets. As stated above, Plaintiffs' are collaterally estopped from arguing to the contrary. Second, much of Plaintiffs' claimed damages constitute litigation and accounting expenses incurred by Bernard and Samuel Black, which claim this Court has already dismissed for lack of standing.

This Court set out the legal standard for standing in its August 16, 2017 Memorandum Order, D.E. 119, p.28: "To satisfy the '"irreducible constitutional minimum"' of standing," a plaintiff must demonstrate (1) a personal injury-in-fact (2) caused by the challenged conduct of the defendant and (3) which a favorable decision will likely redress. Alliance for Open Soc'y Int'l Inc. v. U.S. Agency for Int'l Dev.. 651 F.3d 218, 228 (2d Cir. 2011) (quoting Lujan,. 504 U.S. at 560-61). Unlike the 'immutable requirements of Article III," the "prudential principles that bear on the question of standing' are 'judicially self-imposed limits on the exercise of federal jurisdiction,' and may be altered. Bennett v. Spear, 520 U.S. 154, 162 (1997) (internal quotation marks omitted). One prudential limit on standing is the principle that a plaintiff may ordinarily assert only his own legal rights, not those of third parties. Warth v. Seldin, 422 U.S. 490, 499 (1975). 'The burden of establishing standing falls on the plaintiff, as it 'functions to

ensure, among other things, that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake.' Mhany Mgmt.. Inc. v. Cty. of Nassau, 819 F.3d 581, 603 (2d Cir. 2016) (quoting Friends of the Earth. Inc. v. Laidlaw Envtl. Servs. (TOC) Inc., 528 U.S. 167, 191 (2000))."

Here, because Plaintiffs have no right to, or interest in, the assets of the SNT or the Issue Trust they have not suffered a personal injury-in-fact; nor are they asserting any legal rights of their own. Thus, they have neither constitutional nor prudential standing to bring their damage claim.

As mentioned above, the Colorado Court of Appeals affirmed the Denver Probate Court's finding that all of the funds in the SNT and the Issue Trusts are assets that were sourced from Joanne Black's paid on death funds. Black ("Black III"), 482 P.3d at 474. In Black III, the Colorado Court of Appeals held, "that the funds Bernard diverted to the Trusts were at all times assets of Joanne's conservatorship…" Id. at 482. The Black III court held that the diverted funds are not assets of the Trusts, stating:. "We agree with the probate court's analysis that Bernard's unilateral acts — seeking a Colorado conservatorship over Joanne and then improperly transferring assets from the conservatorship to out-of-state trusts — did not convert the assets from conservatorship assets into assets of the Trusts." Id. at 475 The Colorado Court of Appeals further held that the Denver Probate Court maintains *in rem* jurisdiction over those assets. Id. at 467, 474-475 ("Thus, given that Bernard improperly diverted assets from a Colorado conservatorship to out-of-state trusts, the probate court may continue to exercise in rem jurisdiction over those assets.") This *in rem* jurisdiction, the court held, "grants [the Probate Court] court authority 'to affect the interests of all persons in the trust property.'" Ibid., (internal citations omitted.)

Article IV, section 1 of the United States Constitution directs that "Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State." Thus, Court must give full faith and credit to the Colorado Courts' findings. See also, Weininger v. Castro, 462 F.Supp.2d 457, 465, 476 (SDNY 2006) ("all of the findings of fact and conclusions of law therein, are entitled to full faith and credit.") As the Colorado Court of Appeals held, the Probate Court's exercise of *in rem* jurisdiction affects the interests of all persons in the trust property. As applied to this case, it means that Plaintiffs have no interest in any of the assets in the Trusts.

Because Plaintiffs have no right or interest to any of the SNT or Issue Trust assets, they have no claim for damages as the result of any purported loss of those assets. Plaintiffs claim for damages is summarized in their Amended Complaint. (D.E.. 53, p. 247, ¶ 1496). They claim damages as, "direct beneficiaries of the Issue Trust, as beneficiaries of the Issue Trust, which is the remainder beneficiary of the SNT, and as remainder beneficiaries of the SNT … either directly or through compensation to the Issue Trust [and] the SNT, … for the losses [Dain] imposed on them through his defunding efforts and through his actions to deny them access to their own money." [4]

Because Plaintiffs have no right to any of the assets in the Issue Trust or the SNT, i.e., the assets are not "their own money," Plaintiffs cannot have suffered damages irrespective of Mr. Dain's "defunding efforts and through his actions to deny them access to" the Trusts' assets.

---

[4] Plaintiff Katherine Black similarly described the damages claim as the, "usual damages calculations, where my children would have been had Dain and Wrigley not -- had Dain not breached his fiduciary duties and not started defunding the trust, and not engaged in this ruinous family litigation; and if, all other Defendants had not aided him in this process." (Katherine Black Dep., 8/5/19, p. 254:19-24.)

In its Memorandum Order of August 16, 2017 (Doc. 119), this Court put it as, "Plaintiffs claim that Dain breached his fiduciary duties to both the SNT and the Issue Trust by taking actions which depleted the assets of those trusts. (Am. Compl. 32, 1496.)"

Plaintiffs' "damages expert" in this case, Melinda Harper, confirms that Plaintiffs' claim for damages is not cognizable. First, Ms. Harper is clear that she has no opinion whether there even are any damages. SOF ¶79. Rather, her assignment was accounting for spending: "to summarize the spending by Mr. Dain. And when I say spending, that includes actual money spent, monies that are authorized to be spent but not yet dispersed that we were aware of. And to summarize spending by the Black group for legal costs and fees and costs and the related interest for loans that were taken out for that spending. And then to update the estate accounting that we have been working on, that we prepared initially and have been updating periodically. We were asked to update it for this particular report." SOF ¶80.

With respect to the spending by Mr. Dain, i.e., "money spent and monies authorized to be spent but not yet disbursed," by Mr. Dain, Harper was "looking at orders that authorized spending." SOF ¶81. In other words, Harper was confirming that **all money spent or to be disbursed by Mr. Dain was approved and authorized by the Denver Probate Court**. Id.

The Colorado Court of Appeals affirmed that the Denver Probate Court had authority to authorize these distributions from the SNT to pay Joanne's professional fees because those funds "were at all times assets of Joanne's conservatorship." Black ("Black III"), 482 P.3d at, 471. Again, this Court must afford full faith and credit to the Colorado Courts' findings. Const. Art. IV § 1. And, that full faith and credit requires this Court to give the findings and judgment of the Colorado Courts the same effect they would have "by law or usage" in Colorado. 28 U.S.C. §1738. Because the Colorado Courts have approved and authorized Mr. Dain's spending, this Court may not allow Plaintiffs to undermine that approval and authorization by claiming Mr. Dain's spending constitutes damages to them.

Moreover, if this Court were to allow Plaintiffs to seek from Mr. Dain as damages the same amounts the Colorado Courts have approved and authorized as spending within his duties as Trustee, this Court would be interfering with the Colorado Courts' ability to administer Joanne Black's Conservatorship estate. Essentially, this Court would be undermining the Denver Probate Court's ability to instruct Mr. Dain to spend money on behalf of the Protected Person. While Plaintiffs may couch their claim as one seeking *in personam* damages, allowing Plaintiffs to claim from Mr. Dain as damages, the very same amounts the Denver Probate Court has approved and authorized would require this Court to, "involve itself in the administration of Joanne's conservatorship estate…," something this Court found inappropriate under the probate exception. D.E. 119, p. 18.

With respect to Harpers' summarizing of the "spending by the Black group for legal costs and fees and costs and the related interest for loans that were taken out for that spending," this Court has already dismissed Plaintiffs' claims for the expenses Bernard and Samuel Black incurred, whether acting as Executor of the Estate of Renata Black or as Trustees of the Issue Trust or SNT. In its Memorandum Order of August 16, 2017, this Court dismissed Plaintiffs claims "seek[ing] to recover damages on behalf of Bernard and Samuel Black, including: litigation and accounting expenses incurred by Bernard to defend against Dain's actions[5]; litigation expenses incurred by Bernard and Samuel Black as trustees of the Issue Trust and SNT to defend against Dain's actions; interest on student loans to Samuel Black, for which Dain prevented payment of interest and principal; and transaction costs and interest expense incurred by Bernard on loans used to pay litigation and accounting expenses. (See, e.g., ¶1497)" D.E. 119, p. 31-33, 50.

---

[5] Paragraph 1497 of the Amended complaint describes these expenses as those of Bernard as Executor.

Harper confirmed that this category of spending consists of, "[s]pending on behalf of the trusts by Bernard Black personally or by Bernard and Samuel Black jointly as majority trustees of the SNT and sole trustees of the issue trust." SOF ¶83. As Harper also confirmed, the Trusts have not paid any of these amounts. SOF ¶84. Bernard Black also testified that these are expenses he personally incurred; however, the Plaintiffs are still claiming such expenses as damages. SOF ¶85. Thus, this claim for damages has already been dismissed by the Court in its Memorandum Order of August 16, 2017 (Doc. 119, pp. 30-33.)[6].

The last task that Harper was assigned, to update the Renata Black Estate accounting does not generate cognizable damages for Plaintiffs. First, Plaintiffs' claims for damages for litigation and accounting expenses Bernard incurred as Executor of his mother's estate were dismissed for lack of standing. (D.E.. 119, pp. 30-33, 46, fn. 15, 49, 50.) Second, the Colorado Court of Appeals found, "Mr. Black's own accounting expert concluded that Mr. Black had failed to distribute even two-thirds of the assets to Joanne, leaving a "shortfall" owed by Mr. Black.[7] According to the independent accounting expert, the estate no longer had sufficient assets to cover the shortfall. (Mr. Black admitted to paying his personal income taxes, his

---

[6] In an attempt to gain purchase of these payments as damages in this case, Bernard and Samuel entered into loan agreements with Katherine Black (nee Litvak) and Katherine's cousin, Olga Dal, without notice to Mr. Dain, and purporting to obligate the SNT and Issue Trusts to pay. They then immediately agreed to default judgments. In a scathing rebuke to Bernard, Samuel and Katherine, the Appellate Court of Illinois vacated their default judgments as a product of fraud. Litvak v. Black, 147 N.E.3d 835 (2019). As to Olga Dal's agreed judgment, the District Court for the Northern District of Illinois, recently held: "The Interpleaded Assets were stolen from Joanne. That is the final order of the DPC, which concluded that Bernard had committed civil theft by disclaiming the POD assets that now make up most or all of the Interpleaded Assets. Black I, 422 P.3d at 605–09. Another final order from the Colorado Court of Appeals held that "Bernard's unilateral acts of transferring assets from Joanne's conservatorship to the Trusts do not alter the essential nature of the funds as conservatorship property." Black III, 482 P.3d at 477. Indeed, *Black III* established that the POD assets "are not the rightful property of the Trusts." Id. at 480. Thus, at this stage it would be inappropriate to allow Dal to collect against the Interpleaded Assets, which consist of the POD assets as transferred to the Trusts by Bernard." JP Morgan Chase Bank v. Black, Case No. 1:18-cv-03447, Doc. 197, p. 23. This Court may take judicial notice of the Illinois District Court's Order. Fed.R.Evid. 201(b)(2).

In any event, irrespective of whether Bernard and Samuel Black reduced their spending to loan obligations, they are still expenses incurred by Messrs. Black and, thus, cannot be asserted by Plaintiffs. (Doc. 119, pp. 30-33.)

[7] Bernard's accounting expert in Colorado was Ms. Harper, Plaintiffs' damages expert here. SOF ¶79, n. 1.

children's private school tuition, and his older children's student loan bills from the estate.)" Black v. Black ("Black I"), 422 P.3d 592, 608 (2018), cert.denied in Black v. Black, 2019 Colo. LEXIS 381, 2019 WL 2178077 (Colo., May 20, 2019). Plaintiffs' expert Harper concedes that Bernard, as Executor, shorted Joanne Black more than $200,000. SOF ¶87. Defendants' expert, Joseph Gunteski also opines that Joanne did not receive all she should have from Renata Black's Estate. SOF ¶88.

Thus, Plaintiffs cannot have suffered damages from any purported actions by Mr. Dain incurring estate expenses. Plaintiffs already received more than they were entitled to from the Estate of Renata Black, and there are no estate assets sufficient to cover that shortfall, let alone to distribute to the Issue Trust for Plaintiffs further benefit. If anything, Plaintiffs owe Joanne for their improper windfall, and they have any claim for harm it should be to directed to their father, Bernard, as Executor and Trustee for exposing them to this liability.

Moreover, one reason Harper does not opine that Estate expenses are potential damages is because among the expenses she accounted for were normal expenses of estate administration. SOF ¶86.

Finally, even if Plaintiffs had standing to assert Bernard and Samuel's spending as damages, their claim would be entirely speculative. Since the Trusts have not actually paid out anything and, thus, have not realized any actual loss, Plaintiffs claim for damages would first require a determination whether the Trusts are obligated to reimburse Bernard and Samuel, directly or through their lenders, Katherine Black and Olga Dal. Plaintiffs could not rely on the tautology that the expenses were on the Trusts' behalf merely because Bernard or Katherine Black say they were. In other words, Bernard, Samuel and Katherine cannot obligate the Trusts merely at their behest. Rather, the expenses incurred by Bernard and Samuel would first have to

be scrutinized and approved by the Denver Probate Court as it has jurisdiction over the Trusts, the Trusts' assets and Bernard.[8] <u>Black, supra</u>, 482 P.3d at 472-476.

## II. DEFENDANT DAIN IS ENTITLED TO SUMMARY JUDGMENT BECAUSE NO REASONABLE JURY COULD CONCLUDE DAIN BREACHED HIS FIDUCIARY DUTIES

Plaintiffs allege in counts 1-36 that Dain, in his role as co-trustee to the Issue Trust and SNT, breached his fiduciary duties to Plaintiffs as beneficiaries of the Issue Trust (Counts 1-14) and as remainder beneficiaries of the SNT (Counts 15-36).

As a preliminary matter, both Trusts are governed by New York law. <u>See</u> Issue Trust, at Article V, Section 3 ("The Trustee shall have all powers granted fiduciaries under the New York Estates Powers and Trusts Law as amended to the date of this Trust"); SNT, at Article VI, Section 3 (same language); <u>and</u> Zaluda Dep. at 21:4-10 (Q: Okay. So this [Issue Trust] would be a New York trust? A: It would be the trustee's actions would be governed by New York law. Q:Okay. And again, just to be clear, you're not opining on New York law? A: That is correct. I was not asked to opine on New York law.).

"To state a claim for breach of fiduciary duty under New York law, a plaintiff must show: (1) the existence of a fiduciary duty; (2) the defendant's breach of that duty; and (3) damages." <u>Blondell v. Bouton</u>, No. 17-CV-372 (RRM) (RML), 2019 U.S. Dist. LEXIS 238347, at *29-30 (E.D.N.Y. Mar. 29, 2019) (internal citations omitted); <u>see also McSpedon v. Levine</u>, 72 N.Y.S.3d 97, 101 (N.Y. App. Div. 2018) ("In order to establish a breach of fiduciary duty, a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant, and damages that were directly caused by the defendant's misconduct.") (collecting cases). A trustee

---

[8] Especially given that the Colorado Court of Appeals affirmed the Probate Court's January 4, 2018 suspension of Bernard as a Trustee. <u>Black v. Black, supra</u>, 482 P.3d at 471, 484.

owes a fiduciary duty to the trust beneficiaries. <u>In re Mankin</u>, 88 A.D.3d 717, 718 (2nd Dep't 2010) (trustee to the trust beneficiaries).

Here, Defendants are entitled to summary judgment because no reasonable jury can conclude that (1) Dain's alleged conduct constituted a breach of fiduciary duty; (2) Dain's alleged conduct caused any identifiable injury to the Plaintiffs; and (3) Plaintiffs have failed to produce evidence to substantiate their allegations.

## A.   No Reasonable Jury Could Conclude That Dain's Conduct Constituted A Breach Of His Fiduciary Duties

The gravamen of Plainitffs' Second Amended Complaint is that Dain breached his fiduciary duties as a co-trustee of the Trusts by taking action to remove the funds placed in those Trusts by Bernard.  In this regard, Plaintiffs assert that Dain's conduct in attempting to "defund" the Trusts constitute violations of Dain's fiduciary duty of loyalty (Counts 1-8 related to the Issue Trust and Counts 17-27 related to the SNT), his duty to defend the Trusts (Count 9 related to the Issue Trust and Count 28 related to the SNT); his duty to obey the Trusts' instruments (Counts 12-13 related to the Issue Trust and Counts 31-33 related to the SNT); his information-based duties (Counts 10-11 related to the Issue trust and Counts 29-30 related to the SNT); his duty of care and prudence (Count 14 related to the Issue trust and Counts 34-36 related to the SNT); and his duty of impartiality (Counts 15-16 related to the SNT).  All of these alleged breaches are based on Dain successfully uncovering Bernard's theft from Joanne and efforts to rectify that theft.

It violates all forms of common sense for Plaintiffs to assert that Dain's conduct in catching the thief could, under any circumstances, constitute a breach of his fiduciary duties to Plaintiffs.  Plaintiffs' entire theory of liability is premised on their claim of entitlement to the stolen funds, a theory that is not supported by the law.

Under New York law, a fiduciary owes a "duty of undivided and undiluted loyalty to those whose interests the fiduciary is to protect." <u>Khaldei v. Kaspiev</u>, 135 F. Supp. 3d 70, 83 (S.D.N.Y. 2015) (quoting <u>Birnbaum v. Birnbaum</u>, 73 N.Y.2d 461, 466 (1989)). The duty of loyalty precludes "not only blatant self-dealing, but also requir[es] avoidance of situations in which a fiduciary's personal interest possibly conflicts with the interest of those owed a fiduciary duty." <u>Khaldei,</u> 135 F. Supp. 3d at 83 (quoting <u>Birnbaum,</u> N.Y.2d at 466). Accordingly, in the context of a trust, a trustee has a duty "to administer the trust solely in the interest of the beneficiary." <u>Blondell v. Bouton,</u> No. 17-CV-372 (RRM) (RML), 2019 U.S. Dist. LEXIS 238347, at *35-37 (E.D.N.Y. Mar. 29, 2019) (citing <u>Wallens,</u> 9 N.Y.3d at 122). New York Courts "have described a fiduciary's duty as requiring [n]ot honesty alone, but the punctilio of an honor the most sensitive." <u>Mercury Bay Boating Club, Inc. v. San Diego Yacht Club,</u> 76 N.Y.2d 256, 270 (1990) (internal citations omitted)<i>;</i> <u>see also,</u> 2A Scott, Trusts § 170, at 311 [Fratcher 4th ed]; Restatement [Second] of Trusts § 170). "This strict standard is the usual and appropriate measure of a trustee's fiduciary obligations because the trustee must administer the trust for the benefit of the beneficiaries and cannot compete with the beneficiaries for the benefits of the trust corpus (2A Scott, Trusts § 170 [Fratcher 4th ed]; Restatement [Second] of Trusts § 170)." <u>Id</u>.

However, despite this general duty, "like most legal principles, the duty of loyalty is not blind nor is it without common sense limits." "[T]he duty of loyalty is not so rigid as to be beyond all common sense limitations. Put another way, the duty of loyalty does not require, nor indeed permit, a trustee to engage in unlawful, unsupportable and patently unreasonable conduct. This is so even if the purported purpose of the conduct is to retain funds in a trust to which it has no lawful claim." <u>Id</u>. at 13-14; see also the report of John Farinacci, attached as Ex. G to the Fantone Decl., at 12. For example, a trustee "is not under a duty to the beneficiary to do an act

which is criminal or tortious." Restatement of Trusts (Second), comment to §166(1). These principles are also carried over to the Restatement of Trusts (Third) § 29, 72 and 76." Id. at 13.

Here, no reasonable jury could conclude that Dain breached his fiduciary duty of loyalty to the Plaintiffs when he discovered what he believed was evidence of Bernard's misappropriation, and, by virtue of an independent forensic accounting and hearing before a Colorado Probate Court, his beliefs were confirmed by not just the trial court (SOF ¶52) , but also by the Colorado Court of Appeals; Black ("Black III"), 482 P.3d at 474.  Put another way, even if the Colorado courts had somehow gotten this decision wrong, it cannot be said that Dain's beliefs and actions in conformity therewith, constituted a breach of his fiduciary duties.

Indeed, the Colorado court found that "Ms. Wrigley and Mr. Dain have been instrumental in bringing Mr. Black's defalcations to the attention of the Court." SOF ¶52(c).  Ironically, had Dain failed to actively attempt to remove those illegally diverted funds, the Plaintiffs would have a legitimate claim for breach of fiduciary duty against him, as they do against Bernard Black, their father.

Further, as opined by Defendant's trust expert: "it would have been against standard customs and practices of a trustee to assist Bernard in retaining Joanne's assets in a trust under which she had no interest. Joanne was, in effect, a legitimate creditor of the trust by virtue of her claim to recover the funds that Bernard purportedly disclaimed into the Issue Trust in breach of his fiduciary duty to her. A trustee could no more defend the retention of the funds under such circumstances than he could had someone robbed a bank and placed the stolen money into the trust's account." Farinacci Report at 15.  Plaintiffs' expert on trusts has not offered any opinion to the contrary.  Nor could he, as he is not licensed in New York nor qualified as an expert to render an opinion on trusts governed by New York law.  SOF ¶89-90 (Q:Okay. So this [Issue

Trust] would be a New York trust? A: It would be the trustee's actions would be governed by New York law. Q:Okay. And again, just to be clear, you're not opining on New York law? A: That is correct. I was not asked to opine on New York law.)

Dain's objections to the Bernard's conduct and attempted removal of the funds he believed were stolen from Joanne was within the bounds of his fiduciary duties, especially in light of the fact that Bernard's conduct exposed Dain as a co-trustee, and Plaintiffs as beneficiaries, to serious claims of aiding and abetting in Bernard's theft, misappropriation, negligence, and breach of fiduciary duty from Joanne's Conservatorship Estate.  See Matter of Bloomingdale, 48 A.D.3d 559, 561-62 (2nd Dept. 2008) ("Cofiduciaries are regarded in law as one entity. Where a fiduciary has the means to know of a cofiduciary's acts, and has assented or acquiesced in them, the fiduciary is bound by those acts and jointly liable for them") (citing Matter of Niles, 113 NY 547 (1889); Matter of McCormick, 304 AD2d 759 (2003));  Atl. Cotton-Mills v. Indian Orchard Mills, 147 Mass. 268, 275, 17 N.E. 496, 502 (1888) ("The rule is general, that, if one who assumes to do an act which will be for the benefit of another, commits a fraud in so doing, and the person to whose benefit the fraud will enure seeks, after knowledge of the fraud, to avail himself of that act, and to retain the benefit of it, he must be held to adopt the whole act, fraud and all, and to be chargeable with the knowledge of it, so far at least as relates to his right to retain the benefit so secured.) (emphasis added)[9]

Therefore, pursuant to his fiduciary duty to defend the Issue Trust and shield the beneficiaries (Plaintiffs herein) from legal claims like those brought against Bernard, Dain properly sought to rid the Issue Trust of the stolen funds by returning them to Joanne Black's

---

[9] The argument can be made that, knowing that the Colorado rulings are final, and that those funds in the Issue Trust were stolen, Plaintiffs' continued prosecution of the instant lawsuit is not only frivolous, but manifests their intent to retain stolen property.

Conservatorship Estate. <u>In re Corn Exch. Bank Tr. Co</u>., 87 N.Y.S.2d 675, 676 (Sup. Ct. 1948) ("A trustee is under a duty to defend the trust even against the settlor, provided, of course, that such a defense is at least colorable."); <u>In re Will of Fiscus</u>, 45 A.D.2d 235, 239 (App. Div. 4th Dept. 1974) (a trustee was under an "absolute and positive duty to defend the life of the trust whenever it is assailed, if the means of defense are known to him") (internal citations and quotations omitted).

Dain's deposition testimony corroborates that he believed he was protecting the beneficiaries: "I have protected, I believe, Joanne in the Supplemental Needs Trust, the Issue Trust as beneficiary, the beneficiaries of the Issue Trust, by trying to keep them from being complicit or implicated in Bernard's theft and transfers of money that they're holding improperly, including that they're holding personally improperly in the Roth IRA." SOF ¶91.  In light of this evidence, and none to the contrary, no reasonable jury could conclude that Dain breached his fiduciary duty of loyalty to the Plaintiff beneficiaries.

For these reasons, Defendants are entitled to summary judgment on Count 1.  These same reasons also support dismissal of all Counts based on allegations of Dain's conduct that were in furtherance of removing the misappropriated assets from the respective Trusts.  This included dismissal of:

### (a) Counts alleging Dain Breached his Fiduciary Duties By Efforts To Defund the Trusts

    (i)     **Count 17** (alleging Dain breached his duty of loyalty to the remainder beneficiaries through his "efforts to defund the SNT". Compl. at ¶775.))

    (ii)     **Count 15** (alleging Dain breached his duty of impartiality to the Plaintiffs as remainder beneficiaries of the SNT through efforts to defund the SNT (Compl. at ¶747-751));

**(b) Counts alleging Dain Breached his Fiduciary Duties By Dain's Failure To Defend the Trusts Against His Efforts To Defund Them**

    (i)    **Count 9** (alleging Dain breached his duty to defend the Issue Trust when "Dain did nothing to defend the Issue Trust against defunding efforts" and instead "actively led litigation to defund the Issue Trust, and blocked the efforts of the beneficiaries and other trustees to defend the Issue Trust." Compl. ¶633);

    (ii)    **Count 28** (alleging Dain breached is duty to defend the SNT against litigation to defund it.)

**(c) Counts alleging Dain Breached his Fiduciary Duties By Efforts To Prevent Beneficiaries From Using The Assets In the Trusts**

    (i)    **Count 2** (alleging that Dain used "his powers as a co-trustee to block all distributions from the Issue Trust" (id. ¶499); "sought and obtained a freeze on the Black Family Trusts in Colorado"(id. ¶500); that were to go to the Black Family Trusts – Dain "petitioned the Colorado court to also freeze the Estate" "[w]hen the beneficiaries attempted to use an alternate source of money for their defense – the funds in the Estate of Renata Black (id. ¶501); "petitioned the New York guardianship court to also freeze the Black Family Trusts" (id. ¶502); and "blocked the Issue Trust beneficiaries' access to Issue Trust assets" (id. ¶504));

    (ii)    **Count 4** (alleging that Dain breached his duty of loyalty to Plaintiff beneficiaries of the Issue Trust through using his trustee status to obtain private information about the Issue Trust and Plaintiffs, and using this information in litigation to defund the Issue Trust. Compl. ¶¶534-539. Plaintiffs assert that "[a]s a trustee, Dain received confidential communications about the beneficiaries' financial vulnerability, urgent need for money to pay student loans, and inability to finance litigation personally." Id. at ¶537. According to Plaintiffs, he then used this information to "block[] the beneficiaries' access to trust funds to defend against his attack or pay their own student loans, and rejected all reasonable settlement offers that the trust beneficiaries made." Id. at ¶538.

    (iii)    **Count 5** (alleging that Dain breached his duty by refusing "to approve spending the Issue Trust money for any purpose whatsoever" (id. at ¶552));

    (iv)    **Count 20** (alleging that Dain breached his duty of loyalty to the remainder beneficiaries of the SNT by blocking their access to SNT assets to "defend against Dain's litigation." Specifically, Count 20 alleges Dain beached this duty when he (1) "caused litigation to be brought in both New York and Colorado to defund the SNT" (Compl. at ¶813); (2) "used his powers as a

co-trustee to petition the Colorado court to freeze the assets of the SNT, for the express reason of preventing these from being used to defend against his defunding effort" (id. at ¶814); (3) "sought and obtained a separate freeze on the SNT in New York, again for the purpose of preventing these assets from being used to defend against Dain's attacks" (id. at ¶815); and (4) "petitioned the Colorado court and later the New York court to also freeze the Estate" (id. at ¶816));

**(v)**    **Count 22 (**alleging that Dain breached his duty of loyalty to the remainder beneficiaries of the SNT by using his position as a trustee of the Issue Trust to obtain private information about the remainder beneficiaries' financial circumstances, and used this information to block the remainder beneficiaries' "access to the trust funds to defendant against his attack or to pay their own student loans." Compl. at ¶¶842-843. Plaintiffs further allege that Dain also "misused confidential information about the financial position of his co-trustee, Samuel Black, to threaten him with litigation over SNT actions if Samuel did not resign as a co-trustee." Id. at ¶844).

**(d) Counts alleging Dain Breached his Fiduciary Duties by Refusing to Obey The Terms of the Respective Trust Instruments**

**(i)**    **Counts 3, 12 and 13** (alleging that "Dain's effort to defund the Issue Trust conflicts with the trust instrument, which contemplates use of Issue Trust funds to support the beneficiaries" (id. ¶521), and that "Dain used his veto power as a co-trustee to prevent the Issue Trust from hiring counsel to represent the trust and defend against his defunding effort, and to prevent his co-trustee or the beneficiaries from using Issue Trust assets to defend against his defunding effort (id. ¶522)); and Counts 12 and 13 (Compl. ¶¶695, 700, 709-714);

**(ii)**    **Counts 21** (alleging Dain breached his duty to obey the SNT trust instrument and settlor's intent by seeking to defund the SNT and obtaining court ordered freezes in Colorado and New York on the SNT assets so that the SNT would not be able to hire counsel to represent the SNT. Compl. at ¶¶828-833.

**(iii)**    **Count 31** (alleging Dain breached his fiduciary duty to obey the terms of the SNT trust instrument through his attempts to defund the SNT. Compl. at ¶1005)

**(iv)**    **Count 32** (alleging Dain breached his duty to obey the terms of the SNT trust instrument when he used SNT funds "to finance litigation against the SNT, the Issue Trust, and Bernard Black." Compl. at ¶1017-1025. Specifically, Plaintiffs assert that Dain violated this duty when (1) "Dain

sought an order authorizing him to use SNT funds to defend his sister Wrigley and her associate Pinto against a claim by the SNT trustees that Pinto and Wrigley stole and misappropriated funds from the SNT" (id. at ¶1022); (2) "Dain sought an order to use the SNT funds to defend himself in a lawsuit by one or more of the SNT, the Issue Trust, and the 2013 Trust, against Dain for breach of fiduciary duties" (id. at ¶1023); "Dain sought and obtained the authority to expend SNT funds to defend against a declaratory judgment action by the trustees of the Issue Trust, seeking to unfreeze the Issue Trust. (id. at ¶1024); "Dain sought and obtained authority to expend SNT funds to pursue Joanne Black's personal claim against Bernard Black" (id. at ¶1025).

**(e) Counts alleging Dain Breached his Fiduciary Duty To Segregate the respective Assets in the Trust from Joanne's Conservatorship Assets**

> *(i)* **Count 7** (alleging Dain breached his fiduciary duty to segregate the Issue Trust property from other property through "efforts to commingle the assets of the Issue Trust and personal assets of Joanne Black" (Compl. ¶587-601), including "repeatedly and falsely claimed that the assets in the Issue Trust belong to Joanne Black and should be handed over to her[...]" (id. at ¶591));

> *(ii)* **Count 24** (alleging Dain breached his duty to segregate and identify trust property through efforts to commingle Joanne Black's assets and the assets of the SNT when he "repeatedly and falsely claimed that valuable jewelry held by the SNT belongs to Joanne Black and should be handed over to Joanne Black." Compl. at ¶¶876-877; 883.)

**(f) Counts Alleging Dain Breached his fiduciary duties by seeking Court approval for spending from the SNT**

> (i) **Count 16** (alleging Dain breached such duty of impartiality through his efforts to expend SNT assets to benefit primary beneficiary at expense of remainder beneficiary (id. at ¶762-764))

> (ii) **Counts 19** (alleging that Dain breached his duty of loyalty to the remainder beneficiaries of the SNT when he demanded his co-trustees of the SNT resign. Compl. at ¶801;

> (iii) **Count 26** (alleging Dain breached his duty of loyalty to Plaintiffs as remainder beneficiaries of the SNT when Dain "s[ought] an order from the Denver probate court authorizing him to spend SNT funds, among other things, to defend his sister Wrigley and Pinto against the claims that they stole and misappropriated SNT funds." Compl. at ¶¶931);

    (iv)    **Count 27** (alleging Dain breached his duty of loyalty to Plaintiffs as remainder beneficiaries of the SNT when Dain "s[ought] an order from the Denver probate court authorizing him to spend SNT funds for his defense against a claim that he breached his fiduciary duty, including claims with regard to a separate trust, the Issue Trust." Compl. at ¶943).

    (v)    **Count 33** (alleging that Dain breached his duty to obey the terms of the SNT trust instrument by demanding that his co-trustees in the SNT to resign and "falsely claim[ing] to the New York guardianship court that Renata Black intended him to control the SNT" breached his duty to obey the trust instrument. Compl. at ¶¶1038-1040.) We also note that despite these allegations, the record reflects that Dain's co-trustees never resigned. Rather, Bernard was suspended as trustee of the SNT by the Colorado court, which ruling was upheld. Black v. Black, 482 P.3d at 484 ("we hold that the probate court properly suspended Bernard as a trustee of the SNT") Thus, no reasonable jury could conclude that Dain proximately caused the removal of his co-trustees from the SNT.

**B.    Plaintiffs Failed To Offer Any Evidence Dain's Conduct Caused Any Identifiable Injury**

Summary judgment is appropriate where Plaintiff cannot produce sufficient evidence to demonstrate that the alleged breaching conduct "caused" the claimed injury. Where, as here, Plaintiffs seek compensatory damages, the "usual damages-causation rule for tort and contract breach cases is appropriate. Am. Fed. Group, Ltd. v. Rothenberg, 136 F.3d 897, 907 n.7 (2d Cir. 1998). This requires "proof of two sub-elements: 'but for' and proximate causation." RSL Communs. PLC v. Bildirici, 649 F. Supp. 2d 184, 208 (S.D.N.Y. 2009); see also LNC Invs., Inc. v. First Fidelity Bank, 173 F.3d 454, 465 (2d Cir. 1999); BNY Capital Mkts, Inc. v. Moltech Corp., No. 99 Civ. 11754 (GEL), 2001 U.S. Dist. LEXIS 2705, 2001 WL 262675, at *10 (S.D.N.Y. Mar. 14, 2001) ("Under New York law, a party claiming that it has been damaged by actions of its fiduciary must prove not only that the breach was the 'but for' cause of the damage, but also that it constituted proximate causation.")

"'But for' causation, which the Court refers to as 'factual causation,' presents a 'threshold question' of whether the alleged breach of fiduciary duty was a 'cause in fact' of the loss complained of by the plaintiff." RSL Communs. PLC, 649 F. Supp. 2d at 208 (internal citations omitted). Importantly, "[t]he plaintiff must accept the burden of showing that the performance of the defendant's duties would have avoided loss, and what loss it would have avoided." Id. (citing Barnes v. Andrews, 298 F. 614, 616 (S.D.N.Y. 1924) (Hand, J.)) Where multiple causes exist, the courts apply the "substantial factor" test, which requires "each of the potential causes must be independently sufficient to have caused the plaintiff's injury." Id. (citing Point Prods. A.G. v. Sony Music Entm't, Inc., 215 F. Supp. 2d 336, 342 (S.D.N.Y. 2002) ("Under tort law, where there is an issue of multiple potential causes of [the] plaintiff's harm, the court can use a substantial factor test in place of but for causation in order to determine the cause in fact of the injury. Thus, applying this test requires that each individual action was sufficient standing alone to cause the same harm.")).

In addition, Plaintiff must provide sufficient evidence to demonstrate that defendants' conduct was a "proximate cause" of the Plaintiff's injury. Id.; see also Nordwind v. Rowland, 584 F.3d 420, 433 (2d Cir. 2009) ("plaintiff must demonstrate that the defendant's conduct proximately caused injury in order to establish liability.").

Here, Plaintiffs' counts alleging (1) that Dain failed to provide material information to Plaintiffs (Count 11 [Issue Trust], and Count 30 [SNT]); (2) that he lied about confidential information he received (Count 10 [Issue Trust], and Count 29 [SNT]); and (3) that he failed to attend to his Trust obligations (Count 14 [Issue Trust], and Count 36 [SNT]), must be dismissed because there is no evidence upon which a jury could reasonably conclude that any of these

allegations were "independently sufficient to have caused the plaintiff's injury." <u>RSL Communs. PLC</u>, 649 F. Supp. 2d at 209.

**(i) Counts Alleging Dain Failed To Provide Material Information**

With respect to Counts 11 and 30, Plaintiffs allege that Dain breached his fiduciary duty to provide material information to the Plaintiffs concerning his intent to "defund" the Trusts and freeze the assets therein. Specifically, Plaintiffs allege the following:

> (g) **Count 11** (alleging that Dain breached his fiduciary duty to provide material information to Plaintiffs as Issue Trust beneficiaries by intentionally withholding such information, to wit: (1) "without disclosure to either the beneficiaries of the Issue Trust or his co-trustee, Dain instigated legal proceedings in New York that were intended to defund the Issue Trust and freeze its assets to prevent effective defense" (<u>id</u>. at ¶667); (2) Dain did not disclose that "Wrigley, had retained and was paying Salzmanas counsel, nominally for Joanne Black, whose tasks included working to defund the Issue Trust" (<u>id</u>. at ¶669); (3) that "Dain, working with DiPonio, Salzman, and Young, sought defunding of the Issue Trust in Colorado, with no notice to the trust beneficiaries" (<u>id</u>. at ¶670); (4) "Dain made two further attempts to freeze the Issue Trust's assets" and "kept his decision to seek the freeze secret until the very last minute to prevent the beneficiaries from preparing a response"(<u>id</u>. at ¶671); (5) "in Colorado, Dain sought a freeze on all of the Black Family Trusts, through a filing by Young, made the day before a status conference, with notice only to Bernard Black and no notice to the beneficiaries of the Issue Trust" (<u>id</u>. at ¶672); (6) "in New York, Wrigley, with Dain's knowledge and support, sought and obtained a TRO freezing all distributions from the Issue Trust, with no notice to the trustees or beneficiaries of the Issue Trust" (<u>id</u>. at ¶673); (7) "after the defunding litigation commenced in Colorado, Dain's litigation team prepared a series of unexpected claims and motions directed at the defunding of the Issue Trust, imposing personal liability on his co-trustee, or both, which Dain had advance knowledge of, that he failed to disclose to the beneficiaries of the Issue Trust in time for them to prepare an effective defense" (<u>id</u>. at ¶674); and (8) "Dain improperly, and without notice to his co-trustees or the beneficiaries of the SNT (for which the Issue Trust is a remainder beneficiary), caused Chase Bank to transfer control over the SNT checking account and brokerage account to Dain and to remove Bernard Black's access to the SNT checking account statements, so that Dain could expend SNT funds with no disclosure to anyone, including his co-trustees"(<u>id</u>. at ¶675)).

(h) **Count 30** (alleging that Dain breached his duty to provide material information to the Plaintiffs as remainder beneficiaries of the SNT when he: (1) "sought to defund the SNT in an ongoing guardianship proceeding in New York" "without disclosure to either the beneficiaries of the SNT or his co-trustees" (id. at ¶979); (2) allegedly did not disclose to the beneficiaries that Dain knew that Wrigley had retained an attorney to represent Joanne Black "whose tasks included working to defund the SNT and the Issue Trust" (id. at ¶981); (3) "working with DiPonio, Salzman, and Young, sought defunding of the SNT in Colorado, with no notice to co-trustee Samuel Black or to the trust beneficiaries"(id. at ¶982); (4) "sought a freeze on all of the Black Family Trusts, through a filing by Young, made the day before a status conference, with notice only to Bernard Black and no notice to co-trustee Samuel Black or to the beneficiaries of the Black Family Trusts" (id. at ¶983); (5) supported Wrigley in New York when she "sought and obtained a TRO freezing all distributions and payments of expenses by the SNT, with no notice to the trustees or beneficiaries of the SNT" (id. at ¶984); (6) had advance knowledge of his "litigation team prepar[ing] series of unexpected claims and motions directed at the defunding of the SNT and the Issue Trust, imposing personal liability on his co-trustee Bernard Black, or both" and failed to disclose same to his co-trustee Bernard Black "or to the beneficiaries of the SNT in time for them to prepare an effective defense"(id. at ¶985); (7) "without notice to the SNT beneficiaries or to his co-trustee Samuel Black, and with only one day's notice to Bernard Black, Dain sought unilateral authority to spend SNT assets to: (i) maintain a freeze on the assets of the Issue Trust; (ii) pursue Joanne Black's personal claim against Bernard Black; (iii) defend Pinto and Wrigley against a claim that they have stolen and misappropriated assets from the SNT; and (iv) defend himself against claims, such as this lawsuit, that he breached his fiduciary duties to the SNT and the other Black Family Trusts. Dain received court authorization for uses (i) and (ii)" (id. at ¶986); and (8) "improperly, and without notice to his co-trustees or the beneficiaries of the SNT (for which the Issue Trust is a remainder beneficiary), caused Chase Bank to transfer control over the SNT checking account and brokerage account to Dain and to remove Bernard Black's access to the SNT checking and brokerage account statements, so that Dain could expend SNT funds with no disclosure to anyone, including his co-trustees. The amounts Dain has spent are unknown, and the location of $130,000 that Dain withdrew from the SNT brokerage account is also unknown" (id. at ¶987))

Even assuming these allegations were true, that Dain failed to give the Plaintiffs advance notice of his aforementioned plans, Plaintiffs have failed to produce any evidence that would allow a jury to reasonably conclude that "the performance of [Dain's] duties would have avoided

loss" to the Plaintiffs.   <u>Barnes</u>, 298 F. at 616.  Put another way, Plaintiffs intend to ask a jury to

conclude the impossible- that if Dain gave Plaintiffs advance notice, they would have been able

to persuade the Colorado courts that Bernard had not stolen Joanne's money.  This is impossible,

as advance notice would have done nothing to change what Bernard had done.  Thus, summary

judgment is appropriate as to Counts 11 and 30.

### (ii) Counts Alleging Dain Lied About Confidential Information He Received

This same reasoning applies with equal force to Counts 10 and 29, alleging that Dain

breached his duty of confidentiality by lying that he had not received confidential information

when in fact he had received such information.  Specifically, Plaintiffs allege the following:

> (i) **Count 10** (alleging that Dain breached his information-based duty Plaintiffs as
> beneficiaries of the Issue Trust by "misus[ing] confidential trust information in
> the opposite direction: by making false claims that he did not possess confidential
> trust information that he would be expected to have." <u>Id</u>. at ¶647.)

> (j) **Count 29** (alleging that as co-trustee of the SNT and Issue Trust Dain received
> confidential information about the Plaintiff beneficiaries and violated his duty of
> confidentiality when he "divulged to third parties the requests for distributions
> made by the beneficiaries of the Issue Trust, who are also the remainder
> beneficiaries of the SNT, the stated purposes of the requests, and other
> confidential information that he obtained as a trustee of the Issue Trust." Compl.
> at ¶963.  Plaintiffs also assert that Dain breached his duty of confidentiality when
> he (1) "falsely claimed that he did not know that the trust assets were at Chase
> Bank; (2) falsely claimed that Bernard Black did not keep him informed about
> distributions from the SNT; and (3) falsely claimed that he had not received
> accountings for the Black Family Trusts." <u>Id</u>. at ¶964. )

For example, Plaintiffs assert that Dain breached his duty of confidentiality when he (1)

"falsely claimed that he did not know that the trust assets were at Chase Bank; (2) falsely

claimed that Bernard Black did not keep him informed about distributions from the SNT; and (3)

falsely claimed that he had not received accountings for the Black Family Trusts." <u>Compl</u>. at

¶964.  Even assuming this were true, Plaintiffs offer absolutely no explanation as to how lying

about receiving information could constitute a breach of Dain's duty of confidentiality, nor are Defendants aware of any law that supports such a theory of breach. Regardless, Plaintiffs cannot point to any basis in the record upon which a jury could conclude that Dain (a) made such misrepresentations, nor (b) that his purported misrepresentations had any impact whatsoever on Plaintiffs' interests.

**(iii) Counts Alleging Dain Failed to Attend To His Trust Obligations**

Counts 14 and 34-36, alleging Dain failed to attend to his obligations to the respective Trusts, fair no better. Specifically, Plaintiffs allege the following:

(k) **Count 14** (alleging Dain breached his duty of care and prudence to the Issue Trust when "[d]uring the period through August 2014, Dain paid no attention whatsoever to trust administration" (Compl. ¶726); "[h]e signed account opening forms at Chase Bank for the Issue Trust and the other Black Family Trusts, only after several months of increasingly urgent requests" (id. at ¶727); "[h]e thereafter sent no emails to his co-trustee Bernard Black, did not respond to any of the emails from his co-trustee, did not respond to any of the phone calls from his co-trustee, and paid absolutely no attention to the Issue Trust whatsoever" (id.); and "Dain refused to authorize payment by the Issue Trust of income taxes, and of the fees of the tax accountant hired by his co-trustee" (id. at ¶730));

(l) **Count 34** (alleging Dain breached his fiduciary duty of care and prudence to the Plaintiffs as remainder beneficiaries of the SNT by repeatedly ignoring requests to participate in the SNT management and subsequently to defund it. Compl. at ¶¶1055-1056);

(m) **Count 35** (alleging Dain breached his fiduciary duty to the Plaintiffs as remainder beneficiaries of the SNT to attend to his duties as trustee of the SNT. Specifically, Plaintiffs allege (1) "After refusing to obtain access to the checking account statements for the Black Family Trusts, Dain again falsely claimed in the New York guardianship proceedings that he had been denied access to the checking accounts" (id. at ¶1070); (2) "Dain was presented by his co-trustees with information that Pinto and Wrigley had engaged in theft and misappropriation of assets that would otherwise have gone to the SNT" and "[i]nstead of investigating, Dain worked with his sister Wrigley to cover up the allegations of theft and misappropriation, by persuading Kerr not to investigate Pinto, despite a direct court order that she do so" (id. at ¶¶1071-1072); (3) "Dain reviewed

Wrigley's statement under oath to the New York guardianship court that no allegations of improper conduct had been made against Pinto, which Dain knew to be false, and allowed Wrigley to file it" (id. at ¶1073); (4) "Dain more recently received a complaint filed by his co-trustees against Pinto and Wrigley for theft and misappropriation" and "[i]nstead of investigating, Dain sought a Colorado court order allowing him to spend SNT funds to defend Pinto and Wrigley against the claim that they stole and misappropriated SNT funds" (id. at ¶1074);

(n) **Count 36** (alleging Dain breached his fiduciary duty to the Plaintiffs as remainder beneficiaries of the SNT to cooperate with co-trustees of the SNT. Plaintiffs recite all their prior complaints about Dain's conduct as a trustee of the SNT, addressed above, and assert that these actions violate his duty to cooperate with his co-trustees. See Compl. at ¶1084-1101.) For obvious reasons, a trustee does not have a duty to cooperate with his co-trustees who are engaged in theft.

Plaintiffs' allegations assert, in essence, that Dain ignored Bernard's attempts to engage Dain in the administration of the Trusts. It defies logic to conclude that Dain's alleged failure to respond to Bernard's emails and to cooperate with Bernard's scheme was "independently sufficient", "standing alone", to cause the complained-of injuries. See Point Prods. A.G., 215 F. Supp. 2d at 342. Nor have Plaintiffs provided any evidence to substantiate their allegations with respect to these counts. Accordingly, Defendants are entitled to summary judgment with respect to Counts 14 and 34-36.

### (iv) Counts 18 Alleging Dain Engaged In Asset Stripping From the SNT

Finally, with respect to Count 18, Plaintiffs assert that Dain's "support" of Wrigley's requests for reimbursement caused Specifically, Plaintiffs allege the following:

(o) **Count 18** (alleging Dain breached his duty of loyalty to the remainder beneficiaries through "stripping assets from the SNT" by (1) supporting Wrigley's claim to certain jewelry that Plaintiffs assert were SNT property (Compl. at ¶785); (2) supporting Wrigley's reimbursement requests from the SNT for what Plaintiffs assert were "unreasonable expenses, and in some instances false and inflated expenses" (id. at ¶786); (3) approving Wrigley's "demand that the SNT pay to her and Pinto, for her and Pinto's services, indefinitely, an annual amount that substantially exceeds $100,000" (id. at ¶787); and (4) approving "all of

Wrigley's expenses, including expenses for the July 2014 trip, and similar expenses for future trips" (id. at ¶788).

Again, Plaintiffs failed to produce any evidence as to how Dain's "support" for Wrigley's requests had any actual impact on Plaintiffs' interests. First, Dain's support for Wrigley's claim to certain jewelry is insufficient to create a basis for liability because Plaintiffs have not provided evidence that the jewelry was ever provided to Wrigley, let alone that Dain's support for same was the cause. Second, despite Dain's support for the reimbursement of Wrigley's aforementioned expenses, Plaintiffs offer no evidence that Dain's support actually caused, let alone could have independently caused, the payment of those expenses. RSL Communs. PLC, 649 F. Supp. 2d at 208. In fact, Bernard admitted that he reviewed Wrigley's requests for reimbursement, and himself made the decision whether to pay them. SOF ¶92-93. In some cases, Bernard denied her requests for reimbursement. Id. Accordingly, these allegations lack evidentiary basis and militate in favor of summary judgment because they fail to establish causation and injury to Plaintiffs.

### C. Plaintiffs Failed To Produce Evidence Supporting The Allegations in Counts 6, 23, 8, and 25

Plaintiffs assert a number of allegations of which they have no produced in support. Specifically, Plaintiffs allege in Counts 6, 23, 8, and 25, that Dain, *inter alia*, made threats, committed perjury, suborned perjury, and lied to courts. Plaintiffs have failed to produce any evidence to substantiate these allegations and therefore Defendants are entitled to summary judgment. Barrie House Coffee Co. v. Teampac, LLC, No. 13-cv-8230, 2016 U.S. Dist. LEXIS 85527, at *18-19 (S.D.N.Y. June 30, 2016) (Briccetti, J.) ("If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of

proof, then summary judgment is appropriate.") (citing Celotex Corp.v. Catrett, 477 U.S. 317, 323 (1986)).

Specifically, in addition to all arguments made above, the following counts must be dismissed for Plaintiffs' failure to produce any evidence in support thereof:

### (i) Counts Alleging Threats And Intimidation

(p) **Count 6** (alleging that Dain breached his duty of loyalty "through threats and intimidation directed at Bernard Black, his counsel, and members of his family." Plaintiffs Complaint list the following actions by Dain that they assert constitute such breaches: (1) "[u]sing personal threats and coercion to force a fellow co-trustee to breach his fiduciary duties is a breach of the duty of loyalty" (Compl. at ¶563); (2) "[i]the Colorado proceedings, Dain threatened to bring a contempt action against his co-trustee Bernard Black, unless Bernard Black breached his fiduciary duty as trustee, and as Executor of the Estate of Renata Black, and transferred to Joanne Black assets of the Black Family Trusts and the Estate of Renata Black (some of which would otherwise be distributed to the Issue Trust)" (id. at ¶564); (3) "[i]n September 2015, Dain threatened that he would seek financial sanctions against Bernard Black if Bernard Black or other members of the Black family appeared in the New York guardianship proceedings to oppose Wrigley's quest for guardianship" (id. at ¶565); (4) "[b]ecause Dain obtained a freeze on the Issue Trust assets, neither the trust nor its beneficiaries can hire counsel to represent them. Consequently, neither was separately represented in the Colorado proceedings" (id. at ¶566); (5) "[f]or this action and for the New York guardianship proceedings, trustee Bernard Black advanced to the beneficiaries his personal funds to hire an attorney, Piper Hoffman, to defend their rights" (id. at ¶567); (6) "[i]n December 2015, as soon as Dain learned that Bernard and Samuel Black had hired Ms. Hoffman to represent them as co-trustees of the Black Family Trusts and thus interested persons in the New York litigation, Dain threatened Ms. Hoffman with a frivolous defamation lawsuit" (id. at ¶568); (7) "Dain threatened to sue Ms. Hoffman because she submitted a letter to the New York judge, on behalf of her clients, in which she alleged that Dain lied to the court" (id. at ¶569); (8) "Dain also stalked Ms. Hoffman and intimidated her personally. He studied her personal website, which is unrelated to her activities as an attorney, and sent her a harassing email, citing statements from her personal website" (id. at ¶570); (9) "[w]riting personally to Ms. Hoffman, Dain accused Bernard Black of misconduct and pressured Ms. Hoffman to give up her representation of Bernard Black" (id. at ¶571); (10) "Dain intimated that Ms. Hoffman would suffer adverse professional consequences if she continues to

represent the Black family" (id. at ¶572); (11) "[i]n January 2016, Dain and Wrigley orchestrated a campaign of harassment and intimidation against Bernard Black, his wife Katherine Black, and plaintiff Rebekah Black, involving phone calls and letters by Wrigley, Young, and Wrigley's counsel to Northwestern University, alleging misconduct by Bernard and Katherine Black" (id. at ¶573); and (12) "Dain's threats and harassment are a breach of his duty of loyalty to the beneficiaries of the Issue Trust" (id. at ¶574).

(q) **Count 23** (alleging that Dain breached his duty of loyalty to the remainder beneficiaries of the SNT by "threats and intimidation directed at Bernard Black, his counsel, and members of his family." Compl. at ¶¶854-865. Plaintiffs specifically allege Dain (1) "threatened to bring a contempt action against his co-trustee Bernard Black, unless Bernard Black breached his fiduciary duty as trustee, and as Executor of the Estate of Renata Black, and transferred to Joanne Black assets of the Black Family Trusts and the Estate of Renata Black (which would otherwise be distributed to the SNT and the Issue Trust)" (id. at ¶854); (2) "repeatedly threatened to seek financial sanctions against Bernard Black, other members of his family, and his legal counsel, in an effort to prevent them from mounting an effective defense against his defunding efforts and Wrigley's effort to become Joanne Black's guardian" (id. at 855) (3) "threatened to bring a contempt action in Colorado against Bernard Black unless he resigns as a 'fiduciary over the assets of Joanne Black held by him in accounts purporting to be those of the Supplemental Needs Trust for the Benefit of Joanne Black'" (id. at 856); (4) "threatened that if Samuel Black failed to resign from the SNT, he would bring litigation against Samuel with respect to "every decision or action we would need to take" (id. at 857); (5) "sought to increase the financial pressure faced by Samuel Black by first refusing to approve payment of Samuel's student loans from the Issue Trust, and then obtaining freezes on distributions from the Issue Trust in Colorado and New York" (id. at 859); (6) "threatened to sue Ms. Hoffman [Bernard and Samuel's attorney in NY] because she submitted a letter to the New York judge, on behalf of her clients, in which she alleged that Dain lied to the court" (id. at 860); (7) "stalked Ms. Hoffman[,] intimidated her personally[,] studied her personal website, which is unrelated to her activities as an attorney, and sent her a harassing email, citing statements from her personal website" (id. at 860); (8) "accused Bernard Black of misconduct and pressured Ms. Hoffman to give up her representation of Bernard Black" (id. at 862); (9) "intimated that Ms. Hoffman would suffer adverse professional consequences if she continues to represent the Black family" (id. at 863); and (10) "[i]n January 2016, Dain and Wrigley orchestrated a campaign of harassment and intimidation against Bernard Black, his wife Katherine Black, and plaintiff Rebekah Black,

involving phone calls and letters by Wrigley, Young, and Wrigley's counsel to Northwestern University, alleging misconduct by Bernard and Katherine Black"(id. at 864)

**(ii) Counts Alleging Dain Suborned Perjury And Lied To The Courts**

(r) **Count 8** (alleging that Dain breached his duty of loyalty to Plaintiffs as beneficiaries of the Issue Trust through representing a non-beneficiary in litigation against the Issue Trust, committing perjury in Colorado and New York, suborning perjury by Wrigley, and making false statements in court." Compl. ¶¶614-621. Specifically, Plaintiffs allege that Dain breached his duty of loyalty by: "acting as Joanne Black's *de facto* lead counsel in Colorado proceedings in which he sought to defund the Issue Trust" (id. at ¶614); "suborn[ing] perjury by permitting and encouraging Wrigley to falsely testify under oath" during the Colorado proceedings by "claiming improbable things that are contradicted by written evidence" (id. at ¶618); "l[ying] to the New York court in his efforts to convince the court to defund the trusts, and prevent the Black family members from appearing to oppose Wrigley's guardianship" (id. at ¶620); and "[m]aking false and misleading statements to the Colorado and New York courts also violated Dain's duty of loyalty to the beneficiaries of the Issue Trust" (id. at ¶621).

(s) **Count 25** (alleging Dain breached his duty of loyalty to Plaintiffs as remainder beneficiaries of the SNT by "l[ying] to courts in both Colorado and New York to convince them to defund the trusts." Compl. at ¶901. Additionally, Plaintiffs assert that Dain "personally leading the Dain-Wrigley litigation team in both Colorado and New York" and suborned perjury by Wrigley in Colorado (id. at ¶¶903-904) and in New York (id. at ¶¶905-913).

**III.     DEFENDANTS WRIGLEY, PINTO AND CPI INVESTIGATIONS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNTS FIFTY THREE AND FIFTY SEVEN ALLEGING EACH AIDED AND ABETTED DAIN'S ALLEGED BREACHES OF FIDUCIARY DUTY**

Count 53 asserts that Wrigley aided and abetted Dain's breach of fiduciary duty. Similarly, Count 57 alleges that Pinto and CPI Investigations aided and abetted Dain's breach of fiduciary duty.

To establish liability for aiding and abetting under New York law, the Plaintiffs must show "(1) the existence of [an underlying tort]; (2) [the] defendant's knowledge of the [underlying tort]; and (3) that the defendant provided substantial assistance to advance the [underlying tort's] commission." Bigio v. Coca-Cola Co., 675 F.3d 163, 172 (2d Cir. 2012) (internal citation omitted) "[A]ctual knowledge is required to impose liability on an aider and abettor under New York law." Krys v. Pigott, 749 F.3d 117, 127 (2d Cir. 2014). "[C]onstructive knowledge" is insufficient to constitute the knowledge element of an aiding-and-abetting claim. Id. (quoting Oster v. Kirschner, 77 A.D.3d 51 (2010)).

"Actual knowledge, as opposed to merely constructive knowledge, is required and a plaintiff may not merely rely on conclusory and sparse allegations that the aider or abettor knew or should have known about the primary breach of fiduciary duty" Bullmore v. Ernst & Young Cayman Islands, 45 A.D.3d 461, 464 (1st Dept. 2007) (quoting Global Mins. & Metals, 35 AD3d at 101-102); Twin City Fire Ins. Co. v. Arch Ins. Grp., Inc., 143 A.D.3d 533, 533 (1st Dept. 2006) (Plaintiff must produce evidence the alleged aider and abettor had actual knowledge, as opposed to merely constructive knowledge of the primary tortfeasor's breach of his fiduciary duty). Where Plaintiffs fail to prove actual knowledge but rely instead on evidence that the defendant "should have realized" or "had reason to suspect" the underlying tort, an aiding and

abetting claim will fail. <u>Heinert v. Bank of Am. N.A.</u>, No. 20-0691, 2020 U.S. App. LEXIS 35733, at *3-8 (2d Cir. Nov. 13, 2020)

In that regard, "substantial assistance may only be found where the alleged aider and abettor affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." <u>Trott v. Platinum Mgmt. (NY) LLC (In re Platinum-Beechwood Litig.)</u>, No. 18-cv-6658 (JSR), 2020 U.S. Dist. LEXIS 70416, at *78-79 (S.D.N.Y. Apr. 21, 2020) (quoting <u>In re Sharp Int'l Corp.</u>, 403 F.3d 43, 50 (2d Cir. 2005)). "And, the inaction of an aider and abettor is actionable when the aider and abettor has an affirmative duty to act or has a fiduciary duty to plaintiff." <u>Id</u>. (citing <u>Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.</u>, <u>LLC</u>, 446 F. Supp. 2d 163, 203 (S.D.N.Y. 2006)).

As a preliminary matter, where, as here, the Plaintiff fails to establish an underlying tort, <u>Bullmore</u>, 45 A.D.3d at 464. For example, where "plaintiff cannot allege legally-appropriate damages for the breach of fiduciary duty claims, it also follows that [it] cannot allege such damages for the aiding and abetting claims." <u>McSpedon v. Levine</u>, 2015 NY Slip Op 32821(U), ¶ 21 (Sup. Ct. 2015), affirm'd by <u>McSpedon v. Levine</u>, 158 A.D.3d 618, 622 (2nd Dept. 2018).

Here, as discussed at length above, because Plaintiffs cannot establish any right to the Trust funds, and therefore any damages arising from Dain's conduct related thereto, Plaintiffs are unable to establish the underlying breach of fiduciary duty claim. Accordingly, it necessarily follows that Plaintiffs likewise cannot establish that Wrigley and Pinto aided and abetted in any purported breach of fiduciary duty. Accordingly, Plaintiffs' claims against Wrigley, Pinto, and CPI Investigations necessarily fail.

Additionally, even assuming this Court concluded Plaintiffs' breach of fiduciary duty claims survived against Dain, they cannot survive against Wrigley, Pinto, and CPI Investigations,

Inc. because Plaintiffs have failed to produce any evidence upon which a reasonable jury could conclude that the other defendants (1) had "actual knowledge" of Dain's breach of fiduciary duty and (2) "substantially assisted" with respect to his breach.

## CONCLUSION

For the reasons articulated above, Defendants respectfully request the Court grant their motions for summary judgment, and for any other or further relief the Court deems just and proper.

Dated: New York, New York
      May 3, 2022

                    Respectfully submitted,

                    **Mancilla & Fantone, LLP**

By:   */s/ Robert M. Fantone*
      Robert M. Fantone

By:   */s/ Andrew Mancilla*
      Andrew Mancilla

      *Attorneys for Defendants Wrigley, Pinto, and CPI Investigations*

By:   */s/ Anthony Dain*
      Anthony Dain (pro se)