UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x

SARAH H. BLACK and JACOB L. BLACK,

              Plaintiffs,

     -against-

ANTHONY DAIN, CHERIE WRIGLEY,
ESAUN G. PINTO, and CPI
INVESTIGATIONS,

              Defendants.

--------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
16-cv-1238 (CBA) (ST)

**AMON, United States District Judge:**

## INTRODUCTION

Eleven years ago, Renata Black ("Renata") died a millionaire and bequeathed an estate valued at the time at more than $4.7 million to her heirs, including her son Bernard Black ("Bernard"), her mentally ill daughter Joanne Black ("Joanne"), and Bernard's children. Since then, Renata's family has fought over the inheritance through no fewer than eighteen lawsuits spanning across three states, including a probate proceeding in Colorado, a defamation and torts action in Illinois, an interpleader action in Illinois, and a related case before this court, among others.[1]

This lawsuit, brought by Bernard's children, Sarah H. Black ("Sarah") and Jacob L. Black ("Jacob") (collectively "Plaintiffs"), claims purported breaches of fiduciary duty by Renata's nephew Anthony Dain ("Dain"), who is the co-trustee of one trust and the former trustee of another

---

[1] See, e.g., Black v. Wrigley, No. 16-cv-430 (CBA) (ST), 2021 WL 4932129, at *19 (E.D.N.Y. Sept. 21, 2021) (granting defendants' motion for summary judgment in its entirety), aff'd, No. 21-2553, 2023 WL 2591014 (2d Cir. Mar. 22, 2023) (summary order); Black v. Wrigley, 997 F.3d 702, 706 (7th Cir. 2021) (affirming the jury verdict against Katherine Black in her defamation and torts lawsuit against Cherie Wrigley); JPMorgan Chase Bank, N.A. v. Black, No. 18-cv-3447, 2021 WL 4459482, at *13 (N.D. Ill. Sept. 29, 2021) (adjudicating an interpleader action brought by the bank holding the inheritance assets); Black v. Black, 422 P.3d 592, 599-612 (Colo. App. 2018) (affirming Denver Probate Court's adjudication of claims related to Joanne's conservatorship).

trust, both established by Renata in 1997. (See ECF Docket Entry ("D.E.") # 149 ("Am. Compl.") at 1-3.) The complaint also alleges that Dain's sister Cherie Wrigley ("Wrigley"), private investigator Esaun Pinto ("Pinto"), and Pinto's employer CPI Investigations ("CPI," and collectively with all other defendants, "Defendants") aided and abetted Dain's breach of fiduciary duty. (Id. at 3-4.) Of the 59 counts pleaded by Plaintiffs, 21 have been resolved by two orders on motions to dismiss and by Plaintiffs' settlement with former defendants. (See D.E. # 100 (M&O to Kerr Mot. to Dismiss) at 1, 9 (dismissing Count 59); D.E. # 119 ("M&O to Defs. Mot. to Dismiss") at 50 (dismissing Counts 37-51, 52, 54, and 56, plus all claims seeking recovery for expenses incurred by Bernard and his son Samuel Black); D.E. # 271 (M&O Adopting Report and Recommendation Approving Parties' Settlement) at 3 (dismissing Counts 55 and 58).)

The parties have filed cross-motions for summary judgment on the remaining counts.[2] Specifically, Plaintiffs move for partial summary judgment on Counts 1, 8-9, 12, 15-17, 28, 31, and 36. (Pls. S.J. Mem. at 1.) Defendants move for summary judgment as to all remaining counts, i.e., Counts 1-36, 53, and 57. (Defs. S.J. Mem. at 8.) For the following reasons, Plaintiffs' motion is DENIED, and Defendants' motion is GRANTED.

## BACKGROUND

This case involves a complicated litigation and procedural history. The following facts are not in dispute.[3]

---

[2] The parties' summary judgment papers were filed as follows: D.E. # 306 ("Pls. S.J. Mem."); D.E. # 313 ("Defs. Opp'n"); D.E. # 310 ("Pls. S.J. Reply"); D.E. # 315-1 ("Defs. S.J. Mem."); D.E. # 320 ("Pls. Opp'n"); D.E. # 317 ("Defs. S.J. Reply").

[3] All pages cited herein refer to the native pagination printed on the document; however, where a document lacks native pagination, the page cited—with an asterisk—refers to the PDF page.

## I. The Parties, the Trusts, and the Disclaimer

Renata has two children: Bernard, who together with his wife Katherine Black (née Litvak) ("Katherine") reside in Illinois and work as law professors, and Joanne, who resides in New York and suffers from schizophrenia. (D.E. # 315-2 ("Defs. 56.1 Stmt.") ¶¶ 2-4, 6, 8-9, 45(b), 45(g); D.E. # 307 ("Pls. 56.1 Stmt.") ¶ 11.) Bernard has seven children: five from his prior marriage (Sarah, Samuel, Rebekah, Benjamin, and David) and two with Katherine (Jacob and Daniel). (Defs. 56.1 Stmt. ¶¶ 7, 10-11, 19-20; D.E. # 309-11 (Vanguard July 11, 2012 Let.) at *1; D.E. # 315-15 ("Bernard Sept. 16, 2012 Email to Children") at *2.) Only Sarah and Jacob are Plaintiffs in this case.[4] Dain and Wrigley, cousins of Bernard and Joanne, reside in California. (Defs. 56.1 Stmt. ¶¶ 12-13.)

Renata died in New York in May 2012. (Pls. 56.1 Stmt. ¶ 12; D.E. # 309-4 (N.Y. Surr. Ct. Appointment of Ex'r).) In 1997, Renata signed her will, naming Bernard as the executor, and created the two trusts relevant to this lawsuit. (See D.E. # 309-1 ("Renata's Will") at 1-2.) Both trusts were to be funded primarily from Renata's estate upon her death, (see Pls. 56.1 Stmt. ¶ 27), with two-thirds of the estate going to the "Supplemental Needs Trust for the Benefit of Joanne Black" (the "SNT") and with the remaining one-third going to the "Irrevocable Trust for the Benefit of the Issue of Renata Black" (the "Issue Trust") (collectively, the "two Trusts"). (Renata's Will at 1-2; D.E. # 309-3 ("SNT Instrument"); D.E. # 309-2 ("Issue Trust Instrument").) The SNT supports the needs of Joanne as the primary beneficiary and, upon her death, distributes any remaining assets to the Issue Trust as remainder beneficiary. (SNT Instrument, art. III, § 1.) The Issue Trust supports Bernard and "any grandchildren of the Settlor." (Issue Trust, art. II, §

---

[4] Samuel and Daniel were former plaintiffs but have since been terminated from this action. (See D.E. dated June 27, 2016; D.E. # 303 (Minute Entry dated Mar. 29, 2022).)

D(2)(c).) Both Trusts' instruments designate Bernard and Dain as co-trustees, who "shall have all powers granted fiduciaries under the New York Estates Powers and Trusts Law as amended to the date of this Trust." (SNT Instrument, art. I, § 1, and art. VI, § 3; Issue Trust Instrument, art. I, § 1, and art. V, § 3.)

Sometime before her death, Renata made a change on her Vanguard investment accounts holding the bulk of her financial assets. (Vanguard July 11, 2012 Let., at *1; Defs. 56.1 Stmt. ¶¶ 18, 45(c).) Specifically, Renata set the accounts as payable on death ("POD"), with 95% going to Joanne, and only 1% of the remaining going to each of Bernard's five children from his first marriage, which includes Sarah but not Jacob (the "POD designation").[5] (Vanguard July 11, 2012 Let., at *1.) As a result of the change, rather than receiving one third of Renata's estate, Bernard's family would receive only 5% of Renata's Vanguard investment funds. The parties disagree as to the validity of the POD, with the Plaintiffs' side vigorously asserting that the change "made no sense" and "had to be a mistake." (Pls. S.J. Mem. at 8-9.) In particular, Plaintiffs note that the POD designation would have given some $3 million in a lump sum to Joanne, who could not appropriately manage the money given her mental condition. (See Am. Compl. ¶ 61.)

Following Renata's death in May 2012, Bernard fashioned a plan to reverse the POD designation without challenging its legal validity. The plan unfolded in three steps: (i) Bernard would petition to become Joanne's conservator, (ii) Bernard would, on Joanne's behalf, "disclaim" her 95% share of the inheritance ("the disclaimer") and persuade his children to disclaim their 5% share, so that the POD funds would revert to Renata's estate, and (iii) Bernard would then, as

---

[5] The parties agree that the change to the POD designation occurred in or about March 2012. (See Pls. S.J. Mem. at 8 (noting that the change occurred "weeks before Renata died"); Defs. 56.1 Stmt. ¶ 18 (noting that the change occurred in March 2012; Vanguard July 11, 2012 Let., at *1 (noting that Vanguard "received a request" on March 23, 2012).) However, the record suggests that the precise 95%-5% apportionment may have existed as early as August 2009. (See, e.g., D.E. # 316-3 (Letters from Vanguard) at *6.)

executor of the estate, divide the assets pursuant to the terms of the original will. In an email sent to his children, he explains:

> The idea is to get everyone (the key person is your crazy Aunt Joanne) to disclaim their direct receipt of anything from Grandma, so everything passes through her will. That will mean 2/3 in a trust for Joanne, 1/3 in a trust for mostly you; also me if I turn out to need it, which I do not expect.
>
> The reason for this is that Grandma's beneficiary designation sends 95% of her Vanguard assets directly to Joanne, which will be a disaster, that I'm trying to avoid. Each of you gets 1%. But if Joanne disclaims, you need to disclaim too, or else all the funds will go to you, which is not right either, since 2/3 were supposed to go to Joanne and the rest to a trust.
>
> The form needs to be notarized. I will only file these if everyone signs them.

(Bernard Sept. 16, 2012 Email to Children at *2.) Accordingly, in October 2012, Bernard filed a petition to become Joanne's conservator with the Denver Probate Court—Colorado being the forum state, because Joanne was living there at the time of Renata's death. (See D.E. # 325-1 ("Denver Probate Ct. Sept. 2015 Order") at 2; Pls. 56.1 Stmt. ¶ 28.) The Denver Probate Court granted the petition and, in December 2012, expressly authorized Bernard to execute the disclaimer. (D.E. # 325-6 at 3 (Denver Probate Ct. Dec. 2012 Order) (stating that "[Joanne's] assets will be placed into a Supplemental Needs Trust for [Joanne's] benefit"); D.E. # 325-7 (Denver Probate Ct. Mar. 2013 Order) (amended order stating the same).) On December 29, 2012, Bernard filed the disclaimer on behalf of Joanne,[6] (D.E. # 325-39 at *21-28 (Joanne's Disclaimer)), and his five children from his first marriage also disclaimed their 1% interest, (D.E. # 344-10 at *99-134; Defs. 56.1 Stmt. ¶ 41). Thereafter, Bernard moved the POD funds into Renata's estate

---

[6] The disclaimer was filed with the New York Surrogate's Court, which has jurisdiction over Renata's estate. (See Pls. 56.1 Stmt. ¶ 12.)

and transferred approximately two-thirds to the SNT and one-third to the Issue Trust.[7] (Pls. 56.1 Stmt. ¶ 53.) To date, the POD has not been legally challenged. (See Pls. S.J. Mem. at 9-10 (noting that Bernard's family decided to forgo challenging the validity of the POD).)

## II. The Colorado Proceedings

Two years later, in 2015, the Denver Probate Court began to receive complaints of misconduct by Bernard, including, among others: (i) a complaint by Dain regarding Bernard's mismanagement of the Trust assets, (ii) a complaint by Dain regarding improper division of assets by Bernard, (iii) a motion filed by Joanne's court appointed guardian ad litem, Gayle Young ("Young), for forensic accounting, (iv) a motion by Joanne's court-appointed attorney, Lisa DiPonio ("DiPonio"), to void the disclaimer, and (v) a second motion by DiPonio asserting that Bernard had committed civil theft when he siphoned off a third of the POD assets to the Issue Trust. (See Denver Probate Ct. Sept. 2015 Order at 4-5; D.E. # 325-15 (DiPonio Mot. to Void Disclaimer) at *3; D.E. # 325-16 (DiPonio Mot. re Civil Theft) at *2-4.) In December 2015, Dain sent an email to Bernard's counsel stating that he resigns as trustee of the Issue Trust. (See Defs. 56.1 Stmt. ¶ 32; D.E. # 309-5 (Dain's Dec. 2, 2015 Resignation Email).)

In response to the allegations, the Denver Probate Court froze all assets in the conservatorship, ordered forensic accounting, and suspended Bernard as Joanne's conservator.[8] (D.E. # 325-17 (Denver Probate Ct. Apr. 2015 Order) at 1-4.) Subsequently, the Denver Probate Court held a four-day evidentiary hearing and found, among other things, that Bernard had breached his fiduciary duty in his capacity as Joanne's conservator and had committed civil theft.

---

[7] Bernard also created a third trust, the 2013 Trust, to manage certain governmental benefits paid to Joanne; that trust is not at issue in these motions. (See M&O to Defs. Mot. to Dismiss at 50 (dismissing all claims related to the 2013 Trust).)

[8] The Denver Probate Court later appointed Jeanette Goodwin as Joanne's conservator. (See, e.g., Pls. S.J. Mem. at 1.)

(Denver Probate Ct. Sept. 2015 Order at 12-15; see also D.E. ## 325-2 through 325-5 (Denver

Probate Ct. Hr'g Trs.).) Specifically, the Denver Probate Court concluded that (i) Bernard has "a

clear conflict of interest regarding the funds held in the POD accounts"; (ii) Bernard insufficiently

disclosed his intent "to use the disclaimer to redirect one-third of the non-probate assets to persons

other than [Joanne] and as a result of his failure to disclose, did not have authority to redirect the

assets"; and (iii) Bernard improperly "divested [Joanne] of one-third of the POD assets left to her."

(Denver Probate Ct. Sept. 2015 Order at 5-9.) In so holding, the Denver Probate Court emphasized

that "[a]t no time was it the Court's understanding that [Bernard] intended to divide the disclaimed

funds and divert one-third of the funds into the Issue Trust." (Id. at 7.) Additionally, the Denver

Probate Court also criticized Bernard for hiding the existence of certain Roth IRA accounts from

the probate court and transferring those assets into the Issue Trust, as well as for Bernard's

deceptive accounting of Joanne's assets as being only some $2 million instead of $3 million. (Id.

at 3-4, 8-9, 11.) Specifically, the Denver Probate Court held:

> Without a doubt, Mr. [Bernard] Black knew the funds designated in POD accounts
> to Joanne Black and his children did not belong to him. Mr. Black developed a
> plan to divest Joanne Black and his children of the funds specifically left to them
> by Renata Black. To carry out that plan, Mr. Black deliberately withheld full
> disclosure of his intention to this Court when he sought and received permission to
> disclaim the funds. Mr. Black never advised this court the POD accounts at issue
> were left in part to his children and he never advised this Court the Issue Trust or
> the Roth IRA existed. . . . The Court therefore finds Mr. Black knowingly obtained
> and exercised control over the POD account funds without authorization and by
> deception. . . .

> [Thus,] Mr. Black is not entitled to rely on his receipt of the funds, as he obtained
> them by deception and by extension, his children are not entitled to rely on their
> receipt of the funds in excess of the POD amounts given to them by Renata Black.

(Id. at 10-11.) The Denver Probate Court surcharged Bernard approximately $1.5 million plus

treble damages under Colorado's civil theft statute but did not void the disclaimer. (Id. at 12-13

(granting $4,534,068 in damages against Bernard).) Bernard appealed the decision and raised

various procedural and merits arguments, including lack of notice, improper jurisdiction, the sufficiency of his prior disclosure to the Denver Probate Court regarding his conflict, among others, all of which were rejected by the Colorado Court of Appeals. Black v. Black, 422 P.3d 592, 599-612 (Colo. App. 2018) ("Black I") (affirming the Denver Probate Court's September 2015 Order), cert. denied, No. 18SC419, 2019 WL 2178077 (Colo. 2019).

The parties litigated one additional issue during the pendency of the Black I appeal. After the Denver Probate Court issued its adverse findings against Bernard, Bernard sued Joanne and sought to withdraw money from the Issue Trust to pay for his own litigation expenses. See Compl. at 5, Black v. Black, No. 16-cv-1763 (N.D. Ill. Jan. 29, 2016) (seeking a declaratory judgment that Bernard can access the assets of the Issue Trust). To support Joanne's defense of this action, Dain filed several motions with the Denver Probate Court seeking authorization to disburse funds from the SNT ("SNT disbursement requests"), all of which, with some minor exceptions, were granted. (See D.E. # 325-21 (Denver Probate Ct. Feb. 2016 Order) at 6; D.E. # 325-23 ("Denver Probate Ct. Oct. 2016 Order") at *1; D.E. # 325-25 (Denver Probate Ct. Oct. 2017 Order) at 6.)[9] DiPonio also filed a motion seeking disbursement of SNT assets to support Joanne as well as seeking to remove Bernard as SNT trustee, which was also granted. (D.E. # 325-26 ("DiPonio Dec. 2017 Mot.") at *1-2; D.E. # 325-27 (Denver Probate Ct. Jan. 2018 Order) at 2 (suspending Bernard as trustee of the SNT).)[10]

---

[9] The Denver Probate Court denied temporarily, for example, certain requested attorney's fees pending review. (See, e.g., Denver Probate Ct. Oct. 2016 Order at *1.)

[10] DiPonio's motion also alleged a scheme by Bernard, in which he sought loans from his wife Katherine and then intentionally defaulted on those loans, resulting in the entry of agreed judgments in favor of Katherine against the two Trusts. (DiPonio Dec. 2017 Mot. at *2; see also Section III, infra (discussing the lawsuits related to this scheme).) In granting DiPonio's motion to remove Bernard as SNT trustee, the Denver Probate Court noted that the allegations are "shocking to the conscience of the Court, especially given Mr. Black's position as a professor of law at a respected law school in this country." (Denver Probate Ct. Jan. 2018 Order at 1.)

Bernard challenged the Denver Probate Court's orders as improper for lack of personal jurisdiction over Bernard and for lack of subject matter jurisdiction over the SNT, which was physically located in Illinois. Black v. Black, No. 16CA0625, slip op. at 4 (Colo. App. 2018) ("Black II") (unpublished opinion available at D.E. # 326-6). In 2018, the Colorado Court of Appeals vacated the first of these orders in Black II and remanded the case back to the Denver Probate Court for a determination of jurisdiction. See id. at 14-15. In April 2018, the Denver Probate Court issued an opinion and concluded that it could exercise personal jurisdiction over Bernard and in rem jurisdiction over the two Trusts. (D.E. # 325-32 ("Denver Probate Ct. Apr. 2018 Order") at 6-8.) Importantly, the Denver Probate Court emphasized that, because Bernard's initial transfer of POD assets had been improper, those assets "remain a part of the conservatorship estate." (Id. at 7.) Further, the Denver Probate Court voided the disclaimer, observing that the disclaimer has created "inequity" for Joanne given the endless litigation that "continues to burden Joanne Black and which prevents her funds from being used for her care." (Id. at 12.)

In 2020, the Colorado Court of Appeals affirmed in part, and denied in part, the Denver Probate Court's April 2018 Order. Black v. Black, 482 P.3d 460, 474-88 (Colo. App. 2020) ("Black III"), cert. denied, No. 20SC554, 2021 WL 1030354 (Colo. 2021). As relevant here, Black III held that, "given that Bernard improperly diverted assets from a Colorado conservatorship to out-of-state trusts, the probate court may continue to exercise in rem jurisdiction over those assets." Id. at 475. Further, Black III upheld the removal of Bernard as SNT trustee as well as all of the SNT disbursement requests, since "the funds Bernard diverted to the Trusts were at all times assets of Joanne's conservatorship." Id. at 481-82. However, Black III remanded the voiding of the disclaimer on a procedural error—it held that, since the Denver Probate Court's April 2018 Order predates the Colorado Supreme Court's subsequent adjudication of the Black I appeal in 2019, the

probate court "lacked [subject matter] jurisdiction [at the time of its decision] to void the disclaimers during the pendency of [Bernard's] petition for writ of certiorari [for Black I]." Id. at 480-81.

On November 4, 2022, following the conclusion of the Black I appeal, DiPonio and Young—Joanne's counsel and guardian ad litem—filed a motion with the Denver Probate Court seeking to void the disclaimer. (D.E. # 337 (Pls. Let. Nov. 8, 2022) at *3-25 ("Mot. to Void Disclaimer").) To date, Bernard has unsuccessfully attempted to remove that motion to either the Northern District of Illinois or the Eastern District of New York. See Black v. Black, No. 22-cv-3098, 2023 WL 1989793, at *1 (D. Colo. Feb. 14, 2023). In a scathing Report and Recommendation, a magistrate judge in the District of Colorado recommended remanding the case to the Denver Probate Court, finding that the removal "was done in bad faith" and is part of Bernard's "procedural gymnastics to avoid legitimate court judgments, impose undue and unnecessary legal costs on Joanne's conservator, and inappropriately pressure for settlement."[11] Id. at *16-17. That Report and Recommendation, as well as the motion to void the disclaimer, are still pending with the respective courts.

### III. Other Relevant Proceedings

During the Colorado proceedings, the parties also litigated other issues, four of which—discussed below—are relevant to this case.

First, after Bernard lost in Colorado, he—without notice to Dain or Joanne—filed two lawsuits in Illinois seeking a declaratory judgment that the disclaimer is irrevocable. See Black v.

---

[11] The magistrate judge also ordered that Bernard "be referred to the disciplinary authorities of the State Bar of New York," finding that Bernard's conduct, particularly his loan scheme with Katherine, "is shameful" and that his "ongoing attempts to interfere with efforts by Joanne's guardian to recoup money ($1.5 million+) that he stole from Joanne" is "unbecoming of a lawyer admitted to practice law in any jurisdiction." Black, 2023 WL 1989793, at *2, *19-20.

Black, No. 2021 CH 6049 (Ill. Cir. Ct. 2021) (action with respect to the SNT); Black v. Black, No. 2021 CH 2952 (Ill. Cir. Ct. 2021) (action with respect to the Issue Trust); (see also D.E. # 344 ("Pls. Mar. 27, 2023 Let.") at 1-2). With respect to the SNT lawsuit, the Illinois state court dismissed the case on the basis of an Illinois statute that permits dismissal where a similar cause of action is pending elsewhere. (See D.E. # 344-9 (order dismissing the case pursuant to 735 Ill. Comp. Stat. 5/2-619(a)(3)).) With respect to the Issue Trust lawsuit, although Bernard initially obtained a judgment declaring that the disclaimer was irrevocable, (see D.E. # 344-1), the Illinois state court judge later vacated that default judgment after Dain and Joanne's conservator intervened. (See D.E. # 344-4 (order vacating the prior judgment for failure to join a necessary party).) Bernard is currently appealing that decision. (Pls. Mar. 27, 2023 Let. at 2.)

Second, Katherine (Bernard's wife) and Katherine's cousin, Olga Dal ("Dal"), have filed lawsuits in Illinois state courts against the two Trusts to recover payments for defaulted loans. See Litvak v. Black, No. 2017 L 009743, 2017 WL 11511470 (Ill. Cir. Ct. Oct. 25, 2017), rev'd, 147 N.E.3d 835 (Ill. App. Ct. 2019); Dal v. Black, No. 2017 L 009744, 2017 WL 11604473 (Ill. Cir. Ct. Oct. 12, 2017), aff'd, No. 1-19-1348, 2020 WL 7046887 (Ill. App. Ct. Nov. 30, 2020). Evidently, Bernard and his son Samuel had, in their positions as trustees, sought and received loans from Katherine and Dal. (See D.E. # 326-18 (Demand Note to Katherine); D.E. # 326-13 (Demand Note to Dal).) Bernard then intentionally defaulted on those loans and, without informing Dain or Joanne's conservator, entered into an agreed judgment with Katherine and Dal for the full amount of their claims. Litvak, 147 N.E.3d at 839; Dal, 2020 WL 7046887, at *2-3. After Joanne's conservator subsequently learned of the lawsuits and intervened, the Illinois Appellate Court vacated the agreed judgment with respect to Katherine and remanded the case for adjudication on the merits, finding that "the entire agreed judgment in this case was the product of fraud or

11

collusion." Litvak, 147 N.E.3d at 841-42.[12] With respect to Dal, however, the Illinois Appellate Court upheld the agreed judgment, finding that Dal was an innocent lender who "was completely unaware of either the Colorado probate proceedings or any restrictions on the use of the trust assets." Dal, 2020 WL 7046887, at *8. Subsequently, Katherine voluntary dismissed her case and re-filed the action separately against the SNT and Issue Trust, again seeking recovery for the defaulted loans. (See D.E. # 326-14 (Black v. Black, No. 2021 L 817 (Ill. Cir. Ct. 2021) (Compl. Against the Issue Trust)); D.E. # 326-16 (Black v. Black, No. 2021 L 12893 (Ill. Cir. Ct. 2022) (Compl. Against the SNT)); D.E. # 342 ("Pls. Mar. 16, 2023 Let.") (explaining Katherine's three lawsuits).) Katherine's actions remain pending.[13] (See Pls. Mar. 16, 2023 Let. at 2-3.)

Third, throughout these litigations, the assets of the SNT and the Issue Trust have been held by JPMorgan Chase Bank and J.P. Morgan Securities LLC (collectively, "Chase") in Illinois. (See, e.g., Pls. 56.1 Stmt. ¶¶ 54, 64-65.) In response to the SNT disbursement requests approved by the Denver Probate Court, Bernard sought arbitration against Chase before the Financial Institutions Regulatory Authority ("FINRA"), seeking to freeze the assets of both Trusts with respect to litigation-related spending and raising claims of conversion, breach of contract, and breach of fiduciary duty against Chase. (Id. at ¶¶ 86-87; D.E. # 325-28 ("FINRA Mar. 23, 2018 Arbitration Award") at *2). On March 23, 2018, FINRA issued an arbitration award dismissing

---

[12] Initially, after Joanne's conservator intervened in the case, the Illinois lower court only vacated the portion of the agreed judgment with respect to the SNT but upheld the agreed judgment with respect to the Issue Trust. Black, 147 N.E.3d at 840. The Illinois Appellate Court reversed this holding and found the lower court to have abused its discretion by not vacating the agreed judgment in its entirety. Id. at 837.

[13] Katherine filed these new lawsuits using a different surname, without initially disclosing the prior Illinois state court's ruling vacating the agreed judgment, and again without giving notice to Joanne's conservator. (See D.E. # 343 ("Defs. Mar. 17, 2023 Let.") at 2.) Bernard then defaulted on both lawsuits, which resulted in two default judgments totaling some $3.5 million in favor of Katherine against the two Trusts. (Id.) Joanne's conservator then moved to intervene in the lawsuits, and the conservator's motions to vacate the judgments are currently being briefed before the Illinois state court. (Id.)

all three claims against Chase, but ordered Chase to (i) freeze all assets in the SNT and the Issue Trust "for use of and in connection with litigation expenses, costs or attorneys' fees in matters of any sort"; (ii) disperse SNT assets for Joanne's personal use only, including "her personal needs, clothing, food, living arrangements, travel, and entertainment"; and (iii) disperse Issue Trust assets for Bernard's "trust beneficiary children, for purpose of [their] . . . educational expenses." (FINRA Mar. 23, 2018 Arbitration Award at *6.)

Fourth, Chase, faced with conflicting orders regarding the disposition of the two Trusts' assets, filed an interpleader action in the Northern District of Illinois. See JPMorgan Chase Bank v. Black, No. 18-cv-3447, 2021 WL 4459482 (N.D. Ill. Sept. 29, 2021) ("JPMorgan"). As relevant here, the JPMorgan court issued an order on September 29, 2021, enjoining Chase from dispersing any of the Trusts' assets without prior approval from that court. Id. at *13. Although the JPMorgan court permitted the parties to continue to litigate the "disposition of the POD assets in the [Denver Probate Court] proceedings," it also ordered that "no party may seek to effectuate any turnover or withdrawal of the [Trusts'] Assets . . . , or seek to enforce any court order requiring such, without first filing a motion with this Court." Id. Subsequently, Dain and Joanne's conservator have filed counterclaims seeking, among others, an order for the assets of the two Trusts to be delivered to the Denver Probate Court's registry. (See D.E. # 344-11 ("Dain & Joanne Interpleader Countercls.") at *32-33.) This lawsuit remains pending.

As of the date of this opinion, the assets in the SNT and the Issue Trust—approximately $6,524,000—are still held by Chase in Illinois. See Interpleader Bond, JPMorgan, No. 18-cv-3447 (Mar. 1, 2022) (D.E. # 230).

## IV.    The Parties' Claims

Plaintiffs move for partial summary judgment on Counts 1, 8-9, 12, 15-17, 28, 31, and 36. (Pls. S.J. Mem. at 1.)  These counts concern exclusively Dain's allegedly wrongful actions with respect to the two Trusts, including a breach of the duty of loyalty (Counts 1, 8-9, and 17), a breach of the duty to defend the Trusts (Counts 9 and 28), a breach of the duty to obey Trusts' instruments (Counts 12 and 31), a breach of the duty of impartiality (Counts 15-16), and a breach of the duty to cooperate with co-trustees (Count 36).  (Am. Compl. at 1-3.)  Specifically, these claims implicate the following actions alleged by Plaintiffs to be wrongful:  (i) Dain's challenge of the disclaimer, which would have the effect of removing assets from the two Trusts; (ii) Dain's SNT disbursement requests; (iii) Dain's failure to defend against his own litigation against the Trusts; and (iv) Dain's failure to cooperate with his co-trustees, i.e., Bernard.  (See Pls. S.J. Reply at 5.)

Defendants move for summary judgment with respect to all remaining counts.  (Defs. S.J. Mem. at 8.)  In addition to the above, these remaining counts involve allegations of additional wrongful actions, including Dain's alleged use of confidential information of the Trusts beneficiaries in a manner adverse to their interests (Counts 4, 10, 22, and 29), Dain's alleged use of threats and intimidations directed at Bernard, his counsel, and his family (Counts 6 and 23), and the aiding and abetting claims related to Wrigley, Pinto, and CPI Investigations (Counts 53 and 57), among others.

In rebuttal, Defendants argue that preclusion applies against Plaintiffs, i.e., the Colorado proceedings have decided issues that either strip away standing or resolve issues on the merits against Plaintiffs' claims.  (Defs. S.J. Mem. at 12-37; Defs. S.J. Reply at 10-17.)  Plaintiffs disagree and urge me to accord little weight to the prior Colorado findings.  (Pls. Opp'n at 13-31; Pls. S.J. Mem. at 38-40.)

## STANDARD OF REVIEW

A party is entitled to summary judgment if the pleadings and evidence that would be admissible at trial show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001) (per curiam). At the summary judgment stage, the court's task is not to resolve disputed issues of fact, "but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). On summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," but instead to answer "the threshold inquiry of determining whether there is the need for a trial." Green v. Town of East Haven, 952 F.3d 394, 405-06 (2d Cir. 2020) (quoting Anderson, 477 U.S. at 249-50).

The moving party carries the burden of demonstrating the absence of a material factual question. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In determining whether this burden has been satisfied, a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant." Brod v. Omya, Inc., 653 F.3d 156, 164 (2d Cir. 2011) (quoting Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 126 (2d Cir. 2004)). Nevertheless, the nonmoving party cannot rest on speculations, conjectures, or denials, but "must 'set forth specific facts showing that there is a genuine issue for trial.'" Rubens v. Mason, 527 F.3d 252, 254 (2d Cir. 2008) (quoting Fed. R. Civ. P. 56(e)). A genuine issue exists only where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. When reviewing the evidence submitted for a motion for summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). However, "a district court is not obligated to hunt through a record, especially a voluminous record . . . to find buried

gems that might save a party's case." Hernandez v. Coca Cola Refreshments USA, Inc., No. 12-cv-234 (BMC), 2013 WL 6388654, at *3 (E.D.N.Y. Dec. 6, 2013).

This standard also applies to cross-motions for summary judgment. Generally, in deciding cross-motions for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Morales v. Quintel Ent., Inc., 249 F.3d 115, 121 (2d Cir. 2001). However, in cases in which "the motion and cross-motion seek a determination of the same issues, the Court may consider them together." ExteNet Sys., Inc. v. Village of Pelham, 377 F. Supp. 3d 217, 223 (S.D.N.Y. 2019).

## DISCUSSION

### I.    Preclusion

I begin with Defendants' arguments for issue preclusion and claim preclusion. Defendants contend that preclusion applies to the following issues: (i) the Denver Probate Court's finding that Bernard had breached his fiduciary duty as Joanne's conservator and had committed civil theft; and (ii) the Denver Probate Court's finding that the assets in the two Trusts belonged to Joanne's conservatorship, and therefore none of the Plaintiffs is entitled to any of the funds in either Trust in excess of the amounts apportioned to them under the terms of the POD. (Defs. S.J. Mem. at 13.)    Applying issue preclusion to the above issues, Defendants argue that the Colorado proceedings either (a) strip away the Plaintiffs' standing, because they no longer have a right or an interest in the disputed assets, and therefore no longer suffer an injury-in-fact, (Defs. S.J. Mem. at 21-23), or (b) demonstrate that Dain did not breach his fiduciary duty, because every allegedly wrongful action was in fact directed at exposing and countering Bernard's acts, which the Colorado courts have already found to be wrongful, (Defs. S.J. Mem. at 29-33; Defs. S.J. Reply at 12).

Separately, Defendants raise an argument for claim preclusion. Specifically, Defendants argue that Plaintiffs' claims are barred because they "stem from the exact same transaction as those in the Colorado proceedings." (Defs. S.J. Mem. at 20.)

Plaintiffs contend that the elements of issue or claim preclusion are not met. (Pls. Opp'n at 11-13, 19-30.) Plaintiffs also raise various additional counter-arguments, including that: (a) the holdings in the prior Colorado proceedings are dicta and therefore not controlling (id. at 9-10); (b) the Denver Probate Court lacked jurisdiction to hear the civil theft claim, and its decision is therefore void (id. at 17); (c) Defendants insufficiently raised preclusion as an affirmative defense (id. at 15); and (d) the law of the case doctrine applies given that I previously rejected Defendants' argument for issue preclusion in ruling on the motion to dismiss (id. at 13).

### A.     Issue Preclusion

When considering the effect of preclusion, a district court must "give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984); see also Leather v. Eyck, 180 F.3d 420, 424 (2d Cir. 1999). Thus, I apply Colorado law.

In Colorado, issue preclusion requires a showing of four elements: (i) "the prior proceeding was decided on a final judgment on the merits" (the "finality" requirement); (ii) "the issue in the current proceeding is identical to the issue actually adjudicated in a prior proceeding" (the "identity" requirement); (iii) "the party against whom issue preclusion is asserted had a full and fair opportunity to litigate the issue in the prior proceeding" (the "full and fair" requirement); and (iv) "the party against whom issue preclusion is asserted is a party or in privity with a party in the prior proceeding" (the "mutuality" requirement). Foster v. Plock, 394 P.3d 1119, 1123 (Colo. 2017) (citing Wolfe v. Sedalia Water & Sanitation Dist., 34 P.3d 16, 22 (Colo. 2015)). The burden

of establishing these elements rests with the party seeking preclusion. Bebo Constr. Co. v. Mattos & O'Brien, P.C., 990 P.2d 78, 85 (Colo. 1999). In this case, I find that Defendants have made a sufficient showing to apply issue preclusion to all of the issues identified supra.

### i.      Finality

First, regarding the "finality" requirement, I previously rejected Defendants' argument for preclusion at the motion to dismiss stage, because the Colorado cases were then under appeal and thus not final. (M&O to Defs. Mot. to Dismiss at 33-36.) Since then, the Colorado Court of Appeals has affirmed the various findings by the Denver Probate Court, and the Colorado Supreme Court has declined to grant certiorari. See Black I, 422 P.3d 592, cert. denied, 2019 WL 2178077; Black III, 482 P.3d 460, cert. denied, 2021 WL 1030354. The parties have not taken any further actions to appeal the Black decisions, and the deadline to file a writ of certiorari with the United States Supreme Court has lapsed. See 28 U.S.C. § 2101(c). Therefore, at this point, those prior Colorado proceedings are considered final. See Barnett v. Elite Props. of Am., Inc., 252 P.3d 14, 22 (Colo. App. 2010) ("[A] judgment is not final for purposes of issue preclusion until certiorari has been resolved both in the Colorado Supreme Court and the United States Supreme Court. Certiorari can be resolved in any of three ways: (1) the parties fail to file a timely petition for certiorari, (2) the court denies the petition for certiorari, or (3) the court issues an opinion after granting certiorari.").

In opposition, Plaintiffs argue that preclusion could apply only if a prior case had achieved finality before the commencement of the subsequent lawsuit. (Pls. Opp'n at 12.) To support this position, Plaintiffs cite S.O.V. v. People ex rel. M.C., 914 P.2d 355 (Colo. 1996). (Id.) Plaintiffs' reliance is misplaced. In S.O.V., a jury reached a verdict regarding a child's paternity, which was later challenged based on various procedural defects at trial, including the failure of the district court to appoint a guardian ad litem for the child. 914 P.2d at 357. Before the district court had a

chance to decide whether to issue a new trial, the child's newly appointed guardian ad litem intervened in the case and petitioned for a declaration of paternity, and the father moved to dismiss that petition on the basis of preclusion given the jury verdict. Id. at 358. In holding that preclusion did not apply, the Colorado Supreme Court emphasized that the trial court "had not entered final judgment but had before it an unresolved application for a new trial based on the failure to appoint a guardian for [the child]." Id. at 359. Accordingly, S.O.V. says nothing about the applicability of preclusion based on the timing of finality, but instead is a case in which preclusion did not apply simply because the prior case was still ongoing.[14]

To the contrary, "the effective date of a final judgment is the date of its rendition," and "it is not required that the judgment shall have been rendered before [the subsequent] action was commenced." Restatement (Second) of Judgments § 14 & cmt. a;[15] see also Humphreys v. McCabe Weisberg & Conway, P.C., 686 F. App'x 95, 97 n.1 (3d Cir. 2017) (per curiam) ("Issue preclusion requires . . . a 'final adjudication on the merits[,]' . . . [and] it does not matter that the federal complaint in this case was filed before the [prior action] was decided." (citations omitted)); cf. United States ex rel. Barajas v. Northrop Corp., 147 F.3d 905, 909 (9th Cir. 1998) ("The date of rendition of the judgment is controlling for purposes of res judicata, not the dates of commencement of the action creating the bar or the action to be affected by the bar."); Gonzalez v. City of New York, 396 F. Supp. 2d 411, 415 n.3 (S.D.N.Y. 2005) ("The filing and resolution of cases for the purposes of res judicata need not be sequential. . . . Thus, the fact that Plaintiffs began

---

[14] Plaintiffs also cite an academic article, (Pls. Opp'n at 12 n.64), which likewise does not support their argument that preclusion depends on the timing of finality. The article summarizes Colorado law and observes that "finality of judgment could be lacking if the appeal is not decided." Diane Vaksdal Smith, Finality of Judgment: Issue Preclusion, Claim Preclusion, and Law of the Case, 35 Colo. Law. 43, 44 (2006).

[15] The Colorado courts have previously cited the Restatement (Second) of Judgments when deciding issues regarding preclusion. See, e.g., Bebo Constr., 990 P.2d at 85.

19

the instant action prior to the resolution of the [prior case] has no effect on the application of the res judicata doctrine[.]"). Moreover, the Colorado Supreme Court has affirmed the application of issue preclusion in a similar fact pattern. See Bristol Bay Prods., LLC v. Lampack, 313 P.3d 674, 677 (Colo. App. 2011) (applying issue preclusion to a case that commenced before the prior case had concluded), aff'd in part, 312 P.3d 1155 (Colo. 2013). In Bristol Bay, the plaintiff first raised claims against a party in a California lawsuit, and "[s]everal weeks later," filed another lawsuit based on "nearly identical" allegations against a related party in Colorado. Id. at 677. The Colorado lower court then stayed the case while the California action proceeded, later dismissing the plaintiff's case on the basis of issue preclusion after the California action resulted in a jury verdict against the plaintiff. Id. Even though Bristol Bay involved a case in which the subsequent action commenced before the prior action reached finality, the Colorado Supreme Court affirmed the lower court's application of issue preclusion. 312 P.3d at 1155, 1163. Therefore, I reject Plaintiffs' argument here and conclude that Defendants have met the finality requirement.[16]

### ii. Identity

Second, regarding the "identity" requirement, Colorado requires that an issue be "actually litigated and necessarily adjudicated in the prior proceeding," meaning that an issue must have been "submitted for determination [in the prior proceeding] and then actually determined by the adjudicatory body" and that the "determination on that issue was necessary to a judgment." Bebo Constr., 990 P.2d at 84-86. Plaintiffs dispute that the issues in the prior proceeding and this case are identical. Plaintiffs first argue that the prior decision "cannot support collateral estoppel" because "no claim regarding Dain's breach of fiduciary duty was brought." (Pls. Opp'n at 20.)

---

[16] During oral argument, Plaintiffs attempted to argue against finality by noting that the issue regarding the voiding of the disclaimer is not final. (Oct. 27, 2022 S.J. Oral Arg. Hr'g Tr. 7:18-23.) This is unpersuasive, because the issue of the disclaimer is distinct from the issues of which Defendants seek preclusion.

This argument confuses issue preclusion with claim preclusion. Plaintiffs then argue that the Colorado decision in Black III concerned in rem jurisdiction over the SNT and not the Issue Trust's entitlement to the money, and so its conclusions are "dicta." (Id. at 5-6, 10.) I disagree.

As noted previously, the issues of Bernard's breach of fiduciary duty as conservator, Bernard's commission of civil theft, and Bernard's and his children's entitlement to the funds in the two Trusts constituted the key issues before the Denver Probate Court. Consistent with its authority,[17] the Denver Probate Court conducted an evidentiary hearing, where it "heard testimony, statements and argument of Counsel, reviewed exhibits entered into evidence, the record and relevant authority[,] [and took] . . . judicial notice of the filings in its case files," and concluded that Bernard had "breached his fiduciary duty" and had "committed civil theft against Joanne Black beyond a reasonable doubt." (Denver Probate Ct. Sept. 2015 Order at 1, 11-12.) Further, the Denver Probate Court found:

> Mr. [Bernard] Black is not entitled to rely on his receipt of the funds, as he obtained them by deception and by extension, his children are not entitled to rely on their receipt of the funds in excess of the POD amounts given to them by Renata Black.

(Id. at 11.) This conclusion formed the basis of the Denver Probate Court's subsequent finding—in its decision regarding the exercise of subject matter jurisdiction over the two Trusts—that "all of the funds Bernard Black transferred into the [Trusts] . . . were sourced from the [POD] accounts," and therefore, "[t]he funds transferred into the Issue Trust were never trust assets at inception as they were POD funds with Joanne Black as beneficiary." (Denver Probate Ct. Apr. 2018 Order at 7.) These statements were not mere dicta or conclusory remarks, but necessary

---

[17] The parties do not dispute that the Denver Probate Court is a constitutional court of record equal to a state trial court, with the power to conduct fact finding, to examine witnesses, and to "determine every legal and equitable question arising in connection with decedents', wards', and absentees' estates . . . ." In re Estate of Murphy, 195 P.3d 1147, 1150 (Colo. App. 2008); see also Levine v. Katz, 167 P.3d 141, 144-45 (Colo. App. 2006) (describing the history of the Denver Probate Court).

findings of fact to sustain the Denver Probate Court's conclusion that Bernard's conduct was wrongful and that, as a result, the Issue Trust was never entitled to the money therein "at inception." (Id.) Because the issues on which the Defendants seek preclusion were at the heart of the parties' dispute in Colorado and were properly before the Denver Probate Court, I find that those issues were "actually litigated" and "necessarily adjudicated."

### iii.    Full and Fair

Third, regarding the "full and fair" requirement, courts in Colorado apply a balancing test of various factors, including:

> [W]hether the remedies and procedures of the first proceeding are substantially different from the proceeding in which collateral estoppel is asserted; whether the party in privity with the party against whom collateral estoppel is sought had sufficient incentive to litigate vigorously; and the extent to which the issues are identical.

Bebo Constr., 990 P.2d at 87. The Colorado Supreme Court has previously found that even administrative proceedings, although distinct from judicial proceedings, have the requisite procedural protections needed to trigger preclusion. Id. ("[W]e refuse to recognize that agency proceedings differ markedly from judicial proceedings . . . ."). Here, as already noted, the issues are identical, and the Denver Probate Court is a judicial tribunal with authority on par with a state trial court. See Levine, 167 P.3d at 144-45. Bernard already had an opportunity to introduce evidence, call and cross-examine witnesses, and ultimately appeal the adverse decision to an appellate court. Accordingly, I do not find that the prior Colorado proceeding was "so inadequate or so narrow in focus as to deprive" Bernard of his due process rights. Bebo Constr., 990 P.2d at 87. In opposition, Plaintiffs raise the same arguments that they already lost on during the Black appeals—i.e., that the civil theft motion was "brought improperly," that Bernard had "no opportunity to respond," and that the Denver Probate Court lacks subject-matter jurisdiction to hear a claim based on a civil theft statute found in the criminal code. (Pls. Opp'n at 17, 23.)

Because the Colorado Court of Appeals already considered and rejected these arguments, Black I, 422 P.3d at 605-07, I decline to reconsider them here.

### iv. Mutuality

Fourth, regarding the "mutuality" requirement, the parties agree that the Colorado proceedings involved Bernard and not Plaintiffs (Bernard's children), but they disagree as to privity. In Colorado, privity requires a "comparison of the legal interests of each party" and an "understanding of whether the second party's legal interests were protected by the prior party." Foster, 394 P.3d at 1126. Stated differently, the privity requirement looks to a showing of both a "substantial identity of interests" and a "working or functional relationship . . . in which the interests of the non-party are presented and protected by the party in the litigation." Id. (quoting S.O.V., 914 P.2d at 360). Here, I conclude that Defendants have sufficiently demonstrated privity between Bernard and Plaintiffs.

Plaintiffs argue that privity is not met because, in Colorado, Bernard litigated his own interests as conservator "separate from those of the [P]laintiffs," and accordingly, Bernard did not "bring the same claims [Plaintiffs] bring here." (Pls. Opp'n at 21-22.) This is unpersuasive. As discussed previously, Bernard was, at the time of the Colorado proceedings, a trustee of both Trusts, and courts have traditionally viewed a trustee and a beneficiary to be in privity. See Richards v. Jefferson County, 517 U.S. 793, 798 (1996) ("[A] judgment that is binding on a . . . trustee may also bind . . . the beneficiaries of a trust."); Sea-Land Servs., Inc. v. Gaudet, 414 U.S. 573, 593 (1974) ("[N]onparties may be collaterally estopped from relitigating issues necessarily decided in a suit brought by a party who acts as a fiduciary representative for the beneficial interest of the nonparties."). Further, both Bernard and Plaintiffs are direct beneficiaries of the Issue Trust and remainder beneficiaries of the SNT. (See Issue Trust Instrument art. II, § D(1)(a)-(d); SNT Instrument art. III, § 1(3).) Plaintiffs, as Bernard's children, share the same

financial interest as their father. Further, the record supports an inference that Bernard understood his actions throughout the Colorado proceedings as advancing the interest of his children, including emails in which he describes his conduct as "protect[ing] the Roth IRAs that each of you received." (Defs. 56.1 Stmt. ¶ 47; see also Bernard Sept. 16, 2012 Email to Children at *2 (describing the Issue Trust money as "mostly [for] you; also me if I turn out to need it, which I do not expect").) The Denver Probate Court's opinion also frequently discusses Bernard's interests in the two Trusts assets together with his children's interests. (See, e.g., Denver Probate Ct. Sept. 2015 Order at 10 ("There is no doubt that . . . [Bernard] knew the result of his actions would be that one-third of Joanne Black's POD funds would be diverted to himself and his children[.]" (emphasis added)); id. at 11 ("Mr. Black is not entitled to rely on his receipt of the funds . . . and by extension, his children are not entitled to rely on their receipt of the funds in excess of the POD amounts given to them by Renata Black." (emphasis added)); id. at 12 ("[T]ax consequences to Renata Black's estate were minimized and the benefit passed on to Bernard Black and his children to Joanne Black's detriment." (emphasis added)).) Further, the record suggests a close working relationship between Bernard and Plaintiffs. For example, Sarah Black stated in her deposition that much of her involvement was directed by her father, who gave her the notice of her deposition, (D.E. # 315-14 (Sarah Black Dep. Tr.) 28:20-23.), the date and location of the deposition, (id. at 34:5-11), the news regarding her 1% interest in the POD, (id. at 46:22-47:8), the initial division of Renata's estate by two-third and one-third, (id. at 58:3-14), and the request to disclaim her 1% interest in the POD, (id. at 64:9-23). For these reasons, I find that Bernard's interests and the Plaintiffs' intersets overlap, and Bernard has played a primary role in litigating the Plaintiffs' interests in the prior proceedings.

### v.    Plaintiffs Remaining Challenges to Issue Preclusion

Plaintiffs' remaining challenges to the application of issue preclusion are unpersuasive. First, although Plaintiffs correctly pointed out that issue preclusion is "an affirmative defense that ordinarily must specifically be pleaded in the answer," Bebo Constr., 990 P.2d at 84, Defendants have done so here, (see D.E. # 153 ("Defs. Answer") ¶¶ 1528-29). Second, Plaintiffs urge that I apply the law of the case, since I previously rejected Defendants' argument for issue preclusion at the motion to dismiss stage. (See M&O to Defs. Mot. to Dismiss at 33-36.) "The law of the case doctrine . . . does not preclude this Court from reconsidering issues on summary judgment that have initially been raised in the context of a motion to dismiss." RSL Commc'ns PLC v. Bildirici, 649 F. Supp. 2d 184, 204 (S.D.N.Y. 2009) (citations omitted). In this case, the Colorado proceedings were still pending when I decided the motion to dismiss, and those proceedings have since become final. This "changed circumstance[]" warrants a reconsideration of my prior ruling on issue preclusion. Zander v. N.Y.C. Dep't of Correction, No. 16-cv-725 (AMD) (ST), 2019 WL 7598660, at *6 (E.D.N.Y. Aug. 27, 2019), report and recommendation adopted, 2019 WL 6317391 (Nov. 26, 2019).

Given the foregoing, I conclude that issue preclusion applies to the Denver Probate Court's findings that (a) Bernard had breached his fiduciary duty as conservator and had committed civil theft, (b) the assets in the Issue Trust belong to Joanne's conservatorship, and therefore, Plaintiffs are not entitled to any of the funds in the Issue Trust in excess of the amount apportioned to them under the terms of the POD.

### B.    Claim Preclusion

Defendants also raise an argument for claim preclusion, which "operates as a bar to a second action on the same claim as the one litigated in a prior proceeding . . . ." S.O.V., 914 P.2d at 358. In Colorado, claim preclusion has four elements: (1) "the judgment in the prior proceeding

was final" (the "finality" requirement); (2) "the prior and current proceeding involved identical subject matter" (the "identity of subject matter" requirement); (3) "the prior and current proceeding involved identical claims for relief" (the "identity of claims" requirement); and (4) "the parties to both proceedings were identical or in privity with one another" (the "mutuality" requirement). Foster, 394 P.3d at 1123.

Here, I decline to apply claim preclusion because Defendants have not made a sufficient showing of either identity requirement. Under Colorado law, the identity of subject matter requirement considers "whether the same evidence would sustain [the judgments in] both [proceedings], and if it would[,] [then] the two actions are the same . . . [even if they] are different in form." Id. at 1127 (quoting Farmers High Line Canal & Reservoir Co. v. City of Golden, 975 P.2d 189, 203 (Colo. 1999). The identity of claims requirement looks to whether the two proceedings "seek redress for essentially the same basic wrong" and involve the "same transaction." Id. Although this case has many similarities to the prior Colorado proceedings, it addresses a distinct claim—in Colorado, the claim involved Bernard's breach of fiduciary duty as conservator, whereas here, the claim involves Dain's alleged breach of fiduciary duty as trustee. Theoretically, both Bernard and Dain could have breached their respective duties. Further, Plaintiffs could not have brought their claims against Dain in Colorado. Because I find that Plaintiffs' claims here "were not truly available to the parties in the [prior] action," I decline to apply claim preclusion. City & Cnty. of Denver v. Block 173 Assocs., 814 P.2d 824, 831 (Colo. 1991) (en banc) (internal quotation marks and citation omitted) (declining to apply claim preclusion when the new claims were unavailable to the parties in the prior case), overruled on other grounds, Carousel Farms Metro. Dist. v. Woodcrest Homes, Inc., 442 P.3d 402 (Colo. 2019).

## II.    Standing

I next consider Defendants' argument regarding standing.  Defendants argue that the outcome of the Colorado proceedings rescinds Plaintiffs' interest in the assets in the two Trusts, and Plaintiffs therefore no longer suffer an injury-in-fact to sustain their standing.  (Defs. S.J. Mem. at 8-9. 21.)  This argument is unpersuasive.

Under Second Circuit precedent, "the standing doctrine evaluates [a litigant's] personal stake as of the outset of the litigation[.]"  Cook v. Colgate Univ., 992 F.2d 17, 19 (2d Cir. 1993); see also Chevron Corp. v. Donziger, 833 F.3d 74, 121 (2d Cir. 2016) ("[T]he standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." (quoting Davis v. Fed. Election Comm'n, 554 U.S. 724, 734 (2008))).  The parties do not dispute that Plaintiffs had standing at the outset of litigation, since Sarah and Jacob were both direct beneficiaries of the Issue Trust and remainder beneficiaries of the SNT.  See Zeff v. Weissman, 619 N.Y.S.2d 113, 114 (App. Div. 1994) (holding that beneficiaries of a trust have standing to bring a claim of breach of fiduciary duty); In re Will of Wadsworth, 551 N.Y.S.2d 84, 85 (App. Div. 1990) (holding that a remainder beneficiary of a trust has standing to bring a claim of breach of fiduciary duty).  Instead, whether Plaintiffs continue to suffer an injury based upon the subsequent final decisions of the Colorado courts goes not to standing, but more appropriately to the merits of their breach of fiduciary duty claims.  See Rut v. Young Adult Inst., Inc., 901 N.Y.S.2d 715, 717 (App. Div. 2010) (holding that a breach of fiduciary duty claim requires showing "damages directly caused by the defendant's misconduct").  Therefore, I reject Defendants' standing argument and will reach the merits of Plaintiffs' claims.

### III.    Breach of Fiduciary Duty[18]

Under New York law,[19] a claim of breach of fiduciary duty requires a showing of three elements: "(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) 'damages directly caused by [the defendant's] misconduct.'"  Sea Trade Mar. Corp. v. Coutsodontis, 744 F. App'x 721, 725 (2d Cir. 2018) (summary order) (alteration in original) (quoting Pokoik v. Pokoik, 982 N.Y.S.2d 67, 70 (App. Div. 2014)).  Importantly, because breach of fiduciary duty is a tort, a plaintiff's claim of such breach is "not enforceable until damages are sustained."  Id. (quoting IDT Corp. v. Morgan Stanley Dean Witter & Co., 907 N.E.2d 268, 273 (N.Y. 2009)).

### A.    Element No. 1:  Existence of a Fiduciary Duty

In this case, the first element is met.  The parties do not dispute that Dain owes a fiduciary duty to the SNT, and therefore, to Plaintiffs in their position as remainder beneficiaries.  (See Farinacci Expert Report at 12 ("Dain undoubtedly owed a duty of fidelity and loyalty to Plaintiffs

---

[18] In support of their briefings, both parties have submitted expert reports on the scope of the fiduciary duties of a trustee.  (See D.E. # 315-10 ("Farinacci Expert Report"); D.E. # 325-43 (Zaluda Expert Report).)  Both reports include limited citations to legal authorities, and Defendants' expert Farinacci explicitly opines on whether Dain's actions constitute a breach of fiduciary duty.  (Farinacci Expert Report at 14-15.)  In the Second Circuit, "the expert testimony of an attorney as to an ultimate issue of domestic law or as to the legal significance of facts is inadmissible."  Ideal World Mktg., Inc. v. Duracell, Inc., 15 F. Supp. 2d 239, 244 n.2 (E.D.N.Y. 1998) (citations omitted); see also Hygh v. Jacobs, 961 F.2d 359, 363 (2d Cir. 1992) ("This circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion.").  Because the parties' expert reports offer "legal conclusion[s] . . . [that] impinge[] upon the Court's role," I therefore decline to credit these reports and consider them only as an extension of the parties' memorandums of law.  Ideal World Mktg., 15 F. Supp. 2d at 244 n.2 (finding the plaintiff's expert report that opined on legal issues had "no probative value on this [summary judgment] motion").

[19] Plaintiffs make a half-hearted claim that Illinois law should apply but concede that they are unaware of "meaningful differences between the two states' laws."  (Pls. S.J. Reply at 4); Elam v. Ryder Auto. Operations, Inc., No. 94-cv-151A, 2004 WL 2202588, at *3 (W.D.N.Y. Sept. 30, 2004) (applying New York law when the defendants "failed to demonstrate a conflict [of laws]").  Moreover, Plaintiffs have likely waived the issue since they made no objection to the application of New York law to the motion to dismiss.  (M&O to Defs. Mot. to Dismiss at 37); Elam, 2004 WL 2202588, at *1-2 (concluding that a party waives the conflict-of-law objection at trial when it had previously failed to object during summary judgment).  Finally, the plain text of the Trusts' instruments favors applying New York law to claims of breach of fiduciary duty by a trustee.  (SNT Instrument, art. VI, § 3 ("The Trustee shall have all powers granted fiduciaries under the New York Estates Powers and Trusts Law[.]"); Issue Trust Instrument, art. V, § 3 (same)); Ministers and Missionaries Benefit Bd. v. Snow, 45 N.E.3d 917, 919 (N.Y. 2015) ("[New York] courts will generally enforce choice-of-law clauses.").

as trust beneficiaries.")); see also In re Heller, 849 N.E.2d 262, 266 (N.Y. 2006) (holding that "the trustees owe fiduciary obligations not only to the trust's income beneficiary, . . . but also to the other remainder beneficiaries"); United States v. Coppola, No. 88-cv-3456 (JBW), 1994 WL 665751, at *7 (E.D.N.Y. Nov. 17, 1994) ("Fiduciaries owe a duty to the life beneficiaries and the remaindermen." (citing In re Runals' Estate, 328 N.Y.S.2d 966, 973 (Surr. Ct. 1972))).

In addition, Plaintiffs correctly argued that Dain also owes a fiduciary duty to the Issue Trust directly, because his attempted resignation as trustee in 2015 via email failed to comply with New York law and was therefore ineffective. (Pls. S.J. Mem. at 35-36 (quoting N.Y. Est. Powers & Trusts Law § 7-2.6(a)(1).) In New York, "a trustee [who] has qualified and assumed the administration of his trust . . . cannot resign as a matter of right," but must petition the New York Surrogate's Court, which has discretion to grant or withhold such relief. In re Busto's Will, 19 N.Y.S.2d 4, 8 (Surr. Ct. 1939); see also In re Hutchinson's Estate, 257 N.Y.S.2d 358, 359 (Surr. Ct. 1965) ("Once a fiduciary qualifies and assumes the administration of an estate, he cannot resign except by following the procedure governing the resignation of fiduciaries as outlined in . . . the Surrogate's Court [Procedure] Act." (citations omitted)). Therefore, although Dain attempted to resign as trustee of the Issue Trust and has been treated as such by Plaintiffs, (see, e.g., Am. Compl. ¶ 10 ("Dain is a co-trustee of only the SNT."); D.E. # 339 (Pls. Oct. 26, 2022 Let. re Settlement) at *3 (same)), Dain's email alone is "legally ineffective to constitute a resignation." In re Busto's Will, 19 N.Y.S.2d at 8. Because Defendants did not make a showing "whether any court granted [Dain] permission to resign," Blank v. Blank, 634 N.Y.S.2d 886, 888-89 (App. Div. 1995), I conclude that Dain, even if not a de facto trustee, remains a de jure trustee of the Issue Trust.

## B. Elements Nos. 2 & 3: Misconduct, Damage and Causation

To support the remaining elements, Plaintiffs point to multiple allegedly wrongful actions by Dain in their briefing and amended complaint.[20]

### i. Dain's Efforts to Void the Disclaimer (Counts 1*, 3, 8*, 9*, 12*, 15*, 16*, 17*, 21, 28*, 31*, and 32)[21]

Plaintiffs' main allegation revolves around Dain's efforts to void the disclaimer. Specifically, Plaintiffs argue that (i) by challenging the disclaimer, Dain's actions had the effect of defunding the two Trusts, which Plaintiffs characterize as an "attack" on the Trusts, thereby violating the duty of loyalty to beneficiaries of the Trusts, the duty to defend the Trusts, and the duty to obey the Trusts' instruments and settlor's intent (Counts 1, 3, 9, 12, 17, 21, 28, 31, and 32), (see Pls. S.J. Mem. at 40-46, 50-53; Pls. Opp'n at 39-42; Pls. S.J. Reply at 18-20); and (ii) by promoting Joanne's interests over those of the Plaintiffs, Dain as SNT trustee violated the duty of impartiality by favoring the primary beneficiary over the remainder beneficiaries, and Dain as Issue Trust trustee additionally violated the duty of loyalty by favoring a non-beneficiary over direct beneficiaries (Counts 8, 15, and 16), (see Pls. S.J. Mem. at 46-48; Pls. S.J. Reply at 12-14, 20-21).

---

[20] In considering Dain's alleged misconduct, I reject Defendants' argument that all alleged actions that occurred after the filing of Plaintiffs' amended complaint in 2018 constitute "new facts, theories, and claims" that should be ignored. (Defs. Opp'n at 15.) Although a party "cannot amend their complaint simply by alleging new facts and theories in their [summary judgment papers]," Plaintiffs here did not allege "a different and inconsistent set of facts than those alleged in [their] Complaint." Heletsi v. Lufthansa German Airlines, Inc., No. 99-cv-4793 (SJ), 2001 WL 1646518, at *1 n.1 (E.D.N.Y. Dec. 18, 2001); cf. Kearney v. County of Rockland, 373 F. Supp. 2d 434, 440-41 (S.D.N.Y. 2005) (declining to consider new claims added in a summary judgment filing when "nothing in [the plaintiff's complaint or EEOC charge] put defendants on notice of this new allegation"). Despite their protest, Defendants concede that the additional facts all flow from the same alleged misconduct: Dain's actions with respect to defunding the Trusts. (See Defs. Opp'n at 15-16 (identifying counts that all relate to the alleged defunding).) Because I find that Defendants have failed to show that they were prejudiced by Plaintiffs' inclusion of these additional facts, I will consider them in this motion.

[21] Non-asterisk indicates claims moved on only by Defendants for summary judgment; asterisk indicates claims also moved on by Plaintiffs for summary judgment.

In opposition, Dain argues that many of the actions against the disclaimer were taken by other individuals, such as Joanne's court-appointed attorney or conservator, and those actions cannot be attributed to him. (See Defs. Opp'n at 12; D.E. # 345 (Defs. Mar. 28, 2023 Let.) at 2; Oct. 27, 2022 S.J. Oral Arg. Hr'g Tr. 18:2-15.) Although a party cannot ordinarily be held responsible for a third party's actions absent some showing of special circumstances, such as under a theory of respondeat superior, see, e.g., Matos v. DePalma Enters. Inc., 554 N.Y.S.2d 367, 368 (App. Div. 1990), the record shows that Dain has taken actions directly against the disclaimer. For example, in February 2015, Dain appeared at a guardianship proceeding in New York, where he both alerted the New York state court to the possible issue of Bernard's civil theft and stated that the "[Issue Trust] needs to be—the money in it needs to be defunded." (D.E. # 325-14 ("Dain's Feb. 19, 2015 Stmt. to N.Y. Sup. Ct.") at 3.) A few months later, Dain raised the same issue with the Denver Probate Court and suggested that the disclaimer needs to be "unwound." (D.E. # 325-10 ("Denver Probate Ct. Apr. 2, 2015 Hr'g Tr.") 16:5-8, 23:15-24:10.) In the subsequent evidentiary hearing before the Denver Probate Court, Dain actively participated on behalf of Joanne, including by raising objections, answering the probate judge's questions, and conducting witness examinations. (See, e.g., D.E. # 325-2 (Denver Probate Ct. June 16, 2015 Hr'g Tr.) 13:6-216:17 (Dain's direct examination of Bernard); D.E. # 325-4 (Denver Probate Ct. Aug. 5, 2015 Hr'g Tr.) 63:3-111:17, 154:7 (Dain's cross examination of Bernard).) When later describing his role in the Colorado proceedings to a New York state court, Dain stated that he was "the lead

attorney." (See Pls. S.J. Reply at 6 & n.18.)[22]  Given the foregoing, I reject Dain's argument here and conclude that Dain was the driving force behind the challenge on the disclaimer.

### a.    "Misconduct" Element

With respect to the "misconduct" element, Plaintiffs have sufficiently shown that Dain's actions as trustee of the two Trusts constituted "misconduct."

### 1.    SNT

This case raises a unique fact pattern where Dain, as SNT trustee, had two conflicting obligations.  On the one hand, a trustee must ensure that the trust is properly funded.  See In re James H. Supp. Needs Tr., 101 N.Y.S.3d 477, 481-82 (App. Div. 2019) (upholding the lower court's removal of the defendant as trustee in part due to his failure "to seek funding for two [supplemental needs trusts] over which he was trustee").  On the other hand, a trustee also has an "absolute and positive duty" to "defend the life of the trust," Cuthbert v. Chauvet, 32 N.E. 1088, 1091 (N.Y. 1893), "even when the beneficiaries desire to have [the trust] adjudged void," Cent. Nat'l Bank v. Seligman, 34 N.E. 196, 259 (N.Y. 1893) (citation omitted).  At least some cases have held this duty to apply even when the trustee suspects that the underlying trust assets were unlawfully obtained.  See, e.g., Guilfoil v. Arthur, 41 N.E. 1009, 1011 (Ill. 1895) (holding that a

---

[22] Dain's statement, which was made to a New York state court in a guardianship proceeding, is copied in Plaintiff's briefing; the underlying transcript, which remains sealed, was not included in the summary judgment record. (See Pls. S.J. Reply at 6 n.18.)  The colloquy is reproduced below:

> Q. You have generously provided those trial lawyer services to Joanne, have you not?
> A. In Colorado, yes.
> Q. Would it be fair to say you managed all four days of litigation?
> A. I was the lead attorney.
> Q. So you flew in from California and on your own dime went to Denver four times and did all the preparation and trial work in Denver, Is that correct?
> A. For all the hearings and all the trial dates, yes.

(Id. at 6.)

trustee cannot refuse to perform the requirements of a trust instrument by arguing that the underlying trust property was unlawfully acquired); Carter v. Carter, 184 A. 78, 80 (Pa. 1936) (holding that a trustee who accepted a trust's appointment cannot "deny the validity of the trust" or allege that "the gift in trust was based upon an illegal consideration"); Amy M. Hess et al., Bogert's The Law of Trusts and Trustees ("Bogert's Treatise") § 581 (June 2022) (noting that a trustee "has a duty not to . . . maintain that [the trust's] creation was procured in an illegal manner").[23]

In this case, the very same event—the disclaimer filed by Bernard—both funded the SNT and deprived Joanne of some of her assets. Although Dain as trustee was obligated to investigate once he received notice that some of Joanne's money was missing from the SNT, he did not pursue a course of action that would unequivocally preserve the trust—e.g., seeking to surcharge Bernard only and without affecting the assets already deposited in the SNT. Instead, Dain worked with Joanne's representatives in attempts to void the disclaimer, which would have the effect of defunding the SNT. (See, e.g., Dain & Joanne Interpleader Countercls. at *32 (filing counterclaims that seek a transfer of all assets of the two Trusts to the conservatorship).) Although Dain did not seek to invalidate the trust wholesale or argue that the trust was procured illegally, Dain's actions could result in a "loss to the trust property." Cuthbert, 32 N.E. at 1091 (stating that courts "will closely scrutinize [a trustee's] acts, and interfere to control his conduct whenever necessary to prevent him from so exercising his discretion as to oppress the beneficiary, or cause loss to the trust property").

---

[23] Both the Supreme Court and the New York Court of Appeals have cited Bogert's Treatise in their analyses of issues related to the administration of trusts. See, e.g., N.C. Dep't of Revenue v. The Kimberley Rice Kaestner 1992 Fam. Tr., 139 S. Ct. 2213, 2217-18 (2019); Quadrant Structured Prods. Co. v. Vertin, 16 N.E.3d 1165, 1169 (N.Y. 2014).

Additionally, Plaintiffs also argue that Dain's actions here favored Joanne as the primary beneficiary over Plaintiffs as remainder beneficiaries. Although a trustee must act impartially with respect to both primary beneficiaries and remainder beneficiaries, see, e.g., Merer ex rel. Merer v. Romoff, 660 N.Y.S.2d 241, 245 (Sup. Ct. 1997), the duty of impartiality does not require "an equal balancing of diverse interests" and permits a trustee to respect "any ascertainable preferences . . . for some beneficiaries over others," Restatement (Third) of Trusts § 79, cmt. c.[24] However, New York courts have previously held that a trustee crosses the line when he or she affirmatively pursues legal actions on behalf of one group of beneficiaries against another. See Redfield v. Critchley, 300 N.Y.S. 305, 310-11 (App. Div. 1937) (finding that a trustee breached his duty of impartiality by suing a primary beneficiary on behalf of the remainder beneficiaries). Here, although Dain did not directly file any lawsuits against Plaintiffs and does not appear as a plaintiff in any of the pending actions, his representation of Joanne as, in his own words, "the lead attorney" before the Denver Probate Court raises questions regarding impartiality. (See Pls. S.J. Reply at 6.)

Accordingly, viewing the facts in the light most favorable to Plaintiffs, Brod, 653 F.3d at 164, I conclude that Plaintiffs have made a sufficient showing of "misconduct" with respect to the SNT.

### 2.    Issue Trust

With respect to the Issue Trust, Plaintiffs have also sufficiently shown "misconduct" by Dain. As discussed previously, Dain's attempted resignation in December 2015 as trustee of the Issue Trust did not comply with New York law, and he therefore is still a de jure trustee of the

---

[24] New York courts have cited the Restatements in their analysis of trusts. See, e.g., Mercury Bay Boating Club Inc. v. San Diego Yacht Club, 557 N.E.2d 87, 95 (N.Y. 1990); In re Heller, 800 N.Y.S.2d 207, 210 (Sup. Ct. 2005).

Issue Trust. Because the central allegation of this case concerns whether the Issue Trust beneficiaries (Bernard and Plaintiffs) unlawfully took money from the SNT beneficiary (Joanne), Dain's position as trustee of the two Trusts unambiguously creates a conflict of interest. The record shows several actions by Dain that evidence this conflict, including (i) his statement to the New York state court that the Issue Trust "needs to be defunded," which was made some ten months before his attempted resignation as trustee of the Issue Trust, (Dain's Feb. 19, 2015 Stmt. to N.Y. Sup. Ct. at 3); (ii) his statement to the Denver Probate Court that the disclaimer may need to be "unwound," (Denver Probate Ct. Apr. 2, 2015 Hr'g Tr. 16:5-8, 23:15-24:10); and more recently, (iii) his filing of counterclaims in JPMorgan seeking a court order to "deliver the assets of . . . [the Issue Trust] to the Denver Probate Court's Registry," (Dain & Joanne Interpleader Countercls. at *32). Indeed, when the Denver Probate Court commended Dain for his efforts at revealing Bernard's civil theft, the probate judge described Dain's action as having "solely been for the benefit of . . . Joanne[.]" (Denver Probate Ct. Sept. 2015 Order at 13.)

Under New York law, a trustee owes the beneficiaries "a duty of undivided and undiluted loyalty," which is breached when the trustee must "make decisions which favor a third person who is competing with the beneficiary." Marcus v. Quattrocchi, No. 08-cv-9514 (VB), 2014 WL 521340, at *8 (S.D.N.Y. Feb. 4, 2014) (citations omitted); see also Phelan v. Middle States Oil Corp., 220 F.2d 593, 627 (2d Cir. 1955) (Frank, J., dissenting) (noting that a trustee breaches his duty of loyalty when he or she "acts in the interest of any third person"). This principle includes circumstances in which an individual is trustee of two trusts. See Phelan, 220 F.2d at 627 (noting that "one who is a trustee of two trusts, if he engages in dealings between the trusts, is guilty of disloyalty to one or the other, unless he shows that the transaction is fair to both"); Restatement (First) of Trusts § 170, cmt. q ("If the circumstances are such that the interests of the beneficiaries

of the different trusts are so conflicting that the trustee cannot deal fairly with respect to both trusts, he cannot properly act without applying to the court for instructions."). In this case, Joanne is considered a non-beneficiary third party to the Issue Trust. By acting on her behalf and adverse to Plaintiffs' interests, Dain violated the duty of loyalty to the Issue Trust beneficiaries.

### b. "Damage" Element

Although Plaintiffs sufficiently meet the "misconduct" element for the purpose of the summary judgment motion, Plaintiffs have failed to show the third element, namely, that they suffered "damages directly caused by [Dain's] misconduct." Sea Trade Mar., 744 F. App'x at 725. The Second Circuit recently clarified that the third element of a breach of fiduciary duty claim requires "proof of 'damage' (harm or injury)," and "[n]ominal damages [alone] cannot satisfy the 'damage' element of a breach of fiduciary duty claim." Yukos Cap. S.A.R.L. v. Feldman, 977 F.3d 216, 241-43 (2d Cir. 2020).[25] A plaintiff could show "damage" in two ways: through an actual loss, see, e.g., Scalp & Blade, Inc. v. Advest, Inc., 765 N.Y.S.2d 92, 97-99 (App. Div. 2003) (describing various ways a breaching trustee could cause actual loss, such as improper retention of trust assets, failure to diversify assets, among others), or through receiving compensation or profits as a result of their misconduct, see, e.g., Yukos Cap., 977 F.3d at 242 (holding that "a faithless servant's compensation may satisfy the 'damage' element of a breach of fiduciary duty claim"); see also Diamond v. Oreamuno, 248 N.E.2d 910, 912, 916 (N.Y. 1969) (holding that, even where the beneficiaries do not suffer an actual loss, the fact that the defendants earned a profit

---

[25] In Yukos Capital, the Second Circuit distinguished between the term "damages" in plural and "damage" in singular, explaining that the latter is the term that "more precisely" describes the third element of a breach of fiduciary duty claim. 977 F.3d at 241. I use the term "damage," "injury," and "harm" in the same manner in this opinion.

as a result of their breach of fiduciary duty is sufficient to meet the elements of the claim and for the complaint to survive a motion to dismiss).

In this case, Plaintiffs do not argue that they suffered "damage" based on compensation paid to Dain or any alleged profits received by Dain as a result of his misconduct. Moreover, Plaintiffs also do not explicitly argue for "damage" based on any defunding of the two Trusts, (see Pls. S.J. Reply at 15), although Defendants raise this issue in their summary judgment motion, (see Defs. S.J. Mem. at 22-23). Instead, Plaintiffs proffer three alternative theories of damage: (i) injury based on money that the two Trusts owed to Bernard in his capacity as the executor of Renata's estate, as well as money owed to Bernard and Samuel in their capacities as trustees; (ii) injury based on money lost from Dain's SNT disbursement requests, plus the loss appreciation of SNT's value resulting therefrom; and (iii) injury based on money that Bernard borrowed on behalf of the two Trusts from Katherine and Dal in order to fund his litigations. (See Pls. S.J. Reply at 15; Pls. Opp'n at 31-32.)

I first address the issue whether any defunding of either Trust could serve as a cognizable theory of harm. As noted previously, neither Trust has yet been defunded to date, although several pending actions—including the motion to void the disclaimer filed in November 2022 and Dain's counterclaims in JPMorgan—may lead to a defunding of one or both Trusts in the future. (See Mot. to Void Disclaimer at 4-5; Dain & Joanne Interpleader Countercls. at *32.) I conclude, however, that even if all SNT or Issue Trust assets were someday transferred to Joanne directly, Plaintiffs cannot assert any "damage" in light of the preclusive effect of the decisions already reached by the Colorado courts. As summarized at length above, the Denver Probate Court found Bernard to have committed "civil theft against Joanne Black beyond a reasonable doubt," (Denver Probate Ct. Sept. 2015 Order at 11), and therefore "all of the funds Bernard Black transferred into

[the two Trusts]" were "never trust assets at inception" and "remain a part of the conservatorship estate," (Denver Probate Ct. Apr. 2018 Order at 7). These findings have been affirmed on appeal, and the proceedings have since become final. See Black I, 422 P.3d at 609 ("[W]e conclude the evidence was sufficient to sustain a finding that Mr. [Bernard] Black committed civil theft."); Black III, 482 P.3d at 482 ("[W]e hold that the funds Bernard diverted to the Trusts were at all times assets of Joanne's conservatorship[.]"). Therefore, these findings are entitled to preclusive effect.

"It is a long-established general rule that 'a thief cannot convey a good title to stolen property.'" S.E.C. v. Universal Express, Inc., No. 04-cv-2322 (GEL), 2008 WL 1944803, at *3 (S.D.N.Y. Apr. 30, 2008) (quoting Newton v. Porter, 69 N.Y. 133, 137 (1877)). The Supreme Court has likewise held that "he who fraudulently traffics with a recreant fiduciary shall take nothing by his fraud." United States v. Dunn, 268 U.S. 121, 132 (1925) (noting that the defendants "did not retain their interest in the lease which they had fraudulently acquired"). In the context of trusts, New York courts have held that "[m]oney accepted by a trustee with knowledge that its acceptance is a theft never becomes of right a part of the trust estate." Whiting v. Hudson Tr. Co., 138 N.E. 33, 38 (N.Y. 1923) (Cardozo, J.). Whiting offers a comparable example to this case. There, a fiduciary misappropriated money by transferring some assets from an estate to a trust, and the New York Court of Appeals concluded that the beneficiaries of the estate may seek recovery against the trust, which "is still augmented by assets unconscionably retained." Id. at 37-38.

In this case, the Denver Probate Court conducted a lengthy evidentiary hearing, concluding that Bernard had breached his fiduciary duty as conservator and had committed civil theft beyond a reasonable doubt. (Denver Probate Ct. Sept. 2015 Order at 11.) In reaching that conclusion, the Denver Probate Court explicitly found Bernard (i) "deliberately withheld full disclosure of his

38

intention to this Court when he sought and received permission to disclaim the funds," (ii) "knowingly obtained and exercised control over the POD accounts without authorization and by deception," and (iii) "knowingly used Joanne Black's POD account funds to fund the Issue Trust . . . [with the intent to] permanently deprive her of those funds." (Id. at 10.) Applying issue preclusion, I conclude that Bernard transferred Joanne's POD assets into the two Trusts "with knowledge that [such] acceptance is a theft," and therefore, those assets "never [became] of right a part of the trust estate."[26] Whiting, 138 N.E. at 38. Accordingly, because Plaintiffs were never entitled to any of the transferred money, they cannot assert any actual injury from deprivation of those assets, and therefore, they do not sufficiently raise a breach of fiduciary duty claim. See Shaffer v. Kaplan, No. 11-cv-239, 2014 WL 2009103, at *11 (D. Vt. May 16, 2014) ("Even if there were facts on the record indicating that any of [the trustee's] transactions were somehow suspect, [the plaintiff's] claim still fails because he cannot demonstrate that any of the transfers caused him harm, which is an essential element of any claim for breach of fiduciary duty."); C.E. v. A.E., No. 365394/2021, 2022 WL 1022122, at *3 (N.Y. Sup. Ct. Apr. 4, 2022) (dismissing the plaintiff's breach of fiduciary duty claim in part because of insufficient showing that the plaintiff will incur any actual pecuniary loss as a result of the wrongdoing). At most, Plaintiffs might seek nominal damages resulting from Dain's misconduct, but nominal damages are insufficient to satisfy the "damage" element. Yukos Cap., 977 F.3d at 243.

Plaintiffs' alternative theories of harm are similarly unpersuasive, given that none of those theories states a cognizable injury. First, with respect to any money owed to Renata's estate or to

---

[26] In their opposition papers, Plaintiffs sought to distinguish Whiting by arguing that Bernard did not have "actual knowledge that the funds were stolen (by him)" and that he "still believes" that he had done the right thing. (Pls. Opp'n at 41.) Bernard's subjective belief here is immaterial, as the Denver Probate Court already concluded that he had knowingly committed civil theft.

Bernard or Samuel, I have already dismissed those claims on the motion to dismiss, and Plaintiffs offered no legal basis for reconsideration. (See M&O to Defs. Mot. to Dismiss at 31-32, 50); cf. Bonilla v. Nelson & Kennard, No. 19-cv-5067 (DLI) (RER), 2021 WL 2400914, at *1 (E.D.N.Y. June 11, 2021) (summary order) (noting that "[t]he standard for granting a motion for reconsideration is strict" and requires a showing of "controlling decisions or data that the court overlooked" (alterations and citation omitted)).

Second, with respect to the SNT disbursement requests by Dain, Defendants argue that since they "were all approved by the Denver Probate Court and affirmed by the Colorado Court of Appeals," Plaintiffs should be precluded from challenging them "as a matter of policy." (Defs. S.J. Reply at 21.) To the extent Defendants ask for an application of issue preclusion, they have not met their burden of showing that issue preclusion applies here. In Black III, the Colorado Court of Appeals upheld the SNT disbursement request on the basis that the underlying funds were all assets of the conservatorship, 482 P.3d at 482, and the issue whether these requests also comported with a trustee's fiduciary duty was not "actually litigated." See Bebo Constr., 990 P.2d at 85-86. However, since I already concluded that Plaintiffs have no entitlement to the SNT assets funded by the disclaimer, any deprivation of those assets cannot form a basis to injure Plaintiffs.

Third, with respect to money owed to Katherine and Dal, I note at the outset that only Dal has a final judgment against the two Trusts. (See Pls. Mar. 16, 2023 Let.) However, the possibility that the two Trusts will have to pay lenders who hold valid judgments has no bearing on Plaintiffs, who, as discussed, have no entitlement to the assets transferred to the Trusts and therefore cannot suffer an actual injury.

Additionally, as evidenced by Plaintiffs' damages expert report, the Katherine and Dal loans were exclusively used to fund Bernard's litigations. (See D.E. # 325-12 ("Harper Expert

Report") at *14 (detailing the allocation of the loan money to various lawsuits, such as the "Dain Case," the "Wrigley/Pinto Case," and the "Chase Interpleader in NY," among others).) Plaintiffs argue that these litigation expenses are cognizable injury, and Plaintiffs cite to my ruling on the motion to dismiss as support. (Pls. S.J. Reply at 15 & n.62 (citing M&O to Defs. Mot. to Dismiss at 29).)[27] In the memorandum and opinion on the motion to dismiss, I stated that "legal fees and other expenses . . . are cognizable damages," (M&O to Defs. Mot. to Dismiss at 45), and I cited Plaintiffs' memorandum of law, which in turn quotes a New York case for the proposition that a trustee is "entitled to be reimbursed their reasonable and proper expenses in [defending the trust] . . . out of the corpus of the trust property," (D.E. # 79 (Pls. Mot. to Dismiss Opp'n) at 23 (quoting Steinway v. Steinway, 98 N.Y.S. 99, 100 (App. Div. 1906)).) Steinway represents a line of cases in New York that has held that a winning trustee may, in some cases, seek reimbursement from the trusts. See also Jessup v. Smith, 119 N.E. 403, 404 (N.Y. 1918) (Cardozo, J.) ("A trustee who pays his own money for services beneficial to the trust has a lien for reimbursement."); Weidlich v. Comley, 267 F.2d 133, 135 (2d Cir. 1959) (Hand, J.) ("To compel [a trustee] to bear the expense of an unsuccessful attack would be to diminish the compensation to which he is entitled[.]"); cf. In re Estate of Saxton, 686 N.Y.S.2d 573, 580 (Surr. Ct. 1998) ("[I]t is a generally accepted principle that in a contested accounting where a trustee has found to have been imprudent, the trustee is disallowed payment from the trust of the trustee's attorneys' fees incurred in defending the objections[.]"). However, Steinway says nothing about the ability of a beneficiary to seek reimbursement directly from a trustee. In stating that legal fees are cognizable in the

---

[27] Plaintiffs' citation to page 29 of the motion to dismiss opinion appears to be an error, as that page discusses Plaintiffs' standing and not whether litigation expenses are cognizable damages.

motion to dismiss ruling, I simply acknowledged <u>Steinway</u> but did not hold that Plaintiffs' litigation expenses in this case constituted a cognizable injury.

To the contrary, New York courts have held that "a party is [generally] not entitled to recover attorneys' fees from an opposing party even though the necessity of engaging in litigation was caused by the wrongful acts of the opposing party." <u>In re Estate of Saxton</u>, 686 N.Y.S.2d at 581. In a breach of fiduciary duty case against a trustee, the typical remedy contemplated by the Restatement is "the amount required to restore the values of the trust estate" or "the amount of any benefit to the trustee personally as a result of the breach." Restatement (Third) of Trusts § 100. An award of attorney's fees incurred by the beneficiaries is "not a routine part of trustee liability for breach of trust" but rather "a matter of judicial discretion." <u>Id.</u> cmt. a, b(2). This means that a plaintiff will rarely receive litigation expenses as a form of compensable damage in a breach of fiduciary duty lawsuit, especially in a case like this where Plaintiffs do not have any other valid theories of injury apart from their litigation expenses. Because Plaintiffs have not made a sufficient showing that they are even entitled to recover litigation expenses in this or other lawsuits, I decline to find litigation expenses to be a cognizable injury sufficient to meet the "damage" element of their claim.

In concluding that none of Plaintiffs' theories of injury is cognizable, I emphasize the unique context of Dain's misconduct in this case: Suspecting that Bernard misappropriated some of his beneficiary's money, Dain sought judicial review. Because Bernard's wrongdoing with respect to the disclaimer funded the two Trusts, Dain's actions challenging the disclaimer resulted in a violation of his duty of loyalty and duty of impartiality, given that one possible outcome of his challenge would be to remove Trusts' assets. Putting aside whether Dain was the appropriate party to challenge Bernard's wrongdoing, serious wrongdoing was discovered. The wrongdoer,

Bernard, then launched multiple lawsuits across multiple jurisdictions to slow or reverse the adverse findings against him in Colorado, losing practically every case.[28] Many of these lawsuits followed the same playbook, whereby Bernard or his family would sue the Trusts, intentionally withhold notice to Dain or Joanne's representatives, and then obtain a default judgment against the Trusts, all of which—except for the action related to the Dal loan—have been vacated.[29] To fund these machinations and perhaps to hedge against an inevitable defeat, Bernard and his wife Katherine then entered into certain loan agreements that have been characterized by at least one court as a "conspir[acy] to fraudulently encumber the accounts which contain the stolen money," and that court has since ordered Bernard be referred to the New York State Bar disciplinary authority. Black, 2023 WL 1989793, at *20. In this context, Bernard's continuous litigation and the resulting legal expenses cannot, by themselves, serve as a cognizable injury in Plaintiffs' claims against Dain, particularly when Plaintiffs have failed to demonstrate any harm other than having incurred litigation expenses. Stated differently, a beneficiary should not be able to allege wrongdoing by a trustee, file numerous unsuccessful lawsuits, and then argue that the fees associated with those lawsuits form the basis of "damage."

---

[28] See, e.g., Black, No. 16-cv-1763, slip op. at *1 (N.D. Ill. July 13, 2016) (dismissing an action by Bernard seeking to access Issue Trust assets); Black, No. 2021 CH 2952, slip op. at *2 (Ill. Cir. Ct. Oct. 17, 2022) (available at D.E. # 344-4) (vacating a default judgment declaring the disclaimer irrevocable), appeal filed, No. 1-22-1667 (Ill. App. Ct.) (see Pls. Mar. 27, 2023 Let. at 2); Black, 2023 WL 1989793, at *20 (recommending the denial of Bernard's removal of the Denver Probate Court proceeding to federal court); see also Black, 2021 WL 4932129, at *19 (granting summary judgment for defendants in a case alleging fraud and unjust enrichment against Wrigley); Black, 997 F.3d at 706 (upholding the jury verdict against Katherine in her defamation and torts lawsuit against Wrigley).

[29] See, e.g., Black, No. 2021 L 817 (Ill. Cir. Ct. 2021) (see Defs. Mar. 17, 2023 Let. at 2) (seeking payment of Katherine's loans); Black, No. 2021 CH 2952, slip op. at *2 (vacating a default judgment for failure to join a necessary party).

Given the foregoing, Defendants' motion for summary judgment with respect to Dain's actions voiding the disclaimer (i.e., Counts 1, 3, 8, 9, 12, 15, 16, 17, 21, 28, 31, and 32) is granted. Plaintiffs' corresponding motion for partial summary judgment is denied.

ii.    **Dain's Other Actions (Counts 2, 4, 5, 6, 7, 8, 10, 11, 13, 14, 18, 19, 20, 22, 23, 24, 25, 26, 27, 29, 30, 33, 34, 35, 36\*)**[30]

Plaintiffs also raise nine additional actions by Dain that are allegedly wrongful. These include: (i) Dain's alleged improper use of trust assets to finance his own litigation, while denying Plaintiffs access to those same assets for their litigation (Counts 2, 5, 13, 20, 26, and 27); (ii) Dain's alleged failure to cooperate with co-trustees in the management of the two Trusts, as well as alleged failure to cooperate with Bernard against Dain's own attack on the two Trusts (Counts 14, 34, 35, and 36); (iii) Dain's allegedly perjurious statements made in the Colorado and New York proceedings (Counts 8 and 25); (iv) Dain's alleged use of threats and intimidation directed at Bernard, Bernard's counsel, and members of Bernard's family (Counts 6 and 23); (v) Dain's alleged efforts to divest the Black family's control over the SNT in violation of the terms of the SNT Instrument (Counts 19 and 33); (vi) Dain's alleged use of confidential information of the Trusts in a manner adverse to the beneficiaries (Counts 4, 10, 22, and 29); (vii) Dain's alleged failure to segregate and identify Trust properties through efforts to comingle Trust assets with Joanne's personal assets (Counts 4, 10, 22, and 29); (viii) Dain's alleged approval of Wrigley's requests for reimbursement of expenses from the SNT (Count 18); and (ix) Dain's alleged failure

---

[30] Non-asterisk indicates claims moved on only by Defendants for summary judgment; asterisk indicates claims also moved on by Plaintiffs for summary judgment. Count 8 is repeated from the prior section because it involves multiple allegedly wrongful actions, (see Am. Compl. Count 8 (alleging breach of the duty of impartiality and perjury)), although Plaintiffs' motion only covers the portion of Count 8 concerning the duty of impartiality, which was already addressed in Section III(B)(i), supra. (See Pls. S.J. Reply at 12.)

to disclose material facts relevant to the Trust beneficiaries (Counts 11 and 30). (See Am. Compl. at 1-3.)

I adopt my analysis above and conclude that, based on the summary judgment records provided, no reasonable juror could find Dain liable on any of the above counts. Specifically, nothing in the record supports an inference that any of the allegedly wrongful actions resulted in actual injury to Plaintiffs, and Plaintiffs in their opposition papers do not raise any new theories of harm. (See Pls. Opp'n at 53-60.) As already stated, neither of the Trusts has been defunded, and the underlying assets do not belong to the Trusts in any event. Further, Plaintiffs' alternative theories of damage have been rejected. Therefore, for the same reasons as discussed at length above, I grant Defendants' motion for summary judgment with respect to all of these counts.

### IV.     Aiding and Abetting Claims (Counts 53, 57)

Plaintiffs also bring a claim against Wrigley, Pinto, and CPI Investigations for aiding and abetting Dain in his alleged breach of fiduciary duty. Under New York law, a claim of aiding and abetting a breach of fiduciary duty requires a showing of three elements: "(1) the existence of a violation by the primary (as opposed to the aiding and abetting) party; (2) knowledge of this violation on the part of the aider and abettor; and (3) plaintiff suffered actual damages as a result of the breach." Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F. Supp. 2d 489, 529 (S.D.N.Y. 2011). Because I find that Plaintiffs have failed to show a breach of fiduciary duty claim with respect to Dain, the primary party, and because I adopt my prior analysis concluding that Plaintiffs have failed to show any actual damage, I conclude that Plaintiffs have likewise failed to meet the elements of their aiding-and-abetting claims. Accordingly, Defendants' motion with respect to Counts 53 and 57 is granted.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for partial summary judgment is DENIED.

Defendants' motion for summary judgment with respect to all remaining counts in this case is

GRANTED in its entirety. The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.

Dated: March 31, 2023
   Brooklyn, New York

           Carol Bagley Amon
           United States District Judge